Atkinson-Baker Court Reporters
www.depo.com

```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION

ELIZABETH A. BLACK,                :
                                   :
              Plaintiff            :
                                   :
        vs.                        : No.
                                   : 8:16-cv-02117-T-23TGW
                                   :
NATIONAL BOARD OF MEDICAL          :
EXAMINERS,                         :
              Defendants           :
                                   :
-----------------------------------x



                   DEPOSITION OF

                 DR. KEVIN MURPHY

             PHILADELPHIA, PENNSYLVANIA

                    May 11, 2017




ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY:  PATRICIA BROWN

FILE NO.  AB03C78
```

1

Atkinson-Baker Court Reporters
www.depo.com

```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION


ELIZABETH A. BLACK,                  :
                                     :
            Plaintiff                :
                                     :Civil Action No.
       vs.                           :8:16-cv-02117-T-23TGW
                                     :
                                     :
NATIONAL BOARD OF MEDICAL            :
EXAMINERS,
            Defendants
----------------------------------x




     Deposition of DR. KEVIN MURPHY, taken on behalf
of Defendants, at 3750 Market Street, Philadelphia,
   Pennsylvania 19104, commencing at 8:07 a.m.
   Thursday, May 11, 2017, before Patricia Brown.
```

2

Atkinson-Baker Court Reporters
www.depo.com

```
 1                A-P-P-E-A-R-A-N-C-E-S
 2          FOR PLAINTIFF:
         LAW OFFICES OF DISABILITY RIGHTS FLORIDA
 3       BY:  MEGAN COLLINS, Esq.
         1930 Harrison Street
 4       Suite 104
         Hollywood, Florida 33020
 5       Phone #850-488-9071
         E-mail: MeganC@DisabilityRightsFlorida.org
 6
         LAW OFFICES OF DISABILITY RIGHTS FLORIDA
 7       BY:  CURTIS FILAROSKI, Esq.
         2473 Care Drive
 8       Suite 200
         Tallahassee, Florida 32308
 9       Phone #850-488-9071
         E-mail: CurtisF@DisabilityRightsFlorida.org
10
         LAW OFFICES OF DISABILITY RIGHTS FLORIDA
11       BY: ANN MARIE CINTRON-SIEGEL, Esq.
         1930 Harrison Street
12       Suite 104
         Hollywood, Florida 33020
13       Phone# 850-488-9071
         E-mail: AnnS@DisabilityRightsFlorida.org
14
            FOR DEFENDANTS:
15        LAW OFFICES OF NORTON ROSE FULBRIGHT
          BY: ROBERT A. BURGOYNE, Esq.
16        799 9th Street, NW
          Suite 1000
17        Washington, DC 20001
          Phone# 1-202-662-4513
18        E-mail:robert.burgoyne@nortonrosefulbright.
          com
19
20        NATIONAL BOARD OF MEDICAL EXAMINERS
          BY: SUZANNE WILLIAMS, Esq.
21        3750 Market Street
          Philadelphia, Pennsylvania 19104
22        Phone# 215-590-9538
          E-mail: Swilliams@nbme.org
23
24
25
```

Atkinson-Baker Court Reporters
www.depo.com

```
                        I N D E X

WITNESSES:   DR. KEVIN MURPHY

       EXAMINATION                              PAGE

    By MS. CINTRON-SIEGEL                       5
    By MR. BURGOYNE                             128



                       E X H I B I T S

 NUMBER              DESCRIPTION                PAGE

No. 1   CV= KRM 1-24 (Confidential)             54
No. 2   Request for test accommodations
                  (Confidential)                56
No. 3   Results submitted on 12-29-14
                  (Confidential)                63
No. 4   Request for test accommodations
                  (Confidential)                84
No. 5   View results (Confidential)             98
No. 6   Test results & clinical impressions
                  (Confidential)                113




            INSTRUCTIONS NOT TO ANSWER:

                  PAGELINE

                    --                --


            INFORMATION REQUESTED:

                    (None)
```

4

Atkinson-Baker Court Reporters
www.depo.com

```
 1              PHILADELPHIA, PENNSYLVANIA,
 2           Thursday, May 11, 2017; 8:07 a.m.
 3                         - - -
 4                      EXAMINATION
 5   BY MS. CINTRON-SIEGEL:
 6   Q.    Good morning, Dr. Murphy.
 7   A.    Good morning.
 8   Q.    I'm Ann Siegel.  And I'm an attorney with
 9   Disability Rights Florida.
10         Would you state your name for the
11   record.
12   A.    Dr. Kevin Murphy.
13   Q.    Have you ever been deposed?
14              (Discussion held off the record.)
15                    DR. KEVIN MURPHY
16         having first been duly sworn, was
17         examined and testified as follows:
18                         - - -
19   BY MS. CINTRON-SIEGEL:
20   Q.    All right.  Have you ever been deposed before?
21   A.    Yes.
22   Q.    And how many times?
23   A.    Hard to say for sure.  It's been over a number
24   of years but I would guess four or five.
25   Q.    Has it been recently?
```

Atkinson-Baker Court Reporters
www.depo.com

1  A.    Not within the last five years I'd say.
2  Q.    Okay.  Let's do a refresher then.  So I'm
3  going to ask you some questions and I'm going to
4  need you to answer out loud yes, no, full sentences,
5  whatever it requires.  But no nods, no uh-huh's so
6  that the court reporter can take down what you're
7  saying.
8        Now, that Curtis was kind enough to
9  remind us, you're under oath, so anything you say is
10 subject to perjury, and that shouldn't be an issue
11 here.  If you don't hear my question -- I think I'm
12 fairly loud, but if you don't hear me or if I'm not
13 clear when I think I'm perfectly clear, please feel
14 free to ask me to elaborate, clarify, anything.  I
15 want to make sure that you have a full understanding
16 of what I'm saying, and that you're not trying to,
17 you know, guess or anything, so that we're on the
18 same page with that.
19       I'm kind of very literal.  I'm a
20 stickler.  So I really need complete answers.  So,
21 try not to take any omissions and answer as
22 completely as possible.
23 A.    Okay.
24 Q.    Is there any reason today that you would be
25 unable to answer questions truthfully?

6

Atkinson-Baker Court Reporters
www.depo.com

1  warranted or not.
2  Q.    So by the history of needing extra time due to
3  my impairment on focusing and concentration and
4  limited strength in vitality, would a request for
5  extra time accommodation be appropriate?
6  A.    Depends.
7  Q.    On what?
8  A.    Many of the cases that I review do not
9  substantiate a diagnosis or a need for the
10 accommodation.
11 Q.    And what do you mean by they don't
12 substantiate?
13 A.    The documentation is insufficient to establish
14 the diagnostic criteria or for need for the
15 accommodation.
16 Q.    So the documents would not support the need
17 for the accommodation. Could that just be a failing
18 in the documentation I've provided?
19 A.    Possibly.
20 Q.    What do you see as your main role when you are
21 given a file to evaluate?
22 A.    My main role is to consistently, fairly and
23 objectively review the documentation and use my
24 expertise as an expert in ADHD to advise the board
25 on whether the documentation substantiates the

Atkinson-Baker Court Reporters
www.depo.com

```
 1  diagnosis.  Whether the diagnosis results in
 2  significant functional impairment, whether the
 3  requested accommodation is reasonable and
 4  appropriate.  And they are interested in my opinion
 5  on whether to grant or not grant the accommodation.
 6              I am not a decision maker.  I simply
 7  give them my expertise on the diagnosis and they do
 8  what they want with it.  I don't typically know
 9  exactly what -- they make their own decision based
10  on their internal decision, but they use my data, my
11  input I believe to help them make those decisions in
12  a fair way.
13  Q.    And you don't know the outcome of your
14  recommendations?
15  A.    Not always.
16  Q.    How often do you know the outcome?
17  A.    Well, I submit my reports, and then I don't --
18  unless there's an appeal, I know that they
19  recommend -- so I think most of the time obviously
20  they will go with my recommendation, but they're
21  under no obligation to do so.
22  Q.    So when you get a file, how do you start your
23  review?  Like what is your presumption when you get
24  the file?  Is it a clean slate or are you of the
25  mind set that this is a person with a disability
```

33

```
 1   Q.    So Dr. Booth Jones not using the same scales
 2   that you would have used is -- is that why you're
 3   discounting her report?
 4   A.    No.  Not entirely, no.
 5   Q.    Are you familiar with Dr. Booth Jones?
 6   A.    No.
 7   Q.    During this review did you have the
 8   opportunity to speak with Dr. Booth Jones?
 9   A.    No.
10   Q.    When you're doing your review of Ms. Black's
11   file or in your normal course of review, do you ever
12   reach out to the diagnosing physician?
13   A.    No.  I don't see that as my role.  I'm asked
14   to review the documentation that's presented.
15   Q.    And your role is just -- not to interview
16   anyone outside the file?
17   A.    Correct.
18   Q.    So we're going to look at what was date
19   stamped NBME 210 through 213.
20              MS. CINTRON-SIEGEL:  And I apologize.
21         I only have one copy.
22              MR. BURGOYNE:  That's fine.
23              We're going to mark it?
24              MS. CINTRON-SIEGEL:  Yes.
25              That's fine.
```

Atkinson-Baker Court Reporters
www.depo.com

```
 1                    We're going to mark this one Murphy-3.
 2                    (Document handed to reporter.)
 3                    (Whereupon, the documents
 4               were marked as Murphy Exhibit
 5               No. 3 for identification.)
 6                    MS. CINTRON-SIEGEL:  And when you're
 7               done marking it, I want to give Dr. Murphy an
 8               opportunity to read it.
 9                    (Document handed to witness.)
10     BY MS. CINTRON-SIEGEL:
11     Q.     Are you familiar with this documentation?
12     A.     Yes.
13     Q.     And what is that?
14     A.     This is my initial report for responding to
15     the first file that she sent in requesting
16     accommodations.  I explained the basis for my
17     recommendation to deny accommodations.
18     Q.     And there were no notes attached to this one.
19     Do you not still have the notes?
20     A.     I looked for the notes.  I found the notes on
21     the appeal but not the other one.
22     Q.     So why did you determine that the
23     documentation did not substantiate the ADHD
24     diagnosis?
25     A.     Because, one, the overall history that was
```

Dr. Kevin Murphy
May 11, 2017

presented didn't reflect ADHD. There was no childhood onset established in any kind of reliable way. Her overall history didn't -- wasn't consistent with ADHD in terms of her consistently positive behavior and achievements and the fact that she even talked to herself about always being high functioning. Got admitted into Princeton. Got A's and B's at Princeton. Got a 3.79 in a post bach program. Got into medical school. Had stellar recommendations from people -- actually, that's not this one. That was the other one.

Q. It's okay. It's a little hard to keep them apart.

A. And she did not provide documentation that would have shown a history of ADHD. Like she didn't give any school records at the time. She didn't give job performance reviews. She didn't give any kinds of paper trail that would have been reflective of ADHD. The childhood onset wasn't established.

And Dr. Booth Jones's report I felt again did not adequately substantiate the diagnosis. It's based on test scores, self ratings on a -- symptom endorsement on a self administered rating scale, and basically self report. It's not enough.

I also didn't think that she showed

64

Atkinson-Baker Court Reporters
www.depo.com

```
 1   that her symptoms rose to the level of a disability.
 2   Somebody with her history just did not seem to be
 3   impaired enough to be considered disabled under the
 4   ADA.  So I didn't think any of this was even close
 5   to establishing a diagnosis or a disability.
 6   Q.    So when you were discussing -- establishing
 7   early onset, were you looking for documentation from
 8   Ms. Black's general education teachers?
 9   A.    Yes, that's one example.
10   Q.    To your knowledge do you consider general
11   education teachers to be qualified to make diagnosis
12   of ADHD impairments?
13   A.    No.  But they're qualified in knowing their
14   students and documenting comments and -- you know
15   you see teacher comments many times that reflect
16   frustration, poor behavior, poor self control,
17   inattention, underachievement, not work to
18   potential.  All those kinds of things.  There's none
19   of that here.
20   Q.    In your review of Ms. Black's information --
21   strike that.
22              In your experience in dealing with the
23   persons who come to your adult clinic, do any of
24   your patients ever allege that their families were
25   in denial that they were a person with a disability?
```

65

Dr. Kevin Murphy
May 11, 2017

Atkinson-Baker Court Reporters
www.depo.com

```
 1                REPORTER'S CERTIFICATE
 2           I, PATRICIA BROWN, stenographic reporter,
 3   certify:  That the foregoing proceedings were taken
 4   before me at the time and place therein set forth,
 5   at which time the witness was put under oath by me;
 6           That the testimony of the witness, the
 7   questions propounded, and all objections and
 8   statements made at the time of the examination were
 9   recorded stenographically by me and were thereafter
10   transcribed;
11           That a review of the transcript by the
12   deponent was not requested.
13           That the foregoing is a true and correct
14   transcript of my shorthand notes so taken.
15           I further certify that I am not a relative or
16   employee of any attorney of the parties, nor
17   financially interested in the action.
18           I declare under penalty of perjury under the
19   laws of Pennsylvania that the foregoing is true and
20   correct.
21           Dated this 23nd day of May, 2017.
22
23   BY: _____Patricia G Brown_____
24                     Patricia Brown
25
```

130