1653050   S-202-127-5
Step 1 Request Form

## United States Medical Licensing Examination® (USMLE®)

### REQUEST FOR TEST ACCOMMODATIONS
*Use this form if you are requesting accommodations on USMLE for the first time*

---

The National Board of Medical Examiners® (NBME®) processes requests for test accommodations on behalf of the USMLE program

If you have a documented disability covered under the Americans with Disabilities Act (ADA), you must notify the USMLE in writing each time you apply for a Step examination for which you require test accommodations. Submitting this form constitutes your official notification.

- Review the USMLE Guidelines for Test Accommodations at www.usmle.org for a detailed description of how to document a need for accommodation.

- Complete all sections of this request form and submit it together with all required documentation at the same time you submit your Step exam application.

- Incomplete, illegible, or unsigned request forms and/or insufficient supporting documentation will delay processing of your request.

- Do not send originals. Please retain the originals of all documentation that you submit as we are unable to return submissions or provide duplicate copies to third parties.

- Submitting duplicate and/or bound documentation may delay processing of your request.

**RECEIVED**
**NOV 2 6 2014**
**Disability Services**

- NBME will acknowledge receipt of your request by e-mail and audit your submission for completeness. If you do not receive an e-mail acknowledgement within a few days of submitting your documentation, contact Disability Services at 215-590-9700. You may be asked to submit additional documentation to complete your request.

- Requests are processed in the order in which they are received. Allow at least 60 days for processing of your request. Processing cannot begin until sufficient information is received by NBME and your Step exam registration is complete.

- The outcome of our review will not be released via telephone. All official communications regarding your request will be made in writing. If you wish to modify or withdraw a request for test accommodations, contact Disability Services by e-mail at disabilityservices@nbme.org or by telephone at 215-590-9700.

---

You MUST provide supporting documentation verifying your current functional impairment.

In order to document your need for accommodation, submit the following with this form:

✓ A personal statement describing your disability and its impact on your daily life and educational functioning.

✓ Supporting documentation such as psychoeducational evaluations; medical records; copies of report cards, academic and score transcripts; faculty or supervisor feedback; job performance evaluations; clerkship/clinical course evaluations; verification of prior academic/test accommodations; etc.

✓ A complete and comprehensive evaluation. Reports from qualified professionals must be typewritten on letterhead, signed and include the professional's qualifications.



EXHIBIT
PMURPHY 4
P8   5|11|17
KRM 050

CONFIDENTIAL

USMLE® Request for Test Accommodations

## Section A: Exam Information

Place a check next to the examination(s) for which you are currently registered and requesting test accommodations: (Check all that apply)

☑ Step 1
☐ Step 2 CK (Clinical Knowledge)
☐ Step 2 CS (Clinical Skills)
☐ Step 3

## Section B: Biographical Information
**Please type or print.**

**B1.** Name: BLACK                    ELIZABETH                    A.
          Last                              First                              Middle Initial

**B2.** Gender:  ☐ Male   ☑ Female

**B3.** Date of Birth: ▓▓▓▓▓▓▓▓▓▓

**B4.** USMLE # 5-293-137-5 (required)

**B5.** Address: 3211 W. Swann Ave, Unit 1111
Street
Tampa                    FL              33609
City                     State/Province    Zip/Postal Code
USA
Country
609-306-8808
Daytime Telephone Number

Alternate Telephone Number
eblack10@health.usf.edu
E-mail address

**RECEIVED**

NOV 26 2014

**Disability Services**

**B6.** Medical School Name: Univ. of South FL Morsani College of Med.

Country of Medical School: USA              Date of Medical School Graduation: _____

USMLE® Request for Test Accommodations

**Section C: Accommodations Information**

**C1.** Do you require wheelchair access at the examination facility? ❑ Yes ☒ No
If yes, and you require an adjustable height computer table, indicate the number of inches required from the bottom of the table to the floor: _____

**C2.** Describe the accommodation(s) you are requesting. Accommodations must be appropriate to the impairment within the context of the examination task and setting:

*Time & 1/2 over 2 days.*

**C3.** Check **ONLY ONE** box for the exam(s) for which you are registered.

**STEP 1:**
**Additional Break Time**
❑ Additional break time over 1 day
❑ Additional break time over 2 days

**Additional Testing Time**
❑ 25% Additional test time (Time and 1/4) over 2 days
☒ 50% Additional test time (Time and 1/2) over 2 days
❑ 100% Additional test time (Double time) over 2 days

❑ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

**STEP 2 CK:**
**Additional Break Time**
❑ Additional break time over 2 days

**Additional Testing Time**
❑ 25% Additional test time (Time and 1/4) over 2 days
❑ 50% Additional test time (Time and 1/2) over 2 days
❑ 100% Additional test time (Double time) over 2 days

❑ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

**STEP 3:**
**Additional Break Time**
❑ Additional break time over 4 days

**Additional Testing Time**
❑ 25% Additional test time (Time and 1/4) over 3 days
❑ 50% Additional test time (Time and 1/2) over 4 days
❑ 100% Additional test time (Double time) over 5 days

RECEIVED
NOV 2 6 2014
Disability Services

❑ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 4 days

**STEP 2 CS:**
Describe the accommodations you are requesting for each section of Step 2 CS (i.e., patient encounter, patient note).  If you are requesting additional time, state the <u>amount</u> of additional time you require in <u>minutes per encounter/note</u>.

❑ Patient Encounter: _____
❑ Patient Note: _____

USMLE® Request for Test Accommodations

### Section D: Information About Your Impairment

**D1.** Check the box that best describes the nature of your impairment and list the year it was first diagnosed by a qualified professional.  Check only those for which you are requesting accommodations.

**Sensory**                                          **Year first diagnosed**
☐  Hearing                                          _____
☐  Vision                                           _____
☐  Other (specify):_____                      _____

**Learning**
☐  Reading                                          _____
☐  Writing                                          _____
☐  Mathematics                                      _____
☐  Other (specify):_____                      _____

**Language**
☐  Expressive                                       _____
☐  Receptive                                        _____
☐  Other (specify):_____                      _____

**Physical**
☐  Mobility/motor                                   _____
☐  Endocrine                                        _____
☐  Neurological                                     _____
☐  Other (specify):_____                      _____

**Psychiatric**
☐  Anxiety Disorder
☐  Depression/Mood Disorder
☒  Attention Deficit/Hyperactivity Disorder    *2008/2009*
☐  Other (specify):_____                      _____

**Other Impairment** (specify) _____          _____

RECEIVED

NOV 2 6 2014

Disability Services

**D2.** List your <u>current</u> DSM/ICD diagnosis/diagnoses for which you are requesting accommodations:

*DSM-5 : 314.01-Attention deficit hyperactivity disorder with combined presentation.*

### D3. Personal Statement

Attach a signed and dated personal statement describing your impairments(s) and their impact on daily life.  Narratives should not be confined to standardized test performance.  The personal statement is your opportunity to tell us how your physical or mental impairment(s) substantially limit your current functioning in a major life activity. In your own words, discuss how your impairment(s) would interfere with your access to the relevant USMLE Step and how the specific accommodation(s) you are requesting will alleviate this impact.

USMLE® Request for Test Accommodations

## Section E:  Accommodation History

### STANDARDIZED EXAMINATIONS

**E1.** List accommodations you received for all standardized examinations such as college, graduate and professional school admissions tests and professional licensure and certification examinations.  If no accommodations were provided, write NONE.

ᔡ **Attach copies of official documentation from each testing agency confirming the test accommodations they provided.**

ᔡ **Attached a copy of your official examination score report(s).**

| | DATE(S) ADMINISTERED | ACCOMMODATION(S) PROVIDED |
|---|---|---|
| ☐ SAT®, ACT® | | |
| ☐ MCAT® | | |
| ☐ GRE® | | |
| ☐ GMAT® | | |
| ☐ LSAT® | | |
| ☐ DAT® | | |
| ☐ COMLEX® | | |
| ☐ Bar Examination(s) | | |
| ☐ Other(s)_____ | | |

### POSTSECONDARY EDUCATION

**E2.** List each school and all formal accommodations you receive/received, and the dates accommodations were provided:

ᔡ **Attach copies of official records from the school(s) listed confirming the accommodations they provided.**

| | SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|---|
| Medical/Graduate/ Professional School | USF Morsani College of Med. | time & a half | March 2013 |
| | | | RECEIVED |
| | | | NOV 26 2014 |
| Undergraduate School | | | Disability Services |

### E3. Certification of Prior Test Accommodations

ᔡ **If you receive/received accommodations in medical school and/or residency, the appropriate official at your medical school/residency must complete and submit the Certification of Prior Test Accommodations form available at www.usmle.org.**

USMLE® Request for Test Accommodations

## PRIMARY AND SECONDARY SCHOOL

**E4.** List each school and all formal accommodations you received, and the dates accommodations were provided:

↻ Attach copies of official records from the school(s) listed confirming the accommodations they provided.

| SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|
| High School | | |
| Middle School | | |
| Elementary School | | |

RECEIVED

NOV 2 6 2014

Disability Services

## Section F: Certification and Authorization

To the best of my knowledge and belief, the information recorded on this request form is true and accurate. I understand that my request for accommodations, including this form and all supporting documentation, must be received by the NBME sufficiently in advance of my anticipated test date in order to provide adequate time to evaluate and process my request.

I acknowledge and agree that any information submitted by me or on my behalf may be used by the USMLE program for the following purposes:
- Evaluating my eligibility for accommodations. When appropriate, my information may be disclosed to qualified independent reviewers for this purpose.
- Conducting research. Any disclosure of my information by the USMLE program will not contain information that could be used to identify me individually; information that is presented in research publications will be reported only in the aggregate.

I authorize the National Board of Medical Examiners (NBME) to contact the entities identified in this request form, and the professionals identified in the documentation I am submitting in connection with it, to obtain further information. I authorize such entities and professionals to provide NBME with all requested further information.

I further understand that the USMLE reserves the right to take action, as described in the Bulletin of Information (see "Indeterminate Scores and Irregular Behavior"), if it determines that false information or false statements have been presented on this request form or in connection with my request for test accommodations.

Name (print): _Elizabeth Black_

Signature: _____   Date: _11/18/14_

**USMLE® Request for Test Accommodations**

**What to Submit**
- ✓ Legible copies of all documents, not originals
- ✓ Typewritten and signed letters and reports from professionals on their letterhead
- ✓ Complete reports with all pages including test scores
- ✓ All documents in English. You are responsible for providing certified English translations of all non-English documentation
- ✓ Childhood records - if your request is based on a developmental disorder (e.g., LD, dyslexia, ADHD)
- ✓ Official transcripts and standardized test score reports
- ✓ Documentation beyond self-report of your functional impairment
- ✓ Documentation of your functional impairment in activities other than test-taking

**What NOT to Submit**
- ✗ Original documents
- ✗ Handwritten or unsigned letters from physicians or evaluators
- ✗ Copies of reports with redactions or missing pages
- ✗ Multiple copies of documentation (i.e., faxed and mailed copies of a document)
- ✗ Duplicate documentation previously submitted to Disability Services
- ✗ Previous correspondence from Disability Services
- ✗ Research articles, your résumé or curriculum vita
- ✗ Staples, binders, page protectors, folders, or similar items

**Mail, fax or e-mail (as a pdf) your completed request form and supporting documents to the address below at the same time you submit your Step examination application.**

**Disability Services**
**National Board of Medical Examiners**
**3750 Market Street**
**Philadelphia, PA 19104-3190**
**Telephone: (215) 590-9700**
**Facsimile: (215) 590-9422**
**E-mail: disabilityservices@nbme.org**

**RECEIVED**

**NOV 2 6 2014**

**Disability Services**



1005829   5-203-137-5
Step 1 Request Form

### United States Medical Licensing Examination® (USMLE®)

**RECEIVED**

JAN 2 5 2016

## REQUEST FOR TEST ACCOMMODATIONS

*Use this form if you are requesting accommodations on USMLE for the first time*

Disability Services

**The National Board of Medical Examiners® (NBME®) processes requests for test accommodations on behalf of the USMLE program**

If you have a documented disability covered under the Americans with Disabilities Act (ADA), you must notify the USMLE in writing <u>each time</u> you apply for a Step examination for which you require test accommodations. Submitting this form constitutes your official notification.

- Review the USMLE Guidelines for Test Accommodations at www.usmle.org for a detailed description of how to document a need for accommodation.

- Complete all sections of this request form and submit it together with all required documentation at the same time you submit your Step exam application.

- Incomplete, illegible, or unsigned request forms and/or insufficient supporting documentation will delay processing of your request.

- Do not send originals. Please retain the originals of all documentation that you submit as we are unable to return submissions or provide duplicate copies to third parties.

- Submitting duplicate and/or bound documentation may delay processing of your request.

- NBME will acknowledge receipt of your request by e-mail and audit your submission for completeness. If you do not receive an e-mail acknowledgement within a few days of submitting your request, please contact Disability Services at 215-590-9700. You may be asked to submit additional documentation to complete your request.

- Requests are processed in the order in which they are received. Allow at least 60 days for processing of your request. Processing cannot begin until sufficient information is received by NBME and your Step exam registration is complete.

- The outcome of our review will not be released via telephone. All official communications regarding your request will be made in writing. If you wish to modify or withdraw a request for test accommodations, contact Disability Services by e-mail at disabilityservices@nbme.org or by telephone at 215-590-9700.

---

**You MUST provide supporting documentation verifying your current functional impairment.**

In order to document your need for accommodation, <u>submit</u> the following with this form:

✓ A <u>personal statement</u> describing your disability and its impact on your daily life and educational functioning.

✓ <u>Supporting documentation</u> such as psychoeducational evaluations; medical records; copies of report cards, academic and score transcripts; faculty or supervisor feedback; job performance evaluations; clerkship/clinical course evaluations; verification of prior academic/test accommodations; etc.

✓ A <u>complete and comprehensive evaluation.</u>  Reports from qualified professionals must be typewritten on letterhead, signed and include the professional's qualifications.

CONFIDENTIAL

KRM 057

USMLE® Request for Test Accommodations

### Section A: Exam Information

Place a check next to the examination(s) for which you are currently registered and requesting test accommodations: (Check all that apply)

☑ Step 1

☐ Step 2 CK (Clinical Knowledge)

☐ Step 2 CS (Clinical Skills)

☐ Step 3

### Section B: Biographical Information
Please type or print.

B1. Name:  <u>Black</u>            <u>Elizabeth</u>                    <u>A</u>
             Last                        First                        Middle Initial

B2. Gender:  ☐ Male   ☑ Female

B3. Date of Birth:  █████████

B4. USMLE # <u>5</u> - <u>293</u>  - <u>137</u>  - <u>5</u> (required)

B5. Address:
    <u>2116 Imperial Golf Course Blvd</u>
Street
    <u>Naples</u>                    <u>FL</u>                <u>34110</u>
City                        State/Province        Zip/Postal Code

    <u>USA</u>
Country
    <u>609-306-8808</u>
Daytime Telephone Number

Alternate Telephone Number

    <u>eblack1@health.usf.edu</u>
E-mail address

B6. Medical School Name:  <u>University of South Florida Morsani College of Medicine</u>

Country of Medical School: <u>USA</u>                Date of Medical School Graduation: <u>2018</u>

**USMLE® Request for Test Accommodations**

**Section C: Accommodations Information**

**C1.** Do you require wheelchair access at the examination facility? ☐ Yes ☒ No
If yes, and you require an adjustable height computer table, indicate the number of inches required from the bottom of the table to the floor: _____

**C2.** Describe the accommodation(s) you are requesting. Accommodations must be appropriate to the impairment within the context of the examination task and setting:

Time and a half over two days.

**C3.** Check **ONLY ONE** box for the exam(s) for which you are registered.

**STEP 1:**

| Additional Break Time | Additional Testing Time |
|---|---|
| ☐ Additional break time over 1 day | ☐ 25% Additional test time (Time and 1/4) over 2 days |
| ☐ Additional break time over 2 days | ☒ 50% Additional test time (Time and 1/2) over 2 days |
| | ☐ 100% Additional test time (Double time) over 2 days |

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

**STEP 2 CK:**

| Additional Break Time | Additional Testing Time |
|---|---|
| ☐ Additional break time over 2 days | ☐ 25% Additional test time (Time and 1/4) over 2 days |
| | ☐ 50% Additional test time (Time and 1/2) over 2 days |
| | ☐ 100% Additional test time (Double time) over 2 days |

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

**STEP 3:**

| Additional Break Time | Additional Testing Time |
|---|---|
| ☐ Additional break time over 4 days | ☐ 25% Additional test time (Time and 1/4) over 3 days |
| | ☐ 50% Additional test time (Time and 1/2) over 4 days |
| | ☐ 100% Additional test time (Double time) over 5 days |

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 4 days

**STEP 2 CS:**
Describe the accommodations you are requesting for each section of Step 2 CS (i.e., patient encounter, patient note). If you are requesting additional time, state the <u>amount</u> of additional time you require in <u>minutes per encounter/note.</u>

☐ Patient Encounter:_____

☐ Patient Note:_____

USMLE® Request for Test Accommodations

**Section D: Information About Your Impairment**

**D1.** Check the box that best describes the nature of your impairment and list the year it was first diagnosed by a qualified professional. Check only those for which you are requesting accommodations.

| Sensory | Year first diagnosed |
|---|---|
| ☐ Hearing | |
| ☒ Vision | 2015 |
| ☐ Other (specify):_____ | _____ |

| Learning | |
|---|---|
| ☐ Reading | _____ |
| ☐ Writing | _____ |
| ☐ Mathematics | _____ |
| ☐ Other (specify):_____ | _____ |

| Language | |
|---|---|
| ☐ Expressive | _____ |
| ☐ Receptive | _____ |
| ☐ Other (specify):_____ | _____ |

| Physical | |
|---|---|
| ☐ Mobility/motor | _____ |
| ☐ Endocrine | _____ |
| ☐ Neurological | _____ |
| ☐ Other (specify):_____ | _____ |

| Psychiatric | |
|---|---|
| ☐ Anxiety Disorder | _____ |
| ☐ Depression/Mood Disorder | _____ |
| ☒ Attention Deficit/Hyperactivity Disorder | 2008 |
| ☐ Other (specify):_____ | _____ |

Other Impairment (specify) _____   _____

**D2.** List your <u>current</u> DSM/ICD diagnosis/diagnoses for which you are requesting accommodations:

DSM V: 314.01 Attention Deficit Hyperactivity Disorder with combined presentation

ICD-9 378.83 Convergence Insufficiency

**D3. Personal Statement**

✎ **Attach a signed and dated personal statement describing your impairments(s) and their impact on daily life. Narratives should not be confined to standardized test performance. The personal statement is your opportunity to tell us how your physical or mental impairment(s) substantially limit your current functioning in a major life activity. In your own words, discuss how your impairment(s) would interfere with your access to the relevant USMLE Step and how the specific accommodation(s) you are requesting will alleviate this impact.**

USMLE® Request for Test Accommodations

**Section E:  Accommodation History**

**STANDARDIZED EXAMINATIONS**

**E1.**  List accommodations you received for all standardized examinations such as college, graduate and professional school admissions tests and professional licensure and certification examinations.  If no accommodations were provided, write NONE.

✍ Attach copies of official documentation from each testing agency confirming the test accommodations they provided.

✍ Attached a copy of your official examination score report(s).

|  | **DATE(S) ADMINISTERED** | **ACCOMMODATION(S) PROVIDED** |
|---|---|---|
| ☐ SAT®, ACT® | | |
| ☐ MCAT® | | |
| ☐ GRE® | | |
| ☐ GMAT® | | |
| ☐ LSAT® | | |
| ☐ DAT® | | |
| ☐ COMLEX® | | |
| ☐ Bar Examination(s) | | |
| ☐ Other(s) | | |
| | | |

**POSTSECONDARY EDUCATION**

**E2.** List each school and all formal accommodations you receive/received, and the dates accommodations were provided:

✍ Attach copies of official records from the school(s) listed confirming the accommodations they provided.

| | **SCHOOL** | **ACCOMMODATIONS PROVIDED** | **DATES PROVIDED** |
|---|---|---|---|
| Medical/Graduate/ Professional School | USF MCOM | Time and a half, quiet testing | March 2013-present |
| | | | |
| | | | |
| Undergraduate School | | | |
| | | | |

**E3. Certification of Prior Test Accommodations**

✍ If you receive/received accommodations in medical school and/or residency, the appropriate official at your medical school/residency must complete and submit the **Certification of Prior Test Accommodations** form available at **www.usmle.org**.

CONFIDENTIAL                                                                                    KRM 061

USMLE® Request for Test Accommodations

## PRIMARY AND SECONDARY SCHOOL

**E4.** List each school and all formal accommodations you received, and the dates accommodations were provided:

> ☝ **Attach copies of official records from the school(s) listed confirming the accommodations they provided.**

| SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|
| **High School** | | |
| | | |
| **Middle School** | | |
| | | |
| **Elementary School** | | |
| | | |

## Section F: Certification and Authorization

To the best of my knowledge and belief, the information recorded on this request form is true and accurate. I understand that my request for accommodations, including this form and all supporting documentation, must be received by the NBME sufficiently in advance of my anticipated test date in order to provide adequate time to evaluate and process my request.

I acknowledge and agree that any information submitted by me or on my behalf may be used by the USMLE program for the following purposes:

- Evaluating my eligibility for accommodations. When appropriate, my information may be disclosed to qualified independent reviewers for this purpose.
- Conducting research. Any disclosure of my information by the USMLE program will not contain information that could be used to identify me individually; information that is presented in research publications will be reported only in the aggregate.

I authorize the National Board of Medical Examiners (NBME) to contact the entities identified in this request form, and the professionals identified in the documentation I am submitting in connection with it, to obtain further information. I authorize such entities and professionals to provide NBME with all requested further information.

I further understand that the USMLE reserves the right to take action, as described in the Bulletin of Information (see "Indeterminate Scores and Irregular Behavior"), if it determines that false information or false statements have been presented on this request form or in connection with my request for test accommodations.

Name (print):   Elizabeth A Black

Signature:   _(signature)_          Date: 1/22/2016

**CONFIDENTIAL**                                                                 KRM 062

**USMLE® Request for Test Accommodations**

### What to Submit

- ✓ Legible copies of all documents, not originals
- ✓ Typewritten and signed letters and reports from professionals on their letterhead
- ✓ Complete reports with all pages including test scores
- ✓ All documents in English. You are responsible for providing certified English translations of all non-English documentation
- ✓ Childhood records - if your request is based on a developmental disorder (e.g., LD, dyslexia, ADHD)
- ✓ Official transcripts and standardized test score reports
- ✓ Documentation beyond self-report of your functional impairment
- ✓ Documentation of your functional impairment in activities other than test-taking

### What NOT to Submit

- ✗ Original documents
- ✗ Handwritten or unsigned letters from physicians or evaluators
- ✗ Copies of reports with redactions or missing pages
- ✗ Multiple copies of documentation (i.e., faxed and mailed copies of a document)
- ✗ Duplicate documentation previously submitted to Disability Services
- ✗ Previous correspondence from Disability Services
- ✗ Research articles, your résumé or curriculum vita
- ✗ Staples, binders, page protectors, folders, or similar items

**Mail, fax or e-mail (as a pdf) your completed request form and supporting documents to the address below at the same time you submit your Step examination application.**

**Disability Services**
**National Board of Medical Examiners**
**3750 Market Street**
**Philadelphia, PA 19104-3190**
**Telephone: (215) 590-9700**
**Facsimile: (215) 590-9422**
**E-mail: disabilityservices@nbme.org**

Elizabeth Black
ID#: 5-293-137-5
Request for USMLE Step 1 Test Accommodations

Personal Statement

I have had a lifetime history of difficulty with concentrating and staying focused. As a child, it always took me longer to complete my work compared to my peers and twin brother. I remember having to re-read entire pages of textbooks in order to process and retain information, consistently distracting myself. During classes, my ability to focus on the lecture was compromised by my distractibility and impulsivity. In the school setting, while never "hyperactive" in the true sense, I fidgeted, tapped my foot and moved around a lot (and still do) in my chair. I consistently remember impulsively blurting out answers in class, instead of raising my hand. I was noted by family and friends to be a "terrible story teller" due to my inability to focus on the main point and interjecting tangential thoughts often. As an adult, I find that I speak somewhat excessively and interrupt people as they are speaking to add to the conversation.

I was able to overcome my disability without diagnosis or medication as a child because I was in a highly structured school environment with supportive parents. This was again the case in my post-baccalaureate program—I lived at home and my schedule and classes were highly structured, facilitating my success. However, as an undergraduate, I would spend entire days in the library without getting anything I had set out to complete accomplished, constantly distracted. The lack of structure in my college environment led me to struggle more than I ever had academically.

I was diagnosed with ADHD by Dr. Scott Fleischer in March of 2009. I sought treatment with Dr. Fleischer and received my eventual diagnosis as I was attempting to study for the MCAT. I began treatment with stimulants at this point and have continued them since. Additionally due to policy changes at USF, I recently had additional confirmatory testing for my ADHD at the USF Psychological Services Center by Dr. Margaret Booth-Jones, where I was again diagnosed with ADHD with combined presentation (inattentive and hyperactive/impulsive presentation). I am currently treated with 40mg Vyvanse daily and 10mg Adderall as needed. While the medications do help substantially, I still struggle with timing and distractibility. In the spring of 2013 I applied for and received time and a half and quiet environment testing accommodations from USF MCOM.

Additionally, I investigated special time accommodations for the MCAT and prior to taking Step 1 for the first time (July 2014). Regrettably, I never chose to apply for the accommodations based on the fact that I would be singled out on my score report, all the while knowing that additional time would be hugely advantageous to me. Now that reporting of accommodations does not appear along with the test score and knowing my documented trouble with timing and inattention, I would like to receive 50% additional test time over two days to take the USMLE Step 1 exam.

Thank you in advance for your consideration.

RECEIVED

NOV 26 2014

Disability Services

CONFIDENTIAL

KRM 064

# Exhibit A

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



1625713      5-283-137-5      KRM 176
Exhibit A- NBME denial Lt

 NBME

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

March 2, 2015

**RECEIVED**

**JAN 2 1 2016**

Elizabeth A. Black
2116 Imperial Golf Course Blvd
Naples, FL 34110

**Disability Services**

RE: USMLE Step 1                    USMLE ID#: 5-293-137-5

Dear Ms. Black:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. We conducted an individualized review of your request in accordance with the guidelines set forth in the Americans with Disabilities Act (ADA).

You report the basis of your request to be Attention-Deficit/Hyperactivity Disorder diagnosed in 2008-2009. You write in your personal statement, *"I have a lifetime history of difficulty with concentrating and staying focused...I was able to overcome my disability without diagnosis or medication as a child because I was in a highly structured school environment with supportive parents. This was again the case in my post-baccalaureate program – I lived at home and my schedule and classes were highly structured, facilitating my success...I was diagnosed with ADHD by Dr. Scott Fleischer in March of 2009. I sought treatment with Dr. Fleischer and received my eventual diagnosis as I was attempting to study for the MCAT. I began treatment with stimulants at this point and have continued them since."*

In an October 2014 report of Psychoeducational Evaluation conducted at the University of South Florida (USF) when you were a 31-year-old third year medical student at USF, Megan V. McMurray, M.A. and Margaret Booth-Jones, Ph.D. write that you were referred for evaluation by Dr. Feldman at the USF Counseling Center seeking an ADHD evaluation to continue receiving psychostimulant medication. Your evaluators write, *"Due to recent policy changes at the USF CC, Ms. Black requires updated documentation to continue receiving psychiatric services for ADHD. She is currently prescribed 40 MG of Vyvanse daily, which she takes regularly, and 10 mg of Adderall as needed, which she takes very rarely and only when she needs to study for long periods of time. She reported that Vyvanse works effectively for her for about 8-10 hours, and that she takes Adderall only if she needs to study for more than 8-10 hours at a time...Ms. Black reported that she utilizes the time and a half accommodation for her medical school exams but refuses accommodations on national standardized test (e.g., the MCAT)..."* Your evaluators conclude, *"Findings from this assessment are consistent with result patterns that typically indicate clinically significant attention problems. Specifically, Ms. Black's pattern of performance in the current assessment, while unmedicated, is indicative of ADHD."*

**CONFIDENTIAL**

KRM 177

As you may know, ADHD is a neurodevelopmental disorder that begins in childhood and is defined by impairing levels of inattention, disorganization, and/or hyperactivity-impulsivity. Your documentation does not demonstrate a record of chronic and pervasive problems with inattention, impulsivity, behavioral regulation, or distractibility that impaired your functioning during your development or currently. No school records were provided to demonstrate impaired functioning with respect to attention, concentration, or organization that substantially limited a major life activity.

ADHD affects people over time and across situations, not in one circumscribed area such as timed test taking or in a demanding academic setting such as medical school. Manifestations of the disorder must be present in more than one setting. It must be documented beyond self-report that such symptoms have consistently and pervasively disrupted functioning in multiple behavioral domains. No objective data or documentation was provided via formal faculty/supervisor feedback, job performance evaluations, or through other sources of information verifying that you have shown pervasive problems managing daily demands for attention, organization or executive functioning.

As best one can tell from the documentation provided, you progressed through primary and secondary school without grade retention, special education evaluation or services and with an academic record and scores on timed standardized tests sufficient to gain admission to Princeton University and University of South Florida Morsani College of Medicine, all without accommodations. Regarding your performances on timed standardized tests, the records provided show that you earned an MCAT Total Score of 29O under standard conditions in 2009, better than 69.6-75.2% of a select group of medical school applicants. Overall, these data do not demonstrate impairments that limit a major life activity.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people or that additional testing time is an appropriate modification of your USMLE Step 1 test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

Sincerely,

Catherine Farmer

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

CONFIDENTIAL

KRM 178

12/18/2014  21:14   8139744619                                    PAGE  01/03

 **USF HEALTH**



1063653      5-293-137-5
Fax cover-Others
**RECEIVED**
DEC 1 9 2014
**Disability Services**

## facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Disability Services, NBME <br> Attn: Kelly Delaney | | 215 590-9422 |
| **From:** | Macaulay Cardinal, Assistant Registrar | **Date:** | December 19, 2014 |
| **Re:** | Elizabeth Black | **Pages:** | Including Cover Sheet 3 |
| **Cc:** | | **Sender's Phone:** | (813) 974-4089 |

| | | | | |
|---|---|---|---|---|
| ☒ Urgent | ☐ For review | ☐ Please comment | ☐ Please reply | ☐ Please recycle |

### CONFIDENTIALITY NOTICE:

*The Information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this facsimile message is strictly prohibited. If you have received this facsimile message in error, please immediately notify us by telephone and destroy the original message. Thank you.*

OFFICE OF THE REGISTRAR • MORSANI COLLEGE OF MEDICINE

University of South Florida •12901 Bruce B. Downs Blvd • Tampa, FL 33612-4799

(813)974-0828 • FAX (813)974-4619 • www.hsc.usf.edu/medicine/registrar

**CONFIDENTIAL**

**KRM 179**

# Exhibit B

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



1625714     5-233-137-5 KRM 065
primary school records -S

4.7



*Veritas et Misericordia*

**GWYNEDD-MERCY COLLEGE**
Gwynedd Valley, PA 19437
(215) 646-7300

Hobbit House Inventory of what *Elizabeth Black* can do.
(Not necessaryily what they should do.)

<u>Cognitive:</u>  Acquiring and using information.  This involves processes such as thinking, learning information, memory, imagination, problem solving and understanding.

    ✓  1.  color identification

    ✓  2.  calendar

    ✓  3.  shapes

    ✓  4.  sizes - selects small, medium, big
          (middle)

    ✓  5.  number concepts

    ✓  6.  can repeat a pattern

    ✓  7.  compares length

    ✓  8.  can repeat a patern - copies a repeating color, size or shape pattern in stringing beads or stacking

    ✓  9.  identifies body parts

    ✓  10.  understands Relative Qualities - weight (heavy-light) temperature (hot-cold), speed (fast-slow)

    ✓  11.  speaks in sentences and whole thoughts are put together.

<u>Motor Skills</u>  - using the body with control and efficiency.  This consists of <u>fine</u> <u>motor</u> skills such as cutting with scissors or copying with a crayon, and <u>gross</u> <u>motor</u> skills such as walking, jumping, and balancing -

    ✓  1.  walks on tip-toe

    ✓  2.  balance beam

    ✓  3.  jumps

    ✓  4.  hops or balances on one foot

    ✓  5.  uses scissors

    ✓  6.  throws ball in generally intended direction

    ✓  7.  catches ball

    ✓  8.  walks backwards
    ✓  9.  skips

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL

KRM 066

Problem Solving:

*depends on mood*

_____ 1. Self-directed – or other initiated –

__✓__ 2. understands directions about how to start and continue a task

*adequate* 3. Length of attention span

__✓__ 4. adjusts to routines

__✓__ 5. knows rules

## Social Inventory

_____ 1. plays alone

_____ 2. plays beside other children

__✓__ 3. plays with other children

__✓__ 4. wants to share

_____ 5. plays with same toy – shifts from one toy to another.

_____ 6. interests *blocks, sand, boats, games*

__✓__ 7. co-operates

__✓__ 8. shares news, information, stories about "their world".

| Emotional Inventory: | Yes | No |
|---|---|---|
| 1. lacks self-control | | ✓ |
| 2. ignores correction | | ✓ |
| 3. kicks | | ✓ |
| 4. stamps feet | | ✓ |
| 5. talks in loud voice | | ✓ |
| 6. withdraws from peers | | ✓ |
| 7. negative words    frequent _____ | unfrequent ✓ | |
| 8. loving attitude | ✓ | |
| 9. avoids activities | | ✓ |
| 10. shares feelings | ✓ | |

CONFIDENTIAL

KRM 067

## WISSAHICKON SCHOOL DISTRICT

**KINDERGARTEN**
**Student Progress Report**

19 88 — 19 89

Student _Elizabeth Clark_
School _Blue Bell_
Teacher _Audrey Pyle_
Half day/Full day

+ Exceeds requirements
✔ Satisfies requirements
N Needs assistance to satisfy requirements

— x Does not satisfy requirements
O Does not apply at this time

| MARKING PERIOD | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| **COMMUNICATIONS/READING READINESS** | | | | |
| Recognizes upper case letters | ✔ | ✔ | ✔ | ✔ |
| Recognizes lower case letters | + | ✔ | ✔ | ✔ |
| Identifies beginning sounds taught | O | ✔ | ✔ | ✔ |
| Understands concepts taught | O | ✔ | ✔ | ✔ |
| Expresses ideas clearly | ✔ | ✔ | ✔ | ✔ |
| Recognizes color words | ✔ | N | ✔ | ✔ |
| Skills: Address | O | O | ✔ | ✔ |
| Phone Number | ✔ | ✔ | ✔ | ✔ |
| Birthday | ✔ | ✔ | ✔ | ✔ |
| Days of the Week | O | O | O | ✔ |
| Concepts: Rhyming | O | O | ✔ | ✔ |
| Opposites | O | O | ✔ | ✔ |
| Likeness/Differences | O | ✔ | ✔ | ✔ |
| **MATH** | | | | |
| Recognizes numerals 1–10 | O | ✔ | O | ✔ |
| Recognizes numerals 11–20 | O | O | O | ✔ |
| Concepts: Shapes | ✔ | ✔ | ✔ | ✔ |
| Patterns | O | O | ✔ | ✔ |
| More/Less | ✔ | O | ✔ | ✔ |
| Shorter/Longer | O | O | ✔ | ✔ |
| Time to the hour | O | O | O | ✔ |
| Ordinals 1st–5th | O | O | O | ✔ |

| MARKING PERIOD | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| **SOCIAL-PHYSICAL DEVELOPMENT** | | | | |
| Is considerate of others | ✔ | ✔ | ✔ | ✔ |
| Participates in group activities | ✔ | ✔ | ✔ | ✔ |
| Assumes responsibility for self | ✔ | ✔ | ✔ | ✔ |
| Fine motor skills | ✔ | ✔ | ✔ | ✔ |
| **SOCIAL STUDIES, SCIENCE** | | | | |
| Develops concepts | | ✔ | ✔ | ✔ |
| Contributes relevant comments to discussions | ✔ | ✔ | N | N |
| Concepts: Colors | ✔ | ✔ | ✔ | ✔ |
| 5 senses | O | ✔ | O | O |
| Seasons | ✔ | O | ✔ | ✔ |
| Weather | ✔ | O | ✔ | ✔ |
| Plants | O | O | O | ✔ |
| Animals | O | ✔ | ✔ | ✔ |
| **WORK HABITS** | | | | |
| Listens attentively | ✔ | ✔ | ✔ | ✔ |
| Understands/follows directions | ✔ | ✔ | ✔ | ✔ |
| Uses materials/time constructively | ✔ | ✔ | ✔ | ✔ |
| Completes work on time | ✔ | ✔ | ✔ | ✔ |
| Completes work with care | N | ✔ | ✔ | ✔ |
| Controls urge to talk | ✔ | N | N | N |
| Works independently | ✔ | ✔ | ✔ | ✔ |

### COMMENTS

**First Report** _[handwritten comments - illegible]_

**Second Report** _I am pleased that Lizzie can handle herself quite on grade level. She is a sweet child. Encourage her to "listen" before talking, and give her hand more to contribute in class._

**Third Report** _Lizzie continues to do her work right on grade level. I encourage her to raise her hand and participate in discussions and not call out. She might now be at that level in first grade._

**Fourth Report** _Lizzie has done our work well. Practice money with her and encourage class participation. Have a good year in first grade._

CONFIDENTIAL

Attended Parent/Teacher Conferences   Fall ✔   Spring _____

Assigned to _1_ Grade

KRM 068

**4TH REPORT PERIOD**

**WISSAHICKON SCHOOL DISTRICT**
**PHYSICAL EDUCATION LEARNING OBJECTIVES**
**KINDERGARTEN**

Student's Name _____   Year _____

Teacher's Name _____   School _____

| LEARNING OBJECTIVE | MARKING PERIOD | | | |
|---|---|---|---|---|
| | 1st | 2nd | 3rd | 4th |
| 1. Demonstrate an awareness of all body parts | S | | | S+ |
| 2. Jump with balance and control — forward, backward and sideward | | | | S+ |
| 3. Run with other children for 25 yards without falling or colliding | | | | S+ |
| 4. Run and stop or change direction on a signal while maintaining balance | S | | | S+ |
| 5. Leap forward with balance and body control a distance of 2 feet | | S | | |
| 6. Demonstrate the seal walk a distance of 10 feet | | | S+ | |
| 7. Kick a stationary 8½" ball a distance of 15 feet | | S | | |
| 8. Do a log roll a distance of 15' without going off the mat | | | S | |
| 9. Demonstrate the ability to work cooperatively by sharing with her/his peers | | | S | S+ |
| 10. Effort and participation | | S+ | S+ | + |
| 11. Sportsmanship | S | S | S | S+ |
| 12. Cooperation and respectful behavior | S | S | S | S+ |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Teacher Comments: _____
SHOWS IMPROVEMENT 6TH Highest fitness score in her class Enjoys
Class

AWARDED PHYSICAL BEST AWARD

| PHYSICAL FITNESS SCORES (SPRING) | Score | |
|---|---|---|
| Sit and Reach | 25 | S |
| Skin-fold | 15.65 | S |
| Pull-ups | 1 | S |
| Mile Run/Walk | 10:30 | S |
| Sit-ups | 32 | + |

Blank = Have not taken skill test
S = Satisfactory
N.I. = Needs Improvement
+ = Exceeds Requirements

CONFIDENTIAL

KRM 069

4TH REPORT PERIOD

WISSAHICKON SCHOOL DISTRICT
Ambler, Pennsylvania  19002

**FIRST GRADE STUDENT PROGRESS REPORT**

Student: Elizabeth Black                    Year: 19 89 to 19 90

Teacher: Miss Mulvaney            School: Blue Bell

| Marking Guide | Reading Program - Book Level Guide | |
|---|---|---|
| S = Satisfies Requirements | R = Readiness | PP3 = Pre-Primer 3 |
| G = Shows Growth | PP1 = Pre-Primer 1 | P = Primer |
| N = Needs Improvement | PP2 = Pre-Primer 2 | 1 = Book One |
| ☑ = Does not apply at this time | | |

**MARKING PERIOD**

| Reading (Teacher Mulvaney) | 1 | 2 | 3 | 4 | Mathematics (Teacher Mulvaney) | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Reading Book Level | S | G | P | | Understands concepts taught | S | G | S | |
| Understands what is read | S | G | G | | Knows number facts | S | G | S | |
| Knows vocabulary | S | G | N | | Solves word problems | | G | G | |
| Uses word attack skills | G | G | G | | Works with accuracy | G | S | S | |
| Shows interest in reading | G | G | G | | Participates in class | N | G | G | |
| Participates in class | S | S | G | | Completes assignments on time | G | S | S | |
| Completes assignments on time | S | S | G | | **Science/Health** | | | | |
| **Language Arts** | * completed | | | | | | | | |
| | | | | | Understands concepts taught | S | S | S | |
| Expresses ideas orally | S | S | N | | Participates in class | S | S | S | |
| Writes complete sentences | | S | N | | **Social Studies** | | | | |
| Spells assigned words correctly | S | S | G | | | | | | |
| Writes legibly | S | N | G | | Understands concepts taught | N | S | S | |
| Participates in class | S | S | S | | Participates in class | S | S | S | |
| Completes assignments on time | S | G | G | | | | | | |

**Attitudes and Work Habits**

| | 1 | 2 | 3 | 4 | | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Listens attentively | S | G | S | | Works independently | S | S | G | |
| Follows oral directions | G | G | N | | Works well with group | G | S | G | |
| Follows written directions | N | S | N | | Uses self-control | G | S | G | |
| Demonstrates effort | N | G | S | | Respects others | S | S | S | |
| Takes pride in work | S | S | S | | Respects property of others | S | S | S | |

**First Marking Period**

COMMENTS

........................................................................

**Second Marking Period**

Lizzie continues to make very fine progress in all areas. She shows much interest in reading and is a frequent participant in class. Lizzie has lovely handwriting, and she shows much self-control now. Her bright personality and enthusiasm were her a delight to teach!

**Third Marking Period**

Lizzie has made fine progress this quarter. In reading, she is in the Primer, and her reading vocabulary and skills show much growth. Lizzie often needs assistance when learning a new math concept, yet she works hard and solves with success.

**Fourth Marking Period**

Assigned to Grade _____

Attended Parent/Teacher Conferences    Fall _____    Spring _____
                                      Parent Initials      Parent Initials

CONFIDENTIAL                                                    KRM 076

**WISSAHICKON SCHOOL DISTRICT**
**Ambler, Pennsylvania  19002**

**FIRST GRADE PHYSICAL EDUCATION**
**STUDENT PROGRESS REPORT**

Student: ___Elizabeth Black_____   Year  19 _89_ to 19 _90_

Teacher: __Miss Mulvaney/Mrs. Moore_____   School: __Blue Bell_____

## Marking Guide

S = Satisfies Requirements          N = Needs Improvement
G = Shows Growth                    Blank = Has not taken skills test

| Marking Period | 1 | 2 | 3 | 4 | Marking Period | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Runs forward, backward, and sideward at varying speeds | | | / | S | Walks with balance and body control forward, backward and sideward on a low balance beam | | | | S |
| Jumps over a height of 18" | | | | G | Demonstrates the ability to work cooperatively by sharing with peers | | | / | S |
| Runs and leaps forward with balance and body control a distance of 4' | / | | | S | Shows effort and participation | | A | S | S |
| Kicks an 8½" rolling ball with preferred foot | | A | | S | Shows sportsmanship | | | S | S |
| Bounces an 8½" ball with control at least 10 consecutive times with one hand | / | | | S | Listens attentively | | A | S | S |
| Tosses overhead and catches an 8½" ball 5 consecutive times | / | | | S | Respects others | | A | S | S |
| Skips forward with body control a distance of 20 yards | / | | | S | Uses self-control | | A | S | S |
| Hops on each foot a distance of 20' | / | | | S | **Physical Best Scores** | | | | |
| Demonstrates an egg roll a distance of 15" | | | S | | Sit and reach (Flexibility): | | | | |
| | | | | | Skin-fold (Body Composition): | | | | |
| | | | | | Pull-ups (Upper Body Strength): | | | | |
| | | | | | Mile run/walk (Cardiovascular): | | | | |
| | | | | | Curl-ups (Abdominal Strength): | | | | |

**First Marking Period**

9.6                          Good first

**Second Marking Period**

**Third Marking Period**

SHOWS SOME IMPROVEMENT

FAR IN

**Fourth Marking Period**

ENJOYS CLASS

**CONFIDENTIAL**

KRM 071

**WISSAHICKON SCHOOL DISTRICT**
Ambler, Pennsylvania  19002-3496
**THIRD GRADE STUDENT PROGRESS REPORT**

Student:  Elizabeth Black                                  Year: 19 91  to 19 92

Teacher:  Mrs. Shelton                    School:  Blue Bell

### Marking Guide

+ = Commendable        ✓ = Satisfies Requirements        N = Needs Improvement

| MARKING PERIOD | | | | | | MARKING PERIOD | | | |
|---|---|---|---|---|---|---|---|---|---|
| Reading (Teacher Shelton ) | 1 | 2 | 3 | 4 | Mathematics (Teacher ) | 1 | 2 | 3 | 4 |
| Reading Book Level | | | | | Understands operations & processes | | | | |
| Understands what is read | | | | | Knows number facts | | | | |
| Knows vocabulary | | | | | Solves word problems | | | | |
| Applies reading skills | | | | | Works with accuracy | | | | |
| Reads independently | | | | | Participates in class | | | | |
| Participates in class | | | | | Completes assignments on time | | | | |
| Completes assignments on time | | | | | Science/Health | | | | |

| Language Arts | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Applies language arts skills | | | | | Understands concepts | | | | |
| Expresses thoughts clearly in written work | | | | | Participates in class | | | | |
| Expresses ideas orally | | | | | Completes assignments on time | | | | |
| Spells assigned words correctly | | | | | Social Studies | | | | |
| Applies spelling skills | | | | | | | | | |
| Writes neatly and legibly | | | | | Understands concepts | | | | |
| Participates in class | | | | | Participates in class | | | | |
| Completes assignments on time | | | | | Completes assignments on time | | | | |

| Attitudes and Work Habits | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Listens attentively | | | | | Works independently | | | | |
| Follows oral directions | | | | | Works well with group | | | | |
| Follows written directions | | | | | Uses self-control | | | | |
| Demonstrates effort | | | | | Respects others | | | | |
| Takes pride in work | | | | | Respects property of others | | | | |

**First Marking Period** COMMENTS

**Second Marking Period** ...
Lizzie's work *(illegible)* this quarter

**Third Marking Period** Lizzie has shown improvement in social studies and science this quarter. Her writing is also coming along nicely. She needs to work on self confidence in completing independent work. Lizzie is doing an excellent job in her math work.

**Fourth Marking Period** Lizzie has matured nicely this year both academically and socially. She has gained much more confidence in her work. It has been a pleasure knowing Lizzie. Best of luck always!!!

CONFIDENTIAL                       Assigned to Grade ___        KRM 072

Attended Parent/Teacher Conferences  Fall ___  Spring ___
                                     Parent Initials   Parent Initials
4TH MARKING PERIOD

WISSAHICKON SCHOOL DISTRICT
Ambler, Pennsylvania  19002

FOURTH & FIFTH GRADE STUDENT PROGRESS REPORT

Student:  **Elizabeth Black**                              Year:  19 92 to 19 93

Teacher:  **Mrs. Kettelberger**          School:    **Blue Bell**

Grading Guide                    C = Fair   =70-79              Subtopic Guide
A = Excellent=90-100    D = Passing=65-69          + = Commendable
S = Good    =80- 89     F = Failing=64 & Below     ✓ = Satisfies Requirements
NOTE: In reading, a score of 80% or more (A or B)     N = Needs Improvement
      indicates mastery of concepts taught.

| MARKING PERIOD | 1 | 2 | 3 | 4 | MARKING PERIOD | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| **Reading** (Teacher *Kettelberger*) | B | A | | | **Mathematics** (Teacher *Shelton*) | A | A | | |
| Reading Book Level | 4⁴ | 4⁴ | | | Understands operations & processes | ✓ | ✓ | | |
| Understands what is read | ✓ | ✓ | | | Knows number facts | ✓ | ✓ | | |
| Knows vocabulary | ✓ | ✓+ | | | Applies problem-solving strategies | ✓ | ✓ | | |
| Applies reading skills | ✓ | ✓ | | | Works with accuracy | ✓ | ✓+ | | |
| Reads independently | ✓+ | ✓+ | | | Participates in class | ✓ | ✓+ | | |
| Participates in class | ✓+ | ✓+ | | | Completes assignments on time | ✓ | ✓+ | | |
| Completes assignments on time | + | + | | | **Science/Health** | A | A | | |
| **Language Arts** | B | A | | | Understands concepts | ✓+ | ✓+ | | |
| Applies Language arts skills | ✓ | N✓ | | | Participates in class | ✓+ | + | | |
| Expresses thoughts clearly in writing | ✓ | ✓+ | | | Completes assignments on time | + | ✓+ | | |
| Expresses ideas orally | ✓+ | ✓+ | | | **Social Studies** | A | A | | |
| Spells assigned words correctly | ✓ | N✓ | | | | | | | |
| Writes neatly and legibly | ✓+ | ✓+ | | | Understands concepts | ✓+ | + | | |
| Participates in class | ✓+ | ✓+ | | | Participates in class | ✓+ | + | | |
| Completes assignments on time | ✓+ | + | | | Completes assignments on time | + | + | | |

Attitudes and Work Habits

| | 1 | 2 | 3 | 4 | | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Listens attentively | ✓+ | + | | | Works independently | ✓ | ✓+ | | |
| Follows directions | ✓+ | + | | | Works well with group | ✓+ | ✓+ | | |
| Demonstrates effort | ✓+ | + | | | Uses self-control | ✓ | ✓ | | |
| Takes pride in work | ✓+ | + | | | Respects others | ✓+ | + | | |
| Demonstrates cooperative attitude | ✓+ | ✓+ | | | Respects property of others | ✓+ | + | | |

**First Marking Period** *Lizzie is a very capable math student. I'd like to see her develop more confidence in her ability. She can do it! (KS)
Lizzie is doing a fine job in all areas. She is self-motivated and easy-going. She is a hard worker that she is a good listener and is very capable with of following directions.*

**Second Marking Period** *(BH) Lizzie continued to show steady progress. Will follow thru with assignments. (KS) Reading: making fine progress in all areas. Lizzie is very responsible and displays consistent effort. Keep up the good work!*

**Third Marking Period**

CONFIDENTIAL
**Fourth Marking Period**

KRM 073

WISSAHICKON SCHOOL DISTRICT
Ambler, Pennsylvania - 19002

## FOURTH & FIFTH GRADE STUDENT PROGRESS REPORT

Student: **Elizabeth Black**                                    Year: **1992** to **1993**

Teacher: **Mrs. Kettelberger**                    School: **Blue Bell**

Grading Guide          C = Fair    =70-79              Subtopic Guide
   A - Excellent=90-100    D = Passing=65-69              + = Commendable
   B = Good       =80- 89    F = Failing=64 & Below         ✓ = Satisfies Requirements
NOTE: In reading, a score of 80% or more (A or B)           N = Needs Improvement
      indicates mastery of concepts taught.

| MARKING PERIOD | 1 | 2 | 3 | 4 | MARKING PERIOD | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Reading (Teacher Kettelberger ) | B | A | A | | Mathematics (Teacher McClune ) | A | A | A | |
| Reading Book Level | ✓ | ✓+ | ✓ | | Understands operations & processes | ✓ | ✓ | ✓ | |
| Understands what is read | ✓ | ✓ | ✓ | | Knows number facts | ✓ | ✓ | ✓ | |
| Knows vocabulary | ✓ | ✓+ | ✓+ | | Applies problem-solving strategies | ✓ | ✓ | ✓ | |
| Applies reading skills | ✓ | ✓+ | ✓+ | | Works with accuracy | ✓ | ✓ | ✓+ | |
| Reads independently | ✓+ | ✓+ | ✓+ | | Participates in class | ✓+ | ✓ | ✓+ | |
| Participates in class | ✓+ | ✓+ | ✓+ | | Completes assignments on time | ✓ | ✓ | ✓+ | |
| Completes assignments on time | + | + | + | | Science/Health | A | A | A | |
| **Language Arts** | B | A | A | | | | | | |
| | | | | | Understands concepts | ✓+ | ✓+ | ✓ | |
| Applies language arts skills | ✓ | ✓ | ✓+ | | Participates in class | ✓+ | ✓+ | ✓ | |
| Expresses thoughts clearly in writing | | ✓+ | ✓+ | | Completes assignments on time | + | + | + | |
| Expresses ideas orally | ✓ | + | ✓+ | | Social Studies | A | A | A | |
| Spells assigned words correctly | ✓ | ✓+ | ✓+ | | | | | | |
| Writes neatly and legibly | + | + | + | | Understands concepts | ✓+ | ✓+ | ✓ | |
| Participates in class | ✓ | ✓+ | ✓+ | | Participates in class | ✓+ | ✓+ | ✓ | |
| Completes assignments on time | ✓ | + | + | | Completes assignments on time | + | + | + | |

### Attitudes and Work Habits

| | 1 | 2 | 3 | 4 | | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Listens attentively | ✓+ | + | + | | Works independently | ✓ | ✓ | + | |
| Follows directions | ✓+ | + | + | | Works well with group | ✓ | ✓ | ✓ | |
| Demonstrates effort | ✓+ | + | + | | Uses self-control | ✓ | ✓ | ✓ | |
| Takes pride in work | ✓+ | + | + | | Respects others | ✓ | + | + | |
| Demonstrates cooperative attitude | ✓+ | + | ✓ | | Respects property of others | ✓ | + | + | |

**First Marking Period** _[handwritten]_ ... Lizzie is doing a fine job in all areas. She is self-motivated and ... she is a good listener and is very ...

**Second Marking Period** _[handwritten]_ ... Lizzie continues to show steady progress. She follows through on assignments. (B) Reading making fine progress in all areas. Lizzie is very responsible and displays consistent effort. Keep up the good work!

**Third Marking Period** _[handwritten]_ Nice progress in math class (B) Reading math = 92% Lizzie continues to be conscientious cooperative and hard working!

**Fourth Marking Period**

CONFIDENTIAL                                                                KRM 074

Attended Parent/Teacher Conferences   Fall _[initials]_   Spring _____   Assigned to Grade _____
                                              Parent Initials   Parent Initials

**WISSAHICKON SCHOOL DISTRICT**
Ambler, Pennsylvania  19002-3496

## ELEMENTARY MUSIC PROGRESS REPORT

Student: _____ Elizabeth Black _____     Year: 19 _92_ to 19 _93_

Homeroom Teacher: _____ Mrs. Kettelberger _____     School: _____ Blue Bell _____

### Marking Guide

+ = Commendable          ✓ = Satisfies Requirements          N = Needs Improvement

General Music (Teacher: _____ )  |  Instrumental Music (Teacher: _____ )

| Marking Period | 1 | 2 | 3 | 4 | Marking Period | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Participates in classroom experiences | + | +✓ | ✓ |  | Playing skills continue to develop | ✓ | + | + |  |
| Uses self-control | ✓ |  |  |  | Is prepared for lesson | ✓ | + | + |  |
|  |  |  |  |  | Practice is evident | ✓ | + | + |  |
|  |  |  |  |  | Uses self-control | ✓ | + | + |  |

**COMMENTS**

First Marking Period _(handwritten, illegible)_

Second Marking Period

Third Marking Period

Fourth Marking Period

**COMMENTS**

First Marking Period _(handwritten, illegible)_

Second Marking Period _(handwritten: Excellent progress)_

Third Marking Period

Fourth Marking Period

CONFIDENTIAL

KRM 075

3RD MARKING PERIOD

WISSAHICKON SCHOOL DISTRICT
Ambler, Pennsylvania 19002-3496

ELEMENTARY ART AND TECHNOLOGY EDUCATION

tudent: _____ Elizabeth Black _____ Year: 19 _92_ to 19 _93_

omeroom Teacher: _____ Mrs. Kettelberger _____ School: _____ Blue Bell _____

### Marking Guide

+ = Commendable          ✓ = Satisfies Requirements          N = Needs Improvement

| rt (Teacher: _Mrs. Lewis_ ) | | | | | Technology Ed. (Teacher: ) (Grades 3, 4 and 5) | | | | |
|---|---|---|---|---|---|---|---|---|---|
| arking Period | 1 | 2 | 3 | 4 | Marking Period | 1 | 2 | 3 | 4 |
| Participates in classroom activities | ✓ | ✓ | ✓ | | Participates in classroom activities | ✓ | ✓ | ✓ | |
| Exhibits creativity | ✓ | ✓ | ✓ | | Displays good work habits | ✓ | ✓ | ✓ | |
| Displays good work habits | ✓ | ✓ | ✓ | | Utilizes time effectively | ✓ | ✓ | ✓ | |
| Utilizes time effectively | ✓ | ✓ | ✓ | | Exhibits good behavior | ✓ | ✓ | ✓ | |
| Exhibits good behavior | ✓ | ✓ | ✓ | | | | | | |

**Comments**

**First Marking Period**     **First Marking Period**

**Second Marking Period**     **Second Marking Period**

_Lizzie has good skills & her work is neatly done._

**Third Marking Period**     **Third Marking Period**

_Lizzie works meticulously takes her a long time to complete work._

**Fourth Marking Period**     **Fourth Marking Period**

CONFIDENTIAL

KRM 076

| Student: | Elizabeth Black | | | | | Year | 19 93 | to 19 94 |
| Teacher: | Mr. Yarnall | | | | School: | Kine Bell | | |

### Grading Guide
A = Excellent=90-100  C = Fair  =70-79
B = Good  =80-89  D = Passing=65-69
F = Failing=64 & Below

### Subtopic Guide
+ = Commendable
√ = Satisfies Requirements
N = Needs Improvement

| MARKING PERIOD | 1 | 2 | 3 | 4 | MARKING PERIOD | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Integrated Language Arts (Listening, Speaking, Reading, Writing) | A | A | A | | Mathematics (Teacher Yarnall ) | A | A | | |
| Understands and responds to literature | + | + | + | | Understands operations & processes | √ | √ | √ | |
| Applies comprehension strategies | √ | √ | + | | Knows number facts | √ | A | √ | |
| Expresses ideas fluently in writing | √ | √ | + | | Applies problem-solving strategies | √ | √ | √ | |
| Expresses ideas fluently in speaking | + | + | + | | Works with accuracy | √ | | √ | |
| Applies writing strategies | √ | √ | + | | Participates in class | + | + | + | |
| Develops vocabulary | √ | √ | + | | Completes assignments on time | + | + | + | |
| Edits written work | √ | √ | + | | Science/Health | | A | A | |
| Writes for a variety of reasons/audiences | √ | √ | √ | | Understands concepts | √ | + | + | |
| Chooses to read independently | + | + | + | | Participates in class | + | + | + | |
| Spells assigned words correctly | + | + | + | | Completes assignments on time | + | + | + | |
| Applies spelling skills in everyday use | + | + | + | | Social Studies | | A | A | |
| Participates in class | + | + | + | | Understands concepts | √ | √ | + | |
| Completes assignments on time | + | + | + | | Participates in class | + | + | + | |
| Listens attentively | + | + | + | | Completes assignments on time | + | + | + | |

### Attitudes & Work Habits

| | 1 | 2 | 3 | 4 | | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Writes neatly and legibly | √ | √ | + | | Completes homework assignments | √ | + | + | |
| Follows directions | √ | + | + | | Works independently | √ | + | + | |
| Demonstrates effort | + | + | + | | Works well with group | + | + | + | |
| Takes pride in work | + | + | + | | Uses self-control | + | + | + | |
| Demonstrates cooperative attitude | + | + | + | | Respects others | + | + | + | |
| | | | | | Respects property of others | + | + | + | |

**First Marking Period**          **COMMENTS**

_Lizzie has been a pleasure to work with this marking period. She is doing very well in all academic areas. Keep up the good work._

**Second Marking Period**

_Lizzie continues to make excellent academic progress. In most areas. In math, she needs to be mindful of careless work in testing situations. Lizzie is a pleasure to work with in class._

**Third Marking Period**

_Lizzie has completed a very successful marking period. I am pleased with her progress. Lizzie continues to make minor careless mistakes in Math. Analyze your answers, Lizzie._

CONFIDENTIAL

KRM 077



**MAT6** METROPOLITAN ACHIEVEMENT TESTS **SURVEY**

PUPIL PROFILE

FOR

ELIZAB A BLACK

| TEACHER | L MULVANEY | GRADE | 1 | AGE | |
| SCHOOL | BLUE BELL ELEMENTARY | LEVEL | PRIMARY 1 | TEST DATE | 4/90 |
| SYSTEM | KISSAHICKON | FORM | L | MAT6 NORMS | 1.7 |

| TESTS AND TOTALS | NATIONAL PR | S |
|---|---|---|
| VOCABULARY | 97 | 9 |
| WORD RECOGNITION SKILLS | 72 | 6 |
| READING COMPREHENSION | 94 | 8 |
| MATHEMATICS: CONCEPTS | 46 | 5 |
| MATHEMATICS: COMPUTATION | 84 | 7 |
| MATHEMATICS: PROBLEM SOLVING | 94 | 8 |
| SPELLING | 56 | 5 |
| LANGUAGE | 79 | 7 |
| SCIENCE | 69 | 6 |
| SOCIAL STUDIES | 72 | 6 |
| TOTAL READING | 94 | 8 |
| TOTAL MATHEMATICS | 80 | 7 |
| TOTAL LANGUAGE | 69 | 6 |
| TOTAL BASIC BATTERY | 86 | 7 |
| TOTAL COMPLETE BATTERY | 90 | 8 |

NATIONAL PERCENTILE BANDS

1  5  10  20  30  40  50  60  70  80  90  95  99

1  5  10  20  30  40  50  60  70  80  90  95  99
BELOW AVERAGE          AVERAGE          ABOVE AVERAGE

**HOW TO INTERPRET THESE SCORES:**
The above report shows the Percentile Rank (PR) and Stanine (S) scores this student earned on the Metropolitan Achievement Tests.
Stanine scores range from a low of 1 to a high of 9. Stanines 4, 5, and 6 are considered to be average; Stanines 1, 2, and 3, below average; and Stanines 7, 8, and 9, above average.
Percentile Ranks range from a low of 1 to a high of 99. If a student has a Percentile Rank of 70, for example, it means that this student obtained a score that is equal to or higher than 70 percent of the students in the comparison group.
The group with which the student is compared is shown above the PR and S heading. "National" means that the student is compared with a nationally representative sample of students in the same grade.
The Percentile Bands to the right show that scores are approximate indicators of achievement. By comparing the bands, you can see whether the student did better in some subjects than in others. If two bands do not overlap, you may conclude that the difference between those two scores is indeed meaningful.

CONFIDENTIAL

PROCESS NO 159-00-010817-002

Copyright © 1985 by Harcourt Brace Jovanovich, Inc. ALL RIGHTS RESERVED.
Printed in the U.S.A.

THE PSYCHOLOGICAL CORPORATION
HARCOURT BRACE JOVANOVICH, INC.



**MAT6** METROPOLITAN ACHIEVEMENT TESTS **SURVEY**

| | | | | PUPIL PROFILE |
|---|---|---|---|---|
| TEACHER | E SMITH | GRADE 2 | AGE | FOR |
| SCHOOL | BLUE BELL ELEMENTARY | LEVEL PRIMARY 2 | TEST DATE 4/91 | ELIZAB A BLACK |
| SYSTEM | WISSAHICKON | FORM L | MAT6 NORMS 2.7 | |

| TESTS AND TOTALS | NATIONAL PR | S |
|---|---|---|
| VOCABULARY | 65 | 7 |
| WORD RECOGNITION SKILLS | 38 | 4 |
| READING COMPREHENSION | 90 | 8 |
| MATHEMATICS: CONCEPTS | 81 | 7 |
| MATHEMATICS: COMPUTATION | 55 | 5 |
| MATHEMATICS: PROBLEM SOLVING | 61 | 6 |
| SPELLING | 52 | 5 |
| LANGUAGE | 99 | 9 |
| SCIENCE | 72 | 6 |
| SOCIAL STUDIES | 95 | 8 |
| TOTAL READING | 76 | 6 |
| TOTAL MATHEMATICS | 69 | 6 |
| TOTAL LANGUAGE | 91 | 8 |
| TOTAL BASIC BATTERY | 81 | 7 |
| TOTAL COMPLETE BATTERY | 85 | 7 |

NATIONAL PERCENTILE BANDS

1  5  10   20   30  40 50 60  70   80   90 95 99

BELOW AVERAGE     A V E R A G E     ABOVE AVERAGE

**HOW TO INTERPRET THESE SCORES:**
The above report shows the Percentile Rank (PR) and Stanine (S) scores this student earned on the Metropolitan Achievement Tests.
Stanine scores range from a low of 1 to a high of 9. Stanines 4, 5, and 6 are considered to be average; Stanines 1, 2, and 3, below average and Stanines 7, 8, and 9, above average.
Percentile Ranks range from a low of 1 to a high of 99. If a student has a Percentile Rank of 70, for example, it means that this student obtained a score that is equal to or higher than 70 percent of the students in the comparison group.
The group with which the student is compared is shown above the PR and S heading. "National" means that the student is compared with a nationally representative sample of students in the same grade.
The Percentile Bands to the right show that scores are approximate indicators of achievement. By comparing the bands, you can see whether the student did better in some subjects than in others. If two bands do not overlap, you may conclude that the difference between those two scores is indeed meaningful.

PROCESS NO 141-00-008302-001

CONFIDENTIAL
Copyright © 1985 by Harcourt Brace Jovanovich, Inc., ALL RIGHTS RESERVED.
Printed in the U.S.A.

THE PSYCHOLOGICAL CORPORATION
HARCOURT BRACE JOVANOVICH, INC.



## MAT6 METROPOLITAN ACHIEVEMENT TESTS SURVEY

PUPIL PROFILE
FOR

ELIZAB A BLACK

| | |
|---|---|
| TEACHER | K SHELTON |
| SCHOOL | BLUE BELL ELEM |
| SYSTEM | WISSAHICKON |

| | |
|---|---|
| GRADE | 3 |
| LEVEL | ELEMENTARY |
| FORM | N |

| | |
|---|---|
| AGE | |
| TEST DATE | 5/92 |
| MAT6 NORMS | 3.7 |

| TESTS AND TOTALS | NATIONAL PR | S |
|---|---|---|
| VOCABULARY | 60 | 7 |
| WORD RECOGNITION SKILLS | 56 | 5 |
| READING COMPREHENSION | 89 | 8 |
| MATHEMATICS: CONCEPTS | 45 | 5 |
| MATHEMATICS: COMPUTATION | 40 | 5 |
| MATHEMATICS: PROBLEM SOLVING | 66 | 6 |
| SPELLING | 34 | 4 |
| LANGUAGE | 62 | 7 |
| SCIENCE | 99 | 9 |
| SOCIAL STUDIES | 96 | 9 |
| RESEARCH SKILLS | 89 | 8 |
| TOTAL READING | 81 | 7 |
| TOTAL MATHEMATICS | 53 | 5 |
| TOTAL LANGUAGE | 66 | 6 |
| TOTAL BASIC BATTERY | 71 | 6 |
| TOTAL COMPLETE BATTERY | 82 | 7 |

NATIONAL PERCENTILE BANDS

1  5  10   20   30  40 50 60  70   80   90  95  99

BELOW AVERAGE   AVERAGE   ABOVE AVERAGE

HOW TO INTERPRET THESE SCORES:

The above report shows the Percentile Rank (PR) and Stanine (S) scores this student earned on the Metropolitan Achievement Tests.

Stanine scores range from a low of 1 to a high of 9. Stanines 4, 5, and 6 are considered to be average; Stanines 1, 2, and 3, below average; and Stanines 7, 8, and 9, above average.

Percentile Ranks range from a low of 1 to a high of 99. If a student has a Percentile Rank of 70, for example, it means that this student obtained a score that is equal to or higher than 70 percent of the students in the comparison group.

The group with which the student is compared is shown above the PR and S heading. "National" means that the student is compared with a nationally representative sample of students in the same grade.

The Percentile Bands to the right show that scores are approximate indicators of achievement. By comparing the bands, you can see whether the student did better in some subjects than in others. If two bands do not overlap, you may conclude that the difference between those two scores is indeed meaningful.

CONFIDENTIAL

Copyright © 1985 by Harcourt Brace Jovanovich, Inc. ALL RIGHTS RESERVED
Printed in the U.S.A.

PROCESS NO 126-00-005080-201

THE PSYCHOLOGICAL CORPORATION
HARCOURT BRACE JOVANOVICH, INC.

THE BORDER OF THIS DOCUMENT IS PRINTED IN ORANGE INK

# PRINCETON UNIVERSITY

ELIZABETH ANN BLACK entered Princeton as a Freshman on 09/13/01.
Received AB degree concentrating in the Department of History on 05/31/05.  This transcript prepared on 07/08/09.

| Fall Term | 2001-2002 (Freshman) | Grade | Courses |
|---|---|---|---|
| CHM 201 | General Chemistry I | B+ | 1.0 |
| MAT 103 | Calculus | B+ | 1.0 |
| SPA 105 | Intermediate Spanish | A- | 1.0 |
| WRI 124 | Writing Seminar | B | 1.0 |

| Spring Term | 2001-2002 (Freshman) | Grade | Courses |
|---|---|---|---|
| ART 101 | Introduction to the History of Art | A | 1.0 |
| CHM 202 | General Chemistry II | B | 1.0 |
| FRS 114 | Art Motive in Modern Photography | B+ | 1.0 |
| MAT 104 | Calculus | B- | 1.0 |
| SPA 108 | Advanced Spanish | A- | 1.0 |

| Fall Term | 2002-2003 (Sophomore) | Grade | Courses |
|---|---|---|---|
| CHM 303 | Organic Chm I - Biological Emphasis | C | 1.0 |
| EEB 211 | The Biology of Organisms | C+ | 1.0 |
| PSY 252 | Social Psychology | C+ | 1.0 |

| Spring Term | 2002-2003 (Sophomore) | Grade | Courses |
|---|---|---|---|
| HIS 200 | Approaches to American History | B+ | 1.0 |
| HIS 304 | Modern Latin America since 1810 | B | 1.0 |
| MOL 214 | Intro to Cellular & Molecular Biology | C- | 1.0 |
| POL 367 | Latin American Politics | B+ | 1.0 |

| Fall Term | 2003-2004 (Junior) | Grade | Courses |
|---|---|---|---|
| ANT 335 | Medical Anthropology | B- | 1.0 |
| HIS 303 | Colonial Latin America to 1810 | B+ | 1.0 |
| HIS 400 | Junior Seminar | B | 1.0 |
| SPA 222 | Intr Span-Amer Culture:Discovery-Present | B | 1.0 |
| HIS | Junior Independent Work | B+ | 1.0 |

| Spring Term | 2003-2004 (Junior) | Grade | Courses |
|---|---|---|---|
| HIS 350 | The History of France 1685-1800 | B+ | 1.0 |
| HIS 376 | The American Civil War & Reconstruction | B | 1.0 |
| HIS 408 | History of Modern Argentina | B | 1.0 |
| POL 392 | American Foreign Policy | P | 1.0 |
| HIS | Junior Independent Work | B- | 1.0 |

| Fall Term | 2004-2005 (Senior) | Grade | Courses |
|---|---|---|---|
| AAS 391 | Race, Class, & Intelligence in America | B+ | 1.0 |
| CLA 212 | Classical Mythology | P | 1.0 |
| HIS 380 | The United States and World Affairs | B- | 1.0 |
| HIS 389 | American Cultural History since 1876 | B | 1.0 |

| Spring Term | 2004-2005 (Senior) | Grade | Courses |
|---|---|---|---|
| ECO 100 | Introduction to Microeconomics | D | 1.0 |
| HUM 447 | Human Rights: A Media Perspective | A- | 1.0 |
| HIS | Senior Departmental Exam | B+ | |
| HIS | Senior Thesis | B | 2.0 |

REMARKS:
Granted 1 Unit of Advanced Placement in Mathematics
Received the Latin American Studies Certificate at Graduation

Disability Services
DEC 17 2014
RECEIVED

Elizabeth Black
PO Box 234
Gwynedd Valley, PA  19437

End of transcript

THIS OFFICIAL TRANSCRIPT IS PRINTED ON SCRIP-SAFE SECURITY PAPER AND DOES NOT REQUIRE A RAISED SEAL.

# University of South Florida, Morsani College of Medicine
## Tampa, Florida

**Name:** Black, Elizabeth Ann
**ID Number:** U34264740
**Issued To:** Kelly Delaney - Disability Services, NBME

**Degree Sought: MD**
**Matriculation Date: 08/01/2011**

### Academic Year 2011-2012

| Course # | Course Name | Contact Hours | Grade |
|---|---|---|---|
| BMS | 6633 | Cardiovascular/Pulmonary Syst | 175.0 | S |
| BMS | 6639 | GI, Renal, & Endocrine Systems | 180.0 | S |
| BMS | 6640 | Core Prin of Medical Science | 158.0 | S |
| BMS | 6641 | Neurological System | 165.0 | S |
| BMS | 6825 | Doctoring I | 250.0 | S |
| BMS | 6836 | Evid-Based Clin Reasoning I | 28.0 | S |
| BMS | 6991D | Schol Conc 1-Hlth Disparities | 10.0 | S |

### Academic Year 2012-2013

| Course # | Course Name | Contact Hours | Grade |
|---|---|---|---|
| BMS | 6041 | Medical Sciences 5 | 180.0 | S |
| BMS | 6042 | Medical Sciences 6 | 165.0 | S |
| BMS | 6043 | Medical Sciences 7 | 135.0 | S |
| BMS | 6826 | Doctoring II | 190.0 | S |
| BMS | 6837 | Evid-Based Clin Reasoning II | 35.0 | S |
| BMS | 6920 | Colloquium - Years I & II | 11.0 | S |
| BMS | 6992D | Schol Conc 2-Hlth Disparities | 10.0 | S |

### Academic Year 2013-2014

| Course # | Course Name | Contact Hours | Grade |
|---|---|---|---|
| BCC | 6173 | Introduction to Clerkship | 19.0 | S |

Leave of Absence 05/13/13 - 07/04/14

### Academic Year 2014-2015

| Course # | Course Name | Contact Hours | Grade |
|---|---|---|---|
| BCC | 7110 | Adult Medicine Clerkship | 400.0 | I |

Leave of Absence 09/02/14 -

*—Continued on Next Column—*

*—End of Transcript—*



RECEIVED
DEC 19 2014
Disability Services

CPX: Clinical Performance Examination
CCEE: Comprehensive Clinical Evaluation Encounter

Prior to the 2000-2001 academic year, contact hours were maintained in a legacy system and were not transferred to the currently used system.

The highest grade a student remediating a course is eligible to receive is a P.

Page 1 of 1

This transcript is not official unless it bears an official signature and the embossed Seal of the Morsani College of Medicine.

*Marrissa Cook*
Registrar
12901 Bruce B. Downs Blvd., Tampa, FL 33612-4799

19 December 2014
Date Issued

In accordance with the Family Educational Rights and Privacy Act of 1974, information from this transcript may not be released to a third party without written consent of the student.

CONFIDENTIAL

## University of South Florida Morsani College of Medicine and College of Pharmacy
Office of the Registrar · 1350 · Bruce B. Downs Blvd., MDC 32, Tampa, Florida 336•2
College of Medicine PH: (813) 974-0826  /  FAX: (813) 974-4519
College of Pharmacy PH: (813) 974-5699

TRANSCRIPT LEGEND

### Morsani College of Medicine

**HISTORY**

The Morsani College of Medicine, one of four colleges comprising USF Health, was created by the Florida legislature in 1965. The charter class of medical students was admitted in September 1971. A School of Physical Therapy within the College of Medicine was created by the Florida legislature in 1987. A program of study leading to the Doctor of Physical Therapy degree began in 2005, and the charter class was admitted in August of that year. The transitional Doctor of Physical Therapy degree (tDPT) was offered beginning in January 2011 and follows the same grading rubric as the DPT program.

**ACCREDITATION**

The University of South Florida College of Medicine MD program is fully accredited by the Liaison Committee on Medical Education which is a branch of annual reviews of the Association of American Medical Colleges and the American Medical Association. The Doctor of Physical Therapy program is fully accredited by the Commission on Accreditation in Physical Therapy Education (CAPTE), having received initial accreditation in 2005 and reaccreditation in 2008.

**EDUCATIONAL PROGRAMS AND GRADING SYSTEM (MD and DPT Programs)**

*1971 to 1982 3-year MD Program*
Year I - Pre-Clinical Coursework
Year II - Clinical Clerkships
Year III - Senior Electives

*1982 to present 4-Year MD Program*
Years I & II - Pre-Clinical Coursework
Year III - Clinical Clerkships
Year IV - Senior Electives

*1971 to 1982 MD Program*
H, P, F, R - Course Repeated

*1982 to 2012 MD Program*
H, PC, P, F

*2012 to 2015 MD Program*
Year I - S, U
Year II - H, PC, P, F
Year III - H, P, F (Remediation Required)
Year IV - H, P, F

*2012 to present MD Program*
Year I - S, U
Year II - H, P, F (Remediation Required)
Year III - H, P, F

*2005 to present 3-Year DPT Program*
Year I - Foundations
Year II - Clinical Sciences
Year III - Integration & Clinical Education

*2005 to present DPT Program*
S, U, H, PC, P, F

**GRADING KEY FOR ALL PROGRAMS**

| | |
|---|---|
| H | Honors |
| PC | Pass With Commendations |
| P | Pass |
| F | Fail |
| | |
| A | Excellent |
| G | Good |
| C | Average |
| | |
| S | Satisfactory |
| U | Unsatisfactory |
| FAP | Failure Remediated to a P |
| FRC | Failure Remediated to a C |

**Other grades and symbols** (not all are currently in use):
I    Incomplete
W    Withdrew without Penalty
WF   Withdrew Failing
TC   Transfer Credit
WP   Withdrew Passing
*    Repeated Course
**   Graduation Requirement/Independent Study Completed

Beginning with the class of 1998 the College of Medicine instituted a policy that MD students pass USMLE Step 1 and 2 as a graduation requirement.

OFFICIAL TRANSCRIPTS BEAR THIS OFFICIAL SIGNATURE AND EMBOSSED SEAL OF THE OFFICE OF THE REGISTRAR OF THE UNIVERSITY OF SOUTH FLORIDA MORSANI COLLEGE OF MEDICINE AND COLLEGE OF PHARMACY.

### College of Pharmacy

**HISTORY**

In the year 2007 the University of South Florida accepted the opportunity to create the sixth largest and newest to the creation of the USF Doctor of Pharmacy program. The College of Pharmacy, one of four colleges comprising USF Health, was created by the Florida legislature in 2010. The charter class of students for the Doctor of Pharmacy degree was admitted in August 2011.

**ACCREDITATION**

The Doctor of Pharmacy program at the University of South Florida College of Pharmacy was awarded Precandidate accreditation status during the June 2008-2011 meeting of the ACPE Board of Directors. Approval was based upon the consideration of the Onsite Evaluation Team Report, the colleges and communications, and other communications from the USF College of Pharmacy, as well as information placed in the accreditation's summary status of the program.

**EDUCATIONAL PROGRAMS AND GRADING SYSTEM (Pharmacy)**

*2011 to present Pharm.D. Program*
Year I - 1st & 2nd Clinical Coursework
Year II - Clinical Coursework

*2011 to present Pharm.D. Program*
S, U
FAP
FRC

In their new additions...
[illegible text]

ADDITIONAL TESTS... [illegible text]

# Exhibit C

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL

KRM 157
1635715    5-253-137-5
Exhibit C- Carangi, J. 8/

August 20, 2015

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

Dear Dr. Farmer,
I am writing in full support of Elizabeth Black receiving the testing accommodations she is requesting for the USMLE. As one of Elizabeth's former educators at Wissahickon High School in Ambler, PA, I had the experience of teaching and coaching Lizzie before her diagnosis of Attention Deficient Hyperactivity Disorder, Combined Presentation. This diagnosis helps to explain specific traits I noticed during her time in my classroom.

Elizabeth was a student in my ninth grade honors English course, which was an academically challenging class with an emphasis on independent reading and intensive writing. Elizabeth was a very bright student, but there were times when she would lose focus and have to be redirected back to the activity or discussion at hand. She was also a student who always seemed to be moving: tapping her pen, shaking her leg; there seemed to be a real inability for her to sit still. It was something that was not a major distraction for others in the classroom, but it was something that disrupted Lizzie. It is my professional opinion that Elizabeth's intelligence allowed her to compensate for her undiagnosed disability. The drawback is that it would often take Lizzie longer to complete routine tasks because her work ethic would not allow her to compromise her grades.

I also coached Elizabeth on Wissahickon High School's girls' basketball team. Lizzie was a tremendous athlete and she competed at a very high level. She was often anxious about understanding plays and grasping different basketball situations. A perfectionist, she was always striving to do her best. There were times when she struggled with concentrating—she was focused and seemed to understand what was being demonstrated, but when I asked her to show what we had just done, we often had to walk through it together before she truly "got it".

Professionally, I have moved on from Wissahickon High School and am now employed in the Education and Counseling Department at Villanova University. I am thoroughly familiar with the academic demands of higher education and the work ethic necessary to achieve success at this level. I strongly support the decision to provide Elizabeth Black with the testing accommodations she has requested. As someone who was acquainted with Lizzie's academic performance, I can attest that she is a hard worker, even if that means spending more time completing her necessary tasks. I urge you to take that into consideration when making your decision. Thank you for your time.

Best regards,

Jennifer Carangi
Field Placement Coordinator
Villanova University, SAC 302
Dept. of Education & Counseling
Villanova, PA 19085
610-519-8038

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL

KRM 158

Elizabeth Black
ID#: 5-293-137-5
Request for USMLE Step 1 Test Accommodations/Appeal of Decision

**RECEIVED**

JAN 2 1 2016

Disability Services

Dear Dr. Farmer,

I am writing to appeal the National Board of Medical Examiners' (NBME) decision to deny my request for reasonable testing accommodations in accordance with the Americans with Disabilities Act (ADA). This decision was documented in a letter to me dated March 2, 2015 (henceforth known as the Decision Letter, Exhibit A). I found the reasons provided by the NBME to be cursory and inaccurate. I submit the following information in appeal of the NBME Decision Letter.

The first issue I would like to address is the portion of the Decision Letter that questions my diagnosis, my account of my struggles, and the expert opinions of medical professionals who have assessed me throughout my life. To that end, I have included the following documents to support and further demonstrate the chronic nature of my impaired attention span, disorganization, and hyperactivity-impulsivity.

As you may be aware, a common misconception surrounds ADHD that it presents stereotypically as extreme hyperactivity in young boys. However, the current literature has well established that girls and boys commonly present in different manners. For instance, girls are not typically as hyperactive as boys, and they generally develop better compensatory mechanisms, and develop those compensatory mechanisms earlier than boys typically do. My childhood report cards (Exhibit B) comment on my ability to keep my papers and work area more organized, to "chatter" less to my table partner, and that I "take pride in her work, yet she tends to get distracted, and needs reminding to focus on the task at hand." Following are relevant comments from my report cards:

> Kindergarten
> > 1st Report Period—"Please encourage her to be neater in her daily work papers."
> > 2nd Report Period—"Encourage her to 'chatter' less to Forrest and raise her hand more to contribute in class."
> > 3rd Report Period—"She must remember to chat less with Julia."
> > 4th Report Period—Received a "Needs assistance to satisfy requirement" for "Controls urge to talk" and "Contributes relevant comments to discussion"
> > > Gym Class—"Good worker, distracted at times, tries hard."
> First Grade
> > 1st Report Period—"Lizzie takes pride in her work yet she tends to get distracted and needs reminders to focus on the task at hand."
> > 2nd Report Period—"Lizzie has lovely handwriting, and she shows much more self-control now."
> > 3rd Report Period—"Lizzie often needs assistance when learning a new math concept, yet she works hard and meets with success."
> > Third Grade
> > > 1st Report Period—"I would like to see her work a little more quickly on her skills (however)."
> > > 3rd Report Period—"She needs to work on her self confidence in completing independent work."
> > > Fourth Grade

CONFIDENTIAL

**KRM 159**

1998712
from: Examinee 5-293-137-5

1st Report Period—"She should realize that she is a good listener and is very capable with following directions.  I'd like to see her develop more confidence in her ability."

**Fifth Grade**

2nd Report Period—"In math, she needs to be more mindful of careless errors in testing situations."

3rd Report Period—"Lizzie continues to make minor careless mistakes in math.  Analyze your answers...Lizzie."

My childhood report cards and teacher's comments show clear evidence of ADHD as I developed. Despite these impairments, I was able to compensate adequately and proceed unnoticed and undiagnosed in the Public School system.  Additionally, my parents did not ascribe to mental health practices, as evidenced by my parents keeping my 3 brothers and me from being tested for and placed into the Gifted Program.  They viewed the non-traditional form of education as ineffective and unnecessary.

During my search for effective management of my ADHD, I learned of an associated condition called 'convergence insufficiency'.  This condition affects the eyes ability to focus effectively and when diagnosed in students, medically warrants additional time in testing situations. After consulting with my eye doctor of 22 years, Dr. Erik Breunig, he confirmed that I previously and currently meet diagnostic criteria for the disorder.  His letter of support for additional time accommodations is enclosed (Exhibit J).

The Decision Letter implies that my ADHD has only affected me in isolated situations.  While I have demonstrated the impact of ADHD on my academic career, I would also like to provide additional documentation displaying the global impact of ADHD on my life.  Included in this appeal packet are letters from my high school English teacher/basketball coach, Mrs. Jen Carangi (Exhibit C), and my college roommate and friend, Dr. Lauren Hittson (Exhibit D). Mrs. Carangi's letter further confirms the difficulties I had in school, as well as in sports.  Dr. Hittson's letter speaks to struggles with studying from age 17 through my post- baccalaureate program, prior to applying to medical school.  Her letter also identifies how ADHD has affected me in social situations.  She astutely identifies a key factor to my success in school through university and post-baccalaureate—the majority of the assessments given during schooling were not time-dependent.  When I began preparing for my MCAT and time became a significant factor, I immediately sought help, during which time I was formally diagnosed with ADHD and began treatment for my disability.  After struggling with time on the MCAT, I continued to do so in medical school.  From Day 1, knowing that I was at a disadvantage compared to my peers, I sought both pharmacological and counseling treatment from the University Counseling Center (Exhibit E), which I've continued throughout my time at the University of South Florida Morsani College of Medicine (USF MCOM).  Despite my best efforts, medical school has been and continues to be a real struggle for me, as evidenced by my grades which required remediation of multiple courses.  This culminated in significant time off from school, and failing Step 1 three times, the first of which had already happened prior to the Decision Letter (see enclosed correspondence and USF MCOM reports regarding poor academic performance, academic probation, and leaves of absence to prepare for the Step 1 examination, Exhibit F).  My compensatory mechanism of learning material more thoroughly than my peers, still to barely finish most tests, isn't possible anymore.  As you're aware, medical school encompasses too much information for me to be able to accomplish such a monumental task, especially with a documented learning disability.

CONFIDENTIAL

KRM 160

Recognizing my disability, I was not afraid to seek help.  I utilized tutors provided through USF MCOM, and counseling at the USF Counseling Center, specifically for about 8 months with a psychologist who specializes in test taking performance, Dr. Bob Parino.  Once my time completed with him, I continued with a private counselor, Dr. Vigil-Otero (documents verifying use, Exhibit G), until I could not afford her services anymore.  I also worked with a private test and studying consultant hired by USF MCOM, Mr. Phil Tetreau, as a study resource for students during Step 1 preparation.  After all of these additional efforts, I still took longer to prepare for Step 1 and failed it.  After being unsuccessful the first time, I applied for additional time accommodations and enrolled in the time-intensive and expensive Becker/Falcon review course (January 2014-February 2014, Exhibit H).  After the course completed and I received the Decision Letter, I continued to work with USF MCOM tutors, but I failed Step 1 a second time.  Exasperated and frustrated, I knew timing was my main problem on the examination, and I was left with only my previously exhausted resources which proved ineffective.  By this time, USF MCOM had placed a time limit on my preparation, and in an effort to move forward in my medical training by completing a clinical elective, I took Step 1 for a third time, unsuccessfully.  With nowhere else to turn, I reached back out to Dr. Margaret Booth-Jones for advice, guidance, and further support.  We had a phone interview/session on Friday August 25, 2015 (please find her letter of support as Exhibit I).  As I enter my third year of struggling to effectively prepare for the Step 1 examination, while having my medical education on hold, I am substantially limited in my functioning.  With my third unsuccessful Step 1 attempt, I also now face possible dismissal from USF MCOM.

After consulting with my Disability Services representative at USF, Deborah McCarthy (letter of further support, Exhibit K), and my lawyer at Disability Rights Florida, Mr. Tony DePalma (letter of support, Exhibit L), I am very well acquainted with my rights as stipulated under the ADA, the Settlement Agreement between USA and NBME, DJ# 202-16-181 (Exhibit M), and the Department of Justice's recently published clarification of Testing Accommodations (Exhibit N).  These documents specifically state that persons with histories of academic success may still be people with disabilities who are entitled to testing accommodations, that a person should receive the same accommodations that are provided by a formal public school, that testing entities should defer to documentation from qualified professionals who have made individual assessments of the candidates that supports the need for requested testing accommodations, that the testing entity must respond to requests in a timely manner, that "flagging" policies impede individuals with disabilities from fairly competing for and pursuing educational and employment opportunities and are prohibited by the ADA.  Given these federal regulations, my pre-existing test-taking accommodations from USF MCOM, the professional diagnosis and support provided by numerous health care providers, I respectfully request that my application for time and a half, quiet testing accommodations be re-evaluated and subsequently granted for my Step 1 examination, as well as future USMLE tests.

Please let me know if you have any questions regarding the documents provided or require any further documentation and/or clarification.  I thank you in advance for your time, and I look forward to hearing from you soon with your decision in a timely manner.

Best Regards,

Elizabeth Black
609-306-8808

CONFIDENTIAL

KRM 161

Elizabeth Black
ID#: 5-293-137-5
Request for USMLE Step 1 Test Accommodations/Appeal of Decision

**RECEIVED**

**JAN 2 1 2016**

Dear Dr. Farmer,

**Disability Services**

I am writing to appeal the National Board of Medical Examiners' (NBME) decision to deny my request for reasonable testing accommodations in accordance with the Americans with Disabilities Act (ADA). This decision was documented in a letter to me dated March 2, 2015 (henceforth known as the Decision Letter, Exhibit A). I found the reasons provided by the NBME to be cursory and inaccurate. I submit the following information in appeal of the NBME Decision Letter.

The first issue I would like to address is the portion of the Decision Letter that questions my diagnosis, my account of my struggles, and the expert opinions of medical professionals who have assessed me throughout my life. To that end, I have included the following documents to support and further demonstrate the chronic nature of my impaired attention span, disorganization, and hyperactivity-impulsivity.

As you may be aware, a common misconception surrounds ADHD that it presents stereotypically as extreme hyperactivity in young boys. However, the current literature has well established that girls and boys commonly present in different manners. For instance, girls are not typically as hyperactive as boys, and they generally develop better compensatory mechanisms, and develop those compensatory mechanisms earlier than boys typically do. My childhood report cards (Exhibit B) comment on my ability to keep my papers and work area more organized, to "chatter" less to my table partner, and that I "take pride in her work, yet she tends to get distracted, and needs reminding to focus on the task at hand." Following are relevant comments from my report cards:

    Kindergarten

        1st Report Period—"Please encourage her to be neater in her daily work papers."

        2nd Report Period—"Encourage her to 'chatter' less to Forrest and raise her hand more to contribute in class."

        3rd Report Period—"She must remember to chat less with Julia."

        4th Report Period—Received a "Needs assistance to satisfy requirement" for "Controls urge to talk" and "Contributes relevant comments to discussion"

        Gym Class—"Good worker, distracted at times, tries hard."

    First Grade

        1st Report Period—"Lizzie takes pride in her work yet she tends to get distracted and needs reminders to focus on the task at hand."

        2nd Report Period—"Lizzie has lovely handwriting, and she shows much more self-control now."

        3rd Report Period—"Lizzie often needs assistance when learning a new math concept, yet she works hard and meets with success."

    Third Grade

        1st Report Period—"I would like to see her work a little more quickly on her skills (however)."

        3rd Report Period—"She needs to work on her self confidence in completing independent work."

    Fourth Grade

CONFIDENTIAL

1ˢᵗ Report Period—"She should realize that she is a good listener and is very capable with following directions. I'd like to see her develop more confidence in her ability."

**Fifth Grade**

2ⁿᵈ Report Period—"In math, she needs to be more mindful of careless errors in testing situations."

3ʳᵈ Report Period—"Lizzie continues to make minor careless mistakes in math. Analyze your answers...Lizzie."

My childhood report cards and teacher's comments show clear evidence of ADHD as I developed. Despite these impairments, I was able to compensate adequately and proceed unnoticed and undiagnosed in the Public School system. Additionally, my parents did not ascribe to mental health practices, as evidenced by my parents keeping my 3 brothers and me from being tested for and placed into the Gifted Program. They viewed the non-traditional form of education as ineffective and unnecessary.

During my search for effective management of my ADHD, I learned of an associated condition called 'convergence insufficiency'. This condition affects the eyes ability to focus effectively and when diagnosed in students, medically warrants additional time in testing situations. After consulting with my eye doctor of 22 years, Dr. Erik Breunig, he confirmed that I previously and currently meet diagnostic criteria for the disorder. His letter of support for additional time accommodations is enclosed (Exhibit J).

The Decision Letter implies that my ADHD has only affected me in isolated situations. While I have demonstrated the impact of ADHD on my academic career, I would also like to provide additional documentation displaying the global impact of ADHD on my life. Included in this appeal packet are letters from my high school English teacher/basketball coach, Mrs. Jen Carangi (Exhibit C), and my college roommate and friend, Dr. Lauren Hittson (Exhibit D). Mrs. Carangi's letter further confirms the difficulties I had in school, as well as in sports. Dr. Hittson's letter speaks to struggles with studying from age 17 through my post-baccalaureate program, prior to applying to medical school. Her letter also identifies how ADHD has affected me in social situations. She astutely identifies a key factor to my success in school through university and post-baccalaureate—the majority of the assessments given during schooling were not time-dependent. When I began preparing for my MCAT and time became a significant factor, I immediately sought help, during which time I was formally diagnosed with ADHD and began treatment for my disability. After struggling with time on the MCAT, I continued to do so in medical school. From Day 1, knowing that I was at a disadvantage compared to my peers, I sought both pharmacological and counseling treatment from the University Counseling Center (Exhibit E), which I've continued throughout my time at the University of South Florida Morsani College of Medicine (USF MCOM). Despite my best efforts, medical school has been and continues to be a real struggle for me, as evidenced by my grades which required remediation of multiple courses. This culminated in significant time off from school, and failing Step 1 three times, the first of which had already happened prior to the Decision Letter (see enclosed correspondence and USF MCOM reports regarding poor academic performance, academic probation, and leaves of absence to prepare for the Step 1 examination, Exhibit F). My compensatory mechanism of learning material more thoroughly than my peers, still to barely finish most tests, isn't possible anymore. As you're aware, medical school encompasses too much information for me to be able to accomplish such a monumental task, especially with a documented learning disability.

CONFIDENTIAL

KRM 163

Recognizing my disability, I was not afraid to seek help. I utilized tutors provided through USF MCOM, and counseling at the USF Counseling Center, specifically for about 8 months with a psychologist who specializes in test taking performance, Dr. Bob Parino. Once my time completed with him, I continued with a private counselor, Dr. Vigil-Otero (documents verifying use, Exhibit G), until I could not afford her services anymore. I also worked with a private test and studying consultant hired by USF MCOM, Mr. Phil Tetreau, as a study resource for students during Step 1 preparation. After all of these additional efforts, I still took longer to prepare for Step 1 and failed it. After being unsuccessful the first time, I applied for additional time accommodations and enrolled in the time-intensive and expensive Becker/Falcon review course (January 2014-February 2014, Exhibit H). After the course completed and I received the Decision Letter, I continued to work with USF MCOM tutors, but I failed Step 1 a second time. Exasperated and frustrated, I knew timing was my main problem on the examination, and I was left with only my previously exhausted resources which proved ineffective. By this time, USF MCOM had placed a time limit on my preparation, and in an effort to move forward in my medical training by completing a clinical elective), I took Step 1 for a third time, unsuccessfully. With nowhere else to turn, I reached back out to Dr. Margaret Booth-Jones for advice, guidance, and further support. We had a phone interview/session on Friday August 25, 2015 (please find her letter of support as Exhibit I). As I enter my third year of struggling to effectively prepare for the Step 1 examination, while having my medical education on hold, I am substantially limited in my functioning. With my third unsuccessful Step 1 attempt, I also now face possible dismissal from USF MCOM.

After consulting with my Disability Services representative at USF, Deborah McCarthy (letter of further support, Exhibit K), and my lawyer at Disability Rights Florida, Mr. Tony DePalma (letter of support, Exhibit L), I am very well acquainted with my rights as stipulated under the ADA, the Settlement Agreement between USA and NBME, DJ# 202-16-181 (Exhibit M), and the Department of Justice's recently published clarification of Testing Accommodations (Exhibit N). These documents specifically state that persons with histories of academic success may still be people with disabilities who are entitled to testing accommodations, that a person should receive the same accommodations that are provided by a formal public school, that testing entities should defer to documentation from qualified professionals who have made individual assessments of the candidates that supports the need for requested testing accommodations, that the testing entity must respond to requests in a timely manner, that "flagging" policies impede individuals with disabilities from fairly competing for and pursuing educational and employment opportunities and are prohibited by the ADA. Given these federal regulations, my pre-existing test-taking accommodations from USF MCOM, the professional diagnosis and support provided my numerous health care providers, I respectfully request that my application for time and a half, quiet testing accommodations be re-evaluated and subsequently granted for my Step 1 examination, as well as future USMLE tests.

Please let me know if you have any questions regarding the documents provided or require any further documentation and/or clarification. I thank you in advance for your time, and I look forward to hearing from you soon with your decision in a timely manner.

Best Regards,

Elizabeth Black
609-306-8808

CONFIDENTIAL

KRM 164

# Exhibit D

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



KRM 155

1005718      5-295-137-5
Exhibit D- Hittson, L. 8/

RECEIVED

JAN 2 1 2016

Disability Services

August 16, 2015

To whom it may concern:

I am writing on behalf of Elizabeth Black for her appeal to the NBME to allow testing accommodations for diagnosis of Attention-Deficit/Hyperactivity Disorder (ADHD). I met Elizabeth on my first day of college as we were freshman year roommates at Princeton University. Since then, I have become a pediatrician and feel that my observations of Elizabeth and my clinical judgment as a pediatrician may be helpful to the NBME in allowing for appropriate testing accommodations for Elizabeth.

I have known Elizabeth for fourteen years, and she has shown signs and symptoms of ADHD in both social and academic settings since the day I met her. Elizabeth and I studied together for nearly all of college as we were both taking pre-med courses and were both majoring in History and minoring in Latin American Studies at Princeton University together. We also both completed post-baccalaureate classes at the University of Pennsylvania together. In my countless hours of studying with Elizabeth, she showed difficulty with keeping focus on her work, frequently requiring that I prompt her to turn her attention back to her studying while she looked around the room. She was impulsive, often needing to stand up and walk away much sooner than anyone else in the room who was also studying. I sometimes would actually set timers before which we agreed she was not allowed to interrupt my studying, as it was so difficult for her to not burst out with whatever thought she had at the time. She was able to succeed through college and post-baccalaureate classes through study groups and being an incredibly intelligent woman. Additionally, I can say from personal experience that the examinations for the classes we took together were not time-dependent. The examinations were scheduled for a three hour period, but most test-takers finished the exam in 90 minutes, leaving additional time for those who, like Elizabeth, needed extra time.

Outside of the classroom and studying, Elizabeth also shows strong signs of ADHD. She is an engaging, fun, and charismatic person who is always "on-the-go," easily distracted, and is forgetful. She frequently interrupts others during conversation, having difficulty waiting for a gap in conversation during which she can change the subject. She is very talkative, sometimes continuing on a line of thought and conversation without allowing others to respond or participate. She frequently forgets to introduce people who do not know each other, as it slips her mind that this is an issue.

As a pediatrician, I now understand much more clearly the diagnosis and presentation of ADHD, and I can see that she has, at the very least, had the signs and symptoms of ADHD since I met her at age 18. As many very intelligent people do, she has compensated for her disability through studying longer, having the support of family and friends, and taking courses for which examinations were not dependent on time. She now has struggled to pass the NBME testing of USMLE Step 1 not because of a lack of medical knowledge, but instead because of difficulty with completing sections of the test within the time constraints. I urge you to provide her with the appropriate testing accommodations that all patients with ADHD deserve. I am absolutely sure that Elizabeth will make one of the best physicians I know, and I hope you support her in that journey.

Sincerely,

Lauren M. Hittson, M.D.

CONFIDENTIAL

KRM 156

# Exhibit E

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



KRM 153

1695717      E-253-137-5
Exhibit E- USF Counsl. Ct



UNIVERSITY OF
SOUTH FLORIDA

August 19, 2015

**Elizabeth A. Black**
2016 W. Kennedy Blvd., Apt. #2
Tampa, FL 33606

Dear Ms. Black;

Per your request dated 8/10/15, this letter will confirm that you were seen at the USF Counseling Center for both counseling and psychiatric services on 83 office visits between September 6, 2011 and August 8, 2014 for anxiety related concerns and attentional and academic concerns.

*Please note: This letter should not be construed to imply or indicate that the USF Counseling Center is recommending any academic or other accommodations be made for you in any student or other life role.*

Very truly yours,

Robert N. Rodgers, Ph.D.
Licensed Psychologist
Associate Director

RECEIVED

JAN 2 6 2016

Disability Services

Original: to Student
C: File

THE COUNSELING CENTER

# Exhibit F

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL

KRM 084
Exhibit F- Med School rec

# Proficiency Reports From Dr.Nazian

### Carter, Gail

Tue 10/16/2012 9:55 AM

To:Black, Elizabeth <eblack1@health.usf.edu>;

RECEIVED

JAN 2 1 2016

Disability Services

Dear Student,

As we build the tests for the pre-clerkship curriculum, we assign each question to one or more of the identified Proficiencies.

As of the end of Course 5, your progress in demonstrating proficiency in the various areas was judged to be:

**Immunology & Infectious Disease:**          Satisfactory.

**Pathophysiology of Disease:**          Needs Improvement.

**Pharmacology:**          Marginal.

**Clinical Medicine:**          Satisfactory.

If your progress in one or more of these areas currently needs improvement, the appropriate Proficiency Monitor will be
contacting you soon to discuss ways to strengthen your performance.

If your progress is currently marginal, you should consider contacting one or more of the Proficiency Monitors, Course Directors,
Faculty, or, if you have one, your Advisor to discuss ways that you could strengthen your performance.

Remember, a final determination will not be made until the end of the Academic Year.  However, in some areas a significant
percentage of the data on which we will base our decisions is already in, while in others a relatively larger amount of the data is
still to be determined.  Ultimately, a Proficiency decision will also consider other factors in addition to performance on test questions.
Some of these factors include, but are not limited to, apparent knowledge of the area demonstrated in interactions with faculty,
performance in laboratory, performance in small groups and active learning sessions, ability to use the information in the area to
arrive at appropriate conclusions and/or to solve problems, etc.

*Stanley J. Nazian, Ph.D.*
Professor of Physiology
Director Preclerkship Curriculum

Department of Molecular Pharmacology & Physiology
College of Medicine, MDC8
University of South Florida
Tampa, FL 33612
813-974-1544

CONFIDENTIAL

KRM 085

# Proficiency Report

**Barr, Victoria**

Wed 1/9/2013 10:14 AM

To:Black, Elizabeth <eblack1@health.usf.edu>;

As we build the tests for the pre-clerkship curriculum, we assign each question to one or more of the identified Proficiencies. As of the end of Course 6, your progress in demonstrating proficiency in the various areas was judged to be:

| | |
|---|---|
| Immunology & Infectious Disease | Marginal |
| Pathophysiology of Disease | Needs Improvement |
| Pharmacology | Needs Improvement |
| Clinical Medicine | Needs Improvement |

If your progress in one or more of these areas currently needs improvement, the appropriate Proficiency Monitor will be contacting you soon to discuss ways to strengthen your performance.

If your progress is currently marginal, you should consider contacting one or more of the Proficiency Monitors, Course Directors, Faculty, or, if you have one, your Advisor to discuss ways that you could strengthen your performance.

Remember, a final determination will not be made until the end of the Academic Year. However, in some areas a significant percentage of the data on which we will base our decisions is already in, while in others a relatively larger amount of the data is still to be determined. Ultimately, a Proficiency decision will also consider other factors in addition to performance on test questions. Some of these factors include, but are not limited to, apparent knowledge of the area demonstrated in interactions with faculty, performance in laboratory, performance in small groups and active learning sessions, ability to use the information in the area to arrive at appropriate conclusions and/or to solve problems, etc.

*Stanley J. Naylor, Ph.D.*
Professor of Physiology
Director Preclerkship Curriculum

Department of Molecular Pharmacology & Physiology
College of Medicine, MDC8
University of South Florida
Tampa, FL 33612
813-974-1544

CONFIDENTIAL                                                                                          KRM 086



HEALTH

January 11, 2013

Elizabeth Black
10420 N McKinley Dr, Apt 9302
Tampa, FL 33612

Dear Ms. Black:

The Academic Performance Review Committee (APRC) met on January 10, 2013, to review your T (Temporary) grade in Medical Sciences 6. The Committee was informed that you subsequently received an S (Satisfactory) grade in the course. Please consider this an expression of concern as another T grade during the remainder of Year II or another deficiency may result in academic warning or probation.

You must sign this letter indicating your receipt and return it within ten (10) working days. A postage-paid envelope has been provided for your convenience.

A copy of the Medical Student Advancement Policies, Procedures and Due Process is available online on the Student Affairs website at http://hsc.usf.edu/NR/rdonlyres/D6549138-8589-4F57-90EA-F44F7C8A0706/0/StudentHandbook.pdf. You are advised to review these policies and note the procedures regarding APRC actions, as well as actions that may be taken by the APRC if future academic deficiencies occur. If you require assistance or advice in any regard, please contact Dr. Steven Specter, Associate Dean for Student Affairs at 974-2068. If I can help you in any way, please feel free to contact me.

Sincerely,

Alicia D. H. Monroe, MD
Chair, Academic Performance Review Committee
Vice Dean for Educational Affairs
Morsani College of Medicine

cc:   Steven Specter, PhD, Associate Dean for Student Affairs
      Marrissa Cook, MA, Registrar
      Michelle Williamson, Director of Financial Aid

Signed: _____          Date: _____

CONFIDENTIAL

OFFICE OF THE VICE DEAN, EDUCATIONAL AFFAIRS  •  MORSANI COLLEGE OF MEDICINE
University of South Florida  •  12901 Bruce B Down Blvd., MDC 54  •  Tampa, Fl. 33612-4799
(813) 974-7131  •  Fax (813) 974-2976

KRM 087





HEALTH

February 12, 2013

Elizabeth Black
10420 N McKinley Dr, Apt 9302
Tampa, FL 33612

Dear Ms. Black:

The Academic Performance Review Committee (APRC) met on February 7, 2013, to review your T (Temporary) grade in Evidence-Based Clinical Reasoning II. The Committee was informed that you will be given the opportunity to remediate this deficiency within the next two weeks. You must contact the course director, Dr. Ambuj Kumar, at (813) 396-9194 or akumar1@health.usf.edu to learn how the remediation is to be accomplished. The Committee is also aware of your previous T grade in Medical Sciences 6, and reminds you that you no longer have the opportunity to receive a T grade during the remainder of Year II.

1. You are required to meet with the Associate Dean for Student Affairs, Dr. Steven Specter, to discuss this deficiency and methods for academic improvement. .
2. You have been placed on academic warning until your successful completion of Year II.

You **must** sign this letter indicating your receipt and return it within ten (10) working days. A postage-paid envelope has been provided for your convenience.

A copy of the Medical Student Advancement Policies, Procedures and Due Process is available online on the Student Affairs website at http://hsc.usf.edu/NR/rdonlyres/D6549138-8589-4F57-90EA-F44F7C8A0706/0/StudentHandbook.pdf. You are advised to review these policies and note the procedures regarding APRC actions, as well as actions that may be taken by the APRC if future academic deficiencies occur. If you require assistance or advice in any regard, please contact Dr. Steven Specter, Associate Dean for Student Affairs at 974-2068. If I can help you in any way, please feel free to contact me.

Sincerely,

Alicia D. H. Monroe, MD
Chair, Academic Performance Review Committee
Vice Dean for Educational Affairs
Morsani College of Medicine

cc:  Steven Specter, PhD, Associate Dean for Student Affairs
     Marrissa Cook, MA, Registrar
     Michelle Williamson, Director of Financial Aid

Signed: _____     Date: _____

OFFICE OF THE VICE DEAN, EDUCATIONAL AFFAIRS • MORSANI COLLEGE OF MEDICINE
University of South Florida • 12901 Bruce B Down Blvd., MDC 54 • Tampa, FL 33612-4799
(813) 974-7131 • Fax (813) 974-2976

KRM 088



**USF**
UNIVERSITY OF
**SOUTH FLORIDA**

## MEMORANDUM OF ACCOMMODATIONS

Date:     March 11, 2013

To:       Dr. Specter, College of Medicine Student Affairs
From:     Deborah McCarthy

Re:       Elizabeth Black      USFID: U34264740      Term: Spring 2013
Course:   MEL 9996 001

This student presented Students with Disabilities Services (SDS) with documentation of a disability which significantly impacts academic performance. SDS staff reviewed the documentation of the disability and found that the documentation meets established guidelines for accommodations. Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act require that the University of South Florida provide reasonable classroom accommodations to otherwise qualified students who have documented disabilities. Some accommodations may be addressed directly by you with the student. Other accommodations may require the assistance of SDS staff. The student will work with you and the SDS office to implement the stated accommodations as authorized by the professionals in SDS. Please note, all accommodations information is considered to be confidential.

To assist with the accommodations process, SDS will forward a copy of the student's accommodation letter to the Associate Dean of Undergraduate Medical Education within the College of Medicine. The College of Medicine will consult with Students with Disabilities Services to arrange appropriate accommodations. Given the specialized nature of the exams administered, SDS may not be able to administer an exam. In such cases, SDS will work with the College of medicine to ensure appropriate accommodations. Accommodations for clinical experiences and exams must be discussed with the College of Medicine and Students with Disabilities Services.  The additional time (1.5 x) noted in exam accommodations below does not apply to the clinical setting.

### Quiz / Test / Exam accommodations
• Additional Time: 1.5x
• Reduced distraction testing

In the event that the student requests additional accommodation(s) which are not listed here, please contact Deborah McCarthy, Director of Students with Disabilities Services at (813) 974-4309 or dmccarthy@usf.edu. SDS thanks you for your assistance in creating barrier-free learning environments for students with disabilities at The University of South Florida.

**\*\*\* CONFIDENTIAL \*\*\***
STUDENTS WITH DISABILITIES SERVICES • STUDENT AFFAIRS
University of South Florida • 4202 East Fowler Avenue, SVC1133 • Tampa, FL 33620-6923
(813) 974-4309 • Fax (813) 974-7337 • www.sds.usf.edu

**CONFIDENTIAL**

KRM 089





HEALTH

March 15, 2013

Elizabeth Black
10420 N McKinley Dr, Apt 9302
Tampa, FL 33612

Dear Ms. Black:

The Academic Performance Review Committee (APRC) met on March 14, 2013, to review your U
(Unsatisfactory) grade in Evidence-Based Clinical Reasoning II. The Committee was informed that you did
not successfully pass the first retake of the exam, but that you were given additional remediation and
subsequently obtained an S (Satisfactory) grade.

You must sign this letter indicating your receipt and return it within ten (10) working days.  A postage-paid
envelope has been provided for your convenience.

A copy of the Medical Student Advancement Policies, Procedures and Due Process is available online on
the Student Affairs website at http://hsc.usf.edu/NR/rdonlyres/D6549138-8589-4F57-90EA-
F44F7C8A0706/0/StudentHandbook.pdf. You are advised to review these policies and note the
procedures regarding APRC actions, as well as actions that may be taken by the APRC if future academic
deficiencies occur.  If you require assistance or advice in any regard, please contact Dr. Steven Specter,
Associate Dean for Student Affairs at 974-2068. If I can help you in any way, please feel free to contact
me.

Sincerely,

Alicia D. H. Monroe, MD
Chair, Academic Performance Review Committee
Vice Dean for Educational Affairs
Morsani College of Medicine

cc:  Steven Specter, PhD, Associate Dean for Student Affairs
     Marrissa Cook, MA, Registrar
     Michelle Williamson, Director of Financial Aid


Signed: _____     Date: _____

CONFIDENTIAL

OFFICE OF THE VICE DEAN, EDUCATIONAL AFFAIRS  •  MORSANI COLLEGE OF MEDICINE
University of South Florida  •  12901 Bruce B Down Blvd., MDC 54  •  Tampa, FL 33612-4799
(813) 974-7131  •  Fax (813) 974-2976

KRM 090



April 23, 2013

Elizabeth Black
2116 Imperial Golf Course Blvd.
Naples, FL 34110

Re: Leave of Absence

Dear Elizabeth:

This letter will confirm that I have received notification of your request for your leave of absence in order to prepare to take your Step 1 exam.

Your leave has been approved and your return date is scheduled for June 10, 2013.

Please let me know if you need further assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SP:llk

Cc: Marrissa Cook
     Michelle Williamson




HEALTH

May 23, 2013

Elizabeth Black
10420 N McKinley Dr, Apt 9302
Tampa, FL 33612

Dear Ms. Black:

The Academic Performance Review Committee (APRC) met on May 23, 2013, to discuss your successful completion of the Year II curriculum. You have been removed from academic warning effective March 1, 2013. The Committee congratulates you on your effort.

Sincerely,

*Alicia D.H. Monroe MD*

Alicia D. H. Monroe, MD
Chair, Academic Performance Review Committee
Vice Dean for Educational Affairs
College of Medicine

cc:   Steven Specter, PhD, Associate Dean for Student Affairs
      Marrissa Cook, MA, Registrar

CONFIDENTIAL

KRM 092



**HEALTH**

June 19, 2013

Elizabeth Black
2116 Imperial Golf Course Blvd.
Naples, FL 34110

Re: Extension of Leave of Absence

Dear Elizabeth:

This letter will confirm that I have received notification of your request to extend your leave of absence in order to further prepare to take your Step 1 exam.

Your leave has been approved and your return date is scheduled for July 8, 2013.

Please let me know if you need further assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SP:llk

Cc: Marrissa Cook
     Michelle Williamson



July 5, 2013

Elizabeth Black
2116 Imperial Golf Course Blvd.
Naples, FL 34110

Re: Extension of Leave of Absence

Dear Elizabeth:

This letter will confirm that I have received notification of your request to extend your leave of absence in order to further prepare to take your Step 1 exam.

Your leave has been approved and your return date is scheduled for August 5, 2013.

Please let me know if you need further assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SP:llk

Cc:  Marrissa Cook
     Michelle Williamson

CONFIDENTIAL

KRM 094



July 30, 2013

Elizabeth Black
3211 W. Swann Ave.
Unit 1111
Tampa, FL 33609

Re: Leave of Absence

Dear Elizabeth:

This letter will confirm that I have received notification of your request for your leave of absence in order to prepare for your Step 1 exam.

Your leave has been approved and your return date is tentatively scheduled for September 3, 2013. Please be aware that if you are unable to return by this date it will be necessary to consider a year long leave.

Please let me know if you need further assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SP:llk

Cc: Marrissa Cook
    Michelle Williamson

CONFIDENTIAL

OFFICE OF STUDENT AFFAIRS • MORSANI COLLEGE OF MEDICINE
University of South Florida • 12901 Bruce B. Downs Blvd, MDC Box 4 • Tampa, FL 33612-4799
(813) 974-2068 • Fax 813) 974-8181

KRM 095



**HEALTH**

August 28, 2013

Elizabeth Black
3211 W. Swann Ave.
Unit 1111
Tampa, FL 33609

Re: Leave of Absence

Dear Elizabeth:

This letter will confirm that I have received notification of your request to extend your leave of absence in order to prepare for your Step 1 exam.

Your leave has been approved and your return date is tentatively scheduled for September 30, 2013.

Please let me know if you need further assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SP:llk

Cc: Marrissa Cook
    Michelle Williamson

OFFICE OF STUDENT AFFAIRS • MORSANI COLLEGE OF MEDICINE
University of South Florida • 12901 Bruce B. Downs Blvd, MDC Box 4 • Tampa, FL 33612-4799
(813) 974-2068 • Fax 813) 974-8181

KRM 096



**HEALTH**

October 22, 2013

Elizabeth Black
3211 W. Swann Ave.
Unit 1111
Tampa, FL 33609

Re:  Leave of Absence

Dear Elizabeth:

This letter will confirm that I have received notification of your request to extend your leave of absence for 1 additional month in order to prepare for your Step 1 exam.

Your leave has been approved and your return date is scheduled for November 25, 2013. Since the next rotation begins on January 6, 2014, you will need to work with Marrissa Cook, our Registrar to schedule an elective.

Please let me know if you need further assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SP:llk

Cc:  Marrissa Cook
     Michelle Williamson

CONFIDENTIAL

OFFICE OF STUDENT AFFAIRS  •  MORSANI COLLEGE OF MEDICINE
University of South Florida  •  12901 Bruce B. Downs Blvd, MDC Box 4  •  Tampa, FL  33612-4799
(813) 974-2068  •  Fax 813) 974-8181

KRM 097



November 14, 2013

Elizabeth Black
3211 W. Swann Ave.
Unit 1111
Tampa, FL 33609

Re: Leave of Absence Extension

Dear Elizabeth:

This letter will confirm that I have received notification of your request to extend your leave of absence in order to prepare for your Step 1 exam.

Your leave has been approved and your return date is scheduled for January 6, 2014.

Please let me know if you need further assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SP:llk

Cc: Marrissa Cook
    Michelle Williamson

CONFIDENTIAL

OFFICE OF STUDENT AFFAIRS • MORSANI COLLEGE OF MEDICINE
University of South Florida • 12901 Bruce B. Downs Blvd, MDC Box 4 • Tampa, FL 33612-4799
(813) 974-2068 • Fax 813) 974-8151

KRM 098

8/28/2015                    Gmail - Becker Professional Education Customer Receipt/Purchase Confirmation

                                    Elizabeth Black <elizabeth.a.black@gmail.com>

## Becker Professional Education Customer Receipt/Purchase Confirmation
1 message

Automatic Email <usmleinfo@becker.com>                        Fri, Jan 3, 2014 at 2:49 PM
To: William Black <elizabeth.a.black@gmail.com>

### Thank you for your order!

Order Information
Merchant:      Becker Professional Education
Description:   Dallas Jan 6 - No Hotel
Invoice Number: VN

Billing Information                     Shipping Information
William Black
elizabeth.a.black@gmail.com

                                        **Total:  US $3121.88**

MasterCard
Date/Time:      3-Jan-2014 13:49:01 CST
Transaction ID:  5825224241

CONFIDENTIAL

KRM 099



February 17, 2014

Elizabeth Black
3211 W. Swann Avenue
Unit 1111
Tampa, FL 33609

Re:  Leave of Absence Extension

Dear Elizabeth:

This letter will confirm that I have received notification of your request for an extension
of your leave of absence.

Your request for an extension has been approved.  Your return date will be May 5, 2014
to resume year three with the Class of 2016.  Please let me know if you need further
assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SS:ds

Cc:  Marrissa Cook
     Michelle Williamson



May 19, 2014

Elizabeth Black
3211 W. Swann Avenue
Unit #1111
Tampa, FL 33609

Re:  Leave of Absence Extension

Dear Elizabeth:

This letter confirms I have received notification of your request for an extension of your
leave of absence.

Your request for an extension has been approved.  Your return date will be June 9, 2014
to resume year three with the Class of 2016.  Please let me know if you need further
assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SS:ds

cc:  Marrissa Cook
     Michelle Williamson



June 3, 2014

Elizabeth Black
3211 W. Swann Avenue
Unit #1111
Tampa, FL 33609

Re: Leave of Absence Additional Time

Dear Elizabeth:

This letter confirms I have received an additional notification of your request for an
extension to your leave of absence.

Your request has been approved. Your new return date will be July 7, 2014. Please let
me know if you need further assistance.

Sincerely,

Steven Specter, Ph.D.
Associate Dean Student Affairs
Professor, Molecular Medicine

SS:ds

cc: Marrissa Cook
     Michelle Williamson

CONFIDENTIAL

OFFICE OF STUDENT AFFAIRS  •  MORSANI COLLEGE OF MEDICINE
University of South Florida  •  12901 Bruce B. Downs Blvd, MDC Box 4  •  Tampa, FL  33612-4799
(813) 974-2068  •  Fax (813) 974-5181

KRM 102



# UNITED STATES MEDICAL LICENSING EXAMINATION ®

## STEP 1 SCORE REPORT

This score report is provided for the use of the examinee.

Third party users of USMLE information are advised to rely solely on official USMLE transcripts.

**Black, Elizabeth Ann**
**USMLE ID:  5-293-137-5**

**Test Date:  July 3, 2014**

The USMLE is a single examination program consisting of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. Step 1 is designed to assess whether an examinee understands and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy. The inclusion of Step 1 in the USMLE sequence is intended to ensure mastery of not only the sciences underlying the safe and competent practice of medicine in the present, but also the scientific principles required for maintenance of competence through lifelong learning. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. This score§ represents your result for the administration of Step 1 on the test date shown above.



| FAIL | This result is based on the minimum passing score recommended by USMLE for Step 1. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |

| 183 | This score is determined by your overall performance on Step 1. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 228 and 21, respectively, with most scores falling between 140 and 260. A score of 192 is set by USMLE to pass Step 1. The standard error of measurement (SEM)‡ for this scale is five points. |

§Effective April 1, 2013, test results are reported on a three-digit scale only. Test results reported as passing represent an exam score of 75 or higher on a two-digit scoring scale.

‡Your score is influenced both by your general understanding of the basic biomedical sciences and the specific set of items selected for this Step 1 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content.

## INFORMATION PROVIDED FOR EXAMINEE USE ONLY

The Performance Profile below is provided solely for the benefit of the examinee.
These profiles are developed as self-assessment tools for examinees only and will not be reported or verified to any third party.

### USMLE STEP 1 PERFORMANCE PROFILE

| | Lower Performance | Borderline Performance | | Higher Performance |
|---|---|---|---|---|
| **DISCIPLINE** | | | | |
| Behavioral Sciences | | xxxxxxxxxxxxxxxxxxxx | | |
| Biochemistry | *xxxxxxxxxx | | | |
| Genetics | *xxxxxxxxxxxxxx | | | |
| Gross Anatomy & Embryology | *xx | | | |
| Histology & Cell Biology | xxxxxxxxxxxxxxxxx | | | |
| Microbiology & Immunology | xxxxxxxxxxxxx | | | |
| Nutrition | xxxxxxxxxxxxxxxxxxxxxx | | | |
| Pathology | xxxxxxxxxx | | | |
| Pharmacology | xxxxxxxxxxxxxxx | | | |
| Physiology | xxxxxxxxxxxx | | | |
| **SYSTEM** | | | | |
| General Principles of Foundational Science | xxxxxxxxxxxxxxxx | | | |
| Immune System | | | xxxxxxxxxxxxxxxxxxxx | |
| Blood & Lymphoreticular System | xxxxxxxxxxxxxxxxxxx | | | |
| Behavioral Health & Nervous Systems/Special Senses | xxxxxxxxxxxxxxxx | | | |
| Musculoskeletal, Skin, & Subcutaneous Tissue | *xxxxxxxxxxxxxxx | | | |
| Cardiovascular System | *xxxxxxxxxxxxx | | | |
| Respiratory System | xxxxxxxxxxxxxxxxxxxxx | | | |
| Gastrointestinal System | xxxxxxxxxxxxxxxxxxx | | | |
| Renal/Urinary System | | xxxxxxxxxxxxxxxxxx | | |
| Reproductive System | | xxxxxxxxxxxxxxxxxxxx | | |
| Endocrine System | *xxxxxxxxxxxx | | | |
| Multisystem Processes & Disorders | xxxxxxxxxxxxxxxxx | | | |
| Biostatistics & Epidemiology/Population Health | *xxxxxx | | | |

The above Performance Profile is provided to aid in self-assessment. The shaded area defines a borderline level of performance for each content area; borderline performance is comparable to a HIGH FAIL/LOW PASS on the total test.

Performance bands indicate areas of relative strength and weakness. Some bands are wider than others. The width of a performance band reflects the precision of measurement: narrower bands indicate greater precision. The band width for a given content area is the same for all examinees. An asterisk indicates that your performance band extends beyond the displayed portion of the scale. Small differences in the location of bands should not be over-interpreted. If two bands overlap, performance in the associated areas should be interpreted as similar. Because Step 1 is designed to be integrative, many items contribute to more than one content area. As a consequence, caution should be used when interpreting differences in performance across content areas.

This profile should not be compared to those from other Step 1 administrations.

Additional information concerning the topics covered in each content area can be found in the *USMLE Step 1 Content Description and Sample Test Materials*.

CONFIDENTIAL



September 26, 2014

Elizabeth Black
3211 W. Swann Avenue
Unit #1111
Tampa, FL 33609

Re: Leave of Absence Additional Time

Dear Elizabeth:

This letter confirms I have received an additional notification of your request for an extension to your leave of absence.

Your request has been approved. Your new return date will be October 27, 2014. Please let me know if you need further assistance.

Sincerely,

Kira Zwygart, MD, FAAFP
Associate Dean Student Affairs
Associate Professor, Family Medicine

KZ:ds

cc: Marrissa Cook
    Michelle Williamson

CONFIDENTIAL

OFFICE OF STUDENT AFFAIRS • MORSANI COLLEGE OF MEDICINE
University of South Florida • 12901 Bruce B. Downs Blvd, MDC Box 4 • Tampa, FL 33612-4799
(813) 974-2068 • Fax 813) 974-8181

KRM 105



October 24, 2014

Elizabeth Black
3211 W. Swann Avenue
Unit #1111
Tampa, FL 33609

Re: Leave of Absence Additional Time

Dear Elizabeth:

This letter confirms I have received notification of your request for an additional
extension to your leave of absence as you continue to prepare for and retake the USMLE
Step I.

Your request has been approved with the requisite to continue study skills meetings with
Dr. O'Callaghan. Your new return date will be November 24, 2014.

Any subsequent request for an extension to your leave of absence will be presented to the
Academic Performance Review Committee.

Please let me know if you need further assistance.

Sincerely,

Kira Zwygart, MD, FAAFP
Associate Dean Student Affairs
Associate Professor, Family Medicine

KZ:ds

cc: Marrissa Cook
    Michelle Williamson



November 24, 2014

Elizabeth Black
3211 W. Swann Avenue
Unit #1111
Tampa, FL 33609

Re: Leave of Absence Additional Time

Dear Elizabeth:

This letter confirms I have received notification of your request for an additional extension to your leave of absence as you apply for testing accommodations with the National Board of Medical Examiners and continue to prepare for and retake the USMLE Step 1.

Considering the possible timing of allowance of accommodations by the NBME, we have approved a request for extension of your leave of absence. You will be provided with a total of ninety days from the date of this letter to receive accommodations and then retake the USMLE Step 1.

Because you have not yet taken the final exam for the Internal Medicine clerkship and it has been several months since completion of that course, you will need to petition the APRC to take this exam after you have completed the USMLE Step 1, before you can re-enter the third-year curriculum.

Your request has been approved with the requisite to continue study skills meetings with Dr. O'Callaghan.

Please let me know if you need further assistance.

Sincerely,

*Kira Zwygart*

Kira Zwygart, MD, FAAFP
Associate Dean Student Affairs
Associate Professor, Family Medicine
cc: Marrissa Cook
    Michelle Williamson

OFFICE OF STUDENT AFFAIRS • MORSANI COLLEGE OF MEDICINE
University of South Florida • 12901 Bruce B Downs Blvd, MDC Box 4 • Tampa, FL 33612-4799
(813) 974-2068 • Fax 813) 974-5181

KRM 107



March 2, 2015

Elizabeth Black
3211 W. Swann Avenue
Unit #1111
Tampa, FL 33609

Re: Leave of Absence Additional Time

Dear Elizabeth:

This letter confirms the National Board of Medical Examiners reached a decision to not
allow testing accommodations for your retake of the USMLE Step 1. Therefore, I have
extended your leave of absence until March 31, 2015 so you may continue to prepare for
and retake the examination.

Once you complete Step 1, we can meet to discuss scheduling the final examination for
the Internal Medicine clerkship and your return to the third-year curriculum.

Please let me know if you need further assistance.

Sincerely,

Kira Zwygart

Kira Zwygart, MD, FAAFP
Associate Dean Student Affairs
Associate Professor, Family Medicine

cc: Marrissa Cook
    Michelle Williamson

OFFICE OF STUDENT AFFAIRS • MORSANI COLLEGE OF MEDICINE
University of South Florida • 12901 Bruce B. Downs Blvd, MDC Box 4 • Tampa, FL 33612-4799
(813) 974-2068 • Fax 813) 974-8181

KRM 108



# UNITED STATES MEDICAL LICENSING EXAMINATION ®

## STEP 1 SCORE REPORT

This score report is provided for the use of the examinee.
Third party users of USMLE information are advised to rely solely on official USMLE transcripts.

**Black, Elizabeth Ann**

**USMLE ID:   5-293-137-5**

**Test Date:   April 9, 2015**

The USMLE is a single examination program consisting of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. Step 1 is designed to assess whether an examinee understands and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying  health, disease, and modes of  therapy.  The inclusion of  Step 1 in the USMLE sequence is intended to ensure mastery of not only the sciences underlying the safe and competent practice of medicine in the present, but also the scientific principles required for maintenance of competence through lifelong learning. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. This score[§] represents your result for the administration of Step 1 on the test date shown above.



This result is based on the minimum passing score recommended by USMLE for Step 1. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions.



This score is determined by your overall performance on Step 1. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 228 and 21, respectively, with most scores falling between 140 and 260. A score of 192 is set  by  USMLE to pass  Step 1. The standard error of measurement (SEM)[‡] for this scale is five points.

[§]Effective April 1, 2013, test results are reported on a three-digit scale only. Test results reported as passing represent an exam score of 75 or higher on a two-digit scoring scale.

[‡]Your score is influenced both by your general understanding of the basic biomedical sciences and the specific set of items selected for this Step 1 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content

CONFIDENTIAL

## INFORMATION PROVIDED FOR EXAMINEE USE ONLY

The Performance Profile below is provided solely for the benefit of the examinee.
These profiles are developed as self-assessment tools for examinees only and will not be reported or verified to any third party.

### USMLE STEP 1 PERFORMANCE PROFILE

| | Lower Performance | Borderline Performance | | Higher Performance |
|---|---|---|---|---|
| **DISCIPLINE** | | | | |
| Behavioral Sciences | | | | xxxxxxxxxxxxxxxxxxxx |
| Biochemistry | xxxxx | xxx | | |
| Genetics | xxxxx | xxxxxxxxx | | |
| Gross Anatomy & Embryology | *xxxxxxxxxxx | | | |
| Histology & Cell Biology | xxxxxxxxxxxx | | | |
| Microbiology & Immunology | | xxxxxxxxx | | |
| Nutrition | xxxxx | xxxxxxxxxxxx | | |
| Pathology | xxxxxxxx | | | |
| Pharmacology | xxx | xxxxx | | |
| Physiology | xxxxx | x | | |
| **SYSTEM** | | | | |
| General Principles of Foundational Science | | xxxxxxxxxx | | |
| Immune System | xxx | xxxxxxxxxxx | | |
| Blood & Lymphoreticular System | xxxxxxx | xxxxxxx | | |
| Behavioral Health & Nervous Systems/Special Senses | xxx | xxxxxxxx | | |
| Musculoskeletal, Skin, & Subcutaneous Tissue | xxxxxxxxxxx | xxxx | | |
| Cardiovascular System | xxxxxxx | xxxxxxx | | |
| Respiratory System | xxxx | xxxxxxxxxx | | |
| Gastrointestinal System | xxxxxxx | xxxxxxxx | | |
| Renal/Urinary System | xxxxxxxx | xxxxxx | | |
| Reproductive System | *xxxxxxxxxxx | x | | |
| Endocrine System | *xxxxxxxxxx | | | |
| Multisystem Processes & Disorders | xxxxxxx | xxxxx | | |
| Biostatistics & Epidemiology/Population Health | *xxxxxxxxxxx | | | |

The above Performance Profile is provided to aid in self-assessment. The shaded area defines a borderline level of performance for each content area; borderline performance is comparable to a HIGH FAIL/LOW PASS on the total test.

Performance bands indicate areas of relative strength and weakness. Some bands are wider than others. The width of a performance band reflects the precision of measurement: narrower bands indicate greater precision. The band width for a given content area is the same for all examinees. An asterisk indicates that your performance band extends beyond the displayed portion of the scale. Small differences in the location of bands should not be over-interpreted. If two bands overlap, performance in the associated areas should be interpreted as similar. Because Step 1 is designed to be integrative, many items contribute to more than one content area. As a consequence, caution should be used when interpreting differences in performance across content areas.

This profile should not be compared to those from other Step 1 administrations.

Additional information concerning the topics covered in each content area can be found in the *USMLE Step 1 Content Description and Sample Materials*.

# RE: Issue with Administration of Exam

Wed 4/29/2015 4:09 PM

To:Black, Elizabeth <eblack1@health.usf.edu>;

Please see our attached correspondence regarding your e-mail below.

**From:** eblack1@health.usf.edu [mailto:eblack1@health.usf.edu]
**Sent:** Saturday, April 11, 2015 3:52 PM
**To:** testadmin
**Subject:** Issue with Administration of Exam

A message regarding **Issue with Administration of Exam** has been sent from the USMLE website:

| | |
|---|---|
| **Name:** | Elizabeth Black |
| **E-mail:** | eblack1@health.usf.edu |
| **Medical School:** | University of South Florida Morsani College of Medicine |
| **USMLE ID:** | 52931375 |
| **Exam:** | Step 1 |
| **Exam Date:** | 4/9/2015 |
| **Test Center:** | Prometric Test Center: # 5006; Tampa - S. Hoover Boulevard; 204 S. Hoover Blvd.; Mariner Square, 2nd Floor SE; Tampa FLORIDA 33609 |
| **Reason for Contact:** | Issue with Administration of Exam |
| **Description:** | To Whom it May Concern, During my Step 1 examination at Prometric Center #5006 (South Hoover Blvd, Tampa FL) on April 9, 2015, the audio required to answer certain questions did not function. When I came to the first question that required audio, I signalled to a Prometric attendant for help, and she attempted to assist me by changing headphones and assuring everything at my computer station was electrically sound. After precious minutes passed by and the initial attempts failed to resolve the sound issue, the attendant switched me to another computer, temporarily suspending my exam. Once at the new computer and my exam was restarted, the audio still failed to function. The attendant, once again, attempted to remedy the issue by changing headphones, plugging and unplugging electrical components, etc, and all the while, many more precious minutes expired. At this point, I told the attendant that I could not worry about this situation anymore because I was losing so much time from my exam. The audio problem and lost time caused me to have to rush |

CONFIDENTIAL

KRM 111

8/5/2015                                    RE: Issue with Administration of Exam - Black, Elizabeth

through questions in an attempt to finish the section, and I still wasn't able to answer all of the questions in the block. Once the block finished, I quickly took a break to speak with the Prometric office staff about the incident. The staff was extremely unhelpful, wasting more of my fixed and allotted test break time, blamed the problem on the USMLE and the exam software, and claimed they would submit a Prometric incident report. This incident happened towards the beginning of my testing day, during the third or fourth section. In addition to the significant amount of time that was wasted during my exam, the entire situation was extremely emotionally upsetting. While I tried my best to move forward and continue with my test, my performance was certainly negatively affected by my defective test and/or testing equipment and the terrible service and attitude I received from the Prometric attendants. Additionally, I came across other questions requiring the use of audio equipment during my examination, and while I didn't waste time having the Prometric attendants attempt to remedy the problem again, I still was unable to hear any audio during the test--prohibiting me from accurately answering my test questions. This entire situation and day was extremely unacceptable and negatively impacted my Step 1 performance. I expect this problem to be addressed in a timely fashion and for someone to take responsibility for the situation. I look forward to hearing from you very soon. Best, Elizabeth Black USMLE ID: 52931375 Phone: 609-306-8808

This email sent from the USMLE.org Contact Page

*This email message and any attachments may contain privileged and/or confidential business information and are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please notify the sender immediately by reply email and destroy all copies of the original message and any attachments.*

CONFIDENTIAL

                                                                                    KRM 112



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

Telephone: (215) 590-9564
Email: testadmin@nbme.org
Fax: (215) 590-9457

April 29, 2015

Elizabeth Ann Black
2116 Imperial Golf Course Blvd.
Naples, FL 34110                          USMLE ID#: 5-293-137-5

Dear Ms. Black:

Your April 11, 2015 correspondence was forwarded to me for review and response. In your correspondence, you expressed concerns relating to your April 9, 2015 Step 1 examination. As a result, you believe that you performance was affected.

We are aware that many examinees consider taking the USMLE to be stressful under the best of conditions, and we regret that you experienced difficulties with the functioning of the headphones during your examination.  As part of our investigation, we reviewed your test file and found that you did not perform the headphone check during the tutorial. Running this test enables examinees to resolve any issues that they may encounter with the headphones prior to starting the examination. We also confirmed that, your computer was restarted once. The software was designed so that the testing clock stops when the computer is powered off, and resumes when the computer is restarted. Therefore, examinees do not lose testing time in such situations.

While we understand the concerns you expressed, it is not possible to determine what effect, if any, the situation you have described may have had on your exam performance. If you wish to inform recipients of your score reports or other third parties about the concerns you expressed to us, you are welcome to forward a copy of this letter to them.

Sincerely,

*Lisa D. Brooks*

Lisa D. Brooks
Senior Test Administration Specialist

CONFIDENTIAL

KRM 113



**HEALTH**

May 7, 2015

Elizabeth Black
3211 W. Swann Avenue
Unit #1111
Tampa, FL 33609

Re:  Leave of Absence Additional Time

Dear Elizabeth:

This letter confirms I have received notification of your request for an additional extension
to your leave of absence as you continue to prepare for and retake the USMLE Step 1 on
June 11, 2015.

Your request has been approved with the requisite to maintain regular communication with
Dr. Pamela O'Callaghan, Director of the Academic Support Center. Additionally, you must
take the Adult Medicine Shelf Exam on July 2, 2015 before your return to the third-year of
the MD curriculum on July 6, 2015.

Please let me know if you need further assistance.

Sincerely,

Kira Zwygart, MD, FAAFP
Associate Dean Student Affairs
Associate Professor, Family Medicine

KZ: ds

cc:  Marrissa Cook
     Michelle Williamson



# UNITED STATES MEDICAL LICENSING EXAMINATION ®

## STEP 1 SCORE REPORT

This score report is provided for the use of the examinee.

Third party users of USMLE information are advised to rely solely on official USMLE transcripts.

**Black, Elizabeth Ann**

**USMLE ID:  5-293-137-5**                              **Test Date:  July 2, 2015**

The USMLE is a single examination program consisting of three Steps designed to assess an examinee's understanding of and ability to apply concepts and principles that are important in health and disease and that constitute the basis of safe and effective patient care. Step 1 is designed to assess whether an examinee understands and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy. The inclusion of Step 1 in the USMLE sequence is intended to ensure mastery of not only the sciences underlying the safe and competent practice of medicine in the present, but also the scientific principles required for maintenance of competence through lifelong learning. Results of the examination are reported to medical licensing authorities in the United States and its territories for use in granting an initial license to practice medicine. This score§ represents your result for the administration of Step 1 on the test date shown above.

| | |
|---|---|
| **FAIL** | This result is based on the minimum passing score recommended by USMLE for Step 1. Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their own jurisdictions. |

| | |
|---|---|
| **173** | This score is determined by your overall performance on Step 1. For recent administrations, the mean and standard deviation for first-time examinees from U.S. and Canadian medical schools are approximately 230 and 20, respectively, with most scores falling between 140 and 260. A score of 192 is set by USMLE to pass Step 1. The standard error of measurement (SEM)‡ for this scale is five points. |

§Effective April 1, 2013, test results are reported on a three-digit scale only. Test results reported as passing represent an exam score of 75 or higher on a two-digit scoring scale.

‡Your score is influenced both by your general understanding of the basic biomedical sciences and the specific set of items selected for this Step 1 examination. The Standard Error of Measurement (SEM) provides an index of the variation in scores that would be expected to occur if an examinee were tested repeatedly using different sets of items covering similar content.

# INFORMATION PROVIDED FOR EXAMINEE USE ONLY

The Performance Profile below is provided solely for the benefit of the examinee.
These profiles are developed as self-assessment tools for examinees only and will not be reported or verified to any third party.

## USMLE STEP 1 PERFORMANCE PROFILE

| | Lower Performance | Borderline Performance | Higher Performance |
|---|---|---|---|
| **DISCIPLINE** | | | |
| Behavioral Sciences | | xxxxxxxxxxxxxxxxxx | |
| Biochemistry | *xx | | |
| Genetics | *xxxxxxxxxxx | xx | |
| Gross Anatomy & Embryology | xxxxx | xxxxxxxx | |
| Histology & Cell Biology | *xxxxxxxxx | | |
| Microbiology & Immunology | xxxxxxx | x | |
| Nutrition | *xxxxxxxxxxx | | |
| Pathology | *xxxxxx | | |
| Pharmacology | *xxxxxxx | | |
| Physiology | *xxxxxxx | | |
| **SYSTEM** | | | |
| General Principles of Foundational Science | *xxxxxxxxxx | | |
| Immune System | *xxxxxxxxxx | xx | |
| Blood & Lymphoreticular System | *xxxxxxxxxx | xx | |
| Behavioral Health & Nervous Systems/Special Senses | xxxx | xxxxxx | |
| Musculoskeletal, Skin, & Subcutaneous Tissue | *xxxxxxxxx | | |
| Cardiovascular System | xxxxxxxxxx | xx | |
| Respiratory System | xxxxx | xxxxxxxxx | |
| Gastrointestinal System | xxxxxxxxxx | xxxx | |
| Renal/Urinary System | xxxxxxxxx | xxxx | |
| Reproductive System | xxxxxxx | xxxxxxx | |
| Endocrine System | *xxx | | |
| Multisystem Processes & Disorders | *xxxxxxxxx | | |
| Biostatistics & Epidemiology/Population Health | xxxxxxxxxx | xxxx | |

The above Performance Profile is provided to aid in self-assessment. The shaded area defines a borderline level of performance for each content area; borderline performance is comparable to a HIGH FAIL/LOW PASS on the total test.

Performance bands indicate areas of relative strength and weakness. Some bands are wider than others. The width of a performance band reflects the precision of measurement: narrower bands indicate greater precision. The band width for a given content area is the same for all examinees. An asterisk indicates that your performance band extends beyond the displayed portion of the scale. Small differences in the location of bands should not be over-interpreted. If two bands overlap, performance in the associated areas should be interpreted as similar. Because Step 1 is designed to be integrative, many items contribute to more than one content area. As a consequence, caution should be used when interpreting differences in performance across content areas.

This profile should not be compared to those from other Step 1 administrations.

CONFIDENTIAL Additional information concerning the topics covered in each content area can be found in the *USMLE Step 1 Content Description and Sample Test Materials.*



August 18, 2015

Elizabeth Black
3211 W. Swann Ave, Apt 1111
Tampa, FL 33612

Dear Ms. Black:

The Academic Performance Review Committee (APRC) met on August 13, 2015, to review your current status in the Morsani College of Medicine MD Program. The Committee was informed that you recorded a failing score on your third and final sponsored attempt at USMLE Step I. However, the Committee was also informed that you are appealing the previous decision of the National Board of Medical Examiners (NBME) to deny testing accommodations for Step I.

Immediately upon receipt of the NBME's decision regarding your testing accommodations request, you must notify the Associate Dean for Student Affairs, Dr. Kira Zwygart. You will remain on leave of absence pending the receipt of the NBME's decision.

You must sign this letter indicating your receipt and return it within ten (10) working days of receipt. A postage-paid envelope has been provided for your convenience.

A copy of the Medical Student Advancement Policies, Procedures and Due Process is available online on the Student Affairs website at https://documents.health.usf.edu/display/MCOM/MD+Student+Handbook. You are advised to review these policies and note the procedures regarding APRC actions. If you require assistance or advice in any regard, please contact Dr. Kira Zwygart, Associate Dean for Student Affairs at 974-2068. If I can help you in any way, please feel free to contact me.

Sincerely,

Bryan Boghan, MD, MPH, FACP
Chair, Academic Performance Review Committee
Vice Dean for Educational Affairs
Morsani College of Medicine

cc:  Kira Zwygart, MD, Associate Dean for Student Affairs
     Marrissa Cook, MA, Registrar
     Michelle Williamson, Director of Financial Aid

Signed: _____     Date: 8/28/15



**UNIVERSITY OF SOUTH FLORIDA**

*Students with Disabilities Services*
*Application for Accommodations and Services*

**Dear Student,**
We welcome students with disabilities to USF and offer the following information to assist you with the transition to the University. The Students with Disabilities Services provides academic accommodations and services for students with disabilities. Complete the student information below and send any available supporting documentation of your disability/need for accommodations to Students with Disabilities Services (SDS) prior to scheduling an intake appointment. If supporting documentation is not available, contact SDS for assistance.

**Student Information**

Last Name _Black_

First Name _Elizabeth_     Middle Name _Ann_

USF ID# _U34264740_     Date of birth: ████████

Gender: ☐ M  ☒ F  ☐ Other

Telephone (_609_) _306-8808_     Cell phone (____)_____

USF Email Address _eblack1@health.usf.edu_  USF NetID _eblack1_

Street Address _10420 N. McKinley Dr., Apt. 9302_

City, State ZIP _Tampa, FL 33612_

Major and/or Program _Medicine_     College _College of medicine_

☐ Freshman  ☐ Sophomore  ☐ Junior  ☐ Senior  ☐ Graduate  ☒ Medical  ☐ Non-degree seeking

**Are you a current USF Student?**
☒ Yes     ☐ No, I'll be enrolling: ☐ Fall 20___  ☐ Spring 20___  ☐ Summer 20___

**Check if applicable:**     ☐ Veteran  ☐ USF Athlete  ☐ Transfer Student

**What is the nature of your disability?**
☐ Hearing  ☐ Physical/Medical  ☐ Learning  ☐ Psychological  ☒ ADHD  ☐ Visual

Please describe your disability and how it affects you academically: _The ADHD affects my ability to concentrate and focus to complete exams in a timely manner._

Have you previously received accommodations and services? ☐ Yes  ☒ No

If yes, when and where did you receive services? _____

CONFIDENTIAL

2116 Imperial Golf Course Blvd.
Naples, FL 34110


April 12, 2013


Steven Specter, Ph.D.
Associate Dean for Student Affairs
Office of Student Affairs
University of South Florida Morsani College of Medicine
12901 Bruce B. Downs Blvd.
Tampa, FL 33612


Dear Dr. Specter:


As discussed in our meeting on April 11, 2013, I will be delaying the start of my third year of
medical school by one month.  After taking the Step 1 exam at the end of May, I will start clinical
rotations on June 10, 2013.

I sincerely appreciate your time and understanding concerning this matter.


Best Regards,


Elizabeth Black

CONFIDENTIAL

KRM 119

2116 Imperial Golf Course Blvd.
Naples, FL 34110

May 18, 2013

Steven Specter, Ph.D.
Associate Dean for Student Affairs
Office of Student Affairs
University of South Florida Morsani College of Medicine
12901 Bruce B. Downs Blvd.
Tampa, FL 33612

Dear Dr. Specter:

As we have discussed, I will be delaying the start of my third year of medical school until July 8th.
At which point, I will resume my third year curriculum with Internal Medicine.  I will take the Step
1 exam at the end of June.

I sincerely appreciate your time and understanding concerning this matter.

Best Regards,

Elizabeth Black

CONFIDENTIAL

KRM 120

3211 W. Swann Ave.
Unit #1111
Tampa, FL 33609

February 6, 2014

Steven Specter, Ph.D.
Associate Dean for Student Affairs
Office of Student Affairs
University of South Florida Morsani College of Medicine
12901 Bruce B. Downs Blvd.
Tampa, FL 33612

Dear Dr. Specter:

I've taken your concerns about starting clinical rotations so close to the end of the year into consideration and agree that starting with the rest of the 2016 class will have the most favorable outcomes for me. I look forward to beginning third year in May!

I sincerely appreciate your time and understanding.

Best Regards,

Elizabeth Black

CONFIDENTIAL                                                                KRM 121

3211 W. Swann Ave.
Unit #1111
Tampa, FL 33609

May 16, 2014

Steven Specter, Ph.D.
Associate Dean for Student Affairs
Office of Student Affairs
University of South Florida Morsani College of Medicine
12901 Bruce B. Downs Blvd.
Tampa, FL 33612

Dear Dr. Specter:

Due to scheduling problems, as we have discussed, I will be delaying one month to take my Step 1 exam.  I plan to start with an elective rotation on June 9th, after which I will continue with my normal schedule.

I sincerely appreciate your time and understanding.

Best Regards,

Elizabeth Black

CONFIDENTIAL

KRM 122

3211 W. Swann Ave.
Unit #1111
Tampa, FL 33609

November 19, 2014

Kira Zwygart, MD
Associate Dean of Student Affairs Associate Professor, Family Medicine
University of South Florida Morsani College of Medicine
12901 Bruce B. Downs Blvd.
Tampa, FL 33612

Dear Dr. Zwygart:

Per our discussion, hopefully, I will be delaying one additional month to take my Step 1 exam as I await approval for special time accommodations from the NBME. At which point, I would like to join the two-month schedule and complete Maternal/Newborn/Peds and Primary Care during January-April.

Additionally, we did discuss the possibility of starting an elective on November 24th, so that I could minimize the number of months I delay. I appreciate your consideration of this atypical request.

Thank you in advance for your time and understanding.

Best Regards,

Elizabeth Black

CONFIDENTIAL

KRM 123

12/16/2014

MCAT THx





1083758    5-293-137-5
MCAT-Test Scores (MCAT, G

MCAT® is a program of the
Association of American Medical Colleges

CONFIDENTIAL

**Name:** BLACK, ELIZABETH ANN
**AAMC ID:** 12849523
**Date of Birth:**
**Gender:** Female
**Verification Code:** OJEJ-GQRM-F7F8-QWF7

2 MCAT exam(s) since 1991. 2 MCAT exam(s) included in this report.

| Test Date | 09/12/2009 | Score | Percentile |
|---|---|---|---|
| Scores: | Verbal Reasoning | 08 | 37.9 - 52.7 |
| | Physical Sciences | 10 | 70.8 - 81.9 |
| | Writing Sample | O | 44.2 - 57.3 |
| | Biological Sciences | 11 | 77.0 - 89.1 |
| | Total Score | 290 | 69.6 - 75.2 |

| Test Date | 04/18/2009 | Score | Percentile |
|---|---|---|---|
| Scores: | Verbal Reasoning | 07 | 27.2 - 37.8 |
| | Physical Sciences | 07 | 25.3 - 43 |
| | Writing Sample | N | 35.2 - 44.1 |
| | Biological Sciences | 08 | 26.1 - 41.7 |
| | Total Score | 22N | 28.4 - 33.3 |

Please go to https://services.aamc.org/mcat_verify/ to verify the scores on this report.

This report will no longer be able to be verified after 03/16/2015.

Score legend

H or HD - scores are currently on hold.

C or CD - scores have been cancelled.

D or DD - scores have been deleted.

© 1995-2014 AAMC

RECEIVED

DEC 1 7 2014

Disability Services





## CONFIDENTIAL
## PSYCHOEDUCATIONAL EVALUATION

*The information in this report is privileged and confidential and should be used for professional purposes only.*

### IDENTIFYING INFORMATION:
Name:  Elizabeth Black
Client Number:  5796
Date of Birth:
Clinician:  Megan McMurray, M.A.
Supervisor:  Margaret Booth-Jones, Ph.D.
Date of Evaluation:  10/9/2014
Date of Report:  10/21/2014

**RECEIVED**

**NOV 2 6 2014**

**Disability Services**

### REASON FOR REFERRAL:
Elizabeth Black, a right-handed 31-year-old Caucasian female, was referred to the University of South Florida (USF) Psychological Services Center (PSC) by Dr. Feldman at the USF Counseling Center (USF CC). Ms. Black is seeking an ADHD evaluation to update her diagnosis documentation so that she may continue receiving her psychostimulant medication from the USF CC. Ms. Black's chief academic complaints are distractibility, forgetfulness, and difficulty paying attention.

### HISTORY OF PRESENTING PROBLEMS:
Ms. Black is a third-year medical student at USF who lives with a roommate in Tampa, FL. She reported that she was diagnosed with ADHD by a psychiatrist in 2009 after presenting with difficulty focusing while studying for the MCAT. Due to recent policy changes at the USF CC, Ms. Black requires updated documentation to continue receiving psychiatric services for ADHD. She is currently prescribed 40 mg of Vyvanse daily, which she takes regularly, and 10 mg of Adderall as needed, which she takes very rarely and only when she needs to study for long periods of time. She reported that Vyvanse works effectively for her for about 8-10 hours, and that she takes Adderall only if she needs to study for more than 8-10 hours at a time. She reported that she has tried Ritalin and Concerta in the past with little or no benefit. Ms. Black has also received academic accommodations for ADHD, including extended time on exams and the option to take her exams in a quiet testing environment. Ms. Black reported that she utilizes the time and a half accommodation for her medical school exams but refuses accommodations on national standardized tests (e.g., the MCAT) because she does not want to share her private medical information or be "singled out." She reported that she has not utilized her quiet testing accommodation for her medical school exams because she does not want her accommodations to be obvious to her peers.

Ms. Black reported a lifetime history of difficulty with concentration and staying focused. When she was younger, she reported that she took longer to complete her work than her peers, and that

**CONFIDENTIAL**

PSYCHOLOGICAL SERVICES CENTER • DEPARTMENT OF PSYCHOLOGY
University of South Florida • 4202 East Fowler Avenue, PCD1100 • Tampa, FL 33620
(813) 974-2496 • Fax (813) 974-9184

**KRM 125**
1

she had to re-read whole pages in textbooks several times in order to retain the information. While an undergraduate at Princeton University, she reported spending "hours and hours" in the library "without getting anything accomplished." She reported that she has always been high functioning and that structure has always been beneficial in helping her succeed academically; she noted that she performed well in high school and in her post-baccalaureate program at the University of Pennsylvania because they were both very structured, but she did not perform as well in college because of the lack of structure. Ms. Black reported that she sometimes experiences negative side effects from taking her ADHD medications, specifically an increase in anxiety, but that it is very difficult for her to focus and complete her work when she does not take her medication. She noted that she would like to continue taking her ADHD medications until she is finished with medical school.

**PSYCHIATRIC HISTORY:**
Ms. Black reported that she saw a therapist for a few sessions in 2009 due to difficulty studying for the MCAT. The therapist eventually referred Ms. Black to a psychiatrist who diagnosed her with ADHD; Ms. Black initiated psychostimulant medication at that time. Since coming to USF's medical school in 2011, Ms. Black been treated for ADHD by a psychiatrist at the USF CC. Dr. Feldman. Ms. Black also reported seeing a psychologist at the USF CC to learn skills to help her achieve and maintain a work/life balance. She reported that her mood has been "good" lately and denied any significant problems with her mood in the past. She denied a history of psychiatric hospitalization, self-injurious behavior, and suicidal and/or homicidal ideation.

**MEDICAL HISTORY:**
Ms. Black reported that her physical health is "good." She reported that she has not been treated for any major medical illnesses. She reported taking 40 mg of Vyvanse daily and 10 mg of Adderall as needed for her ADHD symptoms. She started taking 10 mg of Lexapro daily 3 months ago due to increased anxiety about taking an important benchmark exam. She also reported taking 0.5 mg of Klonopin as needed for test-related anxiety, but noted that she does not have a current prescription for that medication. Ms. Black reported taking Zyrtec and using rosacea creams for allergy-related concerns. She denied the use of any over-the-counter supplements. She denied a history of head injury and/or loss of consciousness. She reported that her energy level has been "normal" lately. She reported sleeping about 7 hours on an average night except during weeks that she has exams. Ms. Black reported a "normal" appetite and reported that she is currently 5'9" and about 140 lbs. She reported drinking alcohol about 2-3 times a week, consuming 1-2 drinks per typical occasion. She denied the use of tobacco and recreational drugs.

**DEVELOPMENTAL HISTORY:**
Ms. Black has a twin brother and was born approximately 4 weeks premature via Cesarean delivery due to a breach presentation. She reported having mumps as a child but denied any other major childhood illnesses. Ms. Black reported that she did not talk much as a child but had her twin brother talk for her, noting that they had their own "twin language." She denied any other delays in achieving developmental milestones.

RECEIVED
NOV 26 2014
Disability Services

CONFIDENTIAL

**SOCIAL/FAMILY HISTORY:**

Ms. Black reported that she was born near Philadelphia, PA, and she moved to Florida in 2009 for medical school. She currently lives in an apartment in Tampa with her roommate of three years and noted that they "get along well." Ms. Black is single and she has no children. She reported having a "good" social support network of friends and family members. Ms. Black has a twin brother, two older brothers, and parents who are all "very supportive." When Ms. Black has spare time, she enjoys playing sports, watching movies, reading, and learning new things. Ms. Black reported that taking her Step 1 benchmark exam at the end of October 2014 and financial stressors are her greatest concerns at this time. Ms. Black reported that she is considering a career in OB/GYN, emergency medicine, or internal medicine.

**BEHAVIORAL OBSERVATIONS/MENTAL STATUS EXAMINATION:**

Ms. Black completed the clinical interview and all testing in one session. She presented 20 minutes late for our appointment due to difficulty finding the clinic, but she called to notify this provider that she would be late. Ms. Black presented to the clinic alone and was dressed casually with appropriate hygiene. She appeared her stated age, height, and weight. She presented as a polite and pleasant woman. She appeared comfortable interacting with the examiner and rapport was readily established. Eye contact was good. Speech was normal in rhythm, articulation, rate, and spontaneity, but slightly excessive in quantity. Thought processes were slightly tangential and disorganized, but Ms. Black responded well to redirection. There was no evidence of looseness of associations, thought disorder, delusions or obsessions. She demonstrated no evidence of overt psychosis and did not appear to be responding to any internal stimuli. Ms. Black denied auditory and visual hallucinations. Affect was broad and changed with the flow of conversation. Ms. Black laughed somewhat inappropriately at times and appeared to use humor to deflect from uncomfortable topics of conversation. There was some evidence of psychomotor agitation and inattention (e.g., tapping her foot, biting her nails, adjusting her clothing frequently, moving around in her chair, tangential speech). Ms. Black did not appear to be in acute distress and verbally denied suicidal and homicidal ideation.

Ms. Black appeared sensitive to the nature of the tasks and the level of difficulty of the tasks. She reported feeling relieved when a task was untimed, and she took a notably long time to complete untimed tasks. Ms. Black struggled to sustain attention and was easily distracted throughout the testing, talking out loud about various items and asking several questions that the examiner could not answer due to the nature of the testing. She also appeared to have some difficulty with restlessness and impulsivity during the testing, interjecting irrelevant personal anecdotes during some of the subtests. However, Ms. Black was highly cooperative during the testing. No problems with initiation and persistence were observed. She worked diligently throughout the testing and persevered with all tasks. On the basis of these behavioral observations, this assessment appears to be a valid measure of Ms. Black's functioning at this time. Of note, Ms. Black was not medicated during our testing, thus measures of intellectual ability are likely underestimates of her true intellectual ability.

**ASSESSMENT BATTERY:**
Clinical Interview
Beck Anxiety Inventory (BAI)
Beck Depression Inventory – Second Edition (BDI-II)

**RECEIVED**

**NOV 26 2014**

**Disability Services**

CONFIDENTIAL

KRM 127
3

Conners' Adult ADHD Rating Scales – Self report: Long Version (CAARS – S:L)
Conners' Continuous Performance Test-II (CPT-II)
Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV)
-Subtests 1-10 (Standard Battery)

## ASSESSMENT RESULTS AND INTERPRETATIONS:

### Psychosocial Functioning

The Beck Depression Inventory – Second Edition (BDI-II) and the Beck Anxiety Inventory (BAI) were administered to assess Ms. Black's current depression and anxiety symptoms. Ms. Black's score on the BDI-II was 3, indicating minimal depressive symptoms in the two weeks prior to our session. Her score on the BAI was 3, indicating minimal anxiety symptoms in the week prior to our session. Ms. Beck's score on the BAI is likely an underestimate of the anxiety she feels prior to exams, as she reported high levels of anxiety during the week of a scheduled exam.

RECEIVED

NOV 26 2014

Disability Services

### Intellectual Ability

The Wechsler Adult Intelligence Scale – 4th Edition (WAIS-IV) was administered in order to assess Ms. Black's general intellectual abilities. Her index and subtest scores are displayed in the tables below. On the WAIS-IV, index scores have a mean of 100 and a standard deviation of 15. Subtest scores have a mean of 10 and a standard deviation of 3.

Ms. Black's General Ability Index (GAI) is an estimate of her general intellectual abilities. Her GAI of 127 is in the superior range. The percentile rank associated with this score is 96, indicating that Ms. Black's GAI is higher than 96% of her same-age peers. The GAI is comprised of two composite scales that reflect different areas of functioning: the Verbal Comprehension Index (VCI) and the Perceptual Reasoning Index (PRI).

The VCI is thought to be a measure of crystallized intelligence ($Gc$), or of one's ability to work with previously acquired information. This type of intelligence is usually gained via formal education and other informal learning opportunities, including through cultural transmission. Overall, Ms. Black's performance on verbal comprehension tasks is very superior (VCI; SS = 132; 98th percentile). The types of tasks that Ms. Black completed to demonstrate her $Gc$ included describing similarities between concrete and abstract concepts (Similarities; ss = 16; 98th percentile), defining vocabulary words (Vocabulary; ss = 16; 98th percentile), and answering general information questions (Information; ss = 14; 91st percentile). Both the Similarities and Vocabulary subtests emerged as statistically significant personal and normative strengths for Ms. Black, indicating that her abstract verbal reasoning and her ability to comprehend and verbally express vocabulary are very well developed.

The PRI is a reflection of Ms. Black's ability to reason with nonverbal, visual stimuli, including the ability to analyze and synthesize abstract visual stimuli. Ms. Black's performance on perceptual reasoning tasks is high average (PRI; SS = 117; 87th percentile). Perceptual reasoning tasks Ms. Black completed included arranging red and white blocks to look like pictures (Block Design; ss = 13; 84th percentile), identifying the composite pieces of different shapes (Matrix Reasoning; ss = 11; 63rd percentile), and selecting pictures that complete a pattern (Visual Puzzles; ss = 15; 95th percentile).

CONFIDENTIAL

The Working Memory Index (WMI) is a summary of Ms. Black's ability to hold multiple pieces of information in memory at the same time and to solve problems using that information. Ms. Black's WMI score is average (SS = 105; 63rd percentile). Tasks in this area require examinees to repeat strings of numbers, repeat them backward, and rearrange them in numerical order (Digit Span; ss = 9; 37th percentile) and solve word problems in one's head (Arithmetic; ss = 13; 84th percentile). Ms. Black's Digit Span subtest score reflects a statistically significant personal weakness. On this task, she demonstrated relative weakness in auditory short-term memory and auditory sequential processing. Ms. Black performed significantly better on the Arithmetic subtest, which requires auditory memory, facility with numbers, and numerical reasoning ability. When individuals perform more effectively on the Arithmetic Subtest than on Digit Span subtest, it is often the case that these individuals find it much easier to manipulate and work with information that is posed in the context of a real-life problem than with information that is presented as a random series of numbers and letters that lack any context that might aid in initial registration and manipulation efforts. Although Ms. Black's working memory is average when compared to that of her same-aged peers, it is less developed than her verbal and perceptual reasoning abilities, and emerges as a relative weakness.

The PSI is a summary of processing speed (Gs), or Ms. Black's ability to complete simple tasks quickly. Overall, Ms. Black's performance on processing speed tasks is average (PSI; SS = 108; 70th percentile). Activities that contribute to this score include searching for a symbol among an array (Symbol Search; ss = 13; 84th percentile), and quickly copying symbols corresponding to numbers (Coding; ss = 10; 50th percentile). Ms. Black's performance on the Coding subtest represents a statistically significant personal weakness. Coding requires visual-motor coordination, motor and mental speed, and visual working memory, and these results demonstrate that Ms. Black has relative weakness in these areas. Although Ms. Black's processing speed is average when compared to that of her same-aged peers, it is less developed than her verbal and perceptual reasoning intellectual abilities and emerges as a relative weakness.

RECEIVED
NOV 26 2014
Disability Services

### Wechsler Adult Intelligence Scale--Fourth Edition (WAIS--IV)
#### Results Overview

| Scale | Standard Score | 95% Confidence Interval | Percentile Rank | Qualitative Description |
|---|---|---|---|---|
| General Ability Index (GAI) | 127 | 121-131 | 96 | Superior |
| Verbal Comprehension Index | 132 | 125-136 | 98 | Very Superior |
| Perceptual Reasoning Index | 117 | 110-122 | 87 | High Average |
| Working Memory Index | 105 | 98-111 | 63 | Average |
| Processing Speed Index | 108 | 96-116 | 70 | Average |

### Verbal Comprehension Core Subtest Scores

| Subtest | Scaled Score | Percentile Rank | Qualitative Description |
|---|---|---|---|
| Similarities | 16 | 98 | Very Superior |
| Vocabulary | 16 | 98 | Very Superior |
| Information | 14 | 91 | High Average |

CONFIDENTIAL                                                    KRM 129

**Perceptual Reasoning Core Subtest Scores**

| Subtest | Scaled Score | Percentile Rank | Qualitative Description |
|---|---|---|---|
| Block Design | 13 | 84 | High Average |
| Matrix Reasoning | 11 | 63 | Average |
| Visual Puzzles | 15 | 95 | Superior |

**Working Memory Core Subtest Scores**

| Subtest | Scaled Score | Percentile Rank | Qualitative Description |
|---|---|---|---|
| Digit Span | 9 | 37 | Average |
| Arithmetic | 13 | 84 | High Average |

**Processing Speed Core Subtest Scores**

| Subtest | Scaled Score | Percentile Rank | Qualitative Description |
|---|---|---|---|
| Symbol Search | 13 | 84 | High Average |
| Coding | 10 | 50 | Average |

*Attention/Concentration*

Connors' Adult ADHD Rating Scales (self-report and observer versions) were used to gather information about Ms. Black's reported inattention symptoms. Collection of scores from an examinee and a collateral allows for comparison of an individual's self-concept to outside observation of an examinee's behavior. Ms. Black completed the CAARS-S:L and her roommate of three years (with whom she currently lives) completed the CAARS-O:L. Responses on the CAARS are compiled into eight subscales, reflecting factors that could produce ADHD-like symptoms, major components of ADHD, and DSM-IV ADHD symptoms. $T$-scores are used to compare responses on the CAARS to established norms. $T$-scores have an average of 50 and a standard deviation of 10; scores at or above 70 are considered clinically elevated.

RECEIVED
NOV 26 2014
Disability Services

Ms. Black's responses on the CAARS-S:L resulted in clinically significant elevations on the Inattention/Memory Problems scale ($T = 73$), the Hyperactivity/Restlessness scale ($T = 73$) the Impulsivity/Emotional Lability scale ($T = 70$), the DSM-IV Inattentive Symptoms scale ($T = 78$), the DSM-IV Hyperactive-Impulsive Symptoms Scale ($T = 77$), the DSM-IV ADHD Symptoms Total scale ($T = 82$), and the ADHD Index Scale ($T = 75$). Responses on the CAARS-O:L completed by Ms. Black's roommate closely mirrored Ms. Black's responses, confirming Ms. Black's self-reported difficulties with inattention, hyperactivity, and impulsivity.

Together, the CAARS-S:L and CAARS-O:L support Ms. Black's self-reported difficulty with focus and attention, and offer support for clinically significant ADHD symptoms. Further behavioral testing was undertaken to gather additional information about Ms. Black's inattention difficulties.

Connors' Continuous Performance Test-II (CPT-II) was administered to Ms. Black to assess her attention/concentration ability. The CPT-II is a computer-based assessment of attention

**CONFIDENTIAL**

disorders and neurological functioning. Results from the CPT-II can explicate the presence and nature of attention deficits, and identify problems with impulsiveness, arousal, and vigilance. The CPT-II presents individual letters at varying intervals on a computer screen and asks individuals to press a keyboard or mouse button in response to every letter presented except "X." This allows for analysis of individuals' response time, ability to inhibit inappropriate responses (i.e. not respond to "X"), and ability to attend to changes in inter-stimulus intervals and adapt response patterns accordingly.

The current administration findings do not indicate timing difficulties or non-compliance, suggesting that the current administration should be considered valid. Overall, Ms. Black's CPT-II profile suggests the presence of ADHD with significant problems with inattention, impulsivity, and vigilance. Ms. Black's CPT-II Clinical Confidence Index is 60.5%, indicating that her results better match a clinical than non-clinical profile, or that the chances are 60.5 out of 100 that a clinically significant problem with ADHD exists. Ms. Black made 20 commissions (responses to non-targets), which is substantially higher than the average of the normative group and indicates problems with inattention. Ms. Black's reaction times were substantially more variable than the normative group average, indicating that her reaction times were highly inconsistent. She had a high number of perseverations, which is indicative of impulsivity. She demonstrated increasingly slower reaction times as the administration progressed and became much less consistent (relative to the norm) as the administration progressed, indicating poor vigilance. In summary, Ms. Black's overall performance is consistent with patterns typically observed in ADHD populations.

RECEIVED

NOV 2 6 2014

Disability Services

**CONCLUSIONS:**
Elizabeth Black, a right-handed 31-year-old Caucasian female, was referred to the University of South Florida (USF) Psychological Services Center (PSC) by Dr. Feldman at the USF Counseling Center (USF CC). Ms. Black is seeking an ADHD evaluation to update her diagnosis documentation so that she may continue receiving her psychostimulant medication from the USF CC. Ms. Black's chief academic complaints are distractibility, forgetfulness, and difficulty paying attention. Ms. Black has a lifetime history of difficulty with attention, concentration, and impulsivity. She was previously diagnosed with ADHD by a psychiatrist in 2009 and has been receiving psychostimulant medication since that time. Dr. Feldman at the USF CC currently handles her medication management, but due to recently policy changes Ms. Black must update her ADHD diagnosis documentation in order to continue receiving her medication.

Findings from this assessment are consistent with result patterns that typically indicate clinically significant attention problems. Specifically, Ms. Black's pattern of performance in the current assessment, while unmedicated, is indicative of ADHD. Ms. Black currently takes 40 mg of Vyvanse a day and 10 mg of Adderall as needed, and reported good benefit from her medications. Ms. Black reports symptoms indicative of ADHD symptomology, and the current assessment supports a diagnosis of ADHD. Her self-report and her roommate's report were corroborated by her performance on the CPT-II, which indicated problems with inattention, impulsivity, and vigilance. Her overall pattern of testing results, were also typical of an ADHD population, as they indicated relative weakness in working memory and processing speed. Ms.

Black also exhibits problems with anxiety a result of her academic difficulties, which likely exacerbate her ADHD symptoms.

The results of this assessment indicate that Ms. Black meets DSM-5 criteria for ADHD with combined presentation (inattentive and hyperactive/impulsive presentation).

**DSM-5 DIAGNOSES:**
314.01          Attention deficit hyperactivity disorder with combined presentation

**RECOMMENDATIONS:**
It is hoped that the recommendations offered here will help foster continued success for Ms. Black:

1) Ms. Black should receive academic accommodations for ADHD (at her discretion). Specifically, Ms. Black should be allowed extended time for testing and quiet testing accommodations in all courses and standardized tests to maximize her ability to focus.

2) Ms. Black should continue to see her psychiatrist for pharmacological management of her ADHD and test-related anxiety symptoms.

3) Ms. Black reported some difficulty with anxiety symptoms. In addition to medication management with her psychiatrist, Ms. Black may benefit from Cognitive Behavioral Therapy (CBT) to help her identify automatic negative thoughts related to her academic performance and to learn behavioral skills to help her cope with symptoms of anxiety. Low-cost therapy services are available at the USF Psychological Services Center (PSC) in the Department of Psychology. A PSC Clinic Assistant can be reached at (813) 974-2496.

We appreciated the opportunity to work with Ms. Black. If you have any questions regarding the results of this report, please feel free to contact the University of South Florida Psychological Services Center at (813) 974-2496.


_IH. Mᶜ Nuuu_                              _Margaret Booth-Jones, PhD_
Megan V. McMurray, M.A.                     Margaret Booth-Jones, Ph.D.
Clinical Psychology Trainee                 Supervising Psychologist
                                            PY5406

**RECEIVED**
NOV 26 2014
**Disability Services**

CONFIDENTIAL                                                    KRM 132

8

# Exhibit G

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



KRM 165

1005719    5-283-137-5
Exhibit G- Psych. Record

mailed → 6/11/13

# ASHLEY VIGIL-OTERO, PSY. D., LLC

2715 WEST SLIGH AVENUE · TAMPA, FLORIDA 33614 · PH 813-932-3469 · FX 813-933-8214 · WWW.DRASHLEYVIGIL.COM

## RECORD OF PSYCHOLOGICAL SERVICE

Patient Name:  Elizabeth Black

Dates of Service: 6/10/13

DSM Code: 314.00

Location Code: 11

CPT Code:     90791

RECEIVED

JAN 2 1 2016

Disability Services

☑ 90791 Initial Interview
☐ 90832 Psychotherapy, 30 minutes
☐ 90834 Psychotherapy, 45 minutes
☐ 90837 Psychotherapy, 60 minutes
☐ 90846 Family therapy without patient present
☐ 90847 Family therapy with patient present
☐ 96101 Psychological Testing with written report

Private Health Information is protected by HIPAA and the regulations of the State of Florida.

| RECEIPT OF PSYCHOLOGICAL SERVICES | |
|---|---|
| Fee for Service | $140.00 |
| Amount Received | $140.00 |
| Received From | Elizabeth Black |
| Payment | #1175 |

Claim for:
Elizabeth Black
ID #: 404-1207
Address: 10420 N. McKinley Dr., Apt. 9302,
Tampa, FL 33612
School: University of South Florida
Policy #: 2012-363-2

Ashley Vigil-Otero, Psy.D., LLC
2715 W. Sligh Avenue
Tampa, FL 33614
813-932-3469
Tax ID Number ▐▐▐▐▐
Florida License PY7979
NPI Number 1982806568

CONFIDENTIAL

KRM 166

mailed → 6/27/13

# ASHLEY VIGIL-OTERO, PSY. D. LLC
2715 WEST SLIGH AVENUE · TAMPA, FLORIDA 33614 · PH 813-932-3469 · FX 813-933-8214 · WWW.DRASHLEYVIGIL.COM

## RECORD OF PSYCHOLOGICAL SERVICE

Patient Name:  Elizabeth Black

Dates of Service: 6/26/13

DSM Code: 314.00

Location Code: 11

CPT Code:     90834
- ☐ 90791 Initial Interview
- ☐ 90832 Psychotherapy, 30 minutes
- ☐ 90834 Psychotherapy, 45 minutes
- ☐ 90837 Psychotherapy, 60 minutes
- ☐ 90846 Family therapy without patient present
- ☐ 90847 Family therapy with patient present
- ☐ 96101 Psychological Testing with written report

Private Health Information is protected by HIPAA and the regulations of the State of Florida.

| RECEIPT OF PSYCHOLOGICAL SERVICES |
| --- |

Fee for Service      $140.00

Amount Received    $140.00

Received From      Elizabeth Black

Payment          #1176

Claim for:
Elizabeth Black
ID#: 4041207
Address: 10420 N. McKinley Dr.,
Apt. 9302, Tampa, FL 33612
School: University of South Florida
Policy#: 2012-363-2

Ashley Vigil-Otero, Psy.D., LLC
2715 W. Sligh Avenue
Tampa, FL 33614
813-932-3469
Tax ID Number ▓▓▓▓
Florida License PY7979
NPI Number 1982806568

CONFIDENTIAL

KRM 167

# ASHLEY VIGIL-OTERO, PSY. D., LLC

COPY

2715 WEST SLIGH AVENUE · TAMPA, FLORIDA 33614 · PH 813-932-3469 · FX 813-933-8214 · WWW.DRASHLEYVIGIL.COM

## RECORD OF PSYCHOLOGICAL SERVICE

*mailed 7/25 w/ invoice from 7/18 CPT Code 90834 $140 #1178*

Patient Name: Elizabeth Black

Dates of Service: 7/24/13

DSM Code: 314.00

Location Code: 11

CPT Code:   90834

- [ ] 90791 Initial Interview
- [ ] 90832 Psychotherapy, 30 minutes
- [x] 90834 Psychotherapy, 45 minutes
- [ ] 90837 Psychotherapy, 60 minutes
- [ ] 90846 Family therapy without patient present
- [ ] 90847 Family therapy with patient present
- [ ] 96101 Psychological Testing with written report

Private Health Information is protected by HIPAA and the regulations of the State of Florida.

| RECEIPT OF PSYCHOLOGICAL SERVICES | |
|---|---|
| Fee for Service | $140.00 |
| Amount Received | $140.00 |
| Received From | Elizabeth Black |
| Payment | #1179 |

*claim for:
E. Black
ID#: 4of1207
Address #: 3211 W Swann Ave
111
1, FL 33609
School: Univ. & FL
Policy: 2012-368-2*

Ashley Vigil-Otero, Psy.D., LLC
2715 W. Sligh Avenue
Tampa, FL 33614
813-932-3469
Tax ID Number ▮▮▮▮
Florida License PY7979
NPI Number 1982806568

CONFIDENTIAL

KRM 168

# ASHLEY VIGIL-OTERO, PSY. D, LLC

2715 WEST SLIGH AVENUE · TAMPA, FLORIDA 33614 · PH 813-932-3469 · FX 813-933-8214 · WWW.DRASHLEYVIGIL.COM

## RECORD OF PSYCHOLOGICAL SERVICE

Patient Name:  Elizabeth Black

Dates of Service: 7/31/13

DSM Code: 314.00

Location Code: 11

CPT Code:  · 90834

- ☐ 90791 Initial Interview
- ☐ 90832 Psychotherapy, 30 minutes
- ☑ 90834 Psychotherapy, 45 minutes
- ☐ 90837 Psychotherapy, 60 minutes
- ☐ 90846 Family therapy without patient present
- ☐ 90847 Family therapy with patient present
- ☐ 96101 Psychological Testing with written report

*claim mailed on 8/1*

Private Health Information is protected by HIPAA and the regulations of the State of Florida.

| RECEIPT OF PSYCHOLOGICAL SERVICES | |
|---|---|
| Fee for Service | $140.00 |
| Amount Received | $140.00 |
| Received From | Elizabeth Black |
| Payment | #1180 |

Elizabeth Black
ID#: 404 1207
Policy #: 2012-303-2
address: 3211 W Euannive
Unit 1111
Tampa, FL 33609.
school: Univ. of South FL

Ashley Vigil-Otero, Psy.D., LLC
2715 W. Sligh Avenue
Tampa, FL 33614
813-932-3469
Tax ID Number ▇▇▇▇
Florida License PY7979
NPI Number 1982806568

CONFIDENTIAL

KRM 169

# ASHLEY VIGIL-OTERO, PSY. D. LLC

2715 WEST SLIGH AVENUE · TAMPA, FLORIDA 33614 · PH 813-932-3469 · FX 813-933-8214 · WWW.DRASHLEYVIGIL.COM

## RECORD OF PSYCHOLOGICAL SERVICE

Patient Name:  Elizabeth Black

Dates of Service: 8/7/13

*Mailed 8/7 or 8/8*

DSM Code: 314.00

Location Code: 11

CPT Code:     90834

- [ ] 90791 Initial Interview
- [ ] 90832 Psychotherapy, 30 minutes
- [x] 90834 Psychotherapy, 45 minutes
- [ ] 90837 Psychotherapy, 60 minutes
- [ ] 90846 Family therapy without patient present
- [ ] 90847 Family therapy with patient present
- [ ] 96101 Psychological Testing with written report

Private Health Information is protected by HIPAA and the regulations of the State of Florida.

| RECEIPT OF PSYCHOLOGICAL SERVICES | |
|---|---|
| Fee for Service | $140.00 |
| Amount Received | $140.00 |
| Received From | Elizabeth Black |
| Payment | #1177 |

*Claim for:*
*Elizabeth Black*
*ID#: 4041287*
*Policy#: 2012-3363-2*
*Address: 3211 U. —*
*Confidential: Univ. S. FL.*

Ashley Vigil-Otero, Psy.D., LLC
2715 W. Sligh Avenue
Tampa, FL 33614
813-932-3469
Tax ID Number ███████
Florida License PY7979
NPI Number 1982806568

KRM 170

# ASHLEY VIGIL-OTERO, PSY. D, LLC

2715 WEST SLIGH AVENUE · TAMPA, FLORIDA 33614 · PH 813-932-3469 · FX 813-933-8214 · WWW.DRASHLEYVIGIL.COM

## RECORD OF PSYCHOLOGICAL SERVICE

Patient Name:  Elizabeth Black

Dates of Service: 8/14/13

DSM Code: 314.00

Location Code: 11

CPT Code:    **90834**

- ☐ 90791 Initial Interview
- ☐ 90832 Psychotherapy, 30 minutes
- ☑ 90834 Psychotherapy, 45 minutes
- ☐ 90837 Psychotherapy, 60 minutes
- ☐ 90846 Family therapy without patient present
- ☐ 90847 Family therapy with patient present
- ☐ 96101 Psychological Testing with written report

*mailed 8/14/13*

Private Health Information is protected by HIPAA and the regulations of the State of Florida.

| RECEIPT OF PSYCHOLOGICAL SERVICES |
| --- |

Fee for Service      $140.00

Amount Received    $140.00

Received From       Elizabeth Black

Payment             #1181

Ashley Vigil-Otero, Psy.D., LLC
2715 W. Sligh Avenue
Tampa, FL 33614
813-932-3469
Tax ID Number ███████
Florida License PY 7979
NPI Number 1982806568

**CONFIDENTIAL**

KRM 171

# ASHLEY VIGIL-OTERO, PSY. D. LLC

2715 WEST SLIGH AVENUE · TAMPA, FLORIDA 33614 · PH 813-932-3469 · FX 813-933-8214 · WWW.DRASHLEYVIGIL.COM

*Mailed → 11/15/13*

## RECORD OF PSYCHOLOGICAL SERVICE

Patient Name:  Elizabeth Black

Dates of Service: 8/21/13

DSM Code: 314.00

Location Code: 11

CPT Code:   90834

- [ ] 90791 Initial Interview
- [ ] 90832 Psychotherapy, 30 minutes
- [x] 90834 Psychotherapy, 45 minutes
- [ ] 90837 Psychotherapy, 60 minutes
- [ ] 90846 Family therapy without patient present
- [ ] 90847 Family therapy with patient present
- [ ] 96101 Psychological Testing with written report

Private Health Information is protected by HIPAA and the regulations of the State of Florida.

| RECEIPT OF PSYCHOLOGICAL SERVICES |
| --- |

Fee for Service      $140.00

Amount Received    $140.00

Received From      Elizabeth Black

Payment          #1185

*Class for:*
*E. Black*
*ID# 4047207*
*Address: 3211 W Swann Ave*
*Unit 1111, Tampa, FL 33609*
*School: Univ. of South FL*
*Policy #: 2013-363-2*

CONFIDENTIAL

Ashley Vigil-Otero, Psy.D., LLC
2715 W. Sligh Avenue
Tampa, FL 33614
813-932-3469
Tax ID Number ▮▮▮▮▮▮
Florida License PY7979
NPI Number 1982806568

KRM 172

*mailed →11|15|13*

# ASHLEY VIGIL-OTERO, PSY. D. LLC
2715 WEST SLIGH AVENUE · TAMPA, FLORIDA 33614 · PH 813-932-3469 · FX 813-933-8214 · WWW.DRASHLEYVIGIL.COM

## RECORD OF PSYCHOLOGICAL SERVICE

Patient Name: Elizabeth Black

Dates of Service: 9/9/13

DSM Code: 314.00

Location Code: 11

CPT Code:     90834
- [ ] 90791 Initial Interview
- [ ] 90832 Psychotherapy, 30 minutes
- [x] 90834 Psychotherapy, 45 minutes
- [ ] 90837 Psychotherapy, 60 minutes
- [ ] 90846 Family therapy without patient present
- [ ] 90847 Family therapy with patient present
- [ ] 96101 Psychological Testing with written report

Private Health Information is protected by HIPAA and the regulations of the State of Florida.

| RECEIPT OF PSYCHOLOGICAL SERVICES |
|---|

Fee for Service       $140.00

Amount Received       $140.00

Received From         Elizabeth Black

Payment               #1185

*Claim for:*
*E. Black*
*ID#: 404207*
*Address: 3211 W Swann Ave.*
*Unit 111, Tampa, FL 33609*
*School: Univ. of South FL*
*Policy #: 2013-363-2*

CONFIDENTIAL

Ashley Vigil-Otero, Psy.D., LLC
2715 W. Sligh Avenue
Tampa, FL 33614
813-932-3469
Tax ID Number ███████
Florida License PY7979
NPI Number 1982806568

KRM 173

 **NBME***

1656724          5-293-137-5
denial-Decision Letter (a
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

<u>**Confidential**</u>

March 2, 2015

Elizabeth A. Black
2116 Imperial Golf Course Blvd
Naples, FL 34110

RE: USMLE Step 1                    USMLE ID#: 5-293-137-5

Dear Ms. Black:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. We conducted an individualized review of your request in accordance with the guidelines set forth in the Americans with Disabilities Act (ADA).

You report the basis of your request to be Attention-Deficit/Hyperactivity Disorder diagnosed in 2008-2009. You write in your personal statement, *"I have a lifetime history of difficulty with concentrating and staying focused...I was able to overcome my disability without diagnosis or medication as a child because I was in a highly structured school environment with supportive parents. This was again the case in my post-baccalaureate program – I lived at home and my schedule and classes were highly structured, facilitating my success...I was diagnosed with ADHD by Dr. Scott Fleischer in March of 2009. I sought treatment with Dr. Fleischer and received my eventual diagnosis as I was attempting to study for the MCAT. I began treatment with stimulants at this point and have continued them since."*

In an October 2014 report of Psychoeducational Evaluation conducted at the University of South Florida (USF) when you were a 31-year-old third year medical student at USF. Megan V. McMurray, M.A. and Margaret Booth-Jones, Ph.D. write that you were referred for evaluation by Dr. Feldman at the USF Counseling Center seeking an ADHD evaluation to continue receiving psychostimulant medication. Your evaluators write, *"Due to recent policy changes at the USF CC, Ms. Black requires updated documentation to continue receiving psychiatric services for ADHD. She is currently prescribed 40 MG of Vyvanse daily, which she takes regularly, and 10 mg of Adderall as needed. which she takes very rarely and only when she needs to study for long periods of time. She reported that Vyvanse works effectively for her for about 8-10 hours, and that she takes Adderall only if she needs to study for more than 8-10 hours at a time...Ms. Black reported that she utilizes the time and a half accommodation for her medical school exams but refuses accommodations on national standardized test (e.g., the MCAT)..."* Your evaluators conclude, *"Findings from this assessment are consistent with result patterns that typically indicate clinically significant attention problems. Specifically, Ms. Black's pattern of performance in the current assessment, while unmedicated, is indicative of ADHD."*

CONFIDENTIAL                                                      KRM 174

As you may know, ADHD is a neurodevelopmental disorder that begins in childhood and is defined by impairing levels of inattention, disorganization, and/or hyperactivity-impulsivity. Your documentation does not demonstrate a record of chronic and pervasive problems with inattention, impulsivity, behavioral regulation, or distractibility that impaired your functioning during your development or currently. No school records were provided to demonstrate impaired functioning with respect to attention, concentration, or organization that substantially limited a major life activity.

ADHD affects people over time and across situations, not in one circumscribed area such as timed test taking or in a demanding academic setting such as medical school. Manifestations of the disorder must be present in more than one setting. It must be documented beyond self-report that such symptoms have consistently and pervasively disrupted functioning in multiple behavioral domains. No objective data or documentation was provided via formal faculty/supervisor feedback, job performance evaluations, or through other sources of information verifying that you have shown pervasive problems managing daily demands for attention, organization or executive functioning.

As best one can tell from the documentation provided, you progressed through primary and secondary school without grade retention, special education evaluation or services and with an academic record and scores on timed standardized tests sufficient to gain admission to Princeton University and University of South Florida Morsani College of Medicine, all without accommodations. Regarding your performances on timed standardized tests, the records provided show that you earned an MCAT Total Score of 29O under standard conditions in 2009, better than 69.6-75.2% of a select group of medical school applicants. Overall, these data do not demonstrate impairments that limit a major life activity.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people or that additional testing time is an appropriate modification of your USMLE Step 1 test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

Sincerely,

*Catherine Farmer*

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

# Exhibit H

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL

1695728       5-293-137-8 RM 141
Exhibit H- Purchase Confi



Elizabeth Black <elizabeth.a.black@gmail.com>

## Becker Professional Education Customer Receipt/Purchase Confirmation
1 message

Automatic Email <usmleinfo@becker.com>                                          Fri, Jan 3, 2014 at 2:49 PM
To: William Black <elizabeth.a.black@gmail.com>

### Thank you for your order!

Order Information
Merchant:        Becker Professional Education
Description:      Dallas Jan 6 - No Hotel
Invoice Number:  VN

Billing Information                        Shipping Information
William Black
elizabeth.a.black@gmail.com

                                           Total:  US $3121.88

MasterCard
Date/Time:        3-Jan-2014 13:49:01 CST
Transaction ID:   5825224241

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL                                                                     KRM 142



United States Medical Licensing Examination® (USM
**Certification of Prior Test Accommodations**

Please type or print. To be completed and signed by medical school official responsible for student disability services.

Applicant Name: ELIZABETH BLACK USMLE ID#: 5-293-137-5

I certify that University of South FL has officially approved and continuously
<u>Name of School</u>

provided the following accommodations for the above applicant beginning on 3/2013
<u>Date (Month/Year)</u>

1. Accommodation(s) provided for **classroom and clinical coursework**:
   Time and ½ (1.5x) and reduced distraction for exams
   No other coursework accommodations

   Reason for accommodation(s): 314.01 ADHD

2. Accommodation(s) provided for **written exams**:
   Time and ½ and reduced distraction testing

   Reason for accommodation(s): 314.01 ADHD

3. Accommodation(s) provided for **clinical skills exams**:
   NONE

   Reason for accommodation(s): NONE

Name of School Official: DEBORAH A McCARTHY   Title: DIRECTOR
<u>Print Name of Official</u>                                              <u>Title of Official</u>
Signature of Official: Da McCarthy   Date: 11/21/14

Telephone Number: (813) 974-8135

Mail, fax, or e-mail completed form to:

Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3190
Telephone: (215) 590-9700
FAX: (215) 590-9422
E-mail: disabilityservices@nbme.org
Call or e-mail to verify receipt of Fax and mail submissions

**RECEIVED**
NOV 26 2014
**Disability Services**

CONFIDENTIAL                                              KRM 143



United States Medical Licensing Examination® (US. 1053070
5-293-137-5
CPTR-Testing Accommodatio

**Certification of Prior Test Accommodations**

Please type or print. To be completed and signed by medical school official responsible for student disability services.

Applicant Name: ELIZABETH BLACK USMLE ID#: 5-293137-5

I certify that University of Suth FL has officially approved and continuously
  Name of School
provided the following accommodations for the above applicant beginning on 3/2013
                                                                  Date (Month/Year)

1. Accommodation(s) provided for **classroom and clinical coursework**:
   Time ad 1/2 (1.5x) and reduced distraction for exams
   No other coursework accommodations

   Reason for accommodation(s): 314.01 ADHD

2. Accommodation(s) provided for **written exams**:
   Time ad 1/2 and reduced distraction testing

   **RECEIVED**

   Reason for accommodation(s): 314.01 ADHD          NOV 24 2014

3. Accommodation(s) provided for **clinical skills exams**:
   None                                              **Disability Services**

   Reason for accommodation(s): NONE

Name of School Official: DEBORAH A MCCARTHY    Title: DIRECTOR
                        Print Name of Official        Title of Official
Signature of Official: Da McCarthy           Date: 11/21/14

Telephone Number: (813) 974-8135

> **Mail, fax, or e-mail completed form to:**
>
> Disability Services
> National Board of Medical Examiners
> 3750 Market Street
> Philadelphia, PA 19104-3190
> Telephone: (215) 590-9700
> FAX: (215) 590-9422
> E-mail: disabilityservices@nbme.org
> Call or e-mail to verify receipt of Fax and mail submissions

CPTA 2011
**CONFIDENTIAL**

**KRM 144**





1083075   5-293-137-5
O'Callaghan, P 11/25/14-L

November 25, 2014

Dr. Catherine Farmer
Director of Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, Pennsylvania 19104-3102

Dear Dr. Farmer,

I write you in full support of Elizabeth Black, DOB ███████ a second year medical student at the University of South Florida Morsani College of Medicine (USF COM), who is requesting testing accommodations for USMLE Step 1.  In order to graduate from USF COM, our students must pass Step 1 and 2 of the USMLE.  Ms. Black is requesting special testing accommodations due to the clinically diagnosed disability, Attention Deficit Hyperactivity Disorder, Combined Presentation.

Ms. Black's disability impacts her everyday functioning by significantly extending the duration under which she can perform the major life activities of learning, memory and concentrating. Ms. Black is easily distracted and has difficulties controlling impulsive responses.  Her inability to block out distractions interferes with her ability to concentrate, especially while reading.  She also experiences difficulties organizing and completing tasks.  Therefore, the specific accommodations of 50% additional test time over two days, in a quiet room, are needed to mediate Ms. Black's functional capacity.  These accommodations will provide the necessary time to re-read passages, re-focus due to internal or external distractions and take breaks from the testing environment, resulting in a more accurate assessment of her knowledge and thinking abilities.

While enrolled in medical school, Ms. Black has received special testing accommodations which include: 1) testing in an environment free of distractions (i.e., written examinations isolated from others students), and 2) time and one-half testing time on formal written examinations.

This letter is to request that Ms. Black receive these special testing accommodations while sitting for her board examinations.  It is my belief that if provided this much needed accommodation, she will be successful in passing these examination requirements.  Should you require further information, please contact me at 813-974-5815. Thank you in advance for your cooperation and consideration.

Sincerely,

Pamela O' Callaghan, Ph.D

**RECEIVED**

**NOV 2 6 2014**

**Disability Services**

Pamela O'Callaghan, PhD
Director, Academic Support Center
Assistant Professor, Department of Family Medicine
pocallag@health.usf.edu

CONFIDENTIAL

KRM 145

# Exhibit I

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



1695721
Exhibit I- Jones, M. 8/25    5-283-137-5    KRM 150

August 25, 2015

**USF**
UNIVERSITY OF
SOUTH FLORIDA

To Whom It May Concern:

Ms. Elizabeth Black was evaluated at the USF Psychological Services Center in October 2014 for an evaluation of attention deficit hyperactivity disorder. She had been diagnosed with ADHD in 2009 and had been receiving treatment since that time. Results of the evaluation confirmed the diagnosis and she was formerly diagnosed with attention deficit hyperactivity disorder combined type. She was provided feedback and given copies of the evaluation which clearly delineated recommendations for treatment and accommodation.

Last month, Ms. Black contacted the USF Psychological Services Center and informed me that she had been denied accommodation for the United States Medical Licensing Examination (USMLE) Step 1 required for her to proceed with her medical residency program. She shared with me a copy of the denial letter. Ms. Black requested that I write a letter of support for her appeal.

Ms. Black was interviewed for approximately 30 minutes by telephone. She shared with me that she has taken the USMLE Step 1 three times and has failed the test three times. She stated she has never finished a section. She shared additional background information regarding her academic challenges secondary to ADHD through primary and secondary school. She stated that given her high intellectual ability she was able to compensate and achieve at a high level relative to her peers. She stated that she began experiencing clinically significant difficulties approximately 6 years ago resulting in the psychiatric diagnosis of ADHD and subsequent treatment. She shared this background information in the telephone interview to address one of the issues in the denial letter stating that the ADHD needed to be diagnosed in childhood. She stated her family was resistant to having her assessed as a child.

In addition to the secondary telephone interview, I reviewed the raw test materials and comprehensive report dated October 21, 2014. Ms. Black clearly meets diagnostic criteria for ADHD combined type and she has clinically significant and substantially limiting impairment that qualify her for accommodations for testing. Specific recommendations are time and a half and quiet test environment.

Thank you for your time and consideration in this matter. If further information is required please do not hesitate to contact me at 813-745-7256.

*Margaret Booth Jones, PhD*
Margaret Booth Jones, PhD

Licensed Clinical Psychologist, PY 5406

RECEIVED

JAN 2 1 2016

Disability Services

# Spring House Eye Associates

1005 Penllyn Pike

PO Box 75

Spring House, PA 19477

215-628-8799

August 13, 2015

Patient Name: Elizabeth Black

Patient DOB: ████

RECEIVED

JAN 3 1 2016

Disability Services

To whom it may concern,

I had the pleasure of seeing Elizabeth Black for a comprehensive eye examination on April 3, 2015. I am providing a disability report as follows:

Convergence Insufficiency: This condition significantly limits her reading efficiency and therefore test taking. Reading for extended periods of time results in asthenopia and headache. She must take frequent breaks while reading.

In the case of Elizabeth Black's age, convergence insufficiency may emerge as she is heading towards presbyopia, limiting accommodative convergence, explaining why this problem is slowly worsening and manifesting more recently.

The diagnosis of Convergence Insufficiency is ICD-9 378.83.

To accommodate this disability, I would recommend that Elizabeth Black be given extra time to complete examinations that require reading, such as a Board exam.

Please let me know if you have any questions regarding this matter.

Sincerely,

Erich Breunig, OD

CONFIDENTIAL

KRM 152

# Exhibit J

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL

KBM 148
1695722    5-283-137-3
Exhibit J- Breunig, E. 8/

8/17/2015                                                                   Gmail - ci



Elizabeth Black <elizabeth.a.black@gmail.com>

## ci

**Erich Breunig** <drsweidigandbreunig@yahoo.com>                    Tue, Aug 11, 2015 at 6:04 PM
Reply-To: Erich Breunig <drsweidigandbreunig@yahoo.com>
To: "elizabeth.a.black@gmail.com" <elizabeth.a.black@gmail.com>

Hello Elizabeth,

This email is to provide some information that pertains to your ophthalmic history.
Medical history:  Attention deficit hyperactivity disorder
                   Allergic conjunctivitis

Comprehensive eye exam performed on 4/3/2015:
Best corrected visual acuity 20/20 OD and OS
Pupils are equal, round and reactive to light with no apd.
Cover test: Orthophoria at 6m and exophoria at 40cm
Near point of convergence: 6"
Slit lamp examination:  unremarkable anterior segments OU except for mild conjunctival
papillary reaction
Tonometry 17mmHg OD and OS
Dilated fundus examination: healthy optic nerves, maculae and retinal periphery OU

Interestingly, there is a correlation between ADHD and convergence insufficiency/oculomotor
dysfunction.
This creates additional effort and may decrease reading efficiency.  Discussed with patient.

Assesment/Plan: 1. Myopia OU (367.1) / rx prescribed
                 2. Convergence insufficiency (378.83) / consider vt
                 3. Allergic conjunctivits OU (372.14) / Pataday pm

Please let me know if you need any further information.  Best wishes in pursuing your
education/career.

Thanks
Erich


Drs. Weidig and Breunig Optometrists, LLC
1005 Penllyn Pike
Spring House, PA 19477
p 215.628.8799

CONFIDENTIAL                                                                        KRM 149

# Exhibit K

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



KRM 146

1695723      5-233-137-5
Exhibit K- USF Memo/Ltr 8



RECEIVED

JAN 3 1 2016

Disability Services

**To:**     USMLE Accommodations Review

**From:**   Deborah McCarthy, Director, Students with Disabilities Services USF Tampa

**Re:**     Elizabeth Black, Applicant 529-31375

**Date:**   August 12, 2015

This memo is in response to the USMLE decision to deny appropriate exam accommodations to Ms. Elizabeth Black, USMLE ID 529-31375. The denial letter is dated March 2, 2015 and states that Ms. Black is not eligible for exam accommodations because her documented impairments do not "limit a major life activity."

The student in question registered with Students with Disabilities Services at the University of South Florida in March of 2013. At that time, the student met the USF standards for disability documentation. (See: http://www.usf.edu/student-affairs/student-disabilities-services/clinicians/forms.aspx). The student received and has utilized time and ½ and reduced distraction testing throughout her medical school career at USF. Thus, Ms. Black has an established history of utilizing accommodations verified by appropriate medical and educational professionals.

I have witnessed the impact of Ms. Black's disability upon her USF education. Many of her peers prepare for the USMLE while attending classes and/or participating in medical school rotations. Due to her disability, Ms. Black requested and received extended leaves of absence in order to manage her disability and prepare for the USMLE. Ms. Black routinely invests significantly more time and resources in her academic tasks than her non-disabled peers.

To deny a student's request for exam accommodations based on what the student did/did not utilize prior to medical school is disrespectful to the experience of a talented individual with a legitimate disability. It is my belief that USMLE's denial of Ms. Blacks' accommodation request constitutes a violation of her legal rights as set forth in the ADA and the ADAA. To this end, I and other USF officials have encouraged Ms. Black to obtain the services of an attorney and to avail herself of all means of redress including referral to appropriate state and federal disability rights organizations including the federal Office of Civil Rights.

The recent Department of Justice decision pertaining to the discriminatory practices in the administration of LSAT accommodations (*DFEH, et al. v. LSAC, Inc.* (Civil Action 3:12-cv-01830-EMC), stands out as proof that standardized exam agents are under great scrutiny and will be held to a higher standard of accessibility.

I urge USMLE to reconsider Ms. Black's reasonable request for accommodations. I can be contacted at dmccarthy@usf.edu or 813-974-8135.

STUDENTS WITH DISABILITIES SERVICES
University of South Florida • SVC1133 • Tampa, FL 33620
Office (813) 974-4309 • Fax (813) 974-7337 • TTY (813) 974-5651 • http://www.ads.usf.edu

KRM 147

# Exhibit L

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



1695724    S-293-137-SKRM 133
Exhibit L- DePalma, R. 1/



**Disability Rights**
**F L O R I D A**

January 15, 2016

RECEIVED

JAN 2 1 2016

Disability Services

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs
National Board of Medical Examiners
3750 Market Street
Philadelphia, Pennsylvania 19104-3102

RE: Support Letter for Elizabeth Black's Request for Accommodated United States Medical
Licensing Examination (USMLE) Step 1 Testing / USMLE ID# 5-293-137-5

Ms. Farmer:

Disability Rights Florida is Florida's federally-designated protection and advocacy system
representing the interests of all individuals with disabilities in the state. Our organization was
contacted by Elizabeth Black for review and consultation with an appeal of the National Board
of Medical Examiners' March 2, 2015 denial of her application for testing accommodations for
the USMLE Step 1 Examination.

Although such denial letter does not specifically reference or prescribe an appeal or
reconsideration mechanism to review the appropriateness of NBME's determination, Ms. Black
has secured assurances in her communications with the Board that an appeal or
reconsideration of such determination would be duly received and processed upon her
submission of additional documentary evidence supporting her assertion that she manages a
disabling condition – namely, attention deficit hyperactivity disorder (ADHD) – that
substantially limits her performance on this critical examination. Specifically, Ms. Black reports
that, despite her best efforts otherwise, this condition has thus far consistently prevented her
completion of any of the individual portions of the examination within the time permitted;
accordingly, she has requested and was thereupon denied the provision and accommodation of
extended-time and distraction-free testing on the Step 1 Examination.

As explained by Ms. Black in her accompanying personal statement, her enrollment status at
the University of South Florida Morsani College of Medicine has been pended while the Board's
determination is reviewed. In response to the Board's assertion that the documentation she
has submitted thus far "does not demonstrate a record of chronic and pervasive problems with
inattention, impulsivity, behavioral regulation, or distractibility," Ms. Black has endeavored to
submit school records including teacher comments that are nearly three decades old.

1470 Care Drive, Suite 200 • Tallahassee, FL 32308
850-488-9071 • Toll-Free 800-342-0823 • Fax 850-488-8640 • TDD 800-346-4127
www.DisabilityRightsFlorida.org • Florida's Protection and Advocacy System

The Board's denial of Ms. Black's request for testing accommodations notes further that her application contained "[n]o objective data or documentation [...] via formal faculty/supervisor feedback, job performance evaluations, or through other sources of information verifying that [she has] shown pervasive problems managing daily demands for attention, organization or executive functioning." Moreover, while noting that Ms. Black maintained "an academic record and scores on timed standardized tests sufficient to gain admission to Princeton University [...]," the Board's denial specifically references the lack of grade retention or special education evaluation throughout her secondary education.

As she has regularly explained to the Board in the process of requesting testing accommodations, it is Ms. Black's sincere belief and contention that compensatory mechanisms she had structured and utilized for herself as a youth to progress through the formative years of her education undiagnosed and largely unassisted began to fail her for the first time in her preparations for the MCAT, when timing strictures became a focus of necessary standardized testing. This led her to seek professional evaluation and treatment, prompting a diagnosis of ADHD in 2009; such diagnosis indicates clinical confirmation of the fact that Ms. Black experienced symptoms of the disorder beginning between ages six to twelve and persisting for more than six months. During a three-year window beginning in September, 2011, Ms. Black received counseling and psychiatric services for anxiety-related concerns, as well as attentional and related academic concerns, from her university's counseling center a total of 83 times. A Memorandum dated March 11, 2013 notes that Ms. Black presented the university with sufficient documentation of a disability which significantly impacts her academic performance, providing the reasonable accommodations of distraction-free testing environments as well as time-and-a-half to complete all testing and other examinations.

In concluding remarks to the Board's denial, you provide your own statement of the relevant law prohibiting discrimination by both public and private entities based upon disability and prescribing a process for the provision of reasonable accommodations – the Americans with Disabilities Act of 1990 (the ADA) – noting without citation that, "[a] diagnostic label, in and of itself, does not establish coverage under the ADA. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment."

In 2008, Congress adopted the ADA Amendments Act (the ADAAA) to enact far-reaching changes in the application of the ADA designed to overrule case law narrowly construing the scope of the ADA, and to restore broad coverage of disabilities under the ADA. Pub. L. No. 1110-325, 122 Stat. 3553, 42 U.S.C. § 12101. Congress intended, for example, to ensure that a person with a specific learning disability is not excluded from coverage under the ADA because he or she performs well academically (it is "critical to reject the assumption that an individual who has performed well academically cannot be substantially limited in activities such as learning, reading, writing, thinking, or speaking.") Statement of Managers, 154 Cong. Rec. at S8842; see also 2008 House Comm. on Educ. and Labor Report at 10 (stating the same in nearly

CONFIDENTIAL

KRM 135

identical language). The House Committee on Education and Labor noted that some courts have found that students who had reached a high level of academic achievement were not considered individuals with disabilities under the ADA. *Id.* The Committee singled out – and summarily rejected – the decisions in *Price v. Nat'l Bd. of Med. Examiners*, 966 F. Supp. 419 (S.D. W.Va. 1997); *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F. 3d 620 (6th Cir. 2000); and *Wong v. Regents of Univ. of Cal.*, 379 F. 3d 1097 (9th Cir. 2004). Congress expressly rejected the decisions in *Price, Gonzales,* and *Wong* that "an individual who has performed well academically cannot be substantially limited in activities such as learning, reading, writing, thinking, or speaking." Statement of Managers, 154 Cong. Rec. at S8842. "[I]ndividuals with specific learning disabilities that substantially limit a major life activity will be better protected under the amended Act." 2008 House Comm. on Educ. and Labor Report at 11.

With these proclamations in mind, the U.S. Department of Justice – the entity charged with promulgating regulations implementing Titles II and III of the ADA (addressing discrimination by public entities or in public accommodations based upon disability) – published proposed regulations implementing the new directives in the ADAAA in January, 2014. Such proposed regulations specify, in relevant part, that:

> [i]n determining whether an individual has a disability under the 'actual disability' or 'record of' prongs of the definition of disability, the focus is on how a major life activity is substantially limited, *and not on what outcomes an individual can achieve.* For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in one or more major life activities, including, but not limited to, reading, writing, speaking, or learning because of the additional time or effort he or she must spend to read, write, speak, or learn compared to most people in the general population. 28 C.F.R. § 35.018(d)(3)(iii) (proposed); 79 Fed. Reg. 4839-01; codified 28 C.F.R. § 36.309 (emphasis added).

Exams administered by any private, state, or local government entity related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes are covered by the ADA, and testing accommodations must be provided pursuant to the ADA. 42 U.S.C.A. § 12101 et seq.; § 12189. Specifically, Title III of the ADA mandates that a private entity which administers such examinations must ensure that the testing accurately reflects an individual's achievement level and aptitude rather than reflecting the individual's impaired sensory, manual, or speaking skills, except where those skills are the factors that the examination purports to measure. 28 C.F.R. § 36.309(b)(i).

More expansive than the "reasonable accommodation" standard typically addressed through ADA jurisprudence, this "best ensures" standard requires "a level playing field in the administration of professional exams," and requires an entity administering an examination to provide impacted test-takers "with an accommodation that is at least 'as effective' as her preferred accommodation."[1]

---

[1] *Jones v. National Conference of Bar Examiners*, 801 F. Supp. 2d 270, 284-85, 25 A.D. Cas. (BNA) 394 (D. Vt. 2011), appeal dismissed as moot, 476 Fed. Appx. 957 (2d Cir. 2012) (requiring defendant to provide plaintiff with her

CONFIDENTIAL

3

KRM 136

Although some licensing and testing entities have argued for an exemption from the obligation to provide modifications or aids on the grounds that, unless a particular disability is reasonably determined in advance to not be an obstacle to practicing within a chosen profession, an individual with a disability's inability to successfully complete the same examination under the same conditions as others seeking entry to that profession is indicative of an inability to perform the essential functions of the profession or occupation for which the examination is required. The Department of Justice has rejected this argument, however, reasoning that an examination is only one stage of the licensing or certification process and that an individual should not be barred from attempting to pass that stage of the process merely because she might be unable to meet other requirements of the process. An applicant may not be denied admission to an examination on the basis of doubts about her abilities to meet requirements that the examination is not designed to test.[2]

In noting that qualified individuals with disabilities are eligible to receive necessary testing accommodations under the ADA, the Department of Justice has recently issued technical assistance clarifying that:

> [t]he determination of whether an individual has a disability generally should not demand extensive analysis and must be made without regard to any positive effects of measures such as medication [and the like] ... [t]o be 'substantially limited' in a major life activity does not require that the person be unable to perform the activity. In determining whether an individual is substantially limited in a major life activity, it may be useful to consider, when compared to most people in the general population, the conditions under which the individual performs the activity or the manner in which the activity is performed. It may also be useful to consider the length of time an individual can perform a major life activity or the length of time it takes an individual to perform a

---

requested accommodations to "best ensure" that plaintiff's "knowledge ... is tested ... rather than the extent to which Plaintiff is able to overcome her uncontested disabilities"); *Bonnette v. District of Columbia Court of Appeals*, 796 F. Supp. 2d 164, 183 (D.D.C. 2011) (holding that defendants must offer plaintiff an accommodation as effective as her preferred accommodations unless the defendants can show that plaintiff's preferred accommodations would fundamentally alter the nature of the examination or constitute an undue burden).

[2] This question was addressed in *D'Amico v. New York State Bd. of Law Examiners*, 813 F. Supp. 217, 218-19, 1 A.D. Cas. (BNA) 534 (W.D. N.Y. 1993), where an applicant for the New York bar examination who had a visual impairment requested more days to complete the examination as an accommodation on the fact that she could not read for long periods of time without a break. 813 F. Supp. at 217. The New York Bar Association, which administered the examination, refused to accommodate the applicant on the grounds that the requirement of finishing the examination in a specific time period was part of the testing process and to allow the applicant four days for the exam would provide her with an unfair advantage. 813 F. Supp. at 221. The court found that the ADA required the testing organization to permit the longer time period for the individual with disabilities as a form of accommodation. 813 F. Supp. at 223-29. *See also Bartlett v. New York State Bd. of Law Examiners*, 21 Nat'l Disability Law Rep. P 160, 2001 WL 930792 (S.D.N.Y. 2001) (candidates for the bar exam who had visual impairments must be permitted to take the exam in double time, over a four day period, to use a computer during the exam, be provided with large print examinations, and be permitted to answer multiple choice questions by circling rather than filling in the circle corresponding to the correct answer).

CONFIDENTIAL

4

KRM 137

> *major life activity*, as compared to most people in the general population (emphasis added). 28 C.F.R. § 36.309

The Department continues by noting that all testing entities must adhere to certain principles regarding what may and may not be required when a person with a disability requests a testing accommodation. Specifically, "[a]ny documentation if required by a testing entity in support of a request for testing accommodations must be reasonable and limited to the need for the requested testing accommodations. Requests for supporting documentation should be narrowly tailored to the information needed to determine the nature of the candidate's disability and his or her need for the requested testing accommodation." *Id.*

Examples provided by the Department to illustrate such documentation include: recommendations of qualified professionals; proof of past testing accommodations; observations by educators; results of psycho-educational or other professional evaluations; an applicant's history of diagnosis; and an applicant's statement of his or her history regarding testing accommodations. The Department notes further that testing entities "may only need one or two of the above documents to determine the nature of the candidate's disability and his or her need for the requested testing accommodation. If so, a testing entity should generally limit its request for documentation to those one or two items and should generally evaluate the testing accommodation request based on those limited documents without requiring further documentation." *Id.*

With regard to the appropriate weight to be given by testing entities reviewing an applicant's past testing accommodations, the Department provides that proof of past testing accommodations in similar test settings is generally sufficient to support a request for the same testing accommodations on later standardized testing, noting:

> If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requiring further documentation from the candidate. *Id.*

In the absence of documentation of prior testing accommodations, the Department instructs that testing entities should consider the entirety of a candidate's history, including informal testing accommodations, to determine whether that history indicates a current need for testing accommodations. Moreover, the Department also provides that testing entities:

> should defer to documentation from a qualified professional who has made an individualized assessment of the candidate that supports the need for the requested testing accommodations [...] [c]andidates who submit documentation (such as reports, evaluations, or letters) that is based on careful consideration of the candidate by a qualified professional should not be required by testing entities to submit additional documentation [...] [r]eports from qualified professionals who have evaluated the candidate *should take precedence over reports from testing entity reviewers who have*

CONFIDENTIAL

5

KRM 138

*never conducted the requisite assessment of the candidate for diagnosis and treatment. This is especially important for individuals with learning disabilities because face-to-face interaction is a critical component of an accurate evaluation, diagnosis, and determination of appropriate testing accommodations. Id.*

In its own February 23, 2011 Settlement Agreement with the United States Department of Justice, Civil Rights Division, Disability Rights Section, the Board agreed to provide reasonable testing accommodations to individuals with disabilities seeking to take the USMLE, in accordance with the requirements of 42 U.S.C. § 12189 and the above implementing regulations, 28 C.F.R. § 36.309. Furthermore, the Board agreed that requests for documentation "shall be reasonable and limited to documentation that establishes (a) the existence of a physical or mental impairment; (b) whether the applicant's impairment substantially limits one or more major life activities within the meaning of the ADA; and (c) whether and how the impairment limits the applicant's ability to take the USMLE under standard conditions."

The Board also agreed to "carefully consider the recommendation of qualified professionals who have personally observed the applicant in a clinical setting and have determined – in their clinical judgment and in accordance with generally accepted diagnostic criteria, as supported by reasonable documentation – that the individual is substantially limited in one or more major life activities within the meaning of the ADA and [therefore] needs the requested test accommodations in order to demonstrate his or her ability and achievement level."

For the reasons specified herein, Disability Rights Florida anticipates that the Board will reconsider its previous determinations in light of the foregoing, and approve Elizabeth Black's use of requested testing accommodations on the USMLE Step 1 Examination. Please do not hesitate to contact our offices directly if we may be of any assistance in this process.

Respectfully,

Anthony J. DePalma, Esq.
Director of Public Policy
Disability Rights Florida

CONFIDENTIAL

6

KRM 139

**TAR Manual Email** 

| | | | | |
|---|---|---|---|---|
| **From:** | disabilityservices@nbme.org | | **Sent:** | 12/16/2014 04:00:04 PM |
| **To:** | eblack1@health.usf.edu | | **Created:** | 12/16/2014 03:59:48 PM |
| **Cc:** | | | **Employee:** | Michelle Goldberg |
| **Subject:** | Request for Step 1 | | | |

Dear Ms. Black,

The National Board of Medical Examiners (NBME) processes requests for test accommodations on behalf of the United States Medical Licensing Examination (USMLE) program. We have begun reviewing your request for test accommodations on the USMLE Step 1 examination.

Please provide complete copies of your college and medical school transcripts, as well as a copy of the American Association of Medical Colleges (AAMC) report of your scores for each administrations of the MCAT examination that you have taken. You should be able to access your MCAT scores online from the website of the AAMC, if you do not already have them available.

The additional documents can be submitted by email, fax, or mail. If you would like to email documents, please send them as pdf attachments to disabilityservices@nbme.org. Our mailing address is Disability Services, 3750 Market St. Philadelphia, PA 19104-3102, and fax number is 215-590-9422 (call 215-590-9700 to verify receipt).

We will continue processing your request as soon as we receive this documentation. Your Disability Services Specialist, Kelly Delaney, is available to assist you by telephone (215-590-9700) or email (disabilityservices@nbme.org) if you have any questions.

Thank you.
Sincerely,

Michelle M. Goldberg, Ph.D.
Manager, Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102
215-590-9700
disabilityservices@nbme.org

This email message and any attachments may contain privileged and/or confidential business information and are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please notify the sender immediately by reply email and destroy all copies of the original message and any attachments.

CONFIDENTIAL

KRM 140

Page 1 of 1

# Exhibit M

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



KRM 190

# SETTLEMENT AGREEMENT

# BETWEEN

# UNITED STATES OF AMERICA

# AND

# NATIONAL BOARD OF MEDICAL EXAMINERS

### DJ# 202-16-181

RECEIVED

Press Release

JAN 2 1 2016

Disability Services

This Agreement is entered into by and between the United States of America, acting through the United States Department of Justice, Civil Rights Division, Disability Rights Section (the "United States"), and the National Board of Medical Examiners ("NBME").

## BACKGROUND AND APPLICABLE LAW

1. NBME is a private, non-profit organization. Its offices and principal place of business are located in Philadelphia, Pennsylvania.

2. Together with the Federation of State Medical Boards, NBME sponsors the United States Medical Licensing Examination ("USMLE"), an examination related to licensing for professional purposes. NBME administers the USMLE. Thus, NBME is subject to the requirements of Section 309 of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12189, and the implementing regulations, 28 C.F.R. § 36.309.

3. The USMLE is a standardized examination used to evaluate applicants' competence for purposes of medical licensure in the U.S. and its territories. The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care. The USMLE is administered at locations around the world to individuals who are attending, or have attended, medical schools in the United States and abroad. State medical boards rely upon successful completion of the three USMLE component exams, or "Steps," as an important element in the process for licensing physicians.

4. The United States Department of Justice (the "Department") is the federal agency responsible for administering and enforcing Title III of the ADA, 42 U.S.C. §§ 12181-12189.

5. Pursuant to Title III of the ADA, private entities that administer examinations related to professional licensing must offer the examinations in a place and manner accessible to persons with disabilities. 42 U.S.C. §12189 and 28 C.F.R. § 36.309.

6. Pursuant to 28 C.F.R. § 36.309, private entities that administer such examinations are required to

CONFIDENTIAL

KRM 191

10/25/2015 1:47 PM

provide reasonable modifications to the examination and appropriate auxiliary aids and services (i.e., testing accommodations) for persons with disabilities. The purpose of testing accommodations is to ensure, in a reasonable manner, that the "examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual or speaking skills (except where those skills are the factors that the examination purports to measure)." 28 C.F.R. § 36.309(b)(1)(i). "Required modifications to an examination may include changes in the length of time permitted for completion of the examination." 28 C.F.R. § 36.309(b)(2).

7. The auxiliary aid requirement is a flexible one. A testing entity can choose among various alternatives as long as the result is effective communication. Use of the most advanced technology is not required so long as effective communication is ensured. *See* 28 C.F.R. Part 36, App. B, at 727-728 (2010).

8. Pursuant to the Attorney General's authority under 42 U.S.C. § 12188(b)(1)(A)(i) to conduct investigations of alleged violations of Title III of the ADA, the Department investigated a complaint from Frederick Romberg, alleging that the NBME had failed to grant him reasonable testing accommodations on the basis of a disability (dyslexia) for administrations of the USMLE Step 1 examination in 2008 and 2010. Among other things, the NBME had found that the supporting documentation submitted to NBME by Romberg did not demonstrate that he is currently substantially limited in a major life activity as compared to most people , so as to be disabled within the meaning of the ADA, as amended.

9. The Department concluded that Romberg had submitted sufficient documentation to demonstrate that he is a person with a disability within the meaning of the ADA, and that he was entitled to reasonable testing accommodations to take the USMLE. NBME disputes the Department's conclusions and denies that it has violated the ADA in any way in its handling of Mr. Romberg's request for accommodations.

10. Romberg has recently provided additional documentation to the NBME in support of his request for accommodations on the USMLE Step 1 examination relating to accommodations he received in undergraduate school, graduate school, and medical school.

11. NBME and the Department have reached agreement that it is in the parties' best interests, and the Department believes it is in the public interest, to resolve this matter on mutually agreeable terms and have, therefore, agreed to enter into this Agreement.

WHEREFORE, the Department and NBME hereby agree and stipulate as follows:

## AGREEMENT TERMS

### A.   General Obligations

12. NBME shall provide reasonable testing accommodations to persons with disabilities who seek to take the USMLE, in accordance with the requirements of 42 U.S.C. § 12189 and the implementing regulations, 28 C.F.R. § 36.309.

CONFIDENTIAL

KRM 192

10/25/2015 1:47 PM

13. NBME's requests for documentation shall be reasonable and limited to documentation that establishes (a) the existence of a physical or mental impairment; (b) whether the applicant's impairment substantially limits one or more major life activities within the meaning of the ADA; and (c) whether and how the impairment limits the applicant's ability to take the USMLE under standard conditions. *See* 28 C.F.R. Part 36, App. B, at 737 (2010).

14. NBME will carefully consider the recommendation of qualified professionals who have personally observed the applicant in a clinical setting and have determined – in their clinical judgment and in accordance with generally accepted diagnostic criteria, as supported by reasonable documentation -- that the individual is substantially limited in one or more major life activities within the meaning of the ADA and needs the requested test accommodations in order to demonstrate his or her ability and achievement level.

15. NBME will carefully consider all evidence indicating whether an individual's ability to read is substantially limited within the meaning of the ADA, including the extent to which it is restricted as to the conditions, manner, or duration as compared to the reading ability of most people.

16. In determining whether to grant a request for testing modifications or accommodations for an individual who did not receive a diagnosis of a reading disability until later in his or her life, NBME shall consider bona fide, reasonably supported reasons for the late diagnosis as well as academic records and other objective evidence relating to the individual's reading ability.

17. NBME has a right to make a timely request for supplemental information if the information submitted by an applicant does not clearly establish the nature of the disability or the need for reasonable testing accommodations, and the request is consistent with the requirements of Paragraph 13. NBME also has the right to have the information submitted by or on behalf of an applicant reviewed by one or more qualified professionals of NBME's choosing at NBME's request and expense. NBME is not required to defer to the conclusions or recommendations of an applicant's supporting professional but it must provide an explanation for declining to accept those conclusions or recommendations.

18. NBME is not required to provide testing accommodations that would fundamentally alter what the USMLE is intended to test, jeopardize exam security, or in the case of auxiliary aids and services, result in an undue burden.

19. If it is not doing so already, NBME will comply with the following requirements of the implementing regulations set forth at 28 C.F.R. § 36.309(b)(1) once they become effective on March 15, 2011:

    (iv) Any request for documentation, if such documentation is required, [will be] reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested.

    (v) When considering requests for modifications, accommodations, or auxiliary aids or services, the entity [will] give[] considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, as well as such modifications, accommodations, or

CONFIDENTIAL

KRM 193

10/25/2015 1:47 PM

related aids and services provided in response to an Individualized Education Program (IEP) provided under the Individuals with Disabilities Education Act or a plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred as a Section 504 Plan).

(vi)  The entity [will] respond[] in a timely manner to requests for modifications, accommodations, or aids to ensure equal opportunity for individuals with disabilities.

B.  **Testing Accommodations for Frederick Romberg**

20.  NBME will grant Frederick Romberg the accommodation of double the standard testing time and a separate testing area when he takes the Step 1 and Step 2 CK examinations. The testing for Step 1 and Step 2 CK shall be accomplished in accordance with a reasonable schedule. Actual testing time shall not exceed eight (8) hours per day.

21.  Romberg will be subject to all standard requirements for registering to take the Step 1 and Step 2 CK examinations and scheduling his examinations.

22.  Except for the accommodations provided herein, the USMLE Step 1 and Step 2 CK examinations will be administered to Romberg under the same conditions as those afforded examinees who do not receive accommodations. Romberg's scores on the Step 1 and Step 2 CK examinations will be reported in the same manner as are scores of other examinees who receive accommodations on the USMLE.

C.  **Miscellaneous**

23.  **Compliance Review and Enforcement**. Throughout the term of this Agreement the Department may, at any time, review compliance with Paragraphs 20-22 of this Agreement by, among other things, arranging for meetings and discussions with NBME personnel, requesting copies of any documents related to compliance with this Agreement, or both. The United States may enforce this Agreement. If the Department believes that this Agreement or any portion of it has been violated, it will raise its concern(s) with the NBME and will attempt to resolve the concerns(s) in good faith. The Department will give the NBME thirty calendar days from the date it notifies the NBME of any breach of this Agreement to cure that breach, prior to instituting any court action.

24.  **Disputes**. If the Department and NBME are unable to reach a resolution of any issues covered by this Agreement, the Department may seek appropriate relief. Failure by the Department to enforce any provision or deadline of this Agreement shall not be construed as a waiver of its right to enforce other provisions or deadlines of this Agreement.

25.  **Entire Agreement**. This Agreement constitutes the entire Agreement between the Department and NBME on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by the Department or NBME or their agents, that is not contained in this written Agreement shall be enforceable regarding the matters raised herein.

26.  **Agreement Binding on NBME**. This Agreement shall be binding on the NBME, as well as the

CONFIDENTIAL

KRM 194

NBME's officers, agents, and employees, and their successors in interest. The NBME shall have a duty to so notify all such successors in interest of the existence and terms of this Agreement.

27. **No Admission**. This Agreement is not an admission by NBME of any violation of the ADA or its implementing regulations.

28. **Term of the Agreement**. This Agreement shall remain in effect for three years from the effective date.

29. **Severability**. If any term of this Agreement is determined by any court to be unenforceable, the other terms of this Agreement shall nonetheless remain in full force and effect.

30. **Public Document**. This Agreement is a public document. A copy of this document, or any information contained herein, may be made available to any person. The Department and NBME shall provide a copy of this Agreement to any person or entity upon request.

31. **Release**. The Department will obtain a Release from Frederick Romberg in the form attached as Exhibit A to this Agreement.

32. **No Retaliation**. The NBME agrees that it will not discriminate or retaliate against any person within the meaning of the requirements of 28 C.F.R. § 36.206.

33. **Authorization of Signatories**. The individuals signing this Agreement represent that they are authorized to bind the Department and NBME to this Agreement.

34. **Effective Date**. This Agreement shall be effective on the date it is signed by the last signatory.

FOR NBME:                          FOR THE UNITED STATES OF AMERICA:


By:                               By:


Dated: _____        _____
                                  THOMAS E. PEREZ
                                  Assistant Attorney General
                                  SAMUEL R. BAGENSTOS
                                  Principal Deputy Assistant Attorney General
                                  JOHN L. WODATCH
                                  Deputy Assistant Attorney General


                                  _____
                                  RENEE M. WOHLENHAUS, Acting Chief
                                  KATHLEEN P. WOLFE, Acting Special Legal Counsel
                                  SHEILA K. DELANEY, Trial Attorney
                                  Disability Rights Section – NYAV

CONFIDENTIAL                                              KRM 195

10/25/2015 1:47 PM

SETTLEMENT AGREEMENT BETWEEN THE UNITED STATE...                    http://www.ada.gov/nbme.htm

Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone:  (202) 307-6309
Facsimile:  (202) 305-9775

Dated:  _____ 02/23/2011 _____

Cases & Matters by ADA Title Coverage | Legal Documents by Type & Date | ADA Home Page

February 23, 2011

CONFIDENTIAL

KRM 196

10/25/2015 1:47 PM



1083680                     8-293-137-5
Step 1 Request Form

### United States Medical Licensing Examination® (USMLE®)

### REQUEST FOR TEST ACCOMMODATIONS
*Use this form if you are requesting accommodations on USMLE for the first time*

---

**The National Board of Medical Examiners® (NBME®) processes requests for test accommodations on behalf of the USMLE program**

If you have a documented disability covered under the Americans with Disabilities Act (ADA), you must notify the USMLE in writing each time you apply for a Step examination for which you require test accommodations. Submitting this form constitutes your official notification.

- Review the USMLE Guidelines for Test Accommodations at www.usmle.org for a detailed description of how to document a need for accommodation.

- Complete all sections of this request form and submit it together with all required documentation at the same time you submit your Step exam application.

- Incomplete, illegible, or unsigned request forms and/or insufficient supporting documentation will delay processing of your request.

- Do not send originals. Please retain the originals of all documentation that you submit as we are unable to return submissions or provide duplicate copies to third parties.

- Submitting duplicate and/or bound documentation may delay processing of your request.

- NBME will acknowledge receipt of your request by e-mail and audit your submission for completeness. If you do not receive an e-mail acknowledgement within a few days of submitting your request, please contact Disability Services at 215-590-9700. You may be asked to submit additional documentation to complete your request.

- Requests are processed in the order in which they are received. Allow at least 60 days for processing of your request. Processing cannot begin until sufficient information is received by NBME and your Step exam registration is complete.

- The outcome of our review will not be released via telephone. All official communications regarding your request will be made in writing. If you wish to modify or withdraw a request for test accommodations, contact Disability Services by e-mail at disabilityservices@nbme.org or by telephone at 215-590-9700.

RECEIVED
NOV 2 6 2014
Disability Services

---

**You MUST provide supporting documentation verifying your current functional impairment.**

In order to document your need for accommodation, **submit** the following with this form:

✔ A **personal statement** describing your disability and its impact on your daily life and educational functioning.

✔ **Supporting documentation** such as psychoeducational evaluations; medical records; copies of report cards, academic and score transcripts; faculty or supervisor feedback; job performance evaluations; clerkship/clinical course evaluations; verification of prior academic/test accommodations; etc.

✔ A **complete and comprehensive evaluation**. Reports from qualified professionals must be typewritten on letterhead, signed and include the professional's qualifications.

CONFIDENTIAL                                                                    KRM 197

Accom Request Form (2014)                        1

**USMLE® Request for Test Accommodations**

**Section A: Exam Information**

Place a check next to the examination(s) for which you are currently registered and requesting test accommodations: (Check all that apply)

☒ Step 1

☐ Step 2 CK (Clinical Knowledge)

☐ Step 2 CS (Clinical Skills)

☐ Step 3

**Section B: Biographical Information**
Please type or print.

B1. Name: BLACK          ELIZABETH          A.
     Last                First                Middle Initial

B2. Gender: ☐ Male   ☒ Female

B3. Date of Birth: ███████████

B4. USMLE # 5-293-137-5 (required)

B5. Address: 3211 W. Swann Ave, Unit 1111
     Street
     Tampa                    FL              33609
     City              State/Province      Zip/Postal Code
     USA
     Country
     609-306-8808
     Daytime Telephone Number          **RECEIVED**

                                        NOV 26 2014
     Alternate Telephone Number         **Disability Services**
     eblack1@health.usf.edu
     E-mail address

B6. Medical School Name: Univ. of South FL Morsani College of Med.

Country of Medical School: USA          Date of Medical School Graduation:_____

CONFIDENTIAL ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ KRM 198

**USMLE® Request for Test Accommodations**

**Section C: Accommodations Information**

**C1.** Do you require wheelchair access at the examination facility? ☐ Yes ☒ No
If yes, and you require an adjustable height computer table, indicate the number of inches required from
the bottom of the table to the floor: _____

**C2.** Describe the accommodation(s) you are requesting. Accommodations must be appropriate to the
impairment within the context of the examination task and setting:

Time & 1/2 over 2 days.

**C3.** Check **ONLY ONE** box for the exam(s) for which you are registered.

**STEP 1:**
**Additional Break Time**
☐ Additional break time over 1 day
☐ Additional break time over 2 days

**Additional Testing Time**
☐ 25% Additional test time (Time and 1/4) over 2 days
☒ 50% Additional test time (Time and 1/2) over 2 days
☐ 100% Additional test time (Double time) over 2 days

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

**STEP 2 CK:**
**Additional Break Time**
☐ Additional break time over 2 days

**Additional Testing Time**
☐ 25% Additional test time (Time and 1/4) over 2 days
☐ 50% Additional test time (Time and 1/2) over 2 days
☐ 100% Additional test time (Double time) over 2 days

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

**STEP 3:**
**Additional Break Time**
☐ Additional break time over 4 days

**Additional Testing Time**
☐ 25% Additional test time (Time and 1/4) over 3 days
☐ 50% Additional test time (Time and 1/2) over 4 days
☐ 100% Additional test time (Double time) over 5 days

☐ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 4 days

**RECEIVED**
**NOV 2 6 2014**
**Disability Services**

**STEP 2 CS:**
Describe the accommodations you are requesting for each section of Step 2 CS (i.e., patient encounter,
patient note).  If you are requesting additional time, state the <u>amount</u> of additional time you require in
<u>minutes per encounter/note</u>.

☐ Patient Encounter:_____
☐ Patient Note:_____

CONFIDENTIAL _____ KRM 199
Accom Request Form (2014)                                                    Page 3

USMLE® Request for Test Accommodations

### Section D: Information About Your Impairment

**D1.** Check the box that best describes the nature of your impairment and list the year it was first diagnosed by a qualified professional. Check only those for which you are requesting accommodations.

**Sensory**                                          **Year first diagnosed**
☐ Hearing                                          _____
☐ Vision                                           _____
☐ Other (specify):_____                     _____

**Learning**
☐ Reading                                          _____
☐ Writing                                          _____
☐ Mathematics                                      _____
☐ Other (specify):_____                     _____

**Language**
☐ Expressive                                       _____
☐ Receptive                                        _____
☐ Other (specify):_____                     _____

**Physical**
☐ Mobility/motor                                   _____
☐ Endocrine                                        _____
☐ Neurological                                     _____
☐ Other (specify):_____                     _____

**Psychiatric**
☐ Anxiety Disorder                                 _____
☐ Depression/Mood Disorder
☒ Attention Deficit/Hyperactivity Disorder   _2008/2009_       **RECEIVED**
☐ Other (specify):_____                                 NOV 26 2014

Other Impairment (specify) _____            _____   **Disability Services**

**D2.** List your <u>current</u> DSM/ICD diagnosis/diagnoses for which you are requesting accommodations:

_DSM-5: 314.01 Attention deficit hyperactivity disorder with combined presentation._

### D3. Personal Statement

Attach a signed and dated personal statement describing your impairments(s) and their impact on daily life. Narratives should not be confined to standardized test performance. The personal statement is your opportunity to tell us how your physical or mental impairment(s) substantially limit your current functioning in a major life activity. In your own words, discuss how your impairment(s) would interfere with your access to the relevant USMLE Step and how the specific accommodation(s) you are requesting will alleviate this impact.

USMLE® Request for Test Accommodations

**Section E:  Accommodation History**

**STANDARDIZED EXAMINATIONS**

**E1.** List accommodations you received for all standardized examinations such as college, graduate and professional school admissions tests and professional licensure and certification examinations.  If no accommodations were provided, write NONE.

☝ Attach copies of official documentation from each testing agency confirming the test accommodations they provided.

☝ Attached a copy of your official examination score report(s).

|  | DATE(S)<br>ADMINISTERED | ACCOMMODATION(S)<br>PROVIDED |
|---|---|---|
| ☐ SAT®, ACT® | | |
| ☐ MCAT® | | |
| ☐ GRE® | | |
| ☐ GMAT® | | |
| ☐ LSAT® | | |
| ☐ DAT® | | |
| ☐ COMLEX® | | |
| ☐ Bar Examination(s) | | |
| ☐ Other(s) | | |

**POSTSECONDARY EDUCATION**

**E2.** List each school and all formal accommodations you receive/received, and the dates accommodations were provided:

☝ Attach copies of official records from the school(s) listed confirming the accommodations they provided.

| | SCHOOL | ACCOMMODATIONS<br>PROVIDED | DATES<br>PROVIDED |
|---|---|---|---|
| Medical/Graduate/<br>Professional School | USF Morsani<br>College of Med. | time & a half | March 2013 |
| Undergraduate<br>School | | | |

RECEIVED

NOV 2 6 2014

Disability Services

**E3.  Certification of Prior Test Accommodations**

☝ If you receive/received accommodations in medical school and/or residency, the appropriate official at your medical school/residency must complete and submit the <u>Certification of Prior Test Accommodations</u> form available at <u>www.usmle.org</u>.

USMLE® Request for Test Accommodations

## PRIMARY AND SECONDARY SCHOOL

**E4.** List each school and all formal accommodations you received, and the dates accommodations were provided:

☆ Attach copies of official records from the school(s) listed confirming the accommodations they provided.

| SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|
| High School | | |
| Middle School | | |
| Elementary School | | |

RECEIVED

NOV 2 6 2014

Disability Services

## Section F:  Certification and Authorization

To the best of my knowledge and belief, the information recorded on this request form is true and accurate.  I understand that my request for accommodations, including this form and all supporting documentation, must be received by the NBME sufficiently in advance of my anticipated test date in order to provide adequate time to evaluate and process my request.

I acknowledge and agree that any information submitted by me or on my behalf may be used by the USMLE program for the following purposes:

- Evaluating my eligibility for accommodations.  When appropriate, my information may be disclosed to qualified independent reviewers for this purpose.
- Conducting research.  Any disclosure of my information by the USMLE program will not contain information that could be used to identify me individually; information that is presented in research publications will be reported only in the aggregate.

I authorize the National Board of Medical Examiners (NBME) to contact the entities identified in this request form, and the professionals identified in the documentation I am submitting in connection with it, to obtain further information.  I authorize such entities and professionals to provide NBME with all requested further information.

I further understand that the USMLE reserves the right to take action, as described in the Bulletin of Information (see "Indeterminate Scores and Irregular Behavior"), if it determines that false information or false statements have been presented on this request form or in connection with my request for test accommodations.

Name (print): _Elizabeth Black_

Signature: _[signature]_                Date: _11/18/14_

**USMLE® Request for Test Accommodations**

### What to Submit

✓ Legible copies of all documents, not originals
✓ Typewritten and signed letters and reports from professionals on their letterhead
✓ Complete reports with all pages including test scores
✓ All documents in English. You are responsible for providing certified English translations of all non-English documentation
✓ Childhood records - if your request is based on a developmental disorder (e.g., LD, dyslexia, ADHD)
✓ Official transcripts and standardized test score reports
✓ Documentation beyond self-report of your functional impairment
✓ Documentation of your functional impairment in activities other than test-taking

### What NOT to Submit

✗ Original documents
✗ Handwritten or unsigned letters from physicians or evaluators
✗ Copies of reports with redactions or missing pages
✗ Multiple copies of documentation (i.e., faxed and mailed copies of a document)
✗ Duplicate documentation previously submitted to Disability Services
✗ Previous correspondence from Disability Services
✗ Research articles, your résumé or curriculum vita
✗ Staples, binders, page protectors, folders, or similar items

**Mail, fax or e-mail (as a pdf) your completed request form and supporting documents to the address below at the same time you submit your Step examination application.**

Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3190
Telephone: (215) 590-9700
Facsimile: (215) 590-9422
E-mail: disabilityservices@nbme.org

RECEIVED

NOV 2 6 2014

Disability Services

Elizabeth Black
ID#: 5-293-137-5
Request for USMLE Step 1 Test Accommodations

**Personal Statement**

I have had a lifetime history of difficulty with concentrating and staying focused. As a child, it always took me longer to complete my work compared to my peers and twin brother. I remember having to re-read entire pages of textbooks in order to process and retain information, consistently distracting myself. During classes, my ability to focus on the lecture was compromised by my distractibility and impulsivity. In the school setting, while never "hyperactive" in the true sense, I fidgeted, tapped my foot and moved around a lot (and still do) in my chair. I consistently remember impulsively blurting out answers in class, instead of raising my hand. I was noted by family and friends to be a "terrible story teller" due to my inability to focus on the main point and interjecting tangential thoughts often. As an adult, I find that I speak somewhat excessively and interrupt people as they are speaking to add to the conversation.

I was able to overcome my disability without diagnosis or medication as a child because I was in a highly structured school environment with supportive parents. This was again the case in my post-baccalaureate program—I lived at home and my schedule was highly structured, facilitating my success. However, as an undergraduate, I would spend entire days in the library without getting anything I had set out to complete accomplished, constantly distracted. The lack of structure in my college environment led me to struggle more than I ever had academically.

I was diagnosed with ADHD by Dr. Scott Fleischer in March of 2009. I sought treatment with Dr. Fleischer and received my eventual diagnosis as I was attempting to study for the MCAT. I began treatment with stimulants at this point and have continued them since. Additionally due to policy changes at USF, I recently had additional confirmatory testing for my ADHD at the USF Psychological Services Center by Dr. Margaret Booth-Jones, where I was again diagnosed with ADHD with combined presentation (inattentive and hyperactive/impulsive presentation). I am currently treated with 40mg Vyvanse daily and 10mg Adderall as needed. While the medications do help substantially, I still struggle with timing and distractibility. In the spring of 2013 I applied for and received time and a half and quiet environment testing accommodations from USF MCOM.

Additionally, I investigated special time accommodations for the MCAT and prior to taking Step 1 for the first time (July 2014). Regrettably, I never chose to apply for the accommodations based on the fact that I would be singled out on my score report, all the while knowing that additional time would be hugely advantageous to me. Now that reporting of accommodations does not appear along with the test score and knowing my documented trouble with timing and inattention, I would like to receive 50% additional test time over two days to take the USMLE Step 1 exam.

Thank you in advance for your consideration.

RECEIVED

NOV 2 6 2014

Disability Services

CONFIDENTIAL

KRM 204

THE BORDER OF THIS DOCUMENT IS PRINTED IN ORANGE INK.

# PRINCETON UNIVERSITY

ELIZABETH ANN BLACK entered Princeton as a Freshman on 09/13/01.
Received AB degree concentrating in the Department of History on 05/31/05. This transcript prepared on 07/08/09.

| | | Fall Term 2001-2002 (Freshman) | Grade | Courses | | | Spring Term 2001-2002 (Freshman) | Grade | Courses |
|---|---|---|---|---|---|---|---|---|---|
| CHM | 201 | General Chemistry I | B+ | 1.0 | ART | 101 | Introduction to the History of Art | A | 1.0 |
| MAT | 103 | Calculus | B- | 1.0 | CHM | 202 | General Chemistry II | B | 1.0 |
| SPA | 105 | Intermediate Spanish | A- | 1.0 | FRS | 114 | Art Motive in Modern Photography | B+ | 1.0 |
| WRI | 124 | Writing Seminar | B | 1.0 | MAT | 104 | Calculus | B- | 1.0 |
| | | | | | SPA | 108 | Advanced Spanish | A- | 1.0 |

| | | Fall Term 2002-2003 (Sophomore) | Grade | Courses | | | Spring Term 2002-2003 (Sophomore) | Grade | Courses |
|---|---|---|---|---|---|---|---|---|---|
| CHM | 303 | Organic Chm I - Biological Emphasis | C | 1.0 | HIS | 280 | Approaches to American History | B- | 1.0 |
| EEB | 211 | The Biology of Organisms | C+ | 1.0 | HIS | 304 | Modern Latin America since 1810 | B- | 1.0 |
| PSY | 252 | Social Psychology | D | 1.0 | MOL | 214 | Intro to Cellular & Molecular Biology | C- | 1.0 |
| | | | | | POL | 367 | Latin American Politics | B+ | 1.0 |

| | | Fall Term 2003-2004 (Junior) | Grade | Courses | | | Spring Term 2003-2004 (Junior) | Grade | Courses |
|---|---|---|---|---|---|---|---|---|---|
| ANT | 335 | Medical Anthropology | B- | 1.0 | HIS | 350 | The History of France 1685-1800 | B+ | 1.0 |
| HIS | 303 | Colonial Latin America to 1810 | B+ | 1.0 | HIS | 376 | The American Civil War & Reconstruction | B | 1.0 |
| HIS | 400 | Junior Seminar | B | 1.0 | HIS | 408 | History of Modern Argentina | B | 1.0 |
| SPA | 222 | Intr Span-Amer Culture:Discovery-Present | B | 1.0 | POL | 392 | American Foreign Policy | P | 1.0 |
| HIS | | Junior Independent Work | B+ | 1.0 | HIS | | Junior Independent Work | B- | 1.0 |

| | | Fall Term 2004-2005 (Senior) | Grade | Courses | | | Spring Term 2004-2005 (Senior) | Grade | Courses |
|---|---|---|---|---|---|---|---|---|---|
| AAS | 351 | Race, Class, & Intelligence in America | B+ | 1.0 | ECO | 100 | Introduction to Microeconomics | D | 1.0 |
| CLA | 212 | Classical Mythology | P | 1.0 | HUM | 447 | Human Rights: A Media Perspective | A- | 1.0 |
| HIS | 387 | The United States and World Affairs | B- | 1.0 | HIS | | Senior Departmental Exam | B+ | |
| HIS | 389 | American Cultural History since 1876 | B | 1.0 | HIS | | Senior Thesis | B | 2.0 |

REMARKS:
Granted 1 Unit of Advanced Placement in Mathematics
Received the Latin American Studies Certificate at Graduation

DEC 17 2014
RECEIVED
Disability Services

Elizabeth Black
PO Box 234
Gwynedd Valley, PA 19437

End of transcript

THIS OFFICIAL TRANSCRIPT IS PRINTED ON SCRIP-SAFE SECURITY PAPER AND DOES NOT REQUIRE A RAISED SEAL.



# University of South Florida, Morsani College of Medicine
## Tampa, Florida

**Name:** Black, Elizabeth Ann
**ID Number:** U34264740
**Issued To:** Kelly Delaney - Disability Services, NBME

**Degree Sought:** MD
**Matriculation Date:** 08/01/2011

### Academic Year 2011-2012

| Course # | | Course Name | Contact Hours | Grade |
|---|---|---|---|---|
| BMS | 6633 | Cardiovascular/Pulmonary Syst | 176.0 | S |
| BMS | 6639 | GI, Renal, & Endocrine Systems | 180.0 | S |
| BMS | 6640 | Core Prin of Medical Science | 158.0 | S |
| BMS | 6841 | Neurological System | 158.0 | S |
| BMS | 6825 | Doctoring I | 250.0 | S |
| BMS | 6836 | Evid-Based Clin Reasoning I | 28.0 | S |
| BMS | 6991D | Schol Conc 1-Hlth Disparities | 10.0 | S |

### Academic Year 2012-2013

| Course # | | Course Name | Contact Hours | Grade |
|---|---|---|---|---|
| BMS | 6041 | Medical Sciences 5 | 190.0 | S |
| BMS | 6042 | Medical Sciences 6 | 165.0 | S |
| BMS | 6043 | Medical Sciences 7 | 135.0 | S |
| BMS | 6826 | Doctoring II | 190.0 | S |
| BMS | 6837 | Evid-Based Clin Reasoning II | 35.0 | S |
| BMS | 6920 | Colloquium - Years I & II | 11.0 | S |
| BMS | 6992D | Schol Conc 2-Hlth Disparities | 10.0 | S |

### Academic Year 2013-2014

| Course # | | Course Name | Contact Hours | Grade |
|---|---|---|---|---|
| BCC | 6173 | Introduction to Clerkships | 19.0 | S |

Leave of Absence 05/13/13 - 07/04/14

### Academic Year 2014-2015

| Course # | | Course Name | Contact Hours | Grade |
|---|---|---|---|---|
| BCC | 7110 | Adult Medicine Clerkship | 400.0 | I |

Leave of Absence 08/02/14 -

*—Continued on Next Column—*

*—End of Transcript—*

RECEIVED
DEC 1 9 2014
Disability Services

CONFIDENTIAL

CPX: Clinical Performance Examination
CCEE: Comprehensive Clinical Evaluation Encounter

Prior to the 2000-2001 academic year, contact hours were maintained in a legacy system and were not transferred to the currently used system.

The highest grade a student remediating a course is eligible to receive is a P.

Page 1 of 1

This transcript is not official unless it bears an official signature and the embossed Seal of the Morsani College of Medicine.

*Marrissa Cook*

**Registrar**
12901 Bruce B. Downs Blvd., Tampa, FL 33612-4799

**19 December 2014**
**Date Issued**

In accordance with the Family Educational Rights and Privacy Act of 1974, information from this transcript may not be released to a third party without written consent of the student.

12/18/2014   21:14   8139744619

PAGE   02/03

CONFIDENTIAL

# University of South Florida Morsani College of Medicine and College of Pharmacy

Office of the Registrar · 1260 · Bruce B. Downs Blvd., MDC 32, Tampa, Florida 33612

College of Medicine PH: (813) 974-0626 · FAX: (813) 974-4519

College of Pharmacy PH: (813) 974-6699

## TRANSCRIPT LEGEND

## Morsani College of Medicine

### HISTORY

The Morsani College of Medicine, one of four colleges comprising USF Health, was created by the Florida legislature in 1965. The charter class of medical students was admitted in September 1971. A School of Physical Therapy within the College of Medicine was created by the Florida legislature in 1967. A program of study leading to the Doctor of Physical Therapy degree began in 2005, and the charter class was enrolled in August of that year. The transitional Doctor of Physical Therapy degree (tDPT) was offered beginning in January 2011 and follows the same grading rules as the DPT program.

### ACCREDITATION

The University of South Florida College of Medicine MD program is fully accredited by the Liaison Committee on Medical Education which is the joint of several bodies of the Association of American Medical Colleges and the American Medical Association. The Doctor of Physical Therapy program is fully accredited by the Commission on Accreditation in Physical Therapy Education (CAPTE), having received initial accreditation in 2008 and reaccreditation in 2009.

### EDUCATIONAL PROGRAMS AND GRADING SYSTEM (MD and DPT Programs)

#### 1971 to 1983 3-Year MD Program
Year I - Pre-Clinical Coursework
Year II - Clinical Clerkships
Year III - Senior Electives

#### 1984 to present 4-Year MD Program
Years I & II - Pre-Clinical Coursework
Year III - Clinical Clerkships
Year IV - Senior Electives

#### 1971 to 1983 MD Program
H, P, F, R Course Repeated

#### 1984 to 2010 MD Program
H, PC, P, F

#### 2011 to 2016 MD Program
Year I - S, U
Year II - H, PC, P, F
Year III - H, P, F, R Remediation Required
Year IV - H, PC, P, F

#### 2012 to present MD Program
Year I - S, U
Year II - S, U
Year III - H, P, F, R Remediation Required
Year IV - H, P, F

#### 2005 to present 3-Year DPT Program
Year I - Foundations
Year II - Clinical Sciences
Year III - Integration & Clinical Education

#### 2003 to present DPT Program
S, U, H, PC, P, F

### GRADING KEY FOR ALL PROGRAMS
| | |
|---|---|
| H | Honors |
| PC | Pass With Commendations |
| P | Pass |
| F | Fail |
| A | Excellent |
| B | Good |
| C | Average |
| S | Satisfactory |
| U | Unsatisfactory |
| FRB | Failure Remediated to a B |
| FRC | Failure Remediated to a C |

Other grades and symbols (not all are currently in use):
| | |
|---|---|
| I | Incomplete |
| W | Withdrawal without Penalty |
| WF | Withdrawal Failing |
| TC | Transfer Credit |
| WP | Withdrawal Passing |
| * | Repeated Course |
| | Graduation Requirement/Independent Study Completed |

Beginning with the class of 1995 the College of Medicine instituted a policy that MD students pass USMLE Step 1 and 2 as a graduation requirement.

RECEIVED
DEC 19 2014
Disability Services

OFFICIAL TRANSCRIPTS BEAR THE OFFICIAL SIGNATURE AND EMBOSSED SEAL OF THE OFFICE OF THE REGISTRAR OF THE UNIVERSITY OF SOUTH FLORIDA MORSANI COLLEGE OF MEDICINE AND COLLEGE OF PHARMACY

## College of Pharmacy

### HISTORY

In the year 2007 the University of South Florida accepted the opportunity to create its own college and implement the creation of the USF College of Pharmacy program. The College of Pharmacy, one of four colleges comprising USF Health, was created by the Florida legislature in 2010. The charter class of students for the Doctor of Pharmacy degree was admitted in August 2011.

### ACCREDITATION

The Doctor of Pharmacy program at the University of South Florida College of Pharmacy, was awarded Precandidate accreditation status during the June 22-26, 2011, meeting of the ACPE Board of Directors. Accreditation was based upon the consideration of the on-site Evaluation Team Report, the Colleges and Institutional materials, other communications received for consideration by the Board. Pursuant to the USF College of Pharmacy, based on first year information to assure the accreditation in all measures and structure of the program.

### EDUCATIONAL PROGRAMS AND GRADING SYSTEM (Pharmacy)

#### 2010 to present 4-Year PharmD Program
Year I & II - Pre-Clinical Coursework
Year III - Clinical Discussion

#### 2010 to present PharmD Program
H, S, U
PRB
PRC

THIS TEST AUTHENTICITY: This document bears a security feature that increases in density over the face of the document when photocopied.

ADDITIONAL ITEMS: When photocopied, a word security statement containing the word COPY may appear. When a document is photocopied. This document cannot be released if it does not bear the signature of the Registrar and the embossed seal of the University. This document is the property of the student and is not transferable. Alteration or falsification of this document in any way may result in its invalidation. ALTERATION OF THIS DOCUMENT MAY BE A CRIMINAL OFFENSE.

12/18/2014 21:14 8139744619 PAGE 03/03

12/16/2014

MCAT THx

1083758    5-293-137-5
MCAT-Test Scores (MCAT, G

**MCAT** **AAMC**
Medical College
Admission Test

MCAT® is a program of the
Association of American Medical Colleges

CONFIDENTIAL

**Name:** BLACK, ELIZABETH ANN
**AAMC ID:** 12849523
**Date of Birth:**
**Gender:** Female
**Verification Code:** OJEJ-GQRM-F7F8-QWF7

2 MCAT exam(s) since 1991. 2 MCAT exam(s) included in this report.

| Test Date | 09/12/2009 | Score | Percentile |
|-----------|-----------|-------|------------|
| Scores: | Verbal Reasoning | 08 | 37.9 - 52.7 |
| | Physical Sciences | 10 | 70.8 - 81.9 |
| | Writing Sample | O | 44.2 - 57.3 |
| | Biological Sciences | 11 | 77.0 - 89.1 |
| | Total Score | 29O | 69.6 - 75.2 |

| Test Date | 04/18/2009 | Score | Percentile |
|-----------|-----------|-------|------------|
| Scores. | Verbal Reasoning | 07 | 27.2 - 37.8 |
| | Physical Sciences | 07 | 25.3 - 43 |
| | Writing Sample | N | 35.2 - 44.1 |
| | Biological Sciences | 08 | 26.1 - 41.7 |
| | Total Score | 22N | 28.4 - 33.3 |

Please go to https://services.aamc.org/mcat_verify/ to verify the scores on this report.

This report will no longer be able to be verified after 03/16/2015.

Score legend

H or HD - scores are currently on hold.

C or CD - scores have been cancelled.

D or DD - scores have been deleted.

© 1995-2014 AAMC

RECEIVED

DEC 17 2014

Disability Services



UNIVERSITY OF
SOUTH FLORIDA



**CONFIDENTIAL**
**PSYCHOEDUCATIONAL EVALUATION**
*The information in this report is privileged and confidential and should be used for professional*
*purposes only.*

**IDENTIFYING INFORMATION:**
Name: Elizabeth Black
Client Number: 5796
Date of Birth: ▮▮▮▮▮
Clinician: Megan McMurray, M.A.
Supervisor: Margaret Booth-Jones, Ph.D.
Date of Evaluation: 10/9/2014
Date of Report: 10/21/2014

RECEIVED

NOV 2 6 2014

Disability Services

**REASON FOR REFERRAL:**
Elizabeth Black, a right-handed 31-year-old Caucasian female, was referred to the University of
South Florida (USF) Psychological Services Center (PSC) by Dr. Feldman at the USF
Counseling Center (USF CC). Ms. Black is seeking an ADHD evaluation to update her
diagnosis documentation so that she may continue receiving her psychostimulant medication
from the USF CC. Ms. Black's chief academic complaints are distractibility, forgetfulness, and
difficulty paying attention.

**HISTORY OF PRESENTING PROBLEMS:**
Ms. Black is a third-year medical student at USF who lives with a roommate in Tampa, FL. She
reported that she was diagnosed with ADHD by a psychiatrist in 2009 after presenting with
difficulty focusing while studying for the MCAT. Due to recent policy changes at the USF CC,
Ms. Black requires updated documentation to continue receiving psychiatric services for ADHD.
She is currently prescribed 40 mg of Vyvanse daily, which she takes regularly, and 10 mg of
Adderall as needed, which she takes very rarely and only when she needs to study for long
periods of time. She reported that Vyvanse works effectively for her for about 8-10 hours, and
that she takes Adderall only if she needs to study for more than 8-10 hours at a time. She
reported that she has tried Ritalin and Concerta in the past with little or no benefit. Ms. Black
has also received academic accommodations for ADHD, including extended time on exams and
the option to take her exams in a quiet testing environment. Ms. Black reported that she utilizes
the time and a half accommodation for her medical school exams but refuses accommodations on
national standardized tests (e.g., the MCAT) because she does not want to share her private
medical information or be "singled out." She reported that she has not utilized her quiet testing
accommodation for her medical school exams because she does not want her accommodations to
be obvious to her peers.

Ms. Black reported a lifetime history of difficulty with concentration and staying focused. When
she was younger, she reported that she took longer to complete her work than her peers, and that

she had to re-read whole pages in textbooks several times in order to retain the information. While an undergraduate at Princeton University, she reported spending "hours and hours" in the library "without getting anything accomplished." She reported that she has always been high functioning and that structure has always been beneficial in helping her succeed academically; she noted that she performed well in high school and in her post-baccalaureate program at the University of Pennsylvania because they were both very structured, but she did not perform as well in college because of the lack of structure. Ms. Black reported that she sometimes experiences negative side effects from taking her ADHD medications, specifically an increase in anxiety, but that it is very difficult for her to focus and complete her work when she does not take her medication. She noted that she would like to continue taking her ADHD medications until she is finished with medical school.

**PSYCHIATRIC HISTORY:**
Ms. Black reported that she saw a therapist for a few sessions in 2009 due to difficulty studying for the MCAT. The therapist eventually referred Ms. Black to a psychiatrist who diagnosed her with ADHD; Ms. Black initiated psychostimulant medication at that time. Since coming to USF's medical school in 2011, Ms. Black been treated for ADHD by a psychiatrist at the USF CC, Dr. Feldman. Ms. Black also reported seeing a psychologist at the USF CC to learn skills to help her achieve and maintain a work/life balance. She reported that her mood has been "good" lately and denied any significant problems with her mood in the past. She denied a history of psychiatric hospitalization, self-injurious behavior, and suicidal and/or homicidal ideation.

**MEDICAL HISTORY:**
Ms. Black reported that her physical health is "good." She reported that she has not been treated for any major medical illnesses. She reported taking 40 mg of Vyvanse daily and 10 mg of Adderall as needed for her ADHD symptoms. She started taking 10 mg of Lexapro daily 3 months ago due to increased anxiety about taking an important benchmark exam. She also reported taking 0.5 mg of Klonopin as needed for test-related anxiety, but noted that she does not have a current prescription for that medication. Ms. Black reported taking Zyrtec and using rosacea creams for allergy-related concerns. She denied the use of any over-the-counter supplements. She denied a history of head injury and/or loss of consciousness. She reported that her energy level has been "normal" lately. She reported sleeping about 7 hours on an average night except during weeks that she has exams. Ms. Black reported a "normal" appetite and reported that she is currently 5'9" and about 140 lbs. She reported drinking alcohol about 2-3 times a week, consuming 1-2 drinks per typical occasion. She denied the use of tobacco and recreational drugs.

**DEVELOPMENTAL HISTORY:**
Ms. Black has a twin brother and was born approximately 4 weeks premature via Cesarean delivery due to a breach presentation. She reported having mumps as a child but denied any other major childhood illnesses. Ms. Black reported that she did not talk much as a child but had her twin brother talk for her, noting that they had their own "twin language." She denied other delays in achieving developmental milestones.

RECEIVED

NOV 2 6 2014

Disability Services

## SOCIAL/FAMILY HISTORY:

Ms. Black reported that she was born near Philadelphia, PA, and she moved to Florida in 2009 for medical school. She currently lives in an apartment in Tampa with her roommate of three years and noted that they "get along well." Ms. Black is single and she has no children. She reported having a "good" social support network of friends and family members. Ms. Black has a twin brother, two older brothers, and parents who are all "very supportive." When Ms. Black has spare time, she enjoys playing sports, watching movies, reading, and learning new things. Ms. Black reported that taking her Step 1 benchmark exam at the end of October 2014 and financial stressors are her greatest concerns at this time. Ms. Black reported that she is considering a career in OB/GYN, emergency medicine, or internal medicine.

## BEHAVIORAL OBSERVATIONS/MENTAL STATUS EXAMINATION:

Ms. Black completed the clinical interview and all testing in one session. She presented 20 minutes late for our appointment due to difficulty finding the clinic, but she called to notify this provider that she would be late. Ms. Black presented to the clinic alone and was dressed casually with appropriate hygiene. She appeared her stated age, height, and weight. She presented as a polite and pleasant woman. She appeared comfortable interacting with the examiner and rapport was readily established. Eye contact was good. Speech was normal in rhythm, articulation, rate, and spontaneity, but slightly excessive in quantity. Thought processes were slightly tangential and disorganized, but Ms. Black responded well to redirection. There was no evidence of looseness of associations, thought disorder, delusions or obsessions. She demonstrated no evidence of overt psychosis and did not appear to be responding to any internal stimuli. Ms. Black denied auditory and visual hallucinations. Affect was broad and changed with the flow of conversation. Ms. Black laughed somewhat inappropriately at times and appeared to use humor to deflect from uncomfortable topics of conversation. There was some evidence of psychomotor agitation and inattention (e.g., tapping her foot, biting her nails, adjusting her clothing frequently, moving around in her chair, tangential speech). Ms. Black did not appear to be in acute distress and verbally denied suicidal and homicidal ideation.

Ms. Black appeared sensitive to the nature of the tasks and the level of difficulty of the tasks. She reported feeling relieved when a task was untimed, and she took a notably long time to complete untimed tasks. Ms. Black struggled to sustain attention and was easily distracted throughout the tasks, talking out loud about various items and asking several questions that the examiner could not answer due to the nature of the testing. She also appeared to have some difficulty with restlessness and impulsivity during the testing, interjecting irrelevant personal anecdotes during some of the subtests. However, Ms. Black was highly cooperative during the testing. No problems with initiation and persistence were observed. She worked diligently throughout the testing and persevered with all tasks. On the basis of these behavioral observations, this assessment appears to be a valid measure of Ms. Black's functioning at this time. Of note, Ms. Black was not medicated during our testing, thus measures of intellectual ability are likely underestimates of her true intellectual ability.

## ASSESSMENT BATTERY:

Clinical Interview
Beck Anxiety Inventory (BAI)
Beck Depression Inventory – Second Edition (BDI-II)

RECEIVED

NOV 2 6 2014

Disability Services

CONFIDENTIAL

KRM 211
3

Conners' Adult ADHD Rating Scales – Self report: Long Version (CAARS – S:L)
Conners' Continuous Performance Test-II (CPT-II)
Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV)
     -Subtests 1-10 (Standard Battery)

## ASSESSMENT RESULTS AND INTERPRETATIONS:
### Psychosocial Functioning
The Beck Depression Inventory – Second Edition (BDI-II) and the Beck Anxiety Inventory (BAI) were administered to assess Ms. Black's current depression and anxiety symptoms. Ms. Black's score on the BDI-II was 3, indicating minimal depressive symptoms in the two weeks prior to our session. Her score on the BAI was 3, indicating minimal anxiety symptoms in the week prior to our session. Ms. Beck's score on the BAI is likely an underestimate of the anxiety she feels prior to exams, as she reported high levels of anxiety during the week of a scheduled exam.

RECEIVED

NOV 2 6 2014

Disability Services

### Intellectual Ability
The Wechsler Adult Intelligence Scale – 4ᵗʰ Edition (WAIS-IV) was administered in order to assess Ms. Black's general intellectual abilities. Her index and subtest scores are outlined in the tables below. On the WAIS-IV, index scores have a mean of 100 and a standard deviation of 15. Subtest scores have a mean of 10 and a standard deviation of 3.

Ms. Black's General Ability Index (GAI) is an estimate of her general intellectual abilities. Her GAI of 127 is in the superior range. The percentile rank associated with this score is 96, indicating that Ms. Black's GAI is higher than 96% of her same-age peers. The GAI is comprised of two composite scales that reflect different areas of functioning: the Verbal Comprehension Index (VCI) and the Perceptual Reasoning Index (PRI).

The VCI is thought to be a measure of crystallized intelligence (Gc), or of one's ability to work with previously acquired information. This type of intelligence is usually gained via formal education and other informal learning opportunities, including through cultural transmission. Overall, Ms. Black's performance on verbal comprehension tasks is very superior (VCI; SS = 132; 98ᵗʰ percentile). The types of tasks that Ms. Black completed to demonstrate her Gc included describing similarities between concrete and abstract concepts (Similarities; ss = 16; 98ᵗʰ percentile), defining vocabulary words (Vocabulary; ss = 16; 98ᵗʰ percentile), and answering general information questions (Information; ss = 14; 91ˢᵗ percentile). Both the Similarities and Vocabulary subtests emerged as statistically significant personal and normative strengths for Ms. Black, indicating that her abstract verbal reasoning and her ability to comprehend and verbally express vocabulary are very well developed.

The PRI is a reflection of Ms. Black's ability to reason with nonverbal, visual stimuli, including the ability to analyze and synthesize abstract visual stimuli. Ms. Black's performance on perceptual reasoning tasks is high average (PRI; SS = 117; 87ᵗʰ percentile). Perceptual reasoning tasks Ms. Black completed included arranging red and white blocks to look like pictures (Block Design; ss = 13; 84ᵗʰ percentile), identifying the composite pieces of different shapes (Matrix Reasoning; ss = 11; 63ʳᵈ percentile), and selecting pictures that complete a pattern (Visual Puzzles; ss = 15; 95ᵗʰ percentile).

CONFIDENTIAL

KRM 212
4

The Working Memory Index (WMI) is a summary of Ms. Black's ability to hold multiple pieces of information in memory at the same time and to solve problems using that information. Ms. Black's WMI score is average (SS = 105; 63rd percentile). Tasks in this area require examinees to repeat strings of numbers, repeat them backward, and rearrange them in numerical order (Digit Span; ss = 9; 37th percentile) and solve word problems in one's head (Arithmetic; ss = 13; 84th percentile). Ms. Black's Digit Span subtest score reflects a statistically significant personal weakness. On this task, she demonstrated relative weakness in auditory short-term memory and auditory sequential processing. Ms. Black performed significantly better on the Arithmetic subtest, which requires auditory memory, facility with numbers, and numerical reasoning ability. When individuals perform more effectively on the Arithmetic Subtest than on Digit Span subtest, it is often the case that these individuals find it much easier to manipulate and work with information that is posed in the context of a real-life problem than with information that is presented as a random series of numbers and letters that lack any context that might aid in initial registration and manipulation efforts. Although Ms. Black's working memory is average when compared to that of her same-aged peers, it is less developed than her verbal and perceptual reasoning abilities, and emerges as a relative weakness.

The PSI is a summary of processing speed (Gs), or Ms. Black's ability to complete simple tasks quickly. Overall, Ms. Black's performance on processing speed tasks is average (PSI; SS = 108; 70th percentile). Activities that contribute to this score include searching for a symbol among an array (Symbol Search; ss = 13; 84th percentile), and quickly copying symbols corresponding to numbers (Coding; ss = 10; 50th percentile). Ms. Black's performance on the Coding subtest represents a statistically significant personal weakness. Coding requires visual-motor coordination, motor and mental speed, and visual working memory, and these results demonstrate that Ms. Black has relative weakness in these areas. Although Ms. Black's processing speed is average when compared to that of her same-aged peers, it is less developed than her verbal and perceptual reasoning intellectual abilities and emerges as a relative weakness.

RECEIVED
NOV 2 6 2014
Disability Services

### Wechsler Adult Intelligence Scale--Fourth Edition (WAIS--IV) Results Overview

| Scale | Standard Score | 95% Confidence Interval | Percentile Rank | Qualitative Description |
|---|---|---|---|---|
| General Ability Index (GAI) | 127 | 121-131 | 96 | Superior |
| Verbal Comprehension Index | 132 | 125-136 | 98 | Very Superior |
| Perceptual Reasoning Index | 117 | 110-122 | 87 | High Average |
| Working Memory Index | 105 | 98-111 | 63 | Average |
| Processing Speed Index | 108 | 96-116 | 70 | Average |

### Verbal Comprehension Core Subtest Scores

| Subtest | Scaled Score | Percentile Rank | Qualitative Description |
|---|---|---|---|
| Similarities | 16 | 98 | Very Superior |
| Vocabulary | 16 | 98 | Very Superior |
| Information | 14 | 91 | High Average |

CONFIDENTIAL

KRM 213

**Perceptual Reasoning Core Subtest Scores**

| Subtest | Scaled Score | Percentile Rank | Qualitative Description |
|---|---|---|---|
| Block Design | 13 | 84 | High Average |
| Matrix Reasoning | 11 | 63 | Average |
| Visual Puzzles | 15 | 95 | Superior |

**Working Memory Core Subtest Scores**

| Subtest | Scaled Score | Percentile Rank | Qualitative Description |
|---|---|---|---|
| Digit Span | 9 | 37 | Average |
| Arithmetic | 13 | 84 | High Average |

**Processing Speed Core Subtest Scores**

| Subtest | Scaled Score | Percentile Rank | Qualitative Description |
|---|---|---|---|
| Symbol Search | 13 | 84 | High Average |
| Coding | 10 | 50 | Average |

*Attention/Concentration*

Connors' Adult ADHD Rating Scales (self-report and observer versions) were used to gather information about Ms. Black's reported inattention symptoms. Collection of scores from an examinee and a collateral allows for comparison of an individual's self-concept to outside observation of an examinee's behavior. Ms. Black completed the CAARS-S:L and her roommate of three years (with whom she currently lives) completed the CAARS-O:L. Responses on the CAARS are compiled into eight subscales, reflecting factors that could produce ADHD-like symptoms, major components of ADHD, and DSM-IV ADHD symptoms. *T*-scores are used to compare responses on the CAARS to established norms. *T*-scores have an average of 50 and a standard deviation of 10; scores at or above 70 are considered clinically elevated.

RECEIVED

NOV 0 8 2014

Disability Services

Ms. Black's responses on the CAARS-S:L resulted in clinically significant elevations on the Inattention/Memory Problems scale (*T* = 73), the Hyperactivity/Restlessness scale (*T* = 73) the Impulsivity/Emotional Lability scale (*T* = 70), the DSM-IV Inattentive Symptoms scale (*T* = 78), the DSM-IV Hyperactive-Impulsive Symptoms Scale (*T* = 77), the DSM-IV ADHD Symptoms Total scale (*T* = 82), and the ADHD Index Scale (*T* = 75). Responses on the CAARS-O:L completed by Ms. Black's roommate closely mirrored Ms. Black's responses, confirming Ms. Black's self-reported difficulties with inattention, hyperactivity, and impulsivity.

Together, the CAARS-S:L and CAARS-O:L support Ms. Black's self-reported difficulty with focus and attention, and offer support for clinically significant ADHD symptoms. Further behavioral testing was undertaken to gather additional information about Ms. Black's inattention difficulties.

Conners' Continuous Performance Test-II (CPT-II) was administered to Ms. Black to assess her attention/concentration ability. The CPT-II is a computer-based assessment of attention

disorders and neurological functioning. Results from the CPT-II can explicate the presence and nature of attention deficits, and identify problems with impulsiveness, arousal, and vigilance. The CPT-II presents individual letters at varying intervals on a computer screen and asks individuals to press a keyboard or mouse button in response to every letter presented except "X." This allows for analysis of individuals' response time, ability to inhibit inappropriate responses (i.e. not respond to "X"), and ability to attend to changes in inter-stimulus intervals and adapt response patterns accordingly.

The current administration findings do not indicate timing difficulties or non-compliance, suggesting that the current administration should be considered valid. Overall, Ms. Black's CPT-II profile suggests the presence of ADHD with significant problems with inattention, impulsivity, and vigilance. Ms. Black's CPT-II Clinical Confidence Index is 60.5%, indicating that her results better match a clinical than non-clinical profile, or that the chances are 60.5 out of 100 that a clinically significant problem with ADHD exists. Ms. Black made 20 commissions (responses to non-targets), which is substantially higher than the average of the normative group and indicates problems with inattention. Ms. Black's reaction times were substantially more variable than the normative group average, indicating that her reaction times were highly inconsistent. She had a high number of perseverations, which is indicative of impulsivity. She demonstrated increasingly slower reaction times as the administration progressed and became much less consistent (relative to the norm) as the administration progressed, indicating poor vigilance. In summary, Ms. Black's overall performance is consistent with patterns typically observed in ADHD populations.

RECEIVED

NOV 2 6 2014

Disability Services

**CONCLUSIONS:**
Elizabeth Black, a right-handed 31-year-old Caucasian female, was referred to the University of South Florida (USF) Psychological Services Center (PSC) by Dr. Feldman at the USF Counseling Center (USF CC). Ms. Black is seeking an ADHD evaluation to update her diagnosis documentation so that she may continue receiving her psychostimulant medication from the USF CC. Ms. Black's chief academic complaints are distractibility, forgetfulness, and difficulty paying attention. Ms. Black has a lifetime history of difficulty with attention, concentration, and impulsivity. She was previously diagnosed with ADHD by a psychiatrist in 2009 and has been receiving psychostimulant medication since that time. Dr. Feldman at the USF CC currently handles her medication management, but due to recently policy changes Ms. Black must update her ADHD diagnosis documentation in order to continue receiving her medication.

Findings from this assessment are consistent with result patterns that typically indicate clinically significant attention problems. Specifically, Ms. Black's pattern of performance in the current assessment, while unmedicated, is indicative of ADHD. Ms. Black currently takes 40 mg of Vyvanse a day and 10 mg of Adderall as needed, and reported good benefit from her medications. Ms. Black reports symptoms indicative of ADHD symptomology, and the current assessment supports a diagnosis of ADHD. Her self-report and her roommate's report were corroborated by her performance on the CPT-II, which indicated problems with inattention, impulsivity, and vigilance. Her overall pattern of testing results, were also typical of an ADHD population, as they indicated relative weakness in working memory and processing speed. Ms.

Black also exhibits problems with anxiety a result of her academic difficulties, which likely exacerbate her ADHD symptoms.

The results of this assessment indicate that Ms. Black meets DSM-5 criteria for ADHD with combined presentation (inattentive and hyperactive/impulsive presentation).

**DSM-5 DIAGNOSES:**
314.01          Attention deficit hyperactivity disorder with combined presentation

**RECOMMENDATIONS:**
It is hoped that the recommendations offered here will help foster continued success for Ms. Black:

1) Ms. Black should receive academic accommodations for ADHD (at her discretion). Specifically, Ms. Black should be allowed extended time for testing and quiet testing accommodations in all courses and standardized tests to maximize her ability to focus.

2) Ms. Black should continue to see her psychiatrist for pharmacological management of her ADHD and test-related anxiety symptoms.

3) Ms. Black reported some difficulty with anxiety symptoms. In addition to medication management with her psychiatrist, Ms. Black may benefit from Cognitive Behavioral Therapy (CBT) to help her identify automatic negative thoughts related to her academic performance and to learn behavioral skills to help her cope with symptoms of anxiety. Low-cost therapy services are available at the USF Psychological Services Center (PSC) in the Department of Psychology. A PSC Clinic Assistant can be reached at (813) 974-2496.

We appreciated the opportunity to work with Ms. Black. If you have any questions regarding the results of this report, please feel free to contact the University of South Florida Psychological Services Center at (813) 974-2496.


Megan V. McMurray, M.A.
Clinical Psychology Trainee

Margaret Booth-Jones, Ph.D.
Supervising Psychologist
PY5406

RECEIVED

NOV 2 6 2014

Disability Services

CONFIDENTIAL

KRM 216

8

**TAR Manual Email**

1053781      5-293-137-5
from Dr. Goldberg-E-mail

| From: | disabilityservices@nbme.org | Sent: | 12/16/2014 04:00:04 PM |
|---|---|---|---|
| To: | eblack1@health.usf.edu | Created: | 12/16/2014 03:59:48 PM |
| Cc: | | Employee: | Michelle Goldberg |

Subject: Request for Step 1

Dear Ms. Black,

The National Board of Medical Examiners (NBME) processes requests for test accommodations on behalf of the United States Medical Licensing Examination (USMLE) program. We have begun reviewing your request for test accommodations on the USMLE Step 1 examination.

Please provide complete copies of your college and medical school transcripts, as well as a copy of the American Association of Medical Colleges (AAMC) report of your scores for each administrations of the MCAT examination that you have taken. You should be able to access your MCAT scores online from the website of the AAMC, if you do not already have them available.

The additional documents can be submitted by email, fax, or mail. If you would like to email documents, please send them as pdf attachments to disabilityservices@nbme.org. Our mailing address is Disability Services, 3750 Market St. Philadelphia, PA 19104-3102, and fax number is 215-590-9422 (call 215-590-9700 to verify receipt).

We will continue processing your request as soon as we receive this documentation. Your Disability Services Specialist, Kelly Delaney, is available to assist you by telephone (215-590-9700) or email (disabilityservices@nbme.org) if you have any questions.

Thank you.
Sincerely,

Michelle M. Goldberg, Ph.D.
Manager, Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102
215-590-9700
disabilityservices@nbme.org

This email message and any attachments may contain privileged and/or confidential business information and are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please notify the sender immediately by reply email and destroy all copies of the original message and any attachments.

CONFIDENTIAL

KRM 217

Page 1 of 1

United States Medical Licensing Examination® (USM

**Certification of Prior Test Accommodations**

1063877          5-293-137-5
CPTA-Testing Accommodatio

Please type or print.  To be completed and signed by medical school official responsible for student disability services.

Applicant Name: ELIZABETH BLACK USMLE ID#: 5-293-137-5

I certify that University of South FL has officially approved and continuously
<small>Name of School</small>

provided the following accommodations for the above applicant beginning on 3/2013
<small>Date (Month/Year)</small>

1.  Accommodation(s) provided for <u>classroom and clinical coursework</u>:
    Time and ½ (1.5x) and reduced distraction for exams
    No other coursework accommodations

    Reason for accommodation(s): 314.01  ADHD

2.  Accommodation(s) provided for <u>written exams</u>:
    Time and ½ and reduced distraction testing

    Reason for accommodation(s): 314.01  ADHD

3.  Accommodation(s) provided for <u>clinical skills exams</u>:
    NONE

    Reason for accommodation(s): NONE

Name of School Official: DEBORAH A McCARTHY   Title: DIRECTOR
<small>Print Name of Official</small>                        <small>Title of Official</small>
Signature of Official: Da McBry   Date: 11/21/14

Telephone Number: (813) 974-8135

**RECEIVED**
NOV 26 2014
**Disability Services**

Mail, fax, or e-mail completed form to:

Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3190
Telephone: (215) 590-9700
FAX: (215) 590-9422
E-mail: disabilityservices@nbme.org
Call or e-mail to verify receipt of Fax and mail submissions

CONFIDENTIAL                                    KRM 218

United States Medical Licensing Examination® (US

**Certification of Prior Test Accommodations**

Please type or print. To be completed and signed by medical school official responsible for student disability services.

Applicant Name: ELIZABETH BLACK USMLE ID#: 5-293137-5

I certify that University of South FL has officially approved and continuously
<span>Name of School</span>

provided the following accommodations for the above applicant beginning on 3/2013
<span>Date (Month/Year)</span>

1.  Accommodation(s) provided for <u>classroom and clinical coursework</u>:
    Time ad 1/2 (1.5x) and reduced distraction for exams
    No other coursework accommodations

    Reason for accommodation(s): 314.01 ADHD

2.  Accommodation(s) provided for <u>written exams</u>:
    Time ad 1/2 and reduced distraction testing

    Reason for accommodation(s): 314.01 ADHD

    **RECEIVED**
    **NOV 2 4 2014**

3.  Accommodation(s) provided for <u>clinical skills exams</u>:
    NONE

    **Disability Services**

    Reason for accommodation(s): NONE

Name of School Official: DEBORAH A McCARTHY  Title: DIRECTOR
<span>Print Name of Official</span>                 <span>Title of Official</span>
Signature of Official: Da McCarthy  Date: 11/21/14

Telephone Number: (813) 974-8135

---

Mail, fax, or e-mail completed form to:

Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3190
Telephone: (215) 590-9700
FAX: (215) 590-9422
E-mail: disabilityservices@nbme.org
Call or e-mail to verify receipt of Fax and mail submissions

CPTA 2011
CONFIDENTIAL

KRM 219





November 25, 2014

Dr. Catherine Farmer
Director of Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, Pennsylvania 19104-3102

Dear Dr. Farmer,

I write you in full support of Elizabeth Black, DOB ███████ a second year medical student at the University of South Florida Morsani College of Medicine (USF COM), who is requesting testing accommodations for USMLE Step 1. In order to graduate from USF COM, our students must pass Step 1 and 2 of the USMLE. Ms. Black is requesting special testing accommodations due to the clinically diagnosed disability, Attention Deficit Hyperactivity Disorder, Combined Presentation.

Ms. Black's disability impacts her everyday functioning by significantly extending the duration under which she can perform the major life activities of learning, memory and concentrating. Ms. Black is easily distracted and has difficulties controlling impulsive responses. Her inability to block out distractions interferes with her ability to concentrate, especially while reading. She also experiences difficulties organizing and completing tasks. Therefore, the specific accommodations of 50% additional test time over two days, in a quiet room, are needed to mediate Ms. Black's functional capacity. These accommodations will provide the necessary time to re-read passages, re-focus due to internal or external distractions and take breaks from the testing environment, resulting in a more accurate assessment of her knowledge and thinking abilities.

While enrolled in medical school, Ms. Black has received special testing accommodations which include: 1) testing in an environment free of distractions (i.e., written examinations isolated from others students), and 2) time and one-half testing time on formal written examinations.

This letter is to request that Ms. Black receive these special testing accommodations while sitting for her board examinations. It is my belief that if provided this much needed accommodation, she will be successful in passing these examination requirements. Should you require further information, please contact me at 813-974-5815. Thank you in advance for your cooperation and consideration.

Sincerely,

*Pamela O'Callaghan, PhD*

Pamela O'Callaghan, PhD
Director, Academic Support Center
Assistant Professor, Department of Family Medicine
pocallag@health.usf.edu

**RECEIVED**

NOV 2 6 2014

**Disability Services**

CONFIDENTIAL

KRM 220

12/18/2014  21:14   8139744619                                          PAGE  01/03





1063653        5-293-197-5
fax cover-Others
**RECEIVED**

DEC 19 2014

**Disability Services**

## facsimile transmittal

| To: | Disability Services, NBME | | 215 590-9422 |
| | Attn: Kelly Delanoy | | |
| From: | Macaulay Cardinal, Assistant Registrar | Date: | December 19, 2014 |
| Re: | Elizabeth Black | Pages: | Including Cover Sheet 3 |
| Cc: | | Sender's Phone: | (813) 974-4089 |

☒ Urgent    ☐ For review    ☐ Please comment    ☐ Please reply    ☐ Please recycle

### CONFIDENTIALITY NOTICE:

*The information contained in this facsimile message may be legally privileged and
confidential information intended only for the use of the individual or entity named above.
If the reader of this message is not the intended recipient, you are hereby notified that any
dissemination, distribution or copy of this facsimile message is strictly prohibited.  If you
have received this facsimile message in error, please immediately notify us by telephone
and destroy the original message. Thank you.*

### OFFICE OF THE REGISTRAR • MORSANI COLLEGE OF MEDICINE

University of South Florida •12901 Bruce B. Downs Blvd • Tampa, FL 33612-4799

(813)974-0828 • FAX (813)974-4619 • www.hsc.usf.edu/medicine/registrar

CONFIDENTIAL

KRM 221

# Exhibit N

RECEIVED

JAN 2 1 2016

Disability Services

CONFIDENTIAL



KRM 180

1695725    5-283-137-5
Exhibit N- DOJ ADA info -

U.S. Department of Justice
Civil Rights Division
*Disability Rights Section*





RECEIVED

JAN 2 1 2016

Disability Services

# Testing Accommodations

Standardized examinations and other high-stakes tests are gateways to educational and
employment opportunities. Whether seeking admission to a high school, college, or graduate
program, or attempting to obtain a professional license or certification for a trade, it is difficult to
achieve such goals without sitting for some kind of standardized exam or high-stakes test. While
many testing entities have made efforts to ensure equal opportunity for individuals with
disabilities, the Department continues to receive questions and complaints relating to excessive
and burdensome documentation demands, failures to provide needed testing accommodations,
and failures to respond to requests for testing accommodations in a timely manner.

The Americans with Disabilities Act (ADA) ensures that individuals with disabilities have the
opportunity to fairly compete for and pursue such opportunities by requiring testing entities to
offer exams in a manner accessible to persons with disabilities. When needed testing
accommodations are provided, test-takers can demonstrate their true aptitude.

The Department of Justice (Department) published revised final regulations implementing the
ADA for title II (State and local government services) and title III (public accommodations and
commercial facilities) on September 15, 2010. These rules clarify and refine issues that have
arisen over the past 20 years and contain new and updated requirements.

## Overview

This publication provides technical assistance on testing accommodations for individuals with
disabilities who take standardized exams and other high-stakes tests. It addresses the obligations
of testing entities, which include private, state, or local government entities that offer exams
related to applications, licensing, certification, or credentialing for secondary (high school),
postsecondary (college and graduate school), professional (law, medicine, etc.), or trade
(cosmetology, electrician, etc.) purposes. Who is entitled to testing accommodations, what types
of testing accommodations must be provided, and what documentation may be required of the
person requesting testing accommodations are also discussed.

CONFIDENTIAL

KRM 181

## What Kinds Of Tests Are Covered?

Exams administered by any private, state, or local government entity related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes are covered by the ADA and testing accommodations, pursuant to the ADA, must be provided.[1]

Examples of covered exams include:

- High school equivalency exams (such as the GED);
- High school entrance exams (such as the SSAT or ISEE);
- College entrance exams (such as the SAT or ACT);
- Exams for admission to professional schools (such as the LSAT or MCAT);
- Admissions exams for graduate schools (such as the GRE or GMAT); and
- Licensing exams for trade purposes (such as cosmetology) or professional purposes (such as bar exams or medical licensing exams, including clinical assessments).

## What Are Testing Accommodations?

Testing accommodations are changes to the regular testing environment and auxiliary aids and services[2] that allow individuals with disabilities to demonstrate their true aptitude or achievement level on standardized exams or other high-stakes tests.

Examples of the wide range of testing accommodations that may be required include:

- Braille or large-print exam booklets;
- Screen reading technology;
- Scribes to transfer answers to Scantron bubble sheets or record dictated notes and essays;
- Extended time;
- Wheelchair-accessible testing stations;
- Distraction-free rooms;
- Physical prompts (such as for individuals with hearing impairments); and
- Permission to bring and take medications during the exam (for example, for individuals with diabetes who must monitor their blood sugar and administer insulin).

---

[1] This document does not address how the requirements or protections, as applicable, of Title II of the ADA, Section 504 of the Rehabilitation Act, the assessment provisions in the Elementary and Secondary Education Act (ESEA) and the Individuals with Disabilities Education Act (IDEA), and their implementing regulations, apply to, or interact with, the administration of state-wide and district-wide assessments to students with disabilities conducted by public educational entities.

[2] *See* 28 C.F.R. §§ 36.303(b), 36.309(b)(3) (providing non-exhaustive lists of auxiliary aids and services).

2

CONFIDENTIAL

KRM 182

## Who Is Eligible To Receive Testing Accommodations?

**Individuals with disabilities are eligible to receive necessary testing accommodations.** Under the ADA, an individual with a disability is a person who has a physical or mental impairment that substantially limits a major life activity (such as seeing, hearing, learning, reading, concentrating, or thinking) or a major bodily function (such as the neurological, endocrine, or digestive system). The determination of whether an individual has a disability generally should not demand extensive analysis and must be made without regard to any positive effects of measures such as medication, medical supplies or equipment, low-vision devices (other than ordinary eyeglasses or contact lenses), prosthetics, hearing aids and cochlear implants, or mobility devices. However, negative effects, such as side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.

**A substantial limitation of a major life activity may be based on the extent to which the impairment affects the condition, manner, or duration in which the individual performs the major life activity.** To be "substantially limited" in a major life activity does not require that the person be unable to perform the activity. In determining whether an individual is substantially limited in a major life activity, it may be useful to consider, when compared to most people in the general population, the conditions under which the individual performs the activity or the manner in which the activity is performed. It may also be useful to consider the length of time an individual can perform a major life activity or the length of time it takes an individual to perform a major life activity, as compared to most people in the general population. For example:

- The condition or manner under which an individual who has had a hand amputated performs manual tasks may be more cumbersome, or require more effort or time, than the way most people in the general population would perform the same tasks.
- The condition or manner under which someone with coronary artery disease performs the major life activity of walking would be substantially limited if the individual experiences shortness of breath and fatigue when walking distances that most people could walk without experiencing such effects.
- A person whose back or leg impairment precludes him or her from sitting for more than two hours without significant pain would be substantially limited in sitting, because most people can sit for more than two hours without significant pain.

**A person with a history of academic success may still be a person with a disability who is entitled to testing accommodations under the ADA.** A history of academic success does not mean that a person does not have a disability that requires testing accommodations. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in one or more of the major life activities of reading, writing, speaking, or learning, because of the additional time or effort he or she must spend to read, write, speak, or learn compared to most people in the general population.

3

CONFIDENTIAL

KRM 183

## What Testing Accommodations Must Be Provided?

Testing entities must ensure that the test scores of individuals with disabilities accurately reflect the individual's aptitude or achievement level or whatever skill the exam or test is intended to measure. A testing entity must administer its exam so that it accurately reflects an individual's aptitude, achievement level, or the skill that the exam purports to measure, rather than the individual's impairment (except where the impaired skill is one the exam purports to measure).[3]

- **Example:** An individual may be entitled to the use of a basic calculator during exams as a testing accommodation. If the objective of the test is to measure one's ability to solve algebra equations, for example, and the ability to perform basic math computations (e.g., addition, subtraction, multiplication, and division), is secondary to the objective of the test, then a basic calculator may be an appropriate testing accommodation. If, however, the objective of the test is to measure the individual's understanding of, and ability to perform, math computations, then it likely would not be appropriate to permit a calculator as a testing accommodation.

---

[3] Under Section 309 of the ADA, any person (including both public and private entities) that offers examinations related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes must offer such examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. Under regulations implementing this ADA provision, any private entity that offers such examinations must "assure that the examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)." 28 C.F.R. § 36.309. Likewise, under regulations implementing title II of the ADA, public entities offering examinations must ensure that their exams do not provide qualified persons with disabilities with aids, benefits, or services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, 28 C.F.R. § 35.130(b)(1)(iii), and may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(6). Both the title II and title III regulations also require public and private testing entities to provide modifications and auxiliary aids and services for individuals with disabilities unless the entity can demonstrate an applicable defense. 28 C.F.R. §§ 35.130(b)(7), 35.160(b), 35.164; 28 C.F.R. §§ 36.309(b)(1)(iv-vi), (b)(2), 36.309(b)(3).

4

CONFIDENTIAL

KRM 184

## What Kind Of Documentation Is Sufficient To Support A Request For Testing Accommodations?

All testing entities must adhere to the following principles regarding what may and may not be required when a person with a disability requests a testing accommodation.

- **Documentation.**  Any documentation if required by a testing entity in support of a request for testing accommodations must be reasonable and limited to the need for the requested testing accommodations.  Requests for supporting documentation should be narrowly tailored to the information needed to determine the nature of the candidate's disability and his or her need for the requested testing accommodation.  Appropriate documentation will vary depending on the nature of the disability and the specific testing accommodation requested.

Examples of types of documentation include:

- Recommendations of qualified professionals;
- Proof of past testing accommodations;
- Observations by educators;
- Results of psycho-educational or other professional evaluations;
- An applicant's history of diagnosis; and
- An applicant's statement of his or her history regarding testing accommodations.

Depending on the particular testing accommodation request and the nature of the disability, however, a testing entity may only need one or two of the above documents to determine the nature of the candidate's disability and his or her need for the requested testing accommodation.  If so, a testing entity should generally limit its request for documentation to those one or two items and should generally evaluate the testing accommodation request based on those limited documents without requiring further documentation.

- **Past Testing Accommodations.**  Proof of past testing accommodations in similar test settings is generally sufficient to support a request for the same testing accommodations for a current standardized exam or other high-stakes test.

- **Past Testing Accommodations on Similar Standardized Exams or High-Stakes Tests.**  If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate.  So, for example, a person with a disability who receives a testing accommodation to sit for the SAT should generally get the same testing accommodation to take the GRE, LSAC, or MCAT.

5

CONFIDENTIAL

KRM 185

- **Formal Public School Accommodations.** If a candidate previously received testing accommodations under an Individualized Education Program (IEP)[4] or a Section 504 Plan,[5] he or she should generally receive the same testing accommodations for a current standardized exam or high-stakes test. If a candidate shows the receipt of testing accommodations in his or her most recent IEP or Section 504 Plan, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant those same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate. This would include students with disabilities publicly-placed and funded in a private school under the IDEA or Section 504 placement procedures whose IEP or Section 504 Plan addresses needed testing accommodations.

  - **Example.** Where a student with a Section 504 Plan in place since middle school that includes the testing accommodations of extended time and a quiet room is seeking those same testing accommodations for a high-stakes test, and certifies that he or she still needs those testing accommodations, the testing entity receiving such documentation should generally grant the request.

- **Private School Testing Accommodations.** If a candidate received testing accommodations in private school for similar tests under a formal policy, he or she should generally receive the same testing accommodations for a current standardized exam or high-stakes test. Testing accommodations are generally provided to a parentally-placed private school student with disabilities pursuant to a formal policy and are documented for that particular student. If a candidate shows a consistent history of having received testing accommodations for similar tests, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant those same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate.

  - **Example.** A private school student received a large-print test and a scribe as testing accommodations on similar tests throughout high school pursuant to a formal, documented accommodation policy and plan. Where the student provides documentation of receiving these testing accommodations, and certifies that he or she still needs the testing accommodations due to disability, a testing entity should generally grant the candidate's request for the same testing accommodations without requesting further documentation.

- **First Time Requests or Informal Classroom Testing Accommodations.** An absence of previous formal testing accommodations does not preclude a candidate from

---

[4] An IEP contains the special education and related services and supplementary aids and services provided to an eligible student with a disability under Part B of the IDEA, 20 U.S.C. §§ 1400 *et seq.* and 34 C.F.R. part 300.

[5] A Section 504 Plan could contain the regular or special education and related aids and services provided pursuant to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and 34 C.F.R. part 104.

6

CONFIDENTIAL

receiving testing accommodations.  Candidates who are individuals with disabilities and have never previously received testing accommodations may also be entitled to receive them for a current standardized exam or high-stakes test.  In the absence of documentation of prior testing accommodations, testing entities should consider the entirety of a candidate's history, including informal testing accommodations, to determine whether that history indicates a current need for testing accommodations.

- Example.  A high school senior is in a car accident that results in a severe concussion.  The report from the treating specialist says that the student has post-concussion syndrome that may take up to a year to resolve, and that while his brain is healing he will need extended time and a quiet room when taking exams.  Although the student has never previously received testing accommodations, he may nevertheless be entitled to the requested testing accommodations for standardized exams and high-stakes tests as long as the post-concussion syndrome persists.

- Example.  A student with a diagnosis of ADHD and an anxiety disorder received informal, undocumented testing accommodations throughout high school, including time to complete tests after school or at lunchtime.  In support of a request for extended time on a standardized exam, the student provides documentation of her diagnoses and their effects on test-taking in the form of a doctor's letter; a statement explaining her history of informal classroom accommodations for the stated disabilities; and certifies that she still needs extended time due to her disabilities.  Although the student has never previously received testing accommodations through an IEP, Section 504 Plan, or a formal private school policy, she may nevertheless be entitled to extended time for the standardized exam.

- **Qualified Professionals.**  Testing entities should defer to documentation from a qualified professional who has made an individualized assessment of the candidate that supports the need for the requested testing accommodations.  Qualified professionals are licensed or otherwise properly credentialed and possess expertise in the disability for which modifications or accommodations are sought.  Candidates who submit documentation (such as reports, evaluations, or letters) that is based on careful consideration of the candidate by a qualified professional should not be required by testing entities to submit additional documentation.  A testing entity should generally accept such documentation and provide the recommended testing accommodation without further inquiry.

  - Reports from qualified professionals who have evaluated the candidate should take precedence over reports from testing entity reviewers who have never conducted the requisite assessment of the candidate for diagnosis and treatment.   This is especially important for individuals with learning disabilities because face-to-face interaction is a critical component of an accurate evaluation, diagnosis, and determination of appropriate testing accommodations.

  - A qualified professional's decision not to provide results from a specific test or evaluation instrument should not preclude approval of a request for testing accommodations where the documentation provided by the candidate, in its entirety, demonstrates that the candidate has a disability and needs a requested testing

CONFIDENTIAL

accommodation.  For example, if a candidate submits documentation from a qualified professional that demonstrates a consistent history of a reading disorder diagnosis and that recommends the candidate receive double time on standardized exams based on a personal evaluation of the candidate, a testing entity should provide the candidate with double time.  This is true even if the qualified professional does not include every test or subtest score preferred by the testing entity in the psychoeducational or neuropsychological report.

## How Quickly Should A Testing Entity Respond To A Request For Testing Accommodations?

A testing entity must respond in a timely manner to requests for testing accommodations so as to ensure equal opportunity for individuals with disabilities.  Testing entities should ensure that their process for reviewing and approving testing accommodations responds in time for applicants to register and prepare for the test.[6]  In addition, the process should provide applicants with a reasonable opportunity to respond to any requests for additional information from the testing entity, and still be able to take the test in the same testing cycle.  Failure by a testing entity to act in a timely manner, coupled with seeking unnecessary documentation, could result in such an extended delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting for persons with disabilities.

## How Should Testing Entities Report Test Scores for Test-Takers Receiving Disability-Related Accommodations?

Testing entities should report accommodated scores in the same way they report scores generally.  Testing entities must not decline to report scores for test-takers with disabilities receiving accommodations under the ADA.

Flagging policies that impede individuals with disabilities from fairly competing for and pursuing educational and employment opportunities are prohibited by the ADA.  "Flagging" is the policy of annotating test scores or otherwise reporting scores in a manner that indicates the exam was taken with a testing accommodation.  Flagging announces to anyone receiving the exam scores that the test-taker has a disability and suggests that the scores are not valid or deserved.  Flagging also discourages test-takers with disabilities from exercising their right to testing accommodations under the ADA for fear of discrimination.  Flagging must not be used to circumvent the requirement that testing entities provide testing accommodations for persons with disabilities and ensure that the test results for persons with disabilities reflect their abilities, not their disabilities.

To view model testing accommodation practices and for more information about the ADA, please visit our website or call our toll-free number:

---

[6] Testing entities must offer examinations to individuals with disabilities in as timely a manner as offered to others and should not impose earlier registration deadlines on those seeking testing accommodations.

8

CONFIDENTIAL

- **ADA Website:** www.ADA.gov
- **ADA Information Line:** 800-514-0301 (Voice) and 800-514-0383 (TTY); M-W, F 9:30 a.m. – 5:30 p.m., Th 12:30 p.m. – 5:30 p.m. (Eastern Time)
- **Model Testing Accommodation Practices Resulting From Recent Litigation:** http://www.ada.gov/lsac_best_practices_report.docx

For persons with disabilities, this publication is available in alternate formats.

Duplication of this document is encouraged.

9

CONFIDENTIAL

KRM 189