View Results                                                                                     Page 1 of 1

## VIEW RESULTS

| ID | Date Assigned | Due Date | Status | Exam Name | Applicant Name | Documents | Contact |
|---|---|---|---|---|---|---|---|
| 8599 | 02/19/2016 | 02/26/2016 | Completed | Step 1 | Black, Elizabeth Ann | View Docs | Contact |

### Results submitted on February 26, 2016

**Consultant Information:**

Consultant: Kevin R. Murphy, PhD
Due Date: 02/26/2016
Case Review Hours: 7
Conference Hours: 0

**Examinee Information for USMLE Step 1:**

Examinee: Black, Elizabeth Ann
USMLE ID#: 52931375

**Comments:**

**List of Attached Documents:**

- black elizabeth nbme step 1 appeal 2016 0226.docx



EXHIBIT
Murphy 5
PO 3/4/17

February 26, 2016

Catherine Farmer, Psy.D.
Manager, Disability Services and ADA Compliance Officer, Testing Programs
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104

RE: Reconsideration request of Elizabeth Black for Step 1 exam accommodations (ID # 8599)

Dear Dr. Farmer:

Thank you for forwarding the additional materials on Ms Black for review. She is again requesting the accommodation of extended time (time and one-half over 2 days) based on a diagnosis of Attention Deficit Hyperactivity Disorder, Combined Type. She is now also indicating she has a co-morbid visual disability (Conversion Insufficiency) that exacerbates her difficulties with reading and test taking. Since I am not qualified to offer an opinion on the visual disability, I will focus my comments on the issue of ADHD and suggest that a visual consultant also review this application. A previous request based on ADHD was denied and she has submitted some additional documentation in support of her current request for reconsideration.

The additional documentation included copies of kindergarten and elementary school report cards, Metropolitan Achievement Test scores from grades 1 through 3, Evaluation and Proficiency reports from her medical school experiences, documents showing she was granted many extensions to her Leave of Absence to continue to prepare for the Step 1 exam, score reports from her previous attempts at passing Step1, an invoice from Becker Professional Education showing what she paid to attend a test preparation course, the denial letter she received from the NBME, a letter from her attorney, Mr. Anthony DePalma, a letter from Pamela O'Callahan, Director of the Academic Support Center, a letter from Deborah McCarthy, Director of the Students with Disabilities Office, an email from her Optometrist, Erich Breunig, a letter from her diagnostician, Dr. Margaret Booth-Jones reacting to the denial, a letter from Robert Rodgers Ph.D. verifying she had attended 83 counseling sessions over a 3 year period from 2011 through 2014, a letter from her former roommate at Princeton, Dr. Lauren Hittson, a letter from her high school Honors English teacher and basketball coach, Jennifer Carangi, a letter from Ms Black reacting to the previous denial, and receipts from her counselor from 2013, Dr. Ashley Vigil-Otero.

In my opinion, despite the additional documentation I still do not believe it shows that she has a history of developmentally deviant impairment that is consistent with ADHD or that she has a magnitude of current impairment that rises to the level of a disability. Therefore, I must continue to recommend denial of her requested accommodation. My reasons for this opinion are as follows:

1. In reaction to the previous denial, Ms Black has attempted to address the weaknesses in her prior application by providing some early school records, documentation to show she has received

2

treatment over several years in medical school for anxiety and attentional issues, documentation showing her struggles to prepare for and pass the Step 1 exam, documentation to show she was granted accommodations in medical school, and several advocacy letters from people who know her well and who are supportive of her request for accommodations on Step 1. However, in my opinion this additional documentation as well intentioned as it was: (a) did not reflect a magnitude of symptoms and impairment necessary to qualify for an ADHD diagnosis during childhood or currently (b) did not show that she is substantially limited in a major life activity relative to the average person (c) did not show that she meets the ADA's definition of "disability" and (d) did not adequately substantiate that her problems in medical school and with passing the Step 1 exam were actually due to having ADHD as opposed to some other reason or combination of reasons.

2. More specifically, Ms Black suggested that because her early school records contained a few "negative" teacher comments (such as "needs improvement in controlling her urge to talk", "needs to chatter less with her friends", "continues to make minor careless mistakes in math", "needs assistance with math concepts but works hard and is successful", and "works meticulously and takes a long time to complete work") that this was evidence of having ADHD and of a childhood onset of symptoms/impairment. I respectfully disagree. ADHD is a developmental disorder that typically results in a chronic and pervasive pattern of developmentally deviant impairment in academic, social, vocational, and daily adaptive domains of functioning. ADHD seriously disrupts one's functioning over time and across situations in multiple areas of functioning and not just in one fairly circumscribed area such as medical school and USMLE Step Exams. The lives of people with ADHD are typically characterized by academic and vocational underachievement, unsatisfactory personal relationships, problems with behavior and self-control, and general difficulty managing the routine tasks of daily life. This does not appear to be the case for Ms Black. A few isolated teacher comments during elementary school is not sufficient to substantiate an ADHD diagnosis or developmentally deviant impairment. In fact, there were far more "positive" comments on these early school records than "negative" ones. For example, these early school records also contained the following teacher comments: "doing fine in all areas", "self-motivated", "easy going", "good listener", "capable of following directions", "very responsible", "displays consistent effort", "conscientious", "cooperative", "hard-working", "work is nicely done", "continues to make excellent academic progress", "matured nicely this year academically and socially", "a delight to teach", "pleasure knowing her", and "loving attitude". In addition, almost all of her teacher ratings in "Work Habits" and Citizenship were rated as V or V+ or S or S+ indicating at least satisfactory functioning. This is not a magnitude of impairment that would support a clinical diagnosis of ADHD or a disability, in my opinion.

3. Moreover, her documentation indicated that (a) her scores on the Metropolitan Achievement Tests she took during grades 1, 2, and 3 were all within at least the average range or better suggesting no neurological dysfunction (b) she stated she has "always been high functioning" (c) she stated that despite her reported impairments "she was able to compensate adequately and proceed unnoticed and undiagnosed in the public school system" (d) she did well enough in high school to gain admission to Princeton University and successfully graduated with mostly A's and B's (e) she performed well in her Post Baccalaureate program at UPenn (f) she scored a 29 on her MCAT (70 – 75th percentile) and (g) she gained admission to medical school – and all of this was accomplished without the need for accommodations. All of this argues against her having a magnitude of impairment that would qualify her as a person with a disability under the ADA's definition.

CONFIDENTIAL                                                                                                                                         NBME 00079

3

4. Ms Black's argument that she was able to successfully compensate for her ADHD symptoms until medical school due to her high intelligence and strong work ethic is not persuasive and is not supported by science. High intelligence does not shut down the expression of ADHD symptoms. Many highly intelligent people are seriously impaired by their ADHD and are unable to control their symptoms despite their high intelligence. In fact, the mark of a disorder is that despite one's best efforts to compensate, the symptoms overwhelm one's ability to manage their symptoms resulting in clinically significant pervasive impairment that seriously interferes in overall life functioning. There is little evidence of this here. Stated another way, if someone can compensate for their ADHD symptoms so successfully and for so long (until medical school) without any extraordinary interventions beyond hard work and dedicated effort, that person is not likely to be considered "disabled" under the ADA's definition.

5. The fact that Ms Black has struggled in the rigorous medical school environment and especially on the Step 1 exam does not necessarily mean she has ADHD. People can struggle in medical school for all kinds of different reasons besides ADHD. Ms Black seems to have performed quite well in all aspects of her life until encountering medical school (at least there was little objective documentation to suggest otherwise). In my opinion, her diagnostician (Dr. Booth Jones) did not adequately rule out alternative explanations for her difficulties in the medical school environment or in passing the Step 1 exam such as perhaps making a vocational decision (medical school) that may not be an ideal match for her particular pattern of strengths and weaknesses or having a personal test taking style/preference that may be careful, meticulous, and slow.

6. The advocacy letters Ms Black provided were not particularly helpful in establishing a longstanding history of chronic and pervasive real world impairment necessary to validate an ADHD diagnosis. These kinds of letters would be more persuasive if her other documentation had done a better job of establishing an overall history consistent with ADHD (including a childhood onset of impairment and a chronic and pervasive pattern of real world impairment that could be reliably tied to ADHD). There was also no documentation from her original ADHD diagnosis by Dr. Scott Fleischer in 2009 so we have no way of knowing on what basis he assigned the ADHD diagnosis or what assessment measures he used.

7. Ms Black did not provide any new diagnostic reports and I have already pointed out in my initial report the reasons I did not believe Dr. Margaret Booth Jones' 2014 report was sufficient to substantiate an ADHD diagnosis or a disability. Overall, the additional documentation Ms Black provided was not sufficient for me to change my original opinion. In the final analysis, regardless of whether she has ADHD or not, her documentation fails to indicate disabling impairment in the specific types of academic or test taking activities required for accessing the Step 1 exam, in my opinion. Therefore, I must continue to recommend denial of her requested accommodation. The fact that she received accommodations in medical school is not a guarantee she will qualify for accommodations on the Step 1 exam.

Sincerely,



Kevin Murphy, Ph.D.

CONFIDENTIAL

NBME 00080