


approval-Decision Letter

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

March 28, 2016

Elizabeth A. Black
2116 Imperial Golf Course Blvd
Naples, FL 34110

RE: USMLE Step 1                    USMLE ID#: 5-293-137-5

Dear Ms. Black:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. We conducted an individualized review of your request in accordance with the guidelines set forth in the amended Americans with Disabilities Act (ADA).

You report the basis of your 2016 request for accommodations to be Attention-Deficit/Hyperactivity Disorder with combined presentation diagnosed in 2008 and Convergence Insufficiency diagnosed in 2015. You write in your personal statement, *"My childhood report cards and teacher's comments show clear evidence of ADHD as I developed. Despite these impairments, I was able to compensate adequately and proceed unnoticed and undiagnosed in the Public School system. Additionally, my parents did not ascribe to mental health practices, as evidenced by my parents keeping my 3 brothers and me from being tested for and placed into the Gifted Program. They viewed the non-traditional form of education as ineffective and unnecessary. During my search for effective management of my ADHD, I learned of an associated condition called 'convergence insufficiency'. This condition affects the eyes [sic] ability to focus effectively and when diagnosed in students, medically warrants additional time in testing situations. After consulting with my eye doctor of 22 years, Dr. Erik Breunig, he confirmed that I previously and currently meet diagnostic criteria for the disorder."*

Received with your request were documents labeled Exhibits A through N including early school progress reports and achievement test scores; letters from a former teacher and college roommate; letters addressed to you from Morsani College of Medicine regarding your academic performance and leaves of absence; your prior Step 1 score reports; written communication between you and NBME regarding your report of a test administration issue on April 9, 2015; an undated USF Students with Disabilities Services Application for Accommodations and Services; your 2013 and 2014 letters to Steven Spector, Ph.D. Associate Dean for Student Affairs; 2013 receipts for psychological services from Ashley Vigil-Otero, Psy.D.; a receipt from Becker Professional Education; an August 25, 2015 letter addressed To Whom It May Concern from Margaret Booth Jones, Ph.D.; an August 13, 2015 letter addressed To whom it may concern form Erich Breunig, O.D.; an August 11, 2015 e-mail to you from Erich Breunig regarding your ophthalmic history; an August 12, 2015 memo addressed to USMLE Accommodations Review from Deborah McCarthy,

Elizabeth A. Black  March 28, 2015
USMLE ID#: 5-293-137-5

Director Students with Disabilities Services USF Tampa; a January 15, 2016 letter from Anthony J. De Palma, Esq. of Disability Rights Florida; a copy of a settlement agreement between the USA and NBME regarding Frederick Romberg; and a document published online by the US Department of Justice providing technical assistance on testing accommodations.

In her August 25, 2015 letter, Dr. Booth Jones writes that she interviewed you for approximately 30 minutes by telephone during which you reported that you failed Step 1 on three occasions and never finished a section; you experienced academic challenges secondary to ADHD through primary and secondary school, and you reported that your high intellectual ability allowed you to compensate and achieve at a high level relative to your peers. Dr. Booth Jones concludes, *"Ms. Black meets diagnostic criteria for ADHD combined type and she has clinically significant and substantially limiting impairment that qualify her for accommodations for testing."*

ADHD is a neurodevelopmental disorder that begins in childhood. Even if not formally diagnosed in childhood, the essential feature of ADHD is a persistent pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development. The early school records that you provided do not demonstrate chronic and pervasive problems with inattention, impulsivity, behavioral regulation, or distractibility that impaired your functioning during your development.

With regard to the relationship between diagnostic criteria for a disorder and disability, the authors of the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)* write, *"It is precisely because impairments, abilities, and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability."*

The undated publication available at www.ada.gov/regs2014/testing_accommodations.html that you provided as Exhibit N reads, *"This publication provides technical assistance on testing accommodations for individuals with disabilities who take standardized exams and other high-stakes tests."* It does not override the Department of Justice's actual regulations published September 15, 2010 or otherwise impose restrictions on NBME that are at odds with NBME's rights and obligations under the ADA. In that regard, I call your attention to a settlement agreement that you provided as Exhibit M. It specifically addresses NBME's obligations in reviewing requests for testing accommodations on the USMLE Step exams. This agreement provides, in relevant part, as follows:

> *NBME will carefully consider the recommendation of qualified professionals who have personally observed the applicant in a clinical setting and have determined – in their clinical judgment and in accordance with generally accepted diagnostic criteria, as supported by reasonable documentation – that the individual is substantially limited in one or more major life activities within the meaning of the ADA and needs the requested test accommodations in order to demonstrate his or her ability and achievement level.*

> *NBME also has the right to have the information submitted by or on behalf of an applicant reviewed by one or more qualified professionals of NBME's choosing at NBME's request and expense. NBME is not required to defer to the conclusions or recommendations of an applicant's supporting professional but it must provide an explanation for declining to accept those conclusions or recommendations*

My March 2, 2015 letter that you provided as Exhibit A describes the ways in which your documentation did not demonstrate a substantial limitation in a major life activity and the reason you were not offered test accommodations for Step 1. Our review of the supplemental documentation that

2

Elizabeth A. Black
USMLE ID#: 5-293-137-5

March 28, 2015

you provided with your recent submission found no new substantive information or evidence that alters our original decision communicated in my March 2, 2015 letter.

In an August 13, 2015 letter, Erich Breunig, O.D. writes that you were seen for a comprehensive eye examination on April 3, 2015 in which he diagnosed Convergence Insufficiency. Dr. Breunig writes, *"This condition significantly limits her reading efficiency and therefore test taking. Reading for extended periods of time results in asthenopia and headache. She must take frequent breaks while reading... To accommodate this disability, I would recommend that Elizabeth Black be given extra time to complete examinations that require reading, such as a Board exam."* Dr. Breunig did not provide an assessment of reading efficiency or document that your reading efficiency is limited. Furthermore, it is not clear how extended testing time would mitigate the symptoms he describes as being caused by reading for extended periods of time.

While we are unable to provide you with accommodations under the ADA, for your comfort, we will provide the following arrangements during the administration of the USMLE Step 1 for which you are currently registered:

- Additional break time/standard test time: The exam will be administered over one day. The day will be 8 hours 45 minutes in length and will include a 15 minute tutorial and 7 test blocks with approximately 44 questions per block. You will have up to 60 minutes to complete each block. You will receive 90 minutes of break time, including lunch. You may use break time as needed between blocks. If you complete the tutorial or an examination block in less time than allotted, the unused time will be added to your available break time.

You will be notified by a separate e-mail when your scheduling permit is available. Your permit contains information needed to schedule your examination appointment. Please call Prometric at the number listed on your scheduling permit as soon as you receive it to schedule your appointment.

These arrangements may not be changed at the test center on your scheduled exam day. If you choose not to use these arrangements, please notify Disability Services immediately at disabilityservices@nbme.org or by calling 215-590-9700 for instructions on re-registering for your exam.

Sincerely,

*Catherine Farmer*

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

3

CONFIDENTIAL

NBME 00075

30B6 - 067

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

March 2, 2015

Elizabeth A. Black
2116 Imperial Golf Course Blvd
Naples, FL 34110

RE: USMLE Step 1                    USMLE ID#: 5-293-137-5

Dear Ms. Black:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. We conducted an individualized review of your request in accordance with the guidelines set forth in the Americans with Disabilities Act (ADA).

You report the basis of your request to be Attention-Deficit/Hyperactivity Disorder diagnosed in 2008-2009. You write in your personal statement, *"I have a lifetime history of difficulty with concentrating and staying focused...I was able to overcome my disability without diagnosis or medication as a child because I was in a highly structured school environment with supportive parents. This was again the case in my post-baccalaureate program – I lived at home and my schedule and classes were highly structured, facilitating my success...I was diagnosed with ADHD by Dr. Scott Fleischer in March of 2009. I sought treatment with Dr. Fleischer and received my eventual diagnosis as I was attempting to study for the MCAT. I began treatment with stimulants at this point and have continued them since."*

In an October 2014 report of Psychoeducational Evaluation conducted at the University of South Florida (USF) when you were a 31-year-old third year medical student at USF, Megan V. McMurray, M.A. and Margaret Booth-Jones, Ph.D. write that you were referred for evaluation by Dr. Feldman at the USF Counseling Center seeking an ADHD evaluation to continue receiving psychostimulant medication. Your evaluators write, *"Due to recent policy changes at the USF CC, Ms. Black requires updated documentation to continue receiving psychiatric services for ADHD. She is currently prescribed 40 MG of Vyvanse daily, which she takes regularly, and 10 mg of Adderall as needed, which she takes very rarely and only when she needs to study for long periods of time. She reported that Vyvanse works effectively for her for about 8-10 hours, and that she takes Adderall only if she needs to study for more than 8-10 hours at a time...Ms. Black reported that she utilizes the time and a half accommodation for her medical school exams but refuses accommodations on national standardized test (e.g.. the MCAT)..."* Your evaluators conclude, *"Findings from this assessment are consistent with result patterns that typically indicate clinically significant attention problems. Specifically, Ms. Black's pattern of performance in the current assessment, while unmedicated, is indicative of ADHD."*

As you may know, ADHD is a neurodevelopmental disorder that begins in childhood and is defined by impairing levels of inattention, disorganization, and/or hyperactivity-impulsivity. Your documentation does not demonstrate a record of chronic and pervasive problems with inattention, impulsivity, behavioral regulation, or distractibility that impaired your functioning during your development or currently. No school records were provided to demonstrate impaired functioning with respect to attention, concentration, or organization that substantially limited a major life activity.

ADHD affects people over time and across situations, not in one circumscribed area such as timed test taking or in a demanding academic setting such as medical school. Manifestations of the disorder must be present in more than one setting. It must be documented beyond self-report that such symptoms have consistently and pervasively disrupted functioning in multiple behavioral domains. No objective data or documentation was provided via formal faculty/supervisor feedback, job performance evaluations, or through other sources of information verifying that you have shown pervasive problems managing daily demands for attention, organization or executive functioning.

As best one can tell from the documentation provided, you progressed through primary and secondary school without grade retention, special education evaluation or services and with an academic record and scores on timed standardized tests sufficient to gain admission to Princeton University and University of South Florida Morsani College of Medicine, all without accommodations. Regarding your performances on timed standardized tests, the records provided show that you earned an MCAT Total Score of 29O under standard conditions in 2009, better than 69.6-75.2% of a select group of medical school applicants. Overall, these data do not demonstrate impairments that limit a major life activity.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people or that additional testing time is an appropriate modification of your USMLE Step 1 test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

Sincerely,

*[signature]*

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs