# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ELIZABETH A. BLACK,

        Plaintiff,

vs.                            CASE NO.:  8:16-cv-02117-T-23TGW

NATIONAL BOARD OF
MEDICAL EXAMINERS,

        Defendant.

_____/

## **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, Elizabeth Black ("Plaintiff"), by and through her undersigned counsel, hereby files this Response to Defendant's Motion for Summary Judgment. *See* ECF No. 31. Defendant is not entitled to judgment as a matter of law.

### INTRODUCTION

    There is sufficient evidence in the record, presented *infra* in Plaintiff's Statement of Facts, to where a reasonable factfinder could find judgment in Plaintiff's favor based on Defendant's violation of the ADA. *See Greenberg v. BellSouth Telecomms.*, 498 F.3d 1258, 1263 (11th Cir. 2007). Moreover, (1) there are genuine issues of material fact and (2) Defendant has not demonstrated that they are entitled to judgment as a matter of law. In fact, the law in this case is in favor of Plaintiff's claim. This Court should deny Defendant's Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F. 3d 1292, 1314 (11th Cir. 2011); Fed. R. Civ. P. 56(a), (c). "[I]f the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor" than the movant is not entitled to summary judgment. *Greenberg*, 498 F.3d at 1263 (*citing Waddell v. Valley Forge Dental Assocs., Inc*, 276 F.3d 1275, 1279 (11th Cir. 2001)). When considering a motion for summary judgment, the non-moving party's evidence is to be believed, *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999), and all evidence and factual inferences are to be viewed in the light most favorable to the non-moving party. *Greenberg*, 498 F.3d at 1263. Moreover, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F. 2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F. 2d 838, 841 (11th Cir. 1985)).

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

In their Motion for Summary Judgment, Defendant purports to present a statement of the undisputed material facts of this case. *See* ECF No. 31; Fed. R. Civ. Pro. 56(a) ("The court shall grant summary judgment *if the movant shows that there is no genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law.") (emphasis added). However, Defendant in its Motion both presents material facts that Plaintiff disputes and omits relevant material facts. Accordingly, Plaintiff presents the following statement of facts, which – to the

2

extent Plaintiff presents additional material facts or material facts that are in dispute with the facts presented by Defendant – demonstrate a genuine dispute as to the material facts of this case, as well as the factual inferences arising from the material facts, *see Greenburg*, 498 F.3d at 1263 (all evidence and factual inferences to be view in light more favorable to non-movant):

## I. Plaintiff's Record of Impairment

Plaintiff was initially diagnosed with ADHD on March 24, 2009 by Dr. Scott Fleischer. ECF No. 38-1, at 11.[1] Plaintiff initially sought treatment from Dr. Fleischer because she was having trouble concentrating during her studies for the Medical College Admission Test (MCAT), a standardized examination that is crucial for enrollment in medical school. Ex. 1, at 141:14–23 (Dep. Black). Upon diagnosing her, Dr. Fleischer prescribed Ritalin, an ADHD medication, to Plaintiff. ECF No. 38-1, at 12.[2]

Following diagnosis, and after she moved to Tampa to attend medical school at University of South Florida (USF), Plaintiff received medication management treatment from Dr. Swapna Mukherjea at the USF Counseling Center to continue receiving her ADHD medications, Ex. 2, at 2 (Dep. Black, Ex. 25); ECF No. 32, p. 51, at 150:14–18; this was after she began her treatment at the Counseling Center on September 6, 2011. Ex. 3 (Dep. Black, Ex. 23). On or around July

---

[1] When citing exhibits and portions of exhibits filed by Defendant in this Response, Plaintiff will cite to the document number in the docket (e.g. ECF No. X) followed by the page number. For depositions filed by Defendant, only portions of which were filed, Plaintiff will cite to the page number in the document that the excerpt is located on followed by the page and line number in the deposition transcript (e.g. ECF No. A, p. B, at C:D-E). To the extent a deposition excerpt relied upon by Plaintiff was not filed by Defendant, Plaintiff will file it as a separate exhibit.

    To the extent Plaintiff utilizes supporting materials relied on by Plaintiff exclusively (i.e. not relied upon by Defendant in their Motion for Summary Judgment but relied upon by Plaintiff in this response), an index of such items will be filed along with the materials themselves. When citing to these materials, Plaintiff will cite to their exhibit number (e.g. Ex. Y) followed by the page number. To the extent the cited material is a deposition or a deposition exhibit not utilized by Defendant, the exhibit number will be followed by a parenthetical upon initial citation (subsequent citations will simply refer to the exhibit number). For depositions, Plaintiff will utilize "Dep." followed by the deponents last name (e.g. Dep. Doe); for deposition exhibits, this will be followed by the deposition exhibit number (e.g. Dep. Roe, Ex. Y).

[2] Dr. Fleischer also prescribed Klonopin, an anti-anxiety medication – per Plaintiff, her anxiety medication is intended to offset the side effects of her ADHD medication. *But see* ECF No. 38, ¶ 6 (Dr. Fleischer attested that Plaintiff disclosed on her initial visit to his office that she was already taking medicine to treat anxiety).

19, 2012, Plaintiff began seeking counseling treatment on a more ongoing basis from the Counseling Center, after receiving six counseling sessions from Tania Sales, Psy.D., initially in September of 2011. Ex. 2. Plaintiff sought treatment from the Counseling Center due to attentional, academic, and anxiety-related concerns. Ex. 1, at 200:25–201:4; *see also* Ex. 2, at 1 (listing "Life Skills & Planning," "Attention Deficit Disorder," "Interpersonal Difficulties," and "Anxiety: Performance (e.g. test) & Generalized" as reasons for seeking services at the Counseling Center).

Around the time she began receiving counseling treatment, Plaintiff was required to undergo a battery of tests – including the Adult ADHD Self-Report Scale (ASRS) Parts A & B, the Conners' Continuous Performance Test (CPT-II), and the Brief Test of Attention (BTA) – related to her ADHD. Ex. 4 (Dep. Murphy, Ex. 6). The "Overall Clinical Impression" of this evaluation was that "[t]he client's [Plaintiff's] symptoms may indicate ADHD symptoms," with the ASRS tests indicating Plaintiff was "[h]ighly likely to have ADHD," the CPT-II results indicating Plaintiff had a "54% [p]robability of symptoms indicating ADHD," and the BTA results indicating her "[s]cores are in the low average range." *Id.* at 1.

On June 10, 2013, Plaintiff began seeing Ashley Vigil-Otero, Psy.D. for therapy related to issues with her ADHD, specifically issues with "work/life balance [and] stress [with] school." Ex. 5, at 4 (Dep. Vigil-Otero, Ex. 8). Dr. Vigil-Otero reports that she had "approximately nine" sessions with Plaintiff, Ex. 6, at 20:1 (Dep. Vigil-Otero), and that during her time seeing Plaintiff "she was on the verge of not being able to stay in medical school" and was having "to postpone tests and was having difficulties." *Id.* at 32:8–16. Dr. Vigil-Otero reports that while Plaintiff first came "across … as very articulate" and as someone with only occasional struggles, "the level of impairment definitely did come across as more pronounced as she continued to struggle." *Id.* at

4

52:5–11; *see also id.* at 68:21–69:9 (while treating Plaintiff "she really was starting to get off track in her goals, to the point where it was impacting her ability to meet medical school demands, and that problem was worsening as she was postponing [taking her Step 1 examination].").

Dr. Vigil-Otero stated that her treatment was targeted at behaviors related to Plaintiff's limitations in concentration, specifically since "in this period of her life where she had higher demands that required high levels of concentration these behaviors [procrastination] were really impacting her and really compounding her challenge of study." *Id.* at 67:21–68:5; *see also id.* 29:5–10 ("[S]he had great difficulty sustaining attention, completing her study goals, really getting derailed by little things, getting off task, being able to prioritize and engage in studying that required a lot of sustained attention."). Ultimately, Dr. Vigil-Otero confirmed Plaintiff's diagnosis of ADHD.[3] *See id.* at 24:15–22 ("I did diagnose her with ADHD. [Y]ou really just need to meet the criteria for the DSM [and] she provided those symptoms."); *see also id.* at 25:13–16 (stating that a Dr. Saneholtz had diagnosed her with ADHD at the USF Counseling Center as well as "prior providers … before her that also diagnosed ADHD").[4] Dr. Vigil-Otero concluded that Plaintiff's ADHD was of the type that went "under the radar" as a child because she was a "high-achieving, well-behaved perfectionist child" but that many of these qualities "further derailed her in adulthood" due to her ADHD, which led to her adult diagnosis. *Id.* at 69:16–70:10

---

[3] One of Dr. Vigil-Otero's specializations at her practice is ADHD. *Id.* at 11:1–3. She considers herself an expert in diagnosing ADHD due to her educational and occupational background. *Id.* at 11:16–25.

[4] Defendant states in its Motion for Summary Judgment, when discussing a subsequent ADHD evaluation of Plaintiff supervised by Dr. Margret Booth-Jones, discussed *infra*, that Dr. Booth-Jones was incorrect in her belief that Plaintiff had been diagnosed twice by two different psychiatrists with ADHD. *See* ECF No. 31, at 21. However, Defendant is incorrect in its conclusion – the record reflects that a *minimum* of two psychiatrists, Dr. Fleischer and Dr. Vigil-Otero, had diagnosed Plaintiff with ADHD prior to the evaluation supervised by Dr. Booth-Jones, and possible third, Dr. Saneholtz, according to Dr. Vigil-Otero, had done so as well.

On or around October 9, 2014 Plaintiff was referred by Dr. Phyllis Feldman, a psychiatrist at the USF Counseling Center, to take a re-evaluation conducted by Megan McMurray, a graduate student at the time, and supervised by Dr. Margret Booth-Jones, to confirm her diagnosis of ADHD. ECF No. 35, p. 15, at 27:16–19. As part of her re-evaluation, Plaintiff provided an extensive psychiatric, medical, and social/family history, and took a battery of examinations, including a CPT-II, a Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), and a Conners' Adult ADHD Rating Scales – Self Report: Long Version (CAARS – S:L). ECF No. 32-15. As a result of the re-evaluation, Plaintiff was diagnosed with ADHD with combined presentation; it was also recommended that she receive academic accommodations, specifically "extended time for testing and quiet testing accommodations in all courses and standardized tests." *Id.* at 8.

Dr. Booth-Jones, who supervised and signed off on this evaluation of Plaintiff, stated that it was her opinion that Plaintiff "has a significant discrepancy between her intellectual ability and her working memory and processing speed. [It's a s]tandard presentation of ADHD." ECF No. 35, p. 18, at 31:15–18. While Dr. Booth-Jones stated that she is not an expert in diagnosing ADHD, *id.*, p. 13, at 22:10–13, she does diagnose individuals "pretty common[ly]" with ADHD at her job at the Moffitt Cancer Center. Ex. 7, at 20:13–16 (Dep. Booth-Jones). Dr. Booth-Jones attributes Plaintiff's coping with ADHD throughout childhood and subsequent diagnosis as an adult as being due to a sort of "breaking point" where the condition finally fully presented itself such that it impaired Plaintiff's functioning – "there just gets to be a critical mass of information … there gets to be a point where they [high-achieving individuals like Plaintiff] just can't do any more and it [ADHD symptoms] presents itself." *Id.* at 65:9–66:6.

## II. The Step 1 Examination

The Step One examination is an "assessment of basic science knowledge [and an] application of that knowledge." Ex. 8, 11:14–15 (Dep. Farmer). It is a one-day, eight-hour exam broken up into 7 test blocks (60 minutes each, with 40 questions), with 15 minutes of tutorial time and 45 minutes for break time. Ex. 9, at 3 (Depo. Farmer, Ex. 16).

### III. Plaintiff's Application for Accommodations on the Step 1 Exam

Plaintiff began attending medical school at USF's Morsani College of Medicine (MCOM) in 2011. Ex. 1, at 28:10–11. Starting in March of 2013, Plaintiff's second year of medical school, Plaintiff began receiving testing accommodations from USF MCOM – 50% extra time and reduced distraction environments for examinations – based on her diagnosis of ADHD. ECF No. 33-2, at 9–10. In her third year of medical school, which was in 2013–14, Plaintiff prepared to take the USMLE Step One examination administered by the Defendant. *See* Ex. 1, at 189:9–19.

After taking multiple leaves of absences from medical school beginning on April 23, 2013, ECF No. 32, p. 14, at 41:2–11, Plaintiff took her first administration of the Step 1 examination on July 3, 2014 and failed, scoring a 183 (a passing score is 192). ECF No. 33-4, at 70. Plaintiff reports that she did not seek accommodations on this administration of the examination because she was concerned about the Defendant's then practice of "flagging" an individual's examination if they received accommodations, and was advised by medical school advisors that this would disadvantage her going forward.[5] Ex. 1, at 43:21–44:21.

On November 18, 2014, after Defendant discontinued its practice of flagging, Plaintiff applied for accommodations for her second administration of the Step 1 examination. ECF No. 33-2. Included with her application was her ADHD evaluation from Dr. Booth-Jones, a personal statement detailing her struggles with ADHD, her transcripts from college, a statement from

---

[5] Plaintiff also cited this reason as why she did not seek accommodations on the MCAT. Ex. 1, at 43:21–44:21.

Pamela O'Callaghan supporting Plaintiff's need for accommodation, and a certification of prior

testing accommodations from USF. *Id.* Despite this information, Plaintiff's request was denied

on March 2, 2015. ECF No. 34-1, at 4–5. The denial concluded that Plaintiff's "documentation

[did] not demonstrate that you are currently substantially limited in a major life activity as

compared to most people or that additional testing time is an appropriate [accommodation]." *Id.*

at 5. The denial questioned Plaintiff's ADHD diagnosis, noting that Plaintiff, despite presenting

documentation of her diagnosis and its impact, did not present any "objective data or

documentation … verifying that you have shown pervasive problems [associated with ADHD]"

and that Plaintiff did not have any issues progressing through school or college, or in taking

standardized tests.[6] *Id.* Following this denial, Plaintiff sat for her second administration of the

Step One examination on April 9, 2015 and scored a 189, three points short of the passing

threshold of 192. ECF No. 33-4, at 76.

    Shortly after her second administration, Plaintiff sat for her third administration of the Step

One examination on July 2, 2015 following an "absolute deadline by which to take Step 1 of July

2 (no further delays will be permitted)" issued by Kira Zwygart – Dean of Student Affairs at the

time at USF MCOM – to Plaintiff. Ex. 10, at 1 (Dep. Black, Ex. 43). The time constraints

rendered Plaintiff unable to apply for accommodations, and she once again failed the

examination, scoring a 173. ECF No. 33-4, at 82.

    After confirming with USF that she could take the Step 1 examination a fourth time and

remain enrolled in the medical school, Ex. 11 (Depo. Black, Ex. 42), Plaintiff applied for

accommodations a second time on January 22, 2016, intending the accommodations to apply to a

---

[6] The denial also noted Plaintiff's MCAT score of 29 on her second administration of that test as a factor in denying her application for accommodations. However, the denial letter failed to mention her previous score of 22 on the MCAT, ECF No. 32-6; her failing grade on her first administration of the Step One examination, ECF No. 33-4, at 70; or any of her other standardized examination scores.

future, fourth administration of the examination, which she had already registered for at that time.[7] ECF No. 33-4, at 8. Her second application included, among many other items, various report cards and standardized examination results from K–12, letters from various individuals discussing the impact ADHD has had on Plaintiff's life, and documents reflecting the therapy and counseling Plaintiff attended to manage her disability. *See generally id.*  In addition, NBME considered the documents included in Plaintiff's first application. *See* ECF No. 36, ¶ 16.

Plaintiff's request was denied on March 28, 2016. ECF No. 34-1, at 1–3. The denial letter stated that "[o]ur review of the supplemental documentation that you provided with your recent submission found no new substantive information or evidence that alters our original decision." *Id.* at 2–3. Despite the denial, the letter did state that "[w]hile we are unable to provide you with accommodations under the ADA, for your comfort, we will provide … [a]dditional break time/standard test time." *Id.* at 3. Plaintiff never requested this accommodation and no explanation was given as to why it was provided.

In addition to Catherine Farmer, Psy.D, who authored the denial letters sent to Plaintiff, Dr. Kevin Murphy also reviewed Plaintiff's applications as an ADHD consultant. In his role as a consultant, Dr. Murphy is "not a decision maker" ECF No. 33, p. 8, at 33:6–8, although he stated "I think most of the time obviously they will go with my recommendation." *Id.* at 33:19–20. For Plaintiff, Dr. Murphy's review of the documents submitted led him to conclude, for both applications, that "the documentation provided does not adequately substantiate an ADHD diagnosis."[8] ECF No. 33-3, at 2; *see also* ECF No. 33-5, at 3. Considering the role that

---

[7] In addition to seeking accommodations for her diagnosed ADHD, Plaintiff sought accommodations for her diagnosis of converge insufficiency. ECF No. 33-4, at 11. However, this Response will only discuss her diagnosis of ADHD, per the Stipulation of the Parties. *See* ECF No. 31-2.

[8] Dr. Murphy reports that he does not accept or grant deference to a previous diagnosis of ADHD from an evaluation conducted by a qualified professional. Ex. 12, at 123:19–125:6 (Dep. Murphy); *but see id.*, at 24:17–22 (Dr. Murphy

consultants have in the review process, Dr. Murphy's review of Plaintiff's applications likely had close to a determinative impact on her denial. *See* Ex. 8, at 16:15–17:13 (consultants review an application if a review by the Defendant's Disability Services Section, which processes accommodations requests, does not result in a determination).

Ultimately, on each of the three administrations of the examination, Plaintiff reports that she could not finish any of the sections of the examination – she either guessed the answers or left the answer bubbles blank on the final questions of each section. Ex. 1, at 208:11–23. The scoring sheet provided by Defendant in discovery largely reflects this difficulty – many of Plaintiff's incorrect answers occur at the end of testing sections, and it appears Plaintiff is often filling out the same answer bubble (e.g. eight consecutive "B" answers at the end of the final section on her third test, Ex. 13, at 26) to end sections. *Id.*[9] Plaintiff reports that her trouble with standardized exams is a phenomenon that has occurred all of her life, and that she is never able to complete these types of examinations due to being distracted and impulsively choosing answers "instead of taking the time to think through the questions." Ex. 1, at 211:20–212:22.

## MEMORANDUM OF LAW

### I. Defendant Is Not Entitled to Judgment in its Favor as a Matter of Law Under Title I

Case law relied upon by Defendant in its Motion for Summary Judgement to support the contention that Plaintiff did not, as a matter of law, establish that she had a substantial limitation in a major life activity dealt with employment issues under Title I of the ADA, 42 U.S.C. § 12111, *et seq*. These cases apply a summary judgment standard of review under Title I that require a Plaintiff to present enough evidence that she "(1) is disabled, (2) is a qualified

---

would not "diagnose somebody without the ability to have done the assessment" himself or "determine the impact of someone's disability based just on a record review.").

[9] This document was provided by Defendant on the final day of fact discovery on June 1, 2017, following a request made by Plaintiff on April 26, 2017.

individual, and (3) was subjected to unlawful discrimination because of his disability" such that a reasonable factfinder could return a verdict in her favor. *See Greenberg v. BellSouth Telecomms.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *see also Rodriguez v. HSBC Bank USA,* 2015 WL 7429273 (M.D. Fla. Nov. 23, 2015). Of these Title I elements, Defendant only claims that they are entitled to judgment as a matter of law because Plaintiff is not disabled. *See* ECF No. 23, at 23–25. Plaintiff does not disagree that Title I of the ADA, its applicable standards thereof, and its implementing regulations are properly utilized in this case[10]; however, the conclusions drawn in the Title I summary judgment cases cited by the Defendant are not to be made in Plaintiff's case.

First, Defendant cites *Greenberg v. BellSouth Telecomms.*, and would presumably have the Court apply that case to find that the testimony of a Plaintiff and that of her expert witness does not create a genuine issue of material fact. ECF No. 23, at 3. That case is distinguishable from the instant case. In *Greenberg*, the court found that the plaintiff "presented no evidence that he has a record of impairment or has been regarded as impaired." 498 F.3d at 1264. Unlike the plaintiff in *Greenberg*, Plaintiff has produced numerous documents and elicited deposition testimony that shows her history of impairment, i.e. her diagnosis of ADHD. *See, e.g.*, Ex. 4 (concluding that Plaintiff more than likely had ADHD); Ex. 6 (Dr. Vigil-Otero discusses how she diagnosed Plaintiff with ADHD); ECF No. 32-15 (diagnosing Plaintiff with ADHD). At the summary judgment phase, the Court should consider these documents and testimony in the light most favorable to the plaintiff.[11]

---

[10] Plaintiff seeks to amend her complaint to include claims under Title I of the ADA. *To Be Filed*. However, Plaintiff recognizes that, at the time Defendant filed its Motion for Summary Judgment, Plaintiff's Amended Complaint only contained Title III claims. ECF No. 29. Accordingly, Plaintiff in this response will only address Title I to the extent Defendant relied on cases and other materials related to Title I.

[11] It should also be noted that this case is pre-ADAAA and applied the stricter standards applied to the definition of "disability" utilized prior to the enactment of the Amendments Act. *See infra* p. 14 n.13.

Similarly, in *Rodriguez v. HSBC Bank USA,* 2015 WL 7429273 (M.D. Fla. Nov. 23, 2015), the court considered testimony that the plaintiff did not consider his HIV a disability, that he thought nothing had limited him, that he was super energetic, and that his HIV was well controlled and well treated; the court concluded that this evidence was enough to rule out any claim by plaintiff that he had an impairment that limited his major life activities. *Id.* at 7–8. A similar situation as to the plaintiff in *Rodriguez* is not present here. Plaintiff has produced numerous documents and elicited testimony that demonstrates that she is impacted in major life activities. *See, e.g., supra* p. 10 (Plaintiff's limitations on examinations); Ex. 6 (Dr. Vigil-Otero discussing the major impact of Plaintiff's ADHD on her ability to concentrate). Accordingly, there is sufficient evidence that, when reviewed in the light most favorable to Plaintiff, could lead a reasonable factfinder to render judgment in Plaintiff's favor. Summary judgment in favor of Defendant is improper on a Title I claim.

## II. Defendant Is Not Entitled To Judgment in its Favor as a Matter of Law Under Title III

The Defendant does not discuss or cite to any case law on the summary judgment burden of proof under Title III in its Motion. However, considering the summary judgment case law cited in this Response, *supra* p. 2, it cannot be said that summary judgment in favor of Defendant is appropriate under Title III of the ADA.

Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, specifically provides that "any persons that offers examinations…related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. Federal regulations further state that "any private entity offering an examination covered by this section must assure

that the examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)." 28 C.F.R. § 36.309(b)(1)(i).

Defendant asserts in its Motion for Summary Judgment that Plaintiff has not presented sufficient evidence at the summary judgment stage to demonstrate that Plaintiff has a disability that would qualify her for Title III protections. By implication, Defendant claims that Plaintiff has not presented enough evidence at this stage to demonstrate that Defendant failed to allow Plaintiff to take the examination in a manner that best ensures the examination results accurately reflect the her aptitude or achievement level or whatever other factor the examination purports to measure. However, Plaintiff has presented sufficient evidence on both of these factors and summary judgment in favor of Defendant is not appropriate.

### *Plaintiff is an Individual with a Disability*

To be disabled for the purposes of the ADA, one must have "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). In other words , "a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Holt v. Grand Lake Mental Health Center, Inc.*, 443 F.3d 762, 765 (10th Cir. 2006). The determination of whether a person has a disability under the ADA is made on an individualized case-by-case basis. *Biank v. Nat'l Bd. of Medical Examiners*, 130 F.Supp.2d 986, 989 (N.D.Ill. 2000)(citing *Byrne v. Bd. of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992)). Based on these factors,

13

and considering the evidence presented in the Statement of Facts *supra*, a reasonable factfinder could conclude that Plaintiff is an individual with a disability who is entitled to accommodations on the Step 1 examination.

### 1.  Plaintiff Has a Recognized Impairment – Attention Deficit Hyperactivity Disorder (ADHD)

Pursuant to Federal regulations, ADHD is one example of a "physical or mental impairment" for the purposes of the definition of a disability under the ADA. 28 C.F.R. § 36.105(b)(2). Plaintiff has, on numerous occasions been diagnosed with ADHD or had her diagnosis of ADHD confirmed by a qualified professional. *See supra* pp. 3–7. Accordingly, Plaintiff both has a "physical and mental impairment" and a "record of such an impairment" as those terms are understood under the ADA. 42 U.S.C. § 12102(1)(A) & (B).[12]

Despite the Defendant's statements regarding the insufficiency of Plaintiff's multiple evaluations and diagnoses of ADHD by qualified professionals, *see* ECF No. 31, at 23–24 (stating the diagnoses did not result "from a comprehensive ADHD evaluation"), the rules of construction regarding the definition of disability counsels that the definition "shall be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A)[13]; *see also* 154 CONG. REC.

---

[12] Having a "record of such an impairment," e.g. ADHD, is sufficient to establish disability under the ADA. 42 U.S.C. § 12102(1)(B). "An individual has a record of such an impairment if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 28 C.F.R. § 36.105(e)(1). Plaintiff argues that her medical and psychological records diagnosing her with ADHD, the statements made by her treating professionals who evaluated and diagnosed her, and the fact that she was provided past testing accommodations for her ADHD at USF's medical school (i.e. has a "history of" having a disability) are sufficient to establish disability under this prong of the definition. However, to the extent the Court does not find the record sufficient to establish a *prima facie* case under the "record of" prong, Plaintiff provides arguments supporting her disability under the "substantial limitation" prong in the following sections.

[13] Unlike many other cases litigated in the 11th Circuit and in this District, *see, e.g., Coring v. LodgeNet Interactive Corp.*, 896 F.Supp.2d 1138 (M.D. Fla. 2012), all conduct and actions taken relevant to this case occurred after the enactment of the ADA Amendments Act of 2008 (ADAAA). *Cf. Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1269–70 (11th Cir. 2014) (ADAAA case where affidavit from doctor discussing substantial limitations in major life activities "enough for [Plaintiff] to present a *prima facie* case" at the summary judgment stage under the ADAAA). It should be noted that much of the case law cited by Defendant in its Motion is pre-ADAAA. *See, e.g.,* ECF No. 31, at 24 (citing to *Hetherington v. Wal-Mart, Inc.*, No. 12-13684, 511 Fed. App'x 909 (11th Cir. Mar. 5,

S8840-01 (Sept. 16, 2008) (Statement of Managers) (statement accompanying ADA Amendments Act (ADAAA) of 2008 stating that the definition of disability is to be construed broadly). Considering these rules of construction favoring a broad interpretation of the definition of disability, coupled with the favorable summary judgment evidentiary standard granted to non-movants, the evidence presented by Plaintiff – a minimum of three evaluations and diagnoses of ADHD by three different qualified professionals – is sufficient establish a *prima facie* case of impairment at this stage. *See Mazzeo*, 746 F.3d at 1269–70 (affidavit from doctor discussing substantial limitations in major life activities "enough for [Plaintiff] to present a *prima facie* case" at the summary judgment stage under the ADA Amendments Act).

Documentation demonstrating an individual has an impairment produced by an individual qualified to make that conclusion, i.e. a qualified professional, should suffice at the summary judgment stage, let alone any other stage, to defeat Defendant's claims otherwise. *See* 36 C.F.R. App. A, § 36.309 ("When an applicant's documentation demonstrates a consistent history of a diagnosis of a disability, and is prepared by a qualified professional who has made an individualized evaluation of the applicant, there is little need for further inquiry into the nature of the disability and generally testing entities should grant the requested modification, accommodation, or aid."); *see also* Testing Accommodations, U.S. Department of Justice, *available at* https://www.ada.gov/regs2014/testing_accommodations.html (last visited July 11, 2017) ("Testing entities should defer to documentation from a qualified professional who has made an individualized assessment of the candidate that supports the need for the requested testing accommodations. [...] A testing entity should generally accept such documentation and

---

2013); *Bercovitch v. Baldwin Sch.*, 133 F.3d 141 (1st Cir. 1998); *Love v. Law Sch. Adm. Council*, 513 F. Supp. 2d 206 (E.D. Pa. 2007); and other outdated case law to support its proposition that Plaintiff is not an individual with a disability as a matter of law).

provide the recommended testing accommodation without further inquiry."). Moreover, the issue of whether the evidence provided by Plaintiff was enough to support the Plaintiff's claim that she is disabled is still disputed by the Parties and, accordingly, there is an issue of material fact that should be considered by this Court at trial.

### 2.   The Effect of Plaintiff's Impairment on Various Major Life Activities

As Plaintiff shared in her response to NBME's First Set of Interrogatories, Ex. 14, ¶ 2, her ADHD causes her to be substantially limited in the major life activities of learning, reading, memory, and concentrating.[14] *See* 36 C.F.R. § 36.105(c)(1)(i) (listing "thinking," "concentrating," and "learning" as major life activities). The qualified professionals who evaluated, treated, and diagnosed Plaintiff discussed numerous times the effect of her ADHD on her thinking, concentrating, and learning. *See, e.g.*, Ex. 6, at 68:2–4 ("[When Plaintiff] had higher demands that required high levels of concentration [her ADHD was] really impacting her[…]."); 29:5–10 ("[S]he had great difficulty sustaining attention, completing her study goals, really getting derailed by little things, getting off task, being able to prioritize and engage in studying that required a lot of sustained attention."); ECF No. 35, p. 18, at 31:15–17 (Plaintiff "has a significant discrepancy between her intellectual ability and her working memory and processing speed.").

Moreover, Plaintiff, despite Defendant's claims to the contrary, has presented a *prima facie* case that she is currently substantially limited in these areas. The ADA counsels that the term "substantially limits" "shall be interpreted consistently with the findings and purposes of the

---

[14] Since Plaintiff became aware through discovery and through Defendant's Motion for Summary Judgment of Defendant's intent to rely on Title I case law and Defendant's apparent perception of the Step 1 licensing exam as an employment related test in its assessment of an applicant's qualifications to be a doctor, *see* ECF No. 36, ¶¶ 3–5, Plaintiff also argues that she is substantially limited in the major life activity of working.

ADA Amendments Act of 2008," 42 U.S.C. § 12102(4)(B); the ADA Amendments Act found that courts had "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress" and that it was intending to "reinstat[e] a broad scope of protection to be available under the ADA." Pub. L. No. 110-325, § 2(a)(7) & (b)(1), 122 Stat. 3553 (2008). Accordingly, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 36.105(d)(1)(i).

The regulatory rules of construction for the term "substantially limit" counsel how that term is to be applied in a case like Plaintiff's. As Defendant noted, "[a]n impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 36.105(d)(1)(v). However, Defendant's focus in comparing Plaintiff to the general population is squarely on outcomes she achieves on standardized testing, despite the law counseling that the focus in evaluating whether or not some is disabled "is on how a major life activity is substantially limited. . . not on what outcomes an individual can achieve." *Id.* § 36.105(d)(3)(iii). Rather than just focusing on the outcomes, i.e. test scores, that Plaintiff has achieved in the past, the individuals evaluating Plaintiff have explained on numerous occasions how Plaintiff is substantially limited in the relevant major life activities in terms of the conditions and the manner in which she is limited in the test-taking environment as compared to the general population. *See id.* § 36.105(d)(3)(i).

On numerous occasions in the record, the qualified professionals reviewing Plaintiff and Plaintiff herself speak to the substantial limitations Plaintiff's ADHD places on her learning, reading, memory, and concentrating as compared to the general population. Qualified

professionals attested to her inability to sustain attention and to her being derailed while studying for examinations, *see supra* pp. 4–7, and Plaintiff herself spoke to the concentration and thinking issues she had while taking her examinations. Plaintiff stated she was not able to finish her examinations, *see* Ex. 1, at 208:11–23; *see also* Ex. 13, and further stated that she had difficulty focusing and concentrating on each standardized examination she has taken throughout her life. *See* Ex. 1, at 211:20–212:22.

As compared to the general population, who do not have difficulty in performing tasks such as studying and testing-taking – hence Dr. Vigil-Otero's concern with Plaintiff's study habits and ability to study, Ex. 6, at 67:21–68:5 – Plaintiff is substantially limited in learning, reading, memory, and concentrating, especially in the realm of test-taking. *See* 28 C.F.R. § 36.105(d)(3)(ii) ("Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort or time required to perform a major life activity …[.]"). The fact that Plaintiff may have been diagnosed later in life or was high achieving in the past – which Defendant claims precludes her from having a disorder that rises to the level of disability, ECF No. 31, at 24 – does not affect this conclusion. *See* 28 C.F.R. § 36.105(d)(3)(ii) ("In determining whether an individual has a disability under the 'actual disability' or 'record of' prongs of the definition of 'disability,' the focus is on how a major life activity is substantially limited. . . not on what outcomes an individual can achieve.").

Despite Defendant's claims otherwise, ECF No. 31, at 24, the evidence from qualified professionals (along with her own attestations) provided by Plaintiff that she is substantially limited in the major life activities of learning, reading, memory, and concentrating is beyond what is typically required by the ADA even at the trial stage. 28 C.F.R. § 36.105(d)(1)(vii)("The comparison of an individual's performance of a major life activity to the performance of the same

major life activity by most people in the general population usually will not require scientific, medical, or statistical evidence."). Accordingly the evidence provided by Plaintiff, coupled with the broad interpretation of the substantially limited standard and a non-movant's burden at the summary judgment stage, is sufficient to defeat Defendant's claim that Plaintiff is not substantially limited in a major life activity, and thus not disabled under the ADA, as a matter of law. *See Mazzeo*, 746 F.3d at 1269–70.

### Defendant Did Not "Best Ensure" Plaintiff's Test Results on the Step One Examination Accurately Reflected Her Aptitude

While Defendant did not explicitly seek summary judgment based on the testing accommodations standards espoused in 42 U.S.C. § 12189 and 28 C.F.R. § 36.309(b)(1)(i), the implication is that because Plaintiff does not have a disability, she is not entitled to testing accommodations under the ADA. However, Plaintiff can none-the-less establish a *prima facie* case that she is entitled to accommodations on the Step 1 examination. Defendant is not entitled to judgment as a matter of law on the accommodations issue.[15]

On two occasions, Plaintiff has requested, and Defendant has denied, an accommodation – 50% extra time – that best ensures Plaintiff can take the Step One examination in a way that accurately reflects her aptitude in the areas the exam purports to measure – i.e. "basic science knowledge [and the] application of that knowledge." Ex. 8, at 11:14–15. While testing entities are not required to provide the accommodation requested by an individual with a disability, only an accommodation that is as effective as the request accommodation and appropriate to the needs of that individual, *see Bonnette v. Dist. Of Columbia Ct. of Appeals*, 796 F.Supp.2d 164, 183

---

[15] While Plaintiff recognizes Defendant did not discuss this issue as the basis for their Motion for Summary Judgment, Plaintiff discusses this issue briefly considering the Court may find this argument is made by implication.

(D.D.C. 2011), Plaintiff can establish a *prima facie* case that she is entitled to an accommodation of 50% extra time on the examination.

First, the treating professional supervising the evaluation of Plaintiff for ADHD recommended that Plaintiff "should be allowed extended time … in all courses and standardized tests to maximize her ability to focus." ECF No. 32-15, at 8. Second, Plaintiff had been receiving 50% extra test time on her examinations at USF MCOM due to the limitations and impairments caused by her disability. ECF No. 33-2, at 9–10; *see also* 28 C.F.R. § 36.309(b)(1)(v) (past accommodations to be given "considerable weight"). Finally, Defendant has no qualms about granting additional time to take the Step One examination as an accommodation for individuals who need it – approximately 75% of accommodations granted are for extra time, Ex. 8, at 102: 16–25 – so it cannot be said that an accommodation for extra time would undermine the purposes of the examination, as opposed to best ensure an individual is taking the examination in a way that demonstrates their aptitude. These evidentiary factors, in concert with the evidentiary burden for non-movants at the summary judgment stage, demonstrate that Defendant is not entitled to judgment as a matter of law on the accommodations issue under Title III.

## CONCLUSION

In conclusion, Defendant is not entitled the granting of its Motion for Summary Judgment. There are genuine disputes as to the material facts of this case and Plaintiff has presented enough evidence that a reasonable factfinder could find in her favor on all of her claims. Defendant is not entitled to judgment as a matter of law.

Respectfully submitted: July 14, 2017

**Curtis Filaroski**

FL Bar No. 111972
curtisf@disabilityrightsflorida.org
**Megan Collins**
FL Bar No. 119112
meganc@disabilityrightsflorida.org
**Ann Siegel**
FL Bar No. 166431
anns@disabilityrightsflorida.org
**Attorneys for Plaintiff Elizabeth Black**
Disability Rights Florida
2473 Care Drive, Suite 200
Tallahassee, FL 32308
Phone: 850-488-9071
Fax: 850-488-8640

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of July, 2017, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic

filing to the following:

GREGORY A. HEARING
ghearing@tsghlaw.com
Thompson, Sizemore, Gonzalez & Hearing, P.A.
201 N. Franklin Street, Suite 1600
Post Office Box 639 (33601)
Tampa, Florida 33602

ROBERT A. BURGOYNE
robert.burgoyne@nortonrosefulbright.com
Norton Rose Fulbright US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501

Attorneys for National Board of Medical Examiners

Plaintiff's counsel has also emailed copies of the foregoing to the Defendant's attorneys.

Curtis Filaroski
Attorney for Plaintiff