**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| ELIZABETH A. BLACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CASE NO.:  8:16-cv-02117-SDM-TGW |
| | ) |
| NATIONAL BOARD OF | ) |
| MEDICAL EXAMINERS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SUMMARY JUDGMENT REPLY BRIEF**

Contrary to what Ms. Black argues in her Response to Defendant's Motion for Summary Judgment (ECF No. 39) ("Pl. Resp."), there is no need for a bench trial to resolve the single ADA claim asserted in her Amended Complaint.

This case calls for a straightforward application of Fed. R. Civ. P. 56 to facts as to which there are no genuine disputes.  Ms. Black claims to be entitled to 50% more testing time than other examinees on Step 1 of the United State Medical Licensing Examination because she has been diagnosed with ADHD.  To prevail on that claim she must show, among other things, that she is disabled within the meaning of the ADA.  Undisputed facts – largely ignored in her opposition brief – preclude any such finding.

A person is disabled under the ADA if (1) he has a physical or mental impairment, that (2) substantially limits his ability to perform a major life activity, as compared to most people in the general population.  *See* 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105(d)(1)(v).  Thus, having a diagnosed impairment is "not enough" to make a person disabled under the ADA; "the other half of the definition requires that the impairment substantially limit one or more major life activities."  *Collado v. UPS,* 419 F.3d 1143, 1155 (11th Cir. 2005).

**I.      Ms. Black Has Not Disputed *Any* Of The Facts Relied Upon By NBME To Show That She Is Not Substantially Limited In Any Major Life Activities**

The clearest basis for resolving this case is for the Court to determine that, even if one accepts Ms. Black's ADHD diagnosis, no reasonable fact finder could conclude that she is substantially limited in her ability to perform any major life activities as compared to most people in the general population.

NBME noted in its Motion – and Ms. Black's Response does not dispute – that ADHD is a lifelong, developmental impairment that disrupts multiple facets of a person's life. By definition, symptoms must be present prior to age 12 in two or more settings (*e.g.*, at home, school, or work, or with friends or relatives), and there must be "clear evidence" that the symptoms interfere with the individual's ability to function. *See* Def.'s Motion for Summary Judgement at 16 (ECF No. 31) ("NBME Motion") (discussing the DSM-5 diagnostic criteria for ADHD). Thus, if they existed, the limitations that Ms. Black now claims to experience would have manifested themselves throughout her life, in multiple settings. As Dr. Murphy put it, there would be "footprints in the sand." Murphy Dep. 20:17-23:3 (filed herewith).[1]

Overwhelming record evidence refutes any finding, however, that she has experienced *any* limitations by virtue of her alleged ADHD, much less been "substantially limited." She has performed exceedingly well in all facets of her life – academic, personal and professional – despite her alleged ADHD impairment, with no accommodations.

NBME noted in its Motion, for example, that Ms. Black performed exceedingly well (i) on other high-stakes standardized exams without extra testing time (including the SAT and MCAT); (ii) in high school (graduated 4th in her class with a 3.94 GPA, took mostly Honors courses, and was an officer in Student Council and Captain of her varsity field hockey team);

---

[1] Supporting materials not previously filed with the Court are attached, along with an Index.

(iii) at Princeton University (got mostly A's and B's, All American on the school's Division I field hockey team, and described by her coach as having the "commitment" and "focus" to achieve success at the "highest level"); (iv) in her pre-med, Post-Baccalaureate courses at the University of Pennsylvania ("superb" student with a 3.79 GPA); (v) in numerous jobs she held before and after starting her Post-Baccalaureate program; and (vi) in her first year of medical school (where her courses included timed exams on which she received no extra testing time). *See* NBME Motion at 5-10.  ***Ms. Black's Response does not contest any of this evidence***.

When asked in discovery to identify the major life activities in which she claims to be substantially limited, Ms. Black responded that she is "affected" (not substantially limited) "in the major life activities of learning, reading, memory, and concentrating."  *See* Resp. to Int. 2 (filed herewith).  These abilities are used in all of the contexts discussed above, and Ms. Black has excelled in those contexts without needing any accommodations.

## II.   Ms. Black Has Pointed To No Counterevidence That Would Support A Finding That She Is Substantially Limited In Any Of Her Alleged Major Life Activities

Ignoring the voluminous objective evidence regarding her prior successes, Ms. Black instead offers insubstantial arguments as to why a fact finder could conclude that her alleged ADHD "causes her to be substantially limited."  Pl. Resp. 16.[2]  The arguments fail.

---

[2] As noted above, a person is disabled under the ADA if she has a physical or mental impairment that substantially limits one or more major life activities.  *See* 42 U.S.C. § 12102(1)(A).  The ADA also provides that a person is disabled if she has "a record of such an impairment."  *Id.* at § 12102(1)(B).  Ms. Black has previously argued that she has ADHD and is substantially limited in her ability to perform various major life activities; in other words, she has argued that she is disabled under the first prong of the ADA definition of "disabled."  In her summary judgment opposition brief, Ms. Black argues that she is also disabled under the "record of such an impairment" prong of the definition.  *See* Pl. Resp. 14.  This argument does not help Ms. Black.  Under the "record of" prong of the definition, as under the "actual" prong of the definition, a plaintiff must demonstrate that the alleged impairment substantially limits one or more major life activities.  *See, e.g., Sierra v. Port Consol. Jacksonville, LLC*, 2016 WL 927189, *4-6 (M.D. Fla. March 3, 2016) (holding that plaintiff had not presented adequate evidence that his impairment resulted in substantial limitations and thus had not shown that he was disabled under either the "actual" or "record of" prongs of the ADA disability definition, and granting summary judgment to defendant); 28 C.F.R. § 36.105(e) ("An individual will be considered to fall within [the 'record of'] prong of the definition … if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment.").

### A. No Professional Seen By Ms. Black Compared Her Abilities to the Corresponding Abilities of Most People in the General Population

Ms. Black asserts that "professionals" who she consulted "discussed … the effect of her ADHD on her thinking, concentrating and learning." Pl. Resp. 16. To be affected by an alleged impairment, however, is not the same thing as being substantially limited. The sparse evidence cited by Ms. Black would not support a finding in her favor on the issue of substantial limitation. She cites two pages from the deposition of Dr. Vigil-Otero. *See id.*. Dr. Vigil-Otero has no first-hand knowledge of whether or how Ms. Black has been affected by her alleged ADHD. She is a therapist who Ms. Black went to see "[t]o reduce anxiety and get back to positive thinking," and her deposition testimony was based entirely on what Ms. Black told her during the therapy sessions. *See id.,* Ex. 6, 21:15-21:22; 30:18-31:1; 40:13-41:1. Ms. Black also cites a statement made by Dr. Booth-Jones, to the effect that Ms. Black has a "'significant discrepancy between her intellectual ability and her working memory and processing speed.'" *See* Pl. Resp. 16 (quoting Booth-Jones Dep. at 31:15-17). However, Dr. Booth-Jones (who has never met Ms. Black) did not testify that this "discrepancy" reflected a "substantial limitation" in Ms. Black's memory or processing speed, nor could she. The alleged discrepancy was based upon Ms. Black's performance on the Wechsler Adult Intelligence Scale-4th Edition (WAIS-IV). Ms. Black's scores on the WAIS-IV Working Memory and Processing Speed components were solidly Average. *See* Black Dep., Ex. 47 at 5 (ECF No. 32-15). Thus, while her scores in those areas were not as high, say, as her Very Superior Verbal Comprehension scores, *see id*. (hence the so-called "discrepancy"), the scores do not show a substantial limitation in Ms. Black's working memory or processing speed compared to most people in the general population. The opposite is true. They are further evidence that no such substantial limitation exists. By definition, "Average" is not "substantially limited."

Ms. Black gets no further with her assertion that, on "numerous occasions in the record, the qualified professionals reviewing Plaintiff and Plaintiff herself speak to the substantial limitations Plaintiff's ADHD places on her learning, reading, memory, and concentrating as compared to the general population." Pl. Resp. 17. Ms. Black cites *no evidence* regarding her ability to perform any major life activities as compared to the general population.

Ms. Black testified that she should be compared to her medical school peers, not to the general population. Black Dep. 19:21-20:9 (ECF No. 32). That view reflects a fundamental misconception of the ADA. And she has not identified a single piece of evidence in which a treating professional offered any views on whether Ms. Black's alleged ADHD limits her ability to learn, read, memorize or concentrate as compared to most people in the general population. *See* Pl. Resp. 18 (citing "pp. 4-7" of Plaintiff's Response, which addresses whether Ms. Black's ADHD diagnosis was valid, not the extent of any resulting functional limitations). Nor could she. No professionals addressed that subject in their depositions or declarations, or in records relating to services they provided to Ms. Black.

Dr. Fleischer made "no attempt to measure the extent of the functional limitations that she reported." NBME Motion, Ex. 9 ¶ 8 (ECF No. 38). Dr. Booth-Jones has never met Ms. Black and does not "know the distinction" between being substantially limited compared to one's peers versus some other comparison group; her report did not address whether Ms. Black is substantially limited compared to most people; and the report itself supports the opposite conclusion. *See* Booth-Jones Dep. at 30:24-31:4, 42:18-42:22 (ECF No. 35); Black Dep., Ex. 47 at 5-6 (ECF No. 32-15). Dr. Vigil-Otero administered no diagnostic assessments during their therapy sessions, Vigil-Otero Dep. at 20:8-21:1 (filed herewith), and she has no factual basis for addressing the extent of Ms. Black's ability to learn, read, memorize information or concentrate,

in general much less in comparison to most people.  Any statements in her deposition regarding Ms. Black's alleged ADHD symptoms are thus conclusory statements, unsupported by specific facts and insufficient to create a genuine issue of material fact.  *See Hilburn v. Murata Elec. North Am.,* 181 F.3d 1220, 1228 (11th Cir. 1999).

### B. Ms. Black Cannot Prevent Summary Judgment By Asserting for the First Time that She is Also Substantially Limited in the Major Life Activity of Working

Ms. Black asserts that she also wants to argue that she is "substantially limited in the major life activity of working." *See* Pl. Resp. 16 n.14.  This argument is a last-minute attempt to stave off summary judgment, in the face of overwhelming evidence that she is not substantially limited in any of the major life activities upon which she has previously relied.  The argument comes too late;[3] is not supported by any record evidence; and is flatly contradicted by her employment history, *see* NBME Motion at 7-8, and her statement in responding to NBME's discovery requests that she "will be able to practice medicine without receiving any Accommodations," *see id*., Ex. 10 (ECF No. 31-4, Resp. to RFA 17).

### C. The ADAAA Did Not Remove The "Substantial Limitation" Requirement

According to Ms. Black, the Court should conclude that she has "presented a *prima facie* case" of substantial limitation in light of the expanded ADA coverage contemplated by the ADA Amendments Act of 2008 ("ADAAA").  *See* Pl. Resp. 16-17.  She is wrong.

It is certainly true that the ADAAA broadened the ADA's coverage.  However, Congress did not remove the "substantial limitation" requirement:

> By retaining the essential elements of the definition of disability including the key term 'substantially limits' we reaffirm that not every individual with a physical or mental impairment is covered by the ... definition of disability in the ADA.  An impairment that does not substantially limit a major life activity is not a disability under [the definition's first prong].  That will not change after enactment of the ADA Amendments Act....

---

[3] *See Lightfoot v. Henry Cty. Sch. Dist*., 771 F.3d 764, 769 (11th Cir. 2014) ("'A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.'") (citation omitted).

Statement of Mgrs. to Accompany S. 3406, ADA Amendments Act, 154 Cong. Rec. S8840, S8841-42 (Sept. 16, 2008); *Mann v. Louisian High Sch. Ath. Ass'n*, 535 Fed. Appx. 405, 410 (5th Cir. 2013) ("Although the ADA Amendments Act … lowered the standard that plaintiffs must meet to show that they are disabled, ... a plaintiff must still show substantial limitation....").

Finally, Ms. Black cannot avoid summary judgment by arguing that the cases relied upon by NBME "dealt with employment issues under Title I of the ADA." Pl. Resp. 10. In so arguing, she simply ignores the numerous, directly analogous cases that NBME cited in its Motion involving Title III claims by individuals seeking extra testing time on high-stakes tests.[4]

The "substantial limitation" inquiry requires consideration of the "'effect of [an] impairment on the life of the individual.'" *Moore v. Hillsborough Cty. Bd. of Com'rs*, 544 F. Supp. 2d 1291, 1299 (M.D. Fla. 2008) (citation omitted). There are no genuine issues of material fact regarding whether Ms. Black's alleged ADHD substantially limits her ability to read, learn, concentrate, think, or memorize information, "as compared to most people in the general population." 28 C.F.R. § 36.105(d)(1)(v). It clearly does not.

## III. There Are No Genuine Issues Regarding Whether Ms. Black Has ADHD

Summary judgment is also warranted on the threshold issue of whether Ms. Black even has an impairment. She asserts, and NBME does not dispute, that ADHD can be an "impairment" under the ADA. *See* Pl. Resp. 14. The dispute here is whether record evidence adequately supports her ADHD diagnosis. Indeed, Ms. Black devotes the bulk of her brief to defending the diagnoses that she received, largely ignoring the additional requirement of resulting "substantial limitation."

---

[4] *See Bibber v. Nat'l Bd. of Osteopathic Med. Exam'rs,* 2016 U.S. Dist. LEXIS 48181 (E.D. Pa. 2016); *Bach v. LSAC,* 2014 U.S. Dist. LEXIS 124632 (M.D.N.C. 2014); *Rawdin v. Am. Bd. of Pediatrics*, 985 F. Supp. 2d 636 (E.D. Pa. 2013), *aff'd*, 582 Fed. App'x 114 (3d Cir. 2014); *Healy v. Nat'l Bd. of Osteopathic Med. Exam'rs*, 870 F. Supp. 2d 607 (S.D. Ind. 2012); *Rumbin v. AAMC,* 803 F. Supp. 2d 83 (D. Conn. 2011); *Love v. LSAC*, 513 F. Supp. 2d 206 (E.D. Pa. 2007); *cf. Singh v. George Wash. Univ.*, 508 F.3d. 1097 (D.C. Cir. 2007) (Title III claim by medical school student claiming to have ADHD); *Powell v. NBME,* 364 F.3d 79, 88-89 (2d Cir. 2004).

A "genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.'" *Kernal Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (citation omitted). Here, no reasonable fact-finder could find by a preponderance of the evidence that plaintiff has been properly diagnosed as having ADHD.

When she requested accommodations on the Step 1 exam, Ms. Black asserted that she was first diagnosed with ADHD by Dr. Fleischer and that this diagnosis was "confirmed" in a report prepared by Megan McMurray, a USF graduate student who was supervised by Dr. Margaret Booth-Jones. *See* NBME Motion at 19, 20-21.

No reasonable fact-finder could conclude that these ADHD diagnoses were valid. Neither diagnosis resulted from a comprehensive ADHD evaluation, and neither addressed all the criteria necessary for a proper diagnosis. *See* NBME Motion at 16-22. These deficiencies were explained in Dr. Murphy's reports, *see id.* at 13-14, and in his deposition, Murphy Dep. 42:1-43:12, 57:22-59:17, 90:1-91:20, 99:2-105:4 (filed herewith). Ms. Black does not dispute that Dr. Murphy is a nationally recognized expert on diagnosing ADHD.

Instead, Ms. Black now alleges that two additional psychiatrists also diagnosed her with ADHD, Dr. Vigil-Otero and Dr. Saneholtz, Pl. Resp. 5 n.5, and she argues that the mere fact that she has been diagnosed precludes the Court from addressing on summary judgment whether she is impaired. *See id.* at 14-16. She is wrong, on the facts[5] and the law.[6]

---

[5] Although Dr. Vigil-Otero testified that she diagnosed Ms. Black with ADHD, Vigil-Otero Dep. 23:24-24:22 (Ex. 3 hereto), she also testified that a person cannot properly be diagnosed based on an informal interview, and that she made her diagnosis after a half-hour meeting with Ms. Black, *id*. at 14:10-21:1. Dr. Vigil-Otero's ADHD diagnosis enabled Ms. Black to obtain insurance reimbursement for her therapy sessions. *Id*. at 46:8-47:13.

[6] Ms. Black relies upon *Mazzeo v. Color Resolutions* to support her argument that simply having an ADHD diagnosis is enough for her to avoid summary judgment on the threshold question whether she has an impairment. Pl. Resp. 15. *Mazzeo*, however, is plainly distinguishable. There, plaintiff relied upon an affidavit from a physician who had been treating plaintiff "for an extended period of time." The affidavit addressed the plaintiff's diagnosed

Ms. Black was asked in an interrogatory to identify all professionals who have evaluated or treated her alleged ADHD. Her response included Dr. Fleischer and Dr. Booth-Jones. It did **not** include Dr. Vigil-Otero or Dr. Saneholtz. *See* Resp. to Int. 4 (filed herewith). When deposed in May 2017, she testified that her response to this interrogatory was complete and accurate. *See* Black Dep. 48:1-48:4 (filed herewith). She also testified that the two professionals who have diagnosed her with ADHD are Dr. Fleischer and Dr. Booth-Jones, *id*. at 24:25-25:5, 5, and that neither Dr. Saneholtz nor Dr. Vigil-Otero evaluated her for ADHD, *id*. at 159:23-160:2. The contrary suggestion in her Response cannot defeat summary judgment. Ms. Black cannot rely upon Dr. Vigil-Otero's assertion that she diagnosed Ms. Black with ADHD and treated her for ADHD when Ms. Black own testimony is to the contrary. In deciding a summary judgment motion, a court will not consider third-party testimony cited by the nonmoving party when that testimony is contradicted by the nonmoving party's own testimony. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1295-96 (11th Cir. 2012).

Ms. Black next suggests that, under the ADA, testing entities should defer to a diagnosis provided by a test taker's professional. Pl. Resp. 15. She cites informal agency guidance from the U.S. Department of Justice, *see id*., but that guidance is not binding and has no application here in any event, where the diagnoses relied upon by plaintiff were not made in accordance with applicable diagnostic criteria and are squarely refuted by objective evidence relating to the plaintiff, and where a qualified professional offered a comprehensive explanation for why a diagnosis of ADHD is unwarranted for Ms. Black.

---

physical impairment and the resulting functional limitations that were noted during treatment. It also noted that plaintiff had undergone the surgery. *See* 746 F.3d 1264, 1268-70 (11th Cir. 2014). The defendant "did not submit any medical testimony about Mr. Mazzeo's back condition or its effects." *Id*. at 1269 n.3. Here, in contrast, neither Dr. Fleischer nor Dr. Booth-Jones was a long-time treating professional (Dr. Fleischer saw her once, and Dr. Booth-Jones has never met her), and there is extensive record evidence demonstrating why those diagnoses were improper, including reports and deposition testimony from a nationally recognized ADHD expert.

IV.     **Ms. Black Has Inexplicably Responded To Arguments That NBME Has Not Made, Relating To Issues That Are Not Presented By NBME's Motion**

The first argument in Ms. Black's Response is that NBME is not entitled to judgment in its favor under Title I of the ADA. *See* Pl. Resp. 10-12. Her last argument is that NBME did not "best ensure" that her test results on Step 1 accurately reflect her aptitude. *See id*. at 19-20. Both arguments are completely irrelevant to NBME's pending motion for summary judgment.

The only claim in Ms. Black's Amended Complaint is a claim that NBME violated Title III of the ADA. There is no Title I claim for the Court to address, as Ms. Black acknowledges. *See id*. at 11 n.10. She suggests that NBME's citation of cases involving Title I somehow gives her a basis for amending her complaint to add a Title I claim, *id*., but that suggestion is frivolous.[7] The Title I cases cited by NBME addressed the definition of "disabled" under the ADA. Because the same definition applies to all Titles of the ADA, including Title III, s*ee* 42 U.S.C. § 42 U.S.C. § 12102(1), those cases are appropriately cited here.

Ms. Black's "best ensure" argument is equally misplaced. The "best ensure" language comes from an ADA regulation that addresses what testing entities must do when administering their tests to disabled individuals. *See* 28 C.F.R. § 36.309(b)(1). It has no relevance unless an individual has been found to be disabled within the meaning of the ADA. As the record does not support a finding that Ms. Black is disabled, the question whether NBME has "best ensured" that her test results are accurate is irrelevant to NBME's pending motion for summary judgment. Oddly, Ms. Black acknowledges this fact in making her argument. *See* Pl. Resp. 19 n.15.

Summary judgment is appropriately entered in favor of NBME.

---

[7] In addition to being untimely, any request by Ms. Black for leave to amend her complaint a second time, to add a Title I claim, would be futile. Title I prohibits "covered entities" from discriminating in the employment context. 42 U.S.C. § 12112(a). "Covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee." *Id*., § 12111(2). NBME is none of these things relative to Ms. Black.

Dated:  July 26, 2017	Respectfully submitted,

**/s/ Gregory A. Hearing**
GREGORY A. HEARING
Florida Bar No. 817790
ghearing@tsghlaw.com
Thompson, Sizemore, Gonzalez & Hearing, P.A.
201 N. Franklin Street, Suite 1600
Tampa, Florida 33602
Tel:  (813) 273-0050
Fax:  (813) 273-0072

ROBERT A. BURGOYNE
Admitted *pro hac vice*
robert.burgoyne@nortonrosefulbright.com
Norton Rose Fulbright US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Tel:  (202) 662-4513
Fax:  (202) 662-4643

Attorneys for National Board of Medical Examiners

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 26th day of July, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Curtis Filaroski
Anthony J. DePalma
Megan Collins
Disability Rights of Florida
2473 Care Drive, Suite #200
Tallahassee, Florida 32308

curtisf@disabilityrightsflorida.org
tonyd@disabilityrightsflorida.org
meganc@diabilityrightsflorida.org

Attorneys for Plaintiff

Defendant's counsel has also emailed copies of the foregoing to plaintiff's attorneys.

**/s/ Gregory A. Hearing**
Attorney
