IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ELIZABETH A. BLACK, )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>NATIONAL BOARD OF )<br>MEDICAL EXAMINERS, )<br>)<br>      Defendant. ) | CASE NO.: 8:16-cv-02117-SDM-TGW |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
EXPERT TESTIMONY PROPOSED BY PLAINTIFF**

Subject to its pending Motion for Summary Judgment (Dkt. No. 31), Defendant National Board of Medical Examiners ("NBME") hereby moves to exclude any trial testimony from Professor Ruth Colker, identified by Plaintiff as a proposed expert at trial, and to exclude the opinions reflected in her expert witness report. NBME also moves to limit any testimony by Dr. Ashley Vigil-Otero and Dr. Margaret Booth-Jones to factual testimony regarding their interactions, as healthcare professionals, with Plaintiff. Finally, NBME moves to exclude any trial testimony by Professor Charles Golden that addresses or is based upon any evaluation of Ms. Black that was not identified in his expert witness report as providing a basis for his proposed opinion testimony or provided to NBME in a timely manner.

**MEMORANDUM OF LAW**

**I.   NATURE OF THE CASE**

Plaintiff alleges that NBME violated the Americans with Disabilities Act ("ADA") by denying her request for 50% extra testing time on Step 1 of the United States Medical Licensing Examination ("USMLE"). According to Ms. Black, she is entitled to more testing time than other examinees because she has an Attention Deficit Hyperactivity Disorder, or ADHD.

28513443.1

NBME denies that Ms. Black is disabled within the meaning of the ADA, or that she needs extra testing time in order to take Step 1 of the USMLE in an accessible manner. *See* 42 U.S.C. § 12189. The ADHD diagnoses that she relies upon are not consistent with applicable diagnostic criteria. Moreover, even if one accepted the diagnoses, she is not substantially limited in any major life activity, as confirmed by her stellar academic history, outstanding scores on other standardized tests, and her employment history.

## II.  MS. BLACK'S RULE 26(A)(2) EXPERT WITNESS DISCLOSURES

In accordance with the Court's scheduling order, Ms. Black served her Rule 26(a)(2) Disclosures on June 1, 2017 ( the "Disclosures"). The Disclosures are attached hereto at **Ex. 1.**

Plaintiff's Disclosures identify four individuals who Ms. Black proposes to call as expert witnesses at trial:

1. Dr. Margaret-Booth Jones, Ph.D.
2. Dr. Ashley Vigil-Otero, Psy.D.
3. Professor Ruth Colker, Esq.
4. Professor Charles Golden, Ph.D.

The Disclosures did not provide a written report for Dr. Booth-Jones or for Dr. Vigil-Otero. *See* Disclosures at 1-3; *see also* Fed. R. Civ. P. 26(a)(2)(B). Reports were provided for Professor Colker and Professor Golden. *See* Disclosures at 3-4.

## III.  PROFESSOR COLKER SHOULD BE EXCLUDED AS A WITNESS AND ANY OPINIONS REFLECTED IN HER REPORT SHOULD ALSO BE EXCLUDED

Professor Colker is a law school professor at the Ohio State University College of Law and a past member of the Board of Directors for Disability Rights Ohio. *See* Disclosures, App. B at 13. Her report purports to compare NBME's accommodations practices with so-called "best practices" that were established pursuant to a Consent Decree that resolved litigation involving

*another* testing entity, the Law School Admission Council ("LSAC").  It also purports to offer Professor Colker's legal analysis of Ms. Black's ADA claim, and her opinion regarding whether NBME violated the ADA by denying Ms. Black's request for extra testing time.

Professor Colker's report should be stricken in its entirety and her proffered testimony excluded from this case.  Expert testimony is only admissible if it is relevant to the case and helpful to the trier of fact.  Professor Colker's report and proffered testimony is neither.

The first half of the report—purporting to analyze whether NBME complied with the accommodation practices that *LSAC* agreed to implement in order to amicably resolve a lawsuit against LSAC in California—must be excluded because it is completely irrelevant.  The so-called "best practices" recommended for LSAC as part of the resolution of that case apply only to LSAC.  They do not apply to NBME or to any other testing entity.  Moreover, most of the topics addressed by the so-called "best practices" panel (and in Professor Colker's report here) are not even remotely implicated as issues in this case (*e.g.*, the number of external reviewers LSAC should use, what type of training LSAC should provide to its staff and external reviewers, and how LSAC should handle appeals by a candidate).

This case involves a single plaintiff, asserting a single claim, that is based upon a single action, the denial of her request for extra testing time.  The only legal issue presented is whether NBME violated the ADA by denying her request for accommodations.  It is totally irrelevant whether NBME's accommodation policies and practices are consistent with the policies and practices that LSAC agreed to implement in order to amicably resolve a lawsuit that did not involve NBME.  Irrelevant information, by definition, is not helpful to the trier of fact, and therefore, is inadmissible.

The second half of Professor Colker's report also must be stricken because it is an improper legal conclusion as to which purported expert testimony is improper. The ultimate legal determination in this case—whether NBME violated the ADA—is within the sole province of the Court. The Court is perfectly qualified to decide whether the ADA was violated in this case without obtaining the views of a law school professor.

Because Professor Colker's report and proffered testimony address an irrelevant factual issue and a legal issue that is for the Court to decide, Professor Colker's opinions would not assist the trier of fact and are improper. She should be excluded as an expert in this case, and her report should be stricken.

### A. Professor Colker's Expert Report

In 2012, LSAC was sued by the California Department of Fair Employment and Housing ("DFEH"). DFEH's complaint alleged that LSAC had violated the ADA and California state law in connection with its handling of accommodation requests on the Law School Admission Test ("LSAT"). The United States intervened in the case. After two years of litigation, LSAC decided to settle the claims pursuant to a Consent Decree. The Decree notes that LSAC denied all of the plaintiffs' claims, that there had been "no adjudication as to the merits of any of the claims," and that the parties had decided to amicably resolve the case "without trail of any issues of fact or law raised by any of the Plaintiffs' complaints, and without resort to protracted litigation." Consent Decree at 1-2, *Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council*, No. CV 12-1830-EMC (N.D. Cal.) (the "LSAC Case").

As one component of that Consent Decree, the parties to that case agreed to create a five-person panel that would establish policies and practices that LSAC would agree to follow for the term of the Decree in handling requests for testing accommodations on the LSAT. Professor

Colker was a member of that five-person panel; so was Professor Charles Golden, who Plaintiff has also designated as a proposed trial expert.

According to her report, Professor Colker was asked to address two questions by Plaintiff's counsel:

> "Does the processing of and the decision regarding Elizabeth Black's accommodations application, for accommodations of the USMLE Step One examination administered by Defendant represent "best practices" for entities administering standardized tests, as outlined in the LSAC Best Practices Panel report and pursuant to the policies and law/legal analysis guiding the LSAC Best Practices Panel report?
>
> "If not, how is Defendant's analysis of Ms. Black's accommodation request inconsistent with the ADA?"

*See* Disclosures, App. A, at 2 (Ex. 1 hereto). Professor Colker was asked, in other words, to (1) compare NBME's accommodation policies and practices with the policies and practices that LSAC must follow pursuant to terms that LSAC agreed to in the Consent Decree that resolved the LSAC Case, and (2) give an opinion on whether LSAC violated the ADA in denying Ms. Black's request for accommodations.

Professor Colker then provides a 12-page, single-spaced report addressing these questions. The first part of her report purports to compare NBME's practices with the practices that the Panel in the LSAC Case recommended LSAC follow in handling accommodations requests on the LSAT. *Id.* at 2-9. The second part purports to analyze whether NBME violated the ADA in denying extra testing time to Ms. Black. *Id.* at 9-14.

### B.   Legal Standard

Under the Federal Rules of Evidence, "[a] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (a trial court has a "special obligation" to ensure expert testimony is relevant and reliable). The Eleventh Circuit applies a three-part test to determine whether an expert has met the requirements of Rule 702. *Guinn v. AstraZeneca Pharms., L.P.*, 602 F.3d 1245, 1252 (11th Cir. 2010). This test requires the Court to consider whether: (1) the expert is qualified to testify competently on the issues he or she intends to address; (2) the expert's methodology is sufficiently reliable under the inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Id.* These requirements are referred to as the "qualification," "reliability," and "helpfulness" prongs, respectively. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

It is the proponent's burden to establish the relevance and reliability of his or her expert's testimony under Rule 702 based on a preponderance of the evidence standard. *Daubert*, 509 U.S. at 593 n.10; *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (the burden for establishing the admissibility of the expert testimony "is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.").

  **C.**  **Professor Colker's Proposed Testimony Comparing NBME's Accommodation Practices with LSAC's Practices Should be Excluded Because it Addresses Matters that are Not Relevant to this Lawsuit**

The majority of Professor Colker's expert report is devoted to the so-called "Best Practices Report" that was prepared as part of a settlement in the LSAC Case. The Consent Decree in the

LSAC Case and the Report that was prepared as part of that settlement related only to *LSAC's* procedures for handling accommodation requests on the *LSAT*. They have nothing to do with NBME or any other testing organization, to the licensing test that is the subject of this case, Step 1 of the USMLE.

Notably, Professor Colker never states that the practices recommended in the LSAC Case apply to NBME (or to any other testing entity). They clearly do not. The plaintiffs in the LSAC Case expressly acknowledged this in a brief that they filed in response to an amicus letter from numerous healthcare professionals who disputed that the practices recommended by Professor Colker and her fellow Panel members were, in fact, "best practices" for handling accommodation requests. *See* Pls' Response to Amicus Curiae Letter at 7:22-23, ECF Dkt. No. 226, *Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council*, No. CV 12-1830-EMC (N.D. Cal.) ("[O]nly LSAC is contractually bound to implement the Best Practices.").

This case requires the Court to determine whether NBME violated the ADA in denying Ms. Black time-and-a-half accommodations on Step 1 of the USMLE. It does not call for the Court to evaluate whether or how NBME's accommodation policies differ from those of LSAC or any other testing entity. The practices recommended by Professor Colker and her fellow panel members in the LSAC Case are simply irrelevant to this lawsuit.

As with any form of evidence, expert testimony is admissible only if it is "relevant to the task at hand," and "advances a material aspect of the proposing party's case." *Allison*, 184 F.3d at 1312; *see also McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (for expert opinion to be appropriate, a "fit" must exist between "the offered opinion and the facts of the case"). "Where the opinion does not advance the question in dispute for which the opinion is proffered there is no 'fit' and the opinion should be excluded." *Zygarlowski v. Royal Caribbean Cruises Ltd.*, No. 11-

21340-CIV, 2013 WL 7137886, at *1 (S.D. Fla. Feb. 27, 2013). Whether NBME complied with the so-called "best practices" in the LSAC Case is irrelevant to the Court's "task at hand." Those practices do not constitute legal requirements, and they do not apply to NBME (something Professor Colker does not deny). As a result, Professor Colker's testimony on this issue simply does not "fit" the issues that this case presents.[1]

Professor Colker's report regarding the "Best Practices Report" should therefore be stricken, and she should not be allowed to testify on this subject. *See, e.g.*, *Russell v. City of Tampa*, No. 8:16-cv-912-T-30JSS, 2017 WL 2600863, at *4 (M.D. Fla. June 15, 2017) (granting motion to strike expert witness and expert report because, *inter alia*, an issue about which the expert opined was "irrelevant to the legal claims in th[e] case.").

> **D.    Professor Colker's Proposed Testimony and Expert Report Regarding NBME's Compliance with the ADA Should be Stricken Because it is an Impermissible Legal Conclusion**

In the second part of her report, Professor Colker purports to perform a legal analysis. She discusses statutory text, regulations, and regulatory guidance, and then concludes that NBME's "conduct is legally impermissible under the ADA." Disclosures, App. A at 9-13 (Ex. 1 hereto). In addition to being wrong, this proposed testimony is plainly improper.

Expert testimony is only admissible if the expert has specialized knowledge that will assist the trier of fact. *See* Fed. R. Evid. 702(a); *Guinn*, 602 F.3d at 1252. The trier of fact in this case is the Court. Therefore, Professor Colker's testimony is only admissible if it would assist this Court in understanding the evidence or determining a fact in issue. That is not what her testimony

---

[1] The first "question presented" to Professor Colker reveals the square-peg-round-hole nature of her report and purported testimony: "Does the processing of and decision regarding Elizabeth Black's accommodations applications, for accommodations on the ***USMLE Step One Examination*** administered by ***Defendant [NBME]***, represent 'best practices' . . . as outlined in the ***LSAC Best Practices Panel report*** [for handling accommodations ***on the LSAT***?]" Disclosures, App. A at 1(emphasis added).

purports to do.  Instead, she wants to perform the Court's role.  That is not the proper role of an expert witness.  "[A]n expert witness may not testify as to his opinion regarding ultimate legal conclusions," *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009), or as to "the legal implications of conduct." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (holding that district court abused its discretion by allowing an expert to testify regarding legal conclusion); *see also Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1112 (11th Cir. 2005) ("testifying experts may not offer legal conclusions").

In this case, the Court must determine whether NBME violated the ADA in denying Ms. Black's accommodation requests.  This is a legal question that is within the purview of the Court. Professor Colker does not have any "specialized knowledge" about Ms. Black or the ADA that would assist this Court.  *See Zurich Am. Ins. Co. v. Amerisure Ins. Co.*, No. 9:16-CV-81393, 2017 WL 1372858, at *2 (S.D. Fla. Feb. 13, 2017) ("The special legal knowledge of the judge makes the witness' testimony superfluous.") (citation omitted).  Federal judges clearly are capable of applying federal statutes to the facts presented in a given case without the assistance of experts. That is what they do, day in and day out.

Courts routinely exclude testimony from experts that consists of legal conclusions or opines on the legal consequences of certain conduct.  That is what should happen here with respect to Professor Colker's proffered testimony.  *See, e.g.*, *Craggs Const. Co. v. Fed. Ins. Co.,* 73 Fed. R. Evid. Serv. 575 (M.D. Fla. 2007) (excluding proposed expert testimony of an attorney because it consisted of "a series of legal conclusions"); *Brevard Emergency Servs. v. EmCare Inc*., 2006 WL 2425423, at *4-6 (M.D. Fla. Aug. 21, 2006) (excluding testimony and expert report from an attorney:  "In the Eleventh Circuit, . . . the judge is the only source of law . . . .  An attorney may not testify regarding the meaning of a law or the legal implications of conduct."); *Dubiel v.*

*Columbia Hosp. Ltd. P'ship*, No. 04-80283-CIV, 2005 WL 5955691, at *4 (S.D. Fla. Jan. 11, 2005) (granting motion to strike expert's report and testimony as to whether hospital's policy was in compliance with the FLSA because "testimony that purports to offer legal opinions is properly excluded"); *see also Specht v. Jensen*, 853 F.2d 805, 806 (10th Cir. 1988) (holding that Fed. R. Evid. 702 will not "permit an attorney, called as an expert witness, to state his views of the law … and opine whether defendants' conduct violated that law"); *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 103-04 (D. Conn. 2006) (granting motion to exclude expert testimony in ADA case; expert's proposed testimony that employer could have accommodated employee's disability request impermissibly applied law to facts of case to reach legal conclusion; opinion "did not proffer any specialized knowledge and invoke[d] legal standards").

In a strikingly similar case, in which an expert report "consist[ed] of stating what the ADA . . . require[s], replete with citations to the statutes and regulations issued thereunder; reciting facts gleaned from the plaintiffs and other sources; and expressing opinions that [defendant] violated the [] statute," the court granted the defendant's motion to exclude the proffered testimony and report because legal determinations are the sole province of the judge. *Luciano v. E. Cent. Bd. of Co-op. Educ. Servs.*, 885 F. Supp. 2d 1063, 1067-68 (D. Colo. 2012). Like the expert in *Luciano*, Professor Colker improperly "expresses opinions on what the statute and regulations require and that [defendant] violated those requirements." *Id.* at 1068. And, like the expert in *Luciano*, Professor Colker's report and proffered testimony on this topic should be excluded. Professor Colker can provide no "specialized knowledge" to assist the Court other than impermissible legal conclusions.

### IV. PROFESSOR GOLDEN SHOULD NOT BE PERMITTED TO TESTIFY REGARDING HIS RECENT EVALUATION OF MS. BLACK OR TO OFFER ANY OPINIONS BASED UPON THAT EVALUATION, AND HIS EVALUATION REPORT SHOULD BE EXCLUDED

Under the parties' Case Management Report (Dkt. No. 16 at 4) and the Court's scheduling Order (Dkt. No. 17 at 1), the deadline for Ms. Black to provide her expert witness Disclosures to NBME under Federal Rule of Civil. Procedure 26(a)(2) was June 1, 2017. The Disclosures provided on that date included an expert report from Dr. Charles Golden, a professor in the Psychology Department at Nova Southeastern University, dated May 25, 2017. Professor Golden's report sets forth a single opinion that Professor Golden intends to offer at trial:

> It is my opinion that the rejection of the clients application for accommodations was inappropriate.

*See* Disclosures, App. C, at 1 (Ex. 1 hereto). The report also offered the basis for this opinion:

> This [opinion] is based on the review of the client's previous psychological testing (all records are listed below), SAT scores, MCAT scores, and her medical records from Dr. Fleischer and based o[n] best practices guidelines which apply to this case. The data clearly support that she has been diagnosed with ADHD by competent professionals following customary guidelines and her scores on previous standardized testing without accommodations, which clearly demonstrates that she performs below expectations based on her cognitive and intellectual abilities. In such a case, accommodations should be approved.

*Id*. The list of records that he identified as providing the basis for his opinion consisted entirely of historic records relating to Ms. Black (as well as records that have nothing to do Ms. Black or this lawsuit, including the LSAC "Best Practices Report" and a "Transcript from Heathwood Hall Episcopal School," a school in South Carolina that Ms. Black never attended). *See id*. at 1-2. The report does not state that Professor Golden based his opinion on any in-person clinical evaluation that he had done, or even that he intended to do such an evaluation.

As noted, Ms. Black provided her Disclosures to NBME on **June 1, 2017**, as required under the parties' Case Management Report ("CMR") and the Court's scheduling Order. Other

important dates currently in place under the CMR, the original scheduling Order, and an Order entered by the Court in February that made minor scheduling adjustments (Dkt. No. 27) are as follow:

- **June 1, 2017**:        Discovery deadline
- **June 15, 2017**:       Discovery-related motions deadline
- **June 30, 2017:**       Due date for Defendant's Rule 26(a)(2) disclosures
- **July 1, 2017**:        Dispositive motion deadline
- **August 4, 2017:**      End date for deposing expert witnesses
- **August 24, 2017**:     Pretrial conference before Magistrate Wilson
- **September 2017**:      Trial term in which bench trial will be held (unless summary judgment is granted)

In compliance with the applicable deadline, NBME filed a motion for summary judgment on June 30, 2017, which has been fully briefed. (Dkt. No. 31). On August 4, 2017, more than a week after NBME had filed its reply brief in support of summary judgment, Ms. Black filed a Motion for Leave to File a Second Amended Complaint (Dkt. No. 44), seeking to add additional "major life activities" in which she purports to be substantially limited by virtue of her alleged ADHD. NBME has opposed that Motion as coming too late (*i.e*., after NBME had moved for summary judgment and shortly before the scheduled trial date, if a trial were necessary), and futile in all events. *See* Dkt. No. 45.

Against this background, and notwithstanding the schedule that has been in place for over almost a year relating to expert witnesses, Ms. Black served a document on NBME – on August 10th – a 9-page report of an evaluation that Professor Golden conducted of Ms. Black on July 18 and July 19, 2017. *See* Ex. 2 hereto. Ms. Black presumably intends to offer this evaluation at trial

(if a trial is held), and to elicit testimony from Professor Golden reflecting the opinions that he purports to have reached as a result of his evaluation. The Court should not permit her to do so.

In the first place, it would be procedurally improper to allow Professor Golden to offer opinions beyond the single opinion that Professor Golden identified in his expert witness report, or to base his opinion testimony on any sources other than those that he identified in his expert witness report. His clinical evaluation has been provided to NBME more than two months after the deadline for Ms. Black's expert witness disclosures, after the deadline for deposing expert witnesses, and only a few weeks before the scheduled trial date. This is too late. She has provided no explanation for her failure to obtain an evaluation from Professor Golden sooner and to provide that evaluation to NBME in a timely manner, and providing such an evaluation report after the deadline for providing expert witness disclosures, the deadline for deposing experts, and the filing of a motion for summary judgment is clearly not harmless. *See Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 825 (11th Cir. 2009) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party.").

"'Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational.'" *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (citation omitted). Professor Golden should not be allowed to offer any opinion at trial beyond the opinion that was set forth in the expert witness report that Ms. Black provided to NBME on June 1, 2017, or to rely in any way on his in-person evaluation of Ms. Black in testifying at trial. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (parties must provide a "*complete* statement of *all* opinions the witness will express and the basis and reasons for them") (emphasis added); Fed. R. Civ.P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that

information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"); *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1315 (11th Cir. 2014) (untimely disclosure of expert witness opinions warrants exclusion of the testimony at trial); *Hamlett v. Carroll Fulmer Logistics Corp.*, 176 F. Supp. 3d 1360, 1365 (S.D. Ga. 2016) (noting that "Rule 26(a)(2) deters procrastination and sandbagging," and not allowing an expert to provide opinions that were not disclosed in his expert report).[2]

Professor Golden's clinical evaluation and any related opinion testimony should also be excluded for a second reason. Ms. Black has stipulated that "ADHD is the only impairment that Ms. Black is relying upon or intends to rely upon in this lawsuit in support of her claim that NBME violated the ADA by denying her request for testing accommodations on the USMLE Step 1 exam." *See* Dkt. No. 31-2, ¶ 6. She has further stipulated that she will "not assert, claim or otherwise argue in this lawsuit that she is or was entitled to any test accommodation on the USMLE Step 1 exam by virtue of any impairment other than ADHD," "physical or mental." *Id*. ¶¶ 6-7. Both parties have agreed that these stipulations "shall be enforceable by the Court." *Id*. ¶ 9.

In direct contravention of these stipulations, Professor Golden's evaluation suggests that, although he believes that Ms. Black's "history, testing and presentation" are "inconsistent with a such a diagnosis," "anxiety" might be an alternative impairment that could justify giving Ms. Black

---

[2] Ironically, Professor Golden's evaluation report offers further confirmation that summary judgment should be entered in this case for NBME. He acknowledges that Ms. Black's performance on other "high stakes timed tests" has been "well above the average for the general population." Report at 6 (*See* Ex. 2 hereto). He also acknowledges that her "school grades and behavior have been uniformly positive." *Id*. at 2. And he states that her performance on all of the assessments that he administered was average or better. *Id.* at 3-6. His evaluation thus confirms that Ms. Black is not substantially limited in her ability to read, concentrate, or perform any of her other alleged major life activities as compared to most people in the general population. Therefore, regardless of whether she has been properly diagnosed as having ADHD, she is not disabled as a matter of law within the meaning of the ADA. *See* 42 U.S.C. § 12189; 28 C.F.R. § 36.105(d)(1)(v).

more testing time than other candidates.  *See* Report at 9 (Ex. 2 hereto).  He also suggests an additional "alternate diagnosis" for Ms. Black:  Specific Learning Disability.  *Id*.

The suggestion in Professor Golden's last-minute evaluation report that Ms. Black might have two additional impairments – other than, and instead of, ADHD – is plainly improper in light of Ms. Black's stipulation that ADHD is the only impairment that she has relied upon or will rely upon in this case to support her claimed entitlement to extra testing time on Step 1 of the USMLE.  Her stipulation thus provides an additional basis for excluding the report from Professor Golden's evaluation of Ms. Black on July 18 and 19, 2017, and excluding any testimony from Professor Golden at trial that is based in any way on that evaluation.

A week ago, Ms. Black made a last-minute decision to seek leave to file a Second Amended Complaint, after NBME had moved for summary judgment.  In similar fashion, she has made a last-minute decision to be evaluated by a new professional whose testimony she proposes to offer at trial.  That evaluation, likewise, took place after NBME had filed its summary judgment papers, which pointed out the deficiencies in her prior ADHD diagnoses and demonstrated that, even if she had a valid diagnosis, she is not substantially limited in any of her claimed major life activities.  Ms. Black is playing fast-and-loose with the schedule in this case and with her disclosure obligations under the applicable Rules.  If a trial is held in this case, she should not be permitted to offer any testimony from Professor Golden that is based upon his untimely evaluation of Ms. Black, and Professor Golden's evaluation report should be excluded.

## V. ANY TESTIMONY BY DR. VIGIL-OTERO AND DR. BOOTH JONES SHOULD BE LIMITED TO FACTUAL TESTIMONY AND LAY OPINIONS RELATING TO THEIR INTERACTIONS WITH MS. BLACK

Dr. Vigil-Otero and Dr. Booth-Jones are both designated as expert witnesses in Ms. Black's Disclosures.  *See* Disclosures at 1-3 (Ex. 1 hereto).  Dr. Vigil-Otero is a therapist who Ms. Black saw for several sessions in 2013, based upon a "desire to maintain a work/life balance & stress

w/school." Dep. of Dr. Vigil-Otero, Ex. 8 at AVO 0004. Ms. Black's stated goal was "reducing anxiety & get[ting] back to positive thinking." *Id*. Dr. Booth-Jones is a clinical psychologist who works at the USF Moffitt Cancer Center. In October 2014, she supervised a graduate student who was training at the USF Psychological Services Center in connection with an evaluation that the graduate student did of Ms. Black. The graduate student concluded that Ms. Black has ADHD, and her evaluation report was the principal documentation relied upon by Ms. Black in seeking extra testing time on Step 1 of the USMLE.

Although Dr. Vigil-Otero and Dr. Booth-Jones are designated as expert witnesses in Ms. Black's Disclosures, Ms. Black did not provide a written report for either witness. *See* Fed. R. Civ. P. 26(a)(2). Accordingly, neither of these witnesses may offer expert witness testimony at trial under Federal Rules of Evidence 702, 703 or 705.

As the Eleventh Circuit has noted, the "testimony of treating physicians presents special evidentiary problems that require great care and circumspection by the trial court. Much of the testimony proffered by treating physicians is an account of their experience in the course of providing care to their patients. Often, however, their proffered testimony can go beyond that sphere and purport to provide explanations of scientific and technical information not grounded in their own observations and technical experience." *Williams v. Mast BioSurgery USA, Inc*., 644 F.3d 1312, 1316 (11th Cir. 2011). When that happens, "the trial court must determine whether testimony not grounded in the physician's own experience meets the standard for admission as expert testimony." *Id*. A treating physician "may offer lay *opinion* testimony, consistent with Rule 701, when the opinion is 'based on his experience as a physician and [is] clearly helpful to an understanding of his decision-making process in the situation," but when "a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line

from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of *Daubert*." *Id.* (original emphasis, citations omitted).

Thus, a treating physician like Dr. Vigil-Otero or Dr. Booth-Jones may testify as a lay witness — and avoid Rule 26(a)(2)(A)'s disclosure requirements for experts — "if the testimony is an account of [her] observations during the course of treatment or if it is offered for the purpose of explaining the physician's decision-making process or the treatment provided." *Eberhart v. Novartis Pharm. Corp.*, 867 F. Supp.2d 1241, 1252–53 (N.D. Ga.2011) (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)). However, a non-expert treating physician's opinion testimony must be "strictly and narrowly limited" to those circumstances. *Id.* at 1253. If the treating physician purports to "provide explanations of scientific and technical information not grounded in [her] own observations and technical experience," she becomes an expert witness under Federal Rule of Evidence 702 and subject to Rule 26(a)(2)(A)'s disclosure requirements. *Id.*

Because expert witness reports were not provided for Dr. Vigil-Otero or Dr. Booth-Jones, neither witness may offer testimony beyond testimony that is based upon their own interactions with Ms. Black. They "may not testify as to their expert opinions. Rather, such witnesses may testify only as to their observations based on personal knowledge of the facts of the case and as to their lay opinions to the extent such opinions . . . are based on the witness' personal experience and [are] helpful in understanding the witness' decision making process." *Kaplan v. Kaplan*, No. 2:10–cv–237–FtM–99SPC, 2012 WL 1660605, at *2 (M.D. Fla. May 11, 2012).

## VI.   CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court grant NBME's motion *in limine*.

## **CERTIFICATE OF GOOD FAITH**

As set forth above, pursuant to Local Rule 3.01(g) of the United States District Court for the Middle District of Florida, counsel for NBME has conferred with counsel for Plaintiff in an attempt to resolve these issues.  Counsel for Plaintiff, however, has indicated that Plaintiff was opposed to this motion in its entirety and will file a response in opposition within the timeframe set out in Local Rule 3.01(b).

Dated:  August 15, 2017

Respectfully submitted,

**s/ GREGORY A. HEARING**
GREGORY A. HEARING
Florida Bar No. 817790
ghearing@tsghlaw.com
Thompson, Sizemore, Gonzalez & Hearing, P.A.
201 N. Franklin Street, Suite 1600
Tampa, Florida 33602
Tel:  (813) 273-0050
Fax:  (813) 273-0072

ROBERT A. BURGOYNE
Admitted *pro hac vice*
robert.burgoyne@nortonrosefulbright.com
Norton Rose Fulbright US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Tel:  (202) 662-4513
Fax:  (202) 662-4643

Attorneys for National Board of Medical Examiners

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 15th day of August, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

>Curtis Filaroski
>Anthony J. DePalma
>Megan Collins
>Disability Rights of Florida
>2473 Care Drive, Suite #200
>Tallahassee, Florida 32308
>
>curtisf@disabilityrightsflorida.org
>tonyd@disabilityrightsflorida.org
>meganc@diabilityrightsflorida.org
>
>Attorneys for Plaintiff

Defendant's counsel has also emailed copies of the foregoing to plaintiff's attorneys.

s/ GREGORY A. HEARING
Attorney
