## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| _____ ) | |
| ELIZABETH A. BLACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 8:16-cv-02117-SDM-TGW |
| ) | |
| NATIONAL BOARD OF ) | |
| MEDICAL EXAMINERS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## JOINT PRETRIAL STATEMENT

Pursuant to Rules 16(c) and 26(a)(3) of the Federal Rules of Civil Procedure and Rule

3.06 of the Local Rules of the United States District Court of the Middle District of Florida,

Plaintiff ELIZABETH BLACK ("Plaintiff" or "Ms. Black"), and Defendant NATIONAL

BOARD OF MEDICAL EXAMINERS ("Defendant" or "NBME"), by and through their

respective undersigned counsel, submit the following Joint Pretrial Statement.

**I.     Basis of Federal Jurisdiction:**

The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**II.     Concise Statement of the Nature of the Action:**

This case involves a single claim for relief under Title III of the Americans with

Disabilities Act of 1990, as amended (the "ADA"), 42 U.S.C. § 12101 *et seq*. Plaintiff asserts

a claim under Section 12189 of the ADA, and its implementing regulations, 28 C.F.R. §

36.309. Section 12819 of the ADA provides, in relevant part, as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for … professional … purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189.

Ms. Black alleges that she is disabled, and that NBME violated Section 12189 by not granting her request for extra testing time on Step 1 of the United States Medical Licensing Examination.  NBME denies that Ms. Black is disabled within the meaning of the ADA, denies that it violated the ADA by not granting Ms. Black's request for extra testing time, and denies that Ms. Black is entitled to any relief.

**III.     General Statement of Each Party's Case:**

A. Plaintiff's Case:

Plaintiff Elizabeth A. Black is 34-year-old medical school student at the University of South Florida Morsani College of Medicine (USF MCOM). Plaintiff alleges that Defendant, NBME, violated Title III of the ADA by denying her request for 50% extra testing time accommodations on the Step 1 examination administered by Defendant. Defendant alleges that it did not violate the ADA because Plaintiff does not have a disability. Plaintiff can show by a preponderance of evidence that she is an individual with a disability, as that term is defined in the ADA, and that she is entitled to the 50% extra time she has requested on the Step 1 exam.

The Step 1 exam is part of a series of standardized examinations known as the "United States Medical Licensing Examinations" administered by Defendant, all three of which (Step 1, Step 2, and Step 3) must be passed before a physician with an M.D. degree is eligible for a license to practice medicine in the United States, and thus able to enter the medical profession.

The Step 1 exam is designed to assess an individual's basic science knowledge and an application of that knowledge. It is a one-day, eight-hour exam broken up into 7 test blocks (each 60 minutes each, with 40 questions), with 15 minutes of tutorial time and 45 minutes for break time.

Students at USF MCOM must take and pass the Step 1 exam before they may move on to the third year of their schooling. Due to Plaintiff's failure to pass the examination on the three occasions that she has taken it, she has been unable to move on to her third year of medical schooling due to USF's policy. Moreover, due to the examinations nature in licensing physicians to practice, it has served as a roadblock to Plaintiff's goal of eventually practicing medicine following her schooling. On two separate occasions, Plaintiff has attempted to seek accommodations on the exam only to be denied by Defendant, who claims that she does not have a disability that would qualify her for accommodations. However, Plaintiff has a recognized mental impairment – ADHD – that impairment substantially limits her major life activities of learning, reading, memory, and concentrating.[1]

Plaintiff has been diagnosed with attention deficit hyperactivity disorder (ADHD) at least four times by a variety of qualified professionals. Plaintiff was initially diagnosed with ADHD by Dr. Scott Fleischer on March 24, 2009. Dr. Fleischer made this diagnosis following a consultation and psychiatric evaluation, after Plaintiff came in seeking treatment due to

---

[1] Plaintiff also alleges a substantial limitation in the major life activities of working and test-taking, ECF No. 44, and will discuss these major life activities in this portion of the Joint Stipulation to preserve the arguments should the Court grant Plaintiff's Motion to Amend the Complaint.

problems concentrating during her studies for the Medical College Admission Test (MCAT).[2] Dr. Fleischer concluded that Plaintiff displayed symptoms consistent with a diagnosis of "ADD" and prescribed her Ritalin to treat those symptoms and help her with the issues she was experiencing.

Upon arriving at USF MCOM, Plaintiff began seeking medication management services at USF's Counseling Center in 2011. Later, in July of 2012, she sought counseling services from the Center; pursuant to her seeking these services, Plaintiff was required to take a battery of tests to assess her ADHD symptoms. As a result of this testing, it was concluded that Plaintiff displayed symptoms consistent with a diagnosis of ADHD. In March of 2013, after treatment and counseling at USF's Counseling Center for close to two years, Plaintiff began receiving testing accommodations at USF MCOM. Specifically, she began receiving 50% extra test time and a distraction-free environment during tests, accommodations designed to negate the impairments caused by her ADHD in the testing environment so that any testing reflected Plaintiff's achievement level and aptitude.

Starting in 2013, Plaintiff began studying for the Step 1 exam and ran into multiple issues in studying connected to her ADHD. On June 10, 2013, Plaintiff began seeing Dr. Ashley Vigil-Otero for therapy. During the course of therapy, Dr. Vigil-Otero observed numerous interfering behaviors and attentional concerns related to Plaintiff's study habits – noting that Plaintiff was easily distracted while studying, that she was getting off track to the

---

[2] Due to the MCAT's policy of flagging test scores at that time, Ms. Black did not request accommodations on the MCAT, however, she cancelled the scoring for all but two of her attempts at the test.

point where it was affecting her goals in medical school, and that she had difficulty in areas, like studying and test-taking, that required high levels of concentration – and targeted her therapy towards these behaviors. Ultimately, Dr. Vigil-Otero diagnosed Plaintiff with ADHD based on her observations and numerous sessions with Plaintiff.

In October of 2014, Plaintiff was referred by the Counseling Center to take a re-evaluation conducted by Megan McMurray, a graduate student at the time, and supervised by Dr. Margret Booth-Jones, to confirm her diagnosis of ADHD. As part of her re-evaluation, Plaintiff provided an extensive psychiatric, medical, and social/family history, and took a battery of examinations. As a result of this evaluation, Plaintiff's diagnosis of ADHD was confirmed and it was recommended in the report that she continue to receive the accommodations of 50% extra test time and a distraction-free environment in testing situations. Dr. Booth-Jones described Plaintiff's status as a "standard presentation of ADHD."

Finally, during the course of this litigation, Plaintiff was evaluated by Plaintiff's expert Dr. Charles Golden. Dr. Golden conducted a biopsychosocial interview and a battery of examinations, and concluded that Plaintiff "clearly" has ADHD and "has shown a lifelong pattern of underachievement consistent with this diagnosis." Dr. Golden concluded that, based on her intelligence and expected performance, Plaintiff has consistently, throughout her life, underperformed on standardized tests, including the SAT, the MCAT, and the Step 1 examination, due to her ADHD impairing the condition and manner in which she is able to take the examination. Dr. Golden further concludes that while Plaintiff's outcomes on these standardized examinations, i.e. her scores, are largely average-to-above-average when compared to the general population, they also reflect a substantial limitation in her major life

activities of concentrating and reading in the context of taking the examination, i.e. in the condition and manner in which she takes the examination, as she should be scoring much higher.

Despite these multiple diagnoses[3] and ample documentation provided by Plaintiff in her accommodations applications on the effect her impairment has on her test-taking performance, Defendant has denied and continues to deny Plaintiff accommodations on the Step 1 examination. Plaintiff's first application for accommodations was made to Defendant prior to her second administration of the examination, following her first administration on July 3, 2014 where she scored a 183, short of the 192 passing score. Plaintiff reports she did not seek accommodations on her first administration due to Defendant's then-practice of "flagging" accommodations on an exam, i.e. stating that the individual had received accommodations on their score report.[4]

Defendant denied Plaintiff's first application for accommodations, stating that Plaintiff did not have a disability that would qualify her for accommodations. Following this denial, Plaintiff sat for her second administration of the exam on April 9, 2015, scoring a 189, just barely short of the 192 threshold. Shortly thereafter, under pressure from the USF MCOM administration, Plaintiff took a third administration of the examination on July 2, 2015, scoring

---

[3] It should be noted that Dr. Golden's evaluation and subsequent confirmation of Plaintiff's diagnosis was not available at the time Defendant reviewed Plaintiff's applications, as the evaluation occurred during the course of this litigation. However, the multiple diagnoses made at the time of Plaintiff's applications should have been sufficient for Defendant regardless of Dr. Golden's additional diagnosis.

[4] The issue of "flagging" was also the chief reason why Plaintiff never sought accommodations on the MCAT examination.

a 173. On each administration of the Step 1 examination, Plaintiff reported she could not finish any of the sections of the examination, and was forced to guess on the final questions of each of the sections. The scoring sheets for her examination reflect that Plaintiff frequently would guess the same answer bubble (e.g. "B" on seven straight questions) on consecutive questions at the end of testing sections.

On January 22, 2016, Plaintiff applied a second time for accommodations on a future administration of the Step 1 exam, after confirming with USF MCOM that she could take a fourth administration. Defendant once again denied Plaintiff's application, stating that the additional (and voluminous) documentation provided by Plaintiff did not change their prior decision. On both occasions in which Defendant denied Plaintiff's application, Plaintiff's application was reviewed by Dr. Kevin Murphy, Defendant's expert witness. Despite Dr. Murphy's belief that ADHD cannot be diagnosed via a record review, Dr. Murphy, without ever having met Plaintiff and reviewing the documentation provided by Plaintiff, counseled Defendant that it was his belief that Plaintiff could not have ADHD, despite multiple prior diagnoses by qualified professionals who had personally reviewed Plaintiff.

The ADA counsels that, in order to have a disability, an individual have "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "The definition of disability [is to be] construed in favor of broad coverage of individuals … to the maximum extent permitted by the terms of [the ADA]." 42 U.S.C. § 12102(4)(A); *see also* 28 C.F.R. § 36.105(a)(2)(i) (reiterating the same). Plaintiff asserts that she clearly has a disability under this definition. Plaintiff has been diagnosed with ADHD, a "mental impairment," on numerous occasions. While Defendant

takes issue with the methodology employed by the qualified professionals reviewing Plaintiff, a qualified professional who has personally reviewed an individual, as opposed to a mere record review conducted by Defendant's expert witnesses, is given deference in making a determination as to whether an individual has an impairment. *See* 36 C.F.R. App. A, § 36.309 ("When an applicant's documentation demonstrates a consistent history of a diagnosis of a disability, and is prepared by a qualified professional who has made an individualized evaluation of the applicant, there is little need for further inquiry into the nature of the disability and generally testing entities should grant the requested modification, accommodation, or aid."); Testing Accommodations, U.S. Department of Justice, *available at* https://www.ada.gov/regs2014/testing_accommodations.html (last visited August 11, 2017).

Moreover, Plaintiff can demonstrate, both through statements made by her expert witnesses, qualified professionals who reviewed her, and by her own testimony, that her ADHD substantially limits her major life activities of concentrating, learning, reading, memory, working, and test-taking. While Defendant is correct in pointing out that the term "substantially limits" is made in relation to the general population, 28 C.F.R. § 36.105(d)(1)(v), Defendant errs in comparing Plaintiff's test scores, i.e. *outcomes*, to the general population rather than the *condition and manner* in which she takes the test to the general population. *Id.* § 36.105(d)(1)(v). The ADA is not concerned with the outcomes an individual can achieve, *id.* § 36.105(d)(3)(iii); and as Dr. Golden and Dr. Vigil-Otero noted, Plaintiff is substantially limited in major life activities connected to preparing and taking (i.e. condition and manner) the Step 1 standardized examination, specifically in studying for the examination, i.e. substantial limitation in the major life activities of learning and memory as it related to taking

the Step 1 exam, and taking the exam itself, as Dr. Golden noted her limitations in the testing setting results in her lowered scores, i.e. substantial limitation in the major life activities of concentrating and reading as it related to taking the Step 1 exam. All of these represent substantial limitations in the realm of test-taking as well, and because the Step 1 exam is essentially a licensing exam that can potentially bar Plaintiff from her desired profession, she has a substantial limitation in the realm of working as well. *Cf. Bartlett v. New York State Bd. of Law Examiners*, 970 F.Supp. 1094, 1121 (S.D.N.Y. 1997).

Accordingly, Plaintiff has a disability under the ADA. Thus, Plaintiff is entitled to the protections under Title III of the ADA related to testing accommodations; specifically Plaintiff is entitled to the protection that "any person that offers examinations…related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. For Plaintiff, 50% extra time is the accommodation that best ensures the Step 1 examination measures her achievement level and aptitude, not the effects of her disability. Plaintiff is entitled to 50% extra time under the ADA.

B.  Defendant's Case:

NBME is a non-profit corporation whose mission is to protect the health of the public by providing standardized, state-of-the-art system of assessments of health professionals. Together with the Federation of State Medical Boards, another non-profit entity, NBME has established the United States Medical Licensing Examination.  The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate

fundamental patient-centered skills, that constitute the basis of safe and effective patient care.

There are three "Steps" to the USMLE, all of which must be passed before a physician with an M.D. degree is eligible to apply for an unrestricted license to practice medicine in the United States.  This case involves the **Step 1** examination.  Step 1 is a multiple-choice examination that assesses understanding and application of basic science concepts important to the practice of medicine.  Under standard testing conditions, the exam is administered in one eight-hour day, including break time.

Consistent with its obligations under Section 12189 of the ADA, NBME provides reasonable accommodations to individuals whose supporting documentation demonstrates that they have a physical or mental impairment that substantially limits their ability to perform one or more major life activities that are relevant when taking a USMLE examination.  NBME's accommodation process is designed to ensure that individuals with bona fide disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, which could affect the reliability of their resulting test score and/or provide them with an unfair advantage over other candidates.

Ms. Black claims to have ADHD.  She further claims that, as a result of her ADHD, she is substantially limited in her ability to perform the major life activities of reading, concentrating, and memorizing, thereby making her disabled under the ADA.

ADHD is a lifelong impairment that, under applicable diagnostic criteria, arises in childhood before age 12 and significantly disrupts multiple facets of an individual's life (*i.e.*, the individual's ability to perform academically or in employment settings, or to have normal family or social relationships).  Ms. Black's history refutes any suggestion that she has ADHD,

or that the functional limitations which she attributes to her alleged impairment are substantially limiting.  The diagnoses that she relies upon do not withstand analysis.

Ms. Black was first diagnosed as having ADHD in 2009, at age 26, following a brief, informal interview by a psychiatrist in Pennsylvania, Dr. Scott Fleischer.  At the time, she was preparing to take the Medical College Admission Test ("MCAT") but was having some trouble focusing on her studying.   Without administering any formal testing, conducting a comprehensive interview, or reviewing any of her academic records, Dr. Fleischer diagnosed Ms. Black as having General Anxiety Disorder and ADHD and gave her a prescription for Ritalin.  His fee for the informal evaluation was $132.

Ms. Black has an exceptional academic history.  She has many friends, is close with her family, and has never had issues in any of the jobs she has held.  She was a Division I athlete at an Ivy League university, and her focus, concentration and drive have enabled her to succeed at the highest levels, both on and off the field.

Prior to age 26, Ms. Black was never diagnosed with ADHD or evaluated for any concerns that might relate to such a diagnosis.  She did not receive any accommodations in elementary school, middle school, or high school, for class work or on any classroom exams or standardized tests.  She took mostly Honors-level courses in high school and graduated 4th in her class, while participating in numerous extra-curricular activities.  Among other things, she was an officer on the Student Council and achieved All-American recognition in field hockey, serving as Captain of the team her Senior year.

Her success continued after high school.  She did extremely well on her college admissions test, without any extra testing time, with scores that put her in the top 20% percent

of all students who tested when she did.  Her scores helped her get admitted to one of the top colleges in the country, Princeton University.  She majored in History while minoring in Latin American Studies, graduated in four years with mostly A's and B's, and played on Princeton's Division I field hockey team, again gaining All-American recognition.  She did not ask for any accommodations at Princeton.

After working for several years following graduation, Ms. Black decided that she wanted to go to medical school.  Having not majored in the usual curriculum for prospective medical school students, she applied for and was admitted to a pre-med, post-Baccalaureate program at the University of Pennsylvania ("UPenn").  She did extremely well in this demanding program, achieving a 4.0 in two of her course sessions and finishing with a 3.79 GPA.  She did not receive extra testing time or any other accommodations at UPenn.

Ms. Black then took the Medical College Admission Test.  The MCAT is a very challenging examination, taken by a highly accomplished population of test-takers.  Like the USMLE Step 1 exam, it is a multiple choice examination taken under time constraints in a computer-based format.  Ms. Black took the MCAT twice.  She scored in the 73rd percentile the second time she tested.  That means her score was among the top 27 percent of all test-takers who tested when she did.  She did not take either MCAT with extra testing time or other accommodations.

Ms. Black has had numerous jobs that require the ability to read, concentrate, focus and organize.  These include working as a legal assistant for a Wall Street law firm, where she proofed and revised transaction documents for large commercial real-estate projects; overseeing research projects at Columbia University; dealing with logistical and procurement

issues for two organizations that provided international aid relief; and teaching.  She has never requested or received accommodations in any of her jobs.

Based upon her impressive academic record, work history and MCAT score, Ms. Black was admitted to the University of South Florida's Morsani College of Medicine in 2011.  She did not request any accommodations in her first year and passed all of her courses, which included written tests with time limits.  She first requested accommodations during her second year of medical school, in early 2013.  Apparently relying upon the ADHD diagnosis that Ms. Black received in 2009 from the psychiatrist in Pennsylvania, her school authorized her to receive 50% additional testing time on certain of her medical school exams.

Medical students generally take the Step 1 exam after their second year of medical school.  Ms. Black took several leaves of absence, however, to prepare for the Step 1 exam. She has taken the USMLE Step 1 three times, but she has not yet achieved a passing score.  On each occasion that she tested, the minimum passing score on the Step 1 exam was 192.

Ms. Black first took the Step 1 exam on July 3, 2014.  She did ***not*** request extra testing time or any other accommodations.  She achieved a failing score of 183.

Ms. Black took the Step 1 exam again on April 9, 2015.  She requested 50% extra testing time for this exam, with testing over two days.  She based her accommodation request on the ADHD diagnosis she had received from Dr. Fleischer in 2009, and on an evaluation done in October 2014 by a graduate student in the USF Psychological Services Center.  Ms. Black had been referred to the USF Psychological Services Center by the USF Counseling Center to get an updated ADHD evaluation, in order to enable her to continue receiving medication prescriptions.  Since starting medical school, Ms. Black has seen several therapists

13

at the Counseling Center, and a therapist in private practice, in connection with a range of issues that have included a tendency towards perfectionism, difficulty achieving her desired life/school/work balance, a desire to improve her study skills, self-defeating thinking and behavior, inadequate motivation, and uncertainty about whether she really wants to become a doctor.

NBME denied Ms. Black's request for extra testing time on the April 9, 2015 Step 1 exam. It did so after having her file reviewed by an independent external professional who is a nationally recognized expert in ADHD. Based upon that professional's recommendation and its own review of her supporting documentation, NBME concluded that Ms. Black had not demonstrated that she has an impairment that substantially limits her ability to perform any major life activities, or that she needs accommodations to take the Step 1 exam in an accessible manner. Ms. Black took the Step 1 exam without accommodations. She achieved a failing score of 189.

Ms. Black took the Step 1 exam a third time on July 2, 2015. She did not request accommodations on this administration. She achieved a failing score of 173.

Ms. Black registered to take the Step 1 exam again in early 2016, and she again requested 50% extra testing time. This time, she said that accommodations were warranted based upon two impairments: a vision impairment ("convergence insufficiency") and ADHD. NBME again denied her request for extra testing time. It did so after receiving input from an external professional with expertise involving visual impairments, and additional input from the external professional with ADHD expertise who had reviewed her initial accommodation request. As a courtesy to Ms. Black, and in consideration of her newly reported "vision

impairment," NBME approved Ms. Black for additional break time.  She was notified by letter on March 29, 2016, and she was issued a scheduling permit to test during the eligibility period of April 1, 2016 through June 30, 2016.  She did not test,  however, and instead filed this lawsuit.

Pursuant to Section 12819, persons who qualify as disabled under the ADA are entitled to receive reasonable accommodations during test-taking.  Having a diagnosed impairment, however, is not the same thing as being disabled within the meaning of the ADA.  To be disabled under the ADA, a person must have a "a physical or mental impairment that substantially limits one or more major life activities…."  42 U.S.C. § 12102(1).  More specifically, the person must have an impairment that substantially limits the person's ability to perform a major life activity "*as compared to most people in the general population*."  28 C.F.R. § 36.105(d)(v) (emphasis added).  If a diagnosis is unwarranted, or if a diagnosed impairment does not result in (*i.e.*, cause) substantial limitations as compared to most people, the individual is not disabled under the ADA and is not entitled to accommodations.

As noted above, Ms. Black claims to have ADHD (she has abandoned her claim that extra time is warranted because she has a vision impairment).  NBME denies that Ms. Black has been properly diagnosed with ADHD.  In addition, NBME asserts that, even if Ms. Black were found to have ADHD, she is not disabled within the meaning of the ADA because she cannot show that her ADHD substantially limits her ability to perform any major life activities as compared to most people in the general population.  She is not entitled to extra testing time on the USMLE Step 1 exam.

IV.  **<u>Exhibit List:</u>**

A.  <u>Plaintiff's Exhibits</u>

Plaintiff's Exhibit List is attached hereto as <u>Exhibit A</u>, and Defendant's objections are attached as <u>Exhibit B</u>.

B.  <u>Defendant's Exhibits</u>

Defendant's Exhibit List is attached hereto as <u>Exhibit C</u>, and Plaintiff's objections are attached as <u>Exhibit D</u>.

V.  **<u>Witness List:</u>**

A.  <u>Plaintiff's Witnesses</u>

Plaintiff's Witness List is attached as <u>Exhibit E</u>, and Defendant's objections are attached hereto as <u>Exhibit F</u>.

B.  <u>Defendant's Witnesses</u>

Defendant's Witness List is attached hereto as <u>Exhibit G</u>, and Plaintiff's objections, if any, are attached hereto as <u>Exhibit H</u>.

VI.  **<u>Expert Witness List:</u>**

A.  <u>Plaintiff's Expert Witnesses</u>

Plaintiff's Expert Witness List is attached as <u>Exhibit I</u>, and Defendant's objections are attached as <u>Exhibit J</u>.  As noted there, Defendant objects to Plaintiff offering expert testimony from certain of her proposed experts because she failed to comply with the requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure and therefore cannot offer testimony under Rule 702 of the Federal Rules of Evidence from those witnesses (Dr. Ashley Vigil-Otero, Dr. Margaret Booth-Jones, and Dr. Charles Golden).  Defendant objects to Plaintiff offering expert testimony from Professor Ruth Colker because the subjects of her proposed testimony are irrelevant to the issues in this lawsuit and/or constitute improper testimony regarding legal issues that are within the exclusive purview of the Court; therefore, there is no proper basis for her to offer any testimony under Rule 702 of the Federal Rules of Evidence.

B. Defendant's Expert Witnesses

Defendant's Expert Witness List is attached as Exhibit K, and Plaintiff's objections, if any, are attached as Exhibit L. As noted there, Plaintiff objects to Defendant offering expert testimony from Dr. Michael Herkov and Dr. Michael Gordon because the subjects of their proposed testimony would result in the needless presenting of cumulative evidence in violation of Rule 403 of the Federal Rules of Evidence. The subjects of their testimony will be covered by the testimony of Defendant's other expert witness, Dr. Kevin Murphy; therefore, these proposed expert witnesses should not be permitted to offer any testimony under Rule 702 of the Federal Rules of Evidence.

## VII.   **Money Damages:**

Plaintiff is suing under Title III of the ADA; specifically, under 42 U.S.C. ¶ 12189.

Damages may not be recovered under Title III of the ADA, and Plaintiff is not seeking

damages.  She is seeking injunctive and declaratory relief.

## VIII.   **Deposition Transcripts That May Be Offered in Evidence:**

A. By Plaintiff

In accordance with Rule 32(a) of the Federal Rules of Civil Procedure, Plaintiff may use Defendant's 30(b)(6) deposition – where Defendant was represented by its designee, Catherine Farmer – for any purpose at trial. Additionally, if a witness listed on Plaintiff's witness list or Defendant's witness list becomes unavailable, Plaintiff may read his or her deposition at trial.

B. By Defendant

In accordance with Rule 32(a) of the Federal Rules of Civil Procedure, Defendant may use Plaintiff's deposition for any purpose at trial.   Additionally, if a witness listed on Plaintiff's witness list or Defendant's witness list becomes unavailable, Defendant may read his or her deposition at trial.

## IX.   **Statement of Admitted Facts:**

A.      Ms. Black did not receive any academic accommodations in elementary school.

She took various standardized tests in elementary school and did not receive extra testing time

on any of those exams.

B.      Ms. Black did not receive any academic accommodations in middle high school.  She took at least one standardized test in middle high, in both the 7th and 8th grades: the Metropolitan Achievement Tests.  Her performance on this test in the 8th grade was "well above average," with scores on all sub-tests in the 90th percentile nationally, including on the Reading Comprehension sub-test. She did not receive extra testing time on these standardized tests.

C.      Ms. Black attended high school in Pennsylvania and did not receive extra testing time or any other academic accommodations.  Nineteen of her high school classes were Honors classes, she graduated with a 3.941 grade point average (GPA), and she finished 4th in a class of approximately 320 students.

D.      Ms. Black participated in numerous extra-curricular events in high school. These included four years on the varsity field hockey team, where she was a Captain her Senior year and received All-American honors.  She was also on Student Council, serving as an officer her Junior and Senior years, and she played on additional sports teams and was a member of various clubs.

  - Plaintiff does not dispute the veracity of this factual assertion, and admits to the truth of this assertion; however, Plaintiff **objects** as to the relevancy of this factual assertion.

E.      Ms. Black graduated from high school in 2001.

F.      Ms. Black took the SAT college admissions test three times.  She also took College Board subject tests in Spanish and Writing.  All of these tests were timed, standardized

18

tests.  Her combined scores on the SAT ranged from 1240 to 1260, with her highest score being a 650 score on the Verbal section.  Her scores put her in the top 20% of all students who took the SAT when she did.

G.      Ms. Black did not take any of the SAT tests or the College Board subject tests with extra testing time.

H.      Ms. Black attended Princeton University from 2001 through 2005 and graduated in the standard four years.  Most of her grades were A's or B's, with some Cs.

I.      Ms. Black did not receive any disability-based accommodations at Princeton University.

J.      Ms. Black took classes in the summer of 2003 at a university in Mexico.  She earned an A- in each of the two courses that she took.  She did not receive any accommodations in her summer school classes.

K.      Ms. Black worked in various jobs from 2005 until 2007, after graduating from Princeton.  She was a legal assistant at the New York law firm Shearman & Sterling, where she worked primarily on commercial real estate matters.  After a year in that job, she became a Research Assistant at the N.Y. State Psychiatric Institute at Columbia University.

- Plaintiff does not dispute the veracity of this factual assertion, and admits to the truth of this assertion; however, Plaintiff **objects** as to the relevancy of this factual assertion.

L.      Ms. Black did not receive accommodations in either of these jobs.

- Plaintiff does not dispute the veracity of this factual assertion, and admits to the truth of this assertion; however, Plaintiff **objects** as to the relevancy of this factual assertion.

M.      In 2007, Ms. Black was admitted to a post-Baccalaureate program at the University of Pennsylvania.  She took pre-med classes at UPenn in 2007 and 2008 and finished the program with a 3.79 GPA.

N.      Ms. Black did not receive extra testing time or any other accommodations at UPenn.

O.      Ms. Black took the Medical College Admission Test ("MCAT") twice in 2009 in which she did not cancel her scores.  Her score the first time she tested placed her in the 32nd percentile of all individuals who took the MCAT when she did.  Her score the second time she tested placed her in the 73nd percentile (*i.e.*, in the top 27% of all individuals who took that MCAT).

P.      Ms. Black did not receive extra testing time or any other accommodations on either of the MCATs that she took.

Q.      Ms. Black was first diagnosed with ADHD in March 2009, by Dr. Scott Fleischer.  Dr. Fleischer also diagnosed Ms. Black with Generalized Anxiety Disorder.  Ms. Black was 26 years old when she received these diagnoses from Dr. Fleischer.  Dr. Fleischer prescribed medications for Ms. Black, including Ritalin.  The purpose of the Ritalin was to address the lack of focus and related symptoms that Ms. Black reporting experiencing during her consultation with Dr. Fleischer.

R.      Ms. Black moved to the Dominican Republic in September 2009, after taking the MCAT.  While there, she worked for one year as a high school teacher.  She then spent approximately 14 months working in the Dominican Republic on projects relating to the provision of relief aid to residents of Haiti, first as a Logistics and Procurement Analyst for the Clinton Health Access Initiative, then as a logistics and procurement Consultant for an organization named Partners in Health (until July 2011).

- Plaintiff does not dispute the veracity of this factual assertion, and admits to the truth of this assertion; however, Plaintiff **objects** as to the relevancy of this factual assertion.

S.      Ms. Black did not receive accommodations in any of the jobs she had in the Dominican Republic.

- Plaintiff does not dispute the veracity of this factual assertion, and admits to the truth of this assertion; however, Plaintiff **objects** as to the relevancy of this factual assertion.

T.      Ms. Black enrolled in the University of South Florida's Morsani School of Medicine in August 2011.

U.      Ms. Black did not request or receive any accommodations during her first year of medical school.  She passed all of her first-year courses, which included courses in which students took written, time-limited examinations.

V.      In September of 2011, upon matriculating to medical school, Ms. Black began medication management at USF's Counseling Center. Around this time, she began receiving her first counseling sessions – six sessions from Tania Sales – at the Counseling Center. In or

21

around October 2012, she began receiving additional counseling at the Counseling Center.

W.      In June 2013, Ms. Black began having therapy sessions with Dr. Ashley Vigil-Otero.

X.      Ms. Black first requested accommodations in medical school in 2013, during her second year of medical school.  The school authorized her to receive 50% additional testing time and a distraction-free testing area on exams taken outside of the clinical setting.

Y.      Ms. Black took a leave of absence from medical school beginning in the latter part of her second year of medical school.  She subsequently extended her leave of absence several times.  Ms. Black took these leaves of absence to prepare for the USMLE Step 1 examination.

Z.      Ms. Black first took the USMLE Step 1 exam in July 2014.  She did not request extra testing time on this administration of the Step 1 exam.  She did not achieve a passing score.

AA.     Ms. Black took the Step 1 exam a second time in April 2015.  She requested 50% extra testing time on this administration, as well as testing over two days.

BB.     Ms. Black based her request for accommodations on the April 2015 Step 1 exam on the ADHD diagnosis that she had received in 2009 from Dr. Fleischer, and on a second ADHD diagnosis that she received in an October 2014 evaluation report prepared by the University of South Florida Psychological Services Center.

CC.     The USF Psychological Services Center's evaluation of Ms. Black was conducted by Megan McMurray, a graduate student at USF and a "Clinical Psychology Trainee."  Ms. McMurray performed the evaluation and prepared her evaluation report under

the supervision of Dr. Margaret Booth-Jones.

DD.　The evaluation consisted of psychometric tests as well as a psychiatric, medical, and social/family history. As a result of the evaluation, Plaintiff was diagnosed with ADHD. The report recommended that Plaintiff should be allowed extended time for testing and quiet testing accommodations.

EE.　Dr. Booth-Jones is a licensed clinical psychologist employed by the H. Lee Moffitt Cancer Center.  She was also employed by the Moffitt Cancer Center at the time of Ms. Black's October 2014 evaluation, but she sometimes supervised student trainees at the USF Psychological Services Center.

FF.　Dr. Booth-Jones signed the October 2014 evaluation report from the USF Psychological Services Center, along with Ms. McMurray.

GG.　Dr. Booth-Jones has never met Ms. Black in person.

HH.　NBME denied Ms. Black's request for extra testing time on the April 2015 Step 1 examination.  It did so after having Ms. Black's request reviewed by Dr. Kevin Murphy, a licensed psychologist who runs an adult ADHD clinic in Massachusetts. The denial was based on NBME's contention that Ms. Black did not have a disability that would qualify her for accommodations.

II.　Ms. Black took her April 2015 Step 1 examination under standard testing conditions.  She did not achieve a passing score.

JJ.　Ms. Black took the Step 1 exam a third time in July 2015.  She did not request accommodations on this administration of the exam. She did not achieve a passing score.

KK.　Ms. Black registered to take the Step 1 exam a fourth time in January 2016.  She

again requested testing accommodations (50% extra testing time).  This time, she based her accommodation request on two claimed impairments:  ADHD, and a vision impairment known as "convergence insufficiency."

LL.     NBME denied Ms. Black's January 2016 request for testing accommodations. It did so after having her supporting documentation reviewed by a professional with expertise relating to vision impairments, and again by Dr. Murphy.  The denial was based on NBME's contention that the additional documentation provided by Ms. Black did not change their conclusions that she did not have a disability that would qualify her for accommodations.

MM.   Ms. Black did not to take the Step 1 exam in 2016.

NN.    Ms. Black is currently working as a middle school teacher in Florida.

OO.    Ms. Black has stipulated that ADHD is the only physical or mental impairment that she relies upon to support her claim that she is entitled to accommodations on the Step 1 exam.

## X.    Concise Statement of Applicable Principles of Law on Which There Is Agreement:

A.  This Court has jurisdiction over this action and the parties, and venue is proper in this Court.

B.  In order to establish her failure-to-accommodate claim under Title III of the ADA, Plaintiff must prove the following by the preponderance of evidence:

1.     Plaintiff has a mental impairment, ADHD;

2.     Plaintiff's ADHD limits her ability to perform one or more major life activities;

3.      The resulting limitation is substantial, as compared to most people in the general population, thereby making her disabled within the meaning of the ADA;

4.      Because of the functional limitations resulting from her alleged disability, Plaintiff needs accommodations from Defendant in order to take the Step 1 exam in an accessible manner;

5.      Plaintiff's requested accommodations – 50% additional testing time, with testing over two days – were reasonable; and

6.      Defendant failed to provide reasonable accommodations.

C.  If a violation of Title III is established, the Court may award injunctive and declaratory relief to the Plaintiff.  Damages may not be awarded.

D.  The ultimate burden of proof on her claim remains with Plaintiff.

**XI.    Issues of Fact Which Remain to be Litigated:**[5]

A.  Whether Ms. Black has ADHD under the applicable professional diagnostic criteria found in the Diagnostic and Statistical Manual Mental Disorders, Fifth Edition ("DSM-5").

B.  If Ms. Black has ADHD, whether her ADHD substantially limits her ability to perform any major life activities that are relevant to taking the USMLE Step 1 exam, as compared to the ability of the average person in the general population to perform the activities in which she claims to be limited.[6]

---

[5] Subject to NBME's pending Motion for Summary Judgment.

[6] Subject to Plaintiff's pending Motion for Leave to Amend, Plaintiff will argue that for certain major life activities, the appropriate standard of comparison is whether she is substantially

C.  If Ms. Black has ADHD and is substantially limited in her ability to perform one or more major life activities because of her ADHD, whether her resulting functional limitations, if any, are reduced or alleviated by her taking Ritalin or any other prescription medications that she has taken since being diagnosed with ADHD, thereby negating the need for extra testing time.

- Plaintiff objects to this being included as a disputed issue of fact which remains to be litigated. It is Plaintiff's view that whether or not Plaintiff takes medication to alleviate the symptoms of her ADHD is irrelevant to the determination as to whether or not she is entitled to an accommodation of extra testing time, just as it is irrelevant in making a determination as to whether or not she is disabled. Moreover, Defendant's denial of Plaintiff's request for accommodations was not based on the ameliorative effects of her medication; it was based on the fact that it was their belief that Plaintiff did not have a disability.

D.  If Ms. Black has ADHD and is substantially limited in her ability to perform one or more major life activities, whether she needs 50% extra testing time in order to take the USMLE Step 1 exam in an accessible manner so that her score on the exam accurately reflects her aptitude, achievement level or the skill that the exam purports to measure.

E.  Whether, prior to Ms. Black's 2012 counseling sessions, she took psychometric examination, which indicated that she presented symptoms consistent with ADHD.

---

limited in the major life activity as compared to persons with similar training and experience.

F.   Whether, in the course of treating Plaintiff, Dr. Vigil-Otero diagnosed her with ADHD.

G.   Whether USF provided the accommodations of 50% extra testing time and a quiet testing environment based on her diagnosis of ADHD.

**XII.   Remaining Issues of Law to be Determined by Court:**

A.   Defendant asserts the following the issue of law which needs to be determined by the Court:  Whether Ms. Black is disabled within the meaning of the ADA because she has ADHD and her ADHD substantially limits her ability to perform one or more major life activities as compared to most people in the general population.

B.   Plaintiff asserts the following the issue of law which needs to be determined by the Court:  Whether Ms. Black is disabled within the meaning of the ADA because she has ADHD and her ADHD substantially limits her ability to perform one or more major life activities – including whether it substantially limits the condition and manner in which she is able to perform major life activities – as compared to most people in the general population.

C.   If Ms. Black is found to have ADHD and to be disabled within the meaning of the ADA because of her ADHD, whether Ms. Black needs and is entitled to receive 50% extra testing time on the Step 1 exam as an accommodation for her ADHD so that it accurately reflects her aptitude, achievement level or the skill that the exam purports to measure.

D.   Whether the prevailing party in this lawsuit should be awarded reasonable attorney's fees, including litigation expenses and costs.

**XIII.   Disagreement as to Application of the Federal Rules of Civil Procedure or Federal Rules of Evidence:**

The parties agree that the Federal Rules of Civil Procedure and Federal Rules of Evidence govern this action.

## XIV.   **Motions or Matters Requiring Attention of the Court:**

A.  Defendant's pending Motion for Summary Judgment (Dkt. No. 31).

B.  Plaintiff's Motion to Amend/Correct Amended Complaint (Dkt. No. 43).

C.  Defendant's Motion in Limine regarding expert testimony that Plaintiff has stated an intention to offer (Dkt. No. 47).

D.  Plaintiff's Motion in Limine regarding expert testimony that Plaintiff has stated an intention to offer (to be filed).

Dated this 17th day of August, 2017

*s/ Curtis Filaroski*
CURTIS FILAROSKI
Florida Bar No. 0111972
curtisf@disabilityrightsflorida.org
MEGAN COLLINS
Florida Bar No. 0119112
meganc@disabilityrightsflorida.org
ANN SIEGEL
Florida Bar No. 166431
anns@disabilityrightsflorida.org
ANTHONY J. DEPALMA
Florida Bar No. 16488
tonyd@disabilityrightsflorida.org
Disability Rights of Florida
2473 Care Drive, Suite #200
Tallahassee, Florida 32308
Telephone: (850) 488-9071
Facsimile: (850) 488-8640

Attorneys for Plaintiff

*s/ Gregory A. Hearing*
GREGORY A. HEARING
Florida Bar No. 817790
ghearing@tsghlaw.com
BENJAMIN BARD
Florida Bar No. 95514
bbard@tsghlaw.com
Thompson, Sizemore, Gonzalez & Hearing, P.A.
201 N. Franklin Street, Suite 1600
Post Office Box 639 (33601)
Tampa, Florida  33602
Telephone: (813) 273-0050
Facsimile: (813) 273-0072

ROBERT A. BURGOYNE
D.C. Bar No. 366757 (*Appearing Pro Hac Vice*)
robert.burgoyne@nortonrosefulbright.com
Norton Rose Fulbright US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Telephone: (202) 662-4513
Facsimile: (202) 662-4643
Attorneys for NBME