UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH A. BLACK,

    Plaintiff,

vs.                                CASE NO.: 8:16-cv-02117-T-23TGW

NATIONAL BOARD OF
MEDICAL EXAMINERS,

    Defendant.
_____/

## RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY

Pursuant to Local Rule 3.01(b), Plaintiff files this Response to Defendant's Motion in Limine, ECF No. 47, seeking to exclude portions Plaintiff's expert testimony:

**DEFENDANT'S MOTION IN LIMINE AND PLAINTIFF'S EXPERT WITNESSES**

On August 15, 2017, Defendant filed a Motion in Limine seeking to exclude all or portions of Plaintiff's proposed expert testimony from each of its expert witnesses. In this response, Plaintiff will respond to Defendant's attempts to exclude proposed expert testimony from Prof. Ruth Colker and portions of expert testimony proposed to be offered by Dr. Charles Goldon. Plaintiff will not address the arguments made in regards to Dr. Margret Booth-Jones and Dr. Ashley Vigil-Otero; Plaintiff concedes that they are only presented to offer "testimony [that] is an account of [their] observations during the course of treatment or … for the purpose of explaining the physician's decision-making process or the treatment provided," not to offer

"explanations of scientific and technical information not grounded in [their] own observations and technical experience." *Eberhart v. Novartis Pharm. Corp.*, 867 F.Supp.2d 1241, 1252–53 (N.D. Ga. 2011) (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)). Accordingly, Dr. Booth-Jones and Dr. Vigil-Otero will offer lay testimony related to their roles as Plaintiff's treating physicians under Federal Rule of Evidence 701. *See R.W. v. Board of Regents of the Univ. Sys. Of Ga.*, 114 F.Supp.3d 1260, 1271 (N.D. Ga. 2015) (treating physician testimony may be offered under FRE 701 if it is "strictly and narrowly tailored" to observations and conclusions made during the course of treatment.).

In their Motion in Limine, Defendant argues that Prof. Colker's proposed testimony is irrelevant and provides testimony on legal conclusions. ECF No. 47, at 2–10. Prof. Colker is proposed by Plaintiff as an expert witness to present expert testimony at trial primarily on the topic of whether Defendant's denial of Plaintiff's requests for accommodation on Step 1 of the United States Medical Licensing Examination (USMLE), "represents 'best practices' for entities administering standardized tests." ECF No. 47-1, at 8. Prof. Colker has a background in developing "best practices" for testing entities who grant accommodations under the Americans with Disabilities Act (ADA), specifically working on a Best Practices Panel as part of a settlement involving the Law School Admission Counsel (LSAC), the entity that administers the LSAT standardized examination. *Id.* at 9. This panel was designed to ensure that LSAC exercised "best practices" when processing applications for accommodations, in line with ADA requirements; thus, Prof. Colker has expertise in developing standards and policies for testing entities that comply with the ADA. Her proposed expert testimony, as reflected in her expert report, intends to compare Defendant's processing and ultimate rejection of Plaintiff's

applications for accommodations with the "best practices" developed for other testing entities also subject to the ADA, specifically LSAC.

In its Motion in Limine, Defendant seeks to exclude Dr. Golden's expert testimony to the extent the testimony covers the in-person evaluation he did of Plaintiff, as reflected in his supplemental report. *See* ECF No. 47, at 11–15. Prof. Golden is proposed by Plaintiff as an expert witness to present expert testimony at trial on the topic of whether Plaintiff's application for accommodations was inappropriately denied. ECF No. 47-1, at 37. Specifically, Dr. Golden, a Board Certified Clinical Neurophyschologist, intends to look at the bases of denial by Defendant – i.e. Defendant's belief that Plaintiff does not have a disability – and assert his belief that Plaintiff is an individual with ADHD who has significant limitations in major life activities. *See id.* ("The data clearly support that she has been diagnosed with ADHD … and her scores on previous standardized examinations without accommodations … clearly demonstrates that she performs below expectations based on her cognitive and intellectual abilities.") On August 7, 2017, Plaintiff sent to Defendant her 26(a)(3) Pre-Trial Disclosures, *see* Ex. 1 (email sent to Defendant); the disclosures noted an exhibit list an exhibit entitled "Dr. Charles Golden's Clinical Evaluation of Elizabeth A. Black." Ex. 2, at 3. On August 10, 2017, after finalization of the document by Dr. Golden, a copy of the report was sent along to Defendant. Ex. 3.

The report was created as a result of an evaluation of Plaintiff done by Dr. Golden to determine whether she was qualified for accommodations on the Step 1 exam, i.e. whether she has a disability under the ADA. *See* ECF No. 47-2, at 1. This report was done in order to confirm the opinion made by Dr. Golden that the denial of accommodations by Defendant was inappropriate. ECF No. 47-1, at 37. The report was intended as a supplement under Federal Rule of Procedure 26(e) to the original report disclosed to Defendant in Plaintiff's initial expert

disclosures. *See id.* (Dr. Golden notes that his original report "involved only a record review *now*") (emphasis added).

As will be discussed in detail below, neither Prof. Colker's proposed expert testimony nor portions of Dr. Golden's proposed testimony should be excluded. Prof. Colker's proposed expert testimony, based on her experiences developing "best practices" and policies for other testing entities, is relevant and will help the trier of fact – the Court in this case – to understand the evidence and determine whether Defendant erred in evaluating Plaintiff's applications for accommodations, both in considering whether Plaintiff has ADHD and whether she is substantially limited in a major life activity (i.e. whether Plaintiff is disabled). Prof. Colker does not seek to counsel this Court on conclusions of law – only to aid the court into coming to conclusions of fact and law. Moreover, the expert testimony of Dr. Golden relating to his personal evaluation of Plaintiff should not be excluded. It was disclosed in a timely manner under the supplementation rules of the Federal Rules of Civil Procedure, and promptly following the evaluation itself and the time it took Dr. Golden to write the report, and additionally the report covers topics contained in Dr. Golden's opinions in Plaintiff's expert disclosures – namely, that he believes Plaintiff is an individual with a disability under the ADA who should have had, and should have in the future, her applications for accommodations approved. Accordingly, this Court should deny those portions of Defendant's Motion in Limine.

**PROFFESOR COLKER SHOULD NOT BE EXCLUDED AS AN EXPERT WITNESS**

"A witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the

product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Expert testimony must be both reliable and relevant – the *Daubert* test tasks the Court with considering whether (1) the expert is qualified to testify competently on the issues he or she intends to address; (2) the expert's methodology is sufficiently reliable; and (3) the testimony assists the trier or fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Defendant's basis for requesting that this Court exclude Prof. Colker's proposed expert testimony is the third part of the *Daubert* test – namely, they argue that Prof. Colker's proposed testimony is not relevant or helpful to this Court in either understanding the evidence or determining a fact at issue. *See* ECF No. 47, at 7 ("The practices recommended by Professor Colker and her fellow panel members in the LSAC Case [i.e. the Best Practices Report] are simply irrelevant to this lawsuit."); at 8 ("Those practices do not constitute legal requirements, and they do not apply to NBME (something Professor Colker does not deny). As a result, Professor Colker's testimony on this issue simply does not 'fit' the issues that this case presents."). However, Defendant's analysis of the relevancy of Prof. Colker's testimony – that her experience in developing the Best Practices Report for LSAC involved a different testing entity and a report that does not apply to Defendant – misunderstands the purpose of Plaintiff's offering of Prof. Colker's expert testimony. Much like the use of persuasive case law in legal briefing, the relevancy of Prof. Colker's testimony stems from the comparison of analogous situations – namely the application of Prof. Colker's experience in developing "best practices"

for another testing entity to the present situation, where these "best practices," developed pursuant to the ADA, were not applied.

Defendant is correct in noting that there must be a "fit" between "the offered opinion and the facts of the case." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004); *see also Zygarlowski v. Royal Caribbean Cruises Ltd.*, 2013 WL 7137886, at *1 (S.D. Fla. Feb. 27 2013) ("Where the opinion does not advance the question in dispute for which the opinion is proffered there is no 'fit' and the opinion should be excluded."). However, Defendant offers a simplistic analysis to conclude that there is no fit between Prof. Colker's opinion and the case at hand – simply noting that Defendant is not LSAC and thus her proposed testimony is irrelevant. *See* ECF No. 47, at 7. This analysis ignores the ability of comparison to aid the Court, as the trier of fact, in determining whether Defendant's actions were impermissible under the ADA – especially a comparison of two similar testing entities (both the NBME and LSAC provide testing necessary for advancement in post-secondary education – medical school and law school, respectively) subject to identical legal authority (Title III of the ADA). Certainly there is no large analytical leap to made between the proposed expert opinion and the facts of this case – Prof. Colker proposed testimony provides knowledge and experience helpful to the Court understand an analogous situation where "best practices" had to be developed for another, similar testing entity to comply with the ADA, and an explanation as to how these practices, and thus perhaps the ADA, were not followed in this case. *Compare General Electric Co. v. Joiner*, 522 U.S. 136 (1997) (proposed expert testimony offering animal studies showing one type of cancer in mice to establish causation of another type of cancer in humans is "simply too great an analytical gap between the data and the opinion offered").

6

Defendant, along with questioning the relevancy of Prof. Colker's testimony, accuses Prof. Colker of attempting to "perform the Court's role" and thus testifying as to an ultimate legal conclusion. ECF No. 47, at 9; *see also United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009) ("[A]n expert witness may not testify as to [her] opinion regarding ultimate legal conclusions."). However, simply because Prof. Colker's testimony may lead the *Court* to conclude that Defendant has violated the ADA does not mean she is testifying as to an ultimate legal conclusion; in fact, the purpose of Plaintiff proffering her expert testimony is precisely to persuade the Court to reach that conclusion. It is true that in developing "best practices" for LSAC that Prof. Colker and the rest of the Best Practices Panel had an eye toward ensuring LSAC's compliance with Title III of the ADA. However, it does not follow from this that Prof. Colker's testimony regarding "best practices" and their application to the present situation involves expert testimony as to an ultimate legal conclusion. While the "best practices" were developed with the ADA in mind, Prof. Colker's opinion that Defendant did not follow "best practices" when processing Plaintiff's applications for accommodations, ECF No. 47-1, at 19–20, is merely an expert opinion, certainly one that Plaintiff is hopeful will persuade this Court that Defendant has violated the ADA, especially considering the connection between the "best practices" and the ADA. To the extent that Prof. Colker does seek to offer testimony on ultimate legal conclusions, *see id.* at 19 ("NBME's treatment of Ms. Black's request for testing accommodations was inconsistent with the rules created by the ADA"), the Court should rightfully exclude them, though Plaintiff does not believe an order is necessary to reiterate the rule against opinions on ultimate legal conclusions.

The proposed expert testimony of Prof. Colker will assist the Court, as the trier of fact, by applying her special expertise in developing "best practices" for a similar testing entity to this

present case. For example, Prof. Colker notes in her report that she can testify as to the fact that Defendant did not follow the "best practice" of accepting Plaintiff as an individual with a "record of a disability" pursuant to documentation from a qualified individual who recommended Plaintiff receive accommodations. *Id.* at 12–13. As this "best practice" was developed in line with Title III of the ADA in mind – as well as pursuant to input from experts in the field of educational psychology – the Court could conclude that Defendant was incorrect in denying that Plaintiff has a disability; at the very least, such testimony indisputably "advances a material aspect of the [Plaintiff's] case" – evidence that Plaintiff should be found to be an individual with a disability. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). Accordingly, this Court should deny Defendant's request to exclude Prof. Colker's testimony – it is relevant and admissible under the *Daubert* standard.

### TESTIMONY FROM DR. CHARLES GOLDEN RELATED TO HIS OWN EVALUATION OF PLAINTIFF SHOULD NOT BE EXCLUDED

Pursuant to the Case Management Report, ECF No. 16, at 4, and the Court's Case Management and Scheduling Order, ECF No. 17, at 1, Plaintiff's expert disclosures were to be provided by June 1, 2017. On that date, Plaintiff provided a report from Dr. Charles Golden, dated May 25, 2017, that contained his opinion that "the rejection of the [Plaintiff's] application for accommodations was inappropriate" based on the fact that "[t]he data clearly support that she has been diagnosed with ADHD by competent professionals following customary guidelines and her scores on previous standardized testing without accommodations, which clearly demonstrates that she performs below expectations based on her cognitive and intellectual abilities." ECF No. 47-1, at 37. The report also contained an indication that the opinion and the basis of that opinion would be elaborated upon, as the report at the time "involved only a record review *now*." *Id.* (emphasis added).

Defendant does not object to the report by Dr. Golden that was provided pursuant to the June 1, 2017 deadline (hereinafter "original report"); rather, Defendant objects to and seeks to exclude expert testimony based on a supplemental report provided by Plaintiff – authored by Dr. Golden based on an evaluation of Plaintiff on July 18 & 19, 2017 – on August 10, 2017, and disclosed to Defendant on August 7, 2017 (hereinafter "supplemental report"). ECF No. 47, at 13 (stating that the Court should not permit expert testimony on the material covered in Dr. Golden's supplemental report). Defendant states that expert testimony to be presented pursuant to the supplemental report should be excluded because 1) it is untimely, *see id.* ("His clinical evaluation has been provided to NBME more than two months after the deadline for Ms. Black's expert witness disclosures, after the deadline for deposing expert witnesses, and only a few weeks before the scheduled trial date. This is too late."); 2) it reflects opinions that are beyond the opinions contained in the original report, *see id.* ("Professor Golden should not be allowed to offer any opinion at trial beyond the opinion that was set forth in the expert witness report that Ms. Black provided to NBME on June 1, 2017, or to rely in any way on his in-person evaluation of Ms. Black in testifying at trial."); and 3) it is improper to allow Dr. Golden to provide an opinion on potential diagnoses other than ADHD. *See id.* at 15 ("The suggestions in Professor Golden's last-minute evaluation report that Ms. Black might have two additional impairments … is plainly improper in light of Ms. Black's stipulation that ADHD is the only impairment that she has relied upon or will rely upon in this case to support her claimed entitlement to extra testing time on Step 1 on the USMLE."). However, Plaintiff does not believe the report is untimely nor does she believe the report should be excluded merely because it briefly discusses potentially irrelevant material, and this Court should not exclude expert testimony from Dr. Golden related to that report.

## The Supplemental Report Authored by Dr. Golden was Timely

The Federal Rules of Civil Procedure mandate that expert disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. Pro. 26(a)(2)(D). However, these Rules also provides that "[t]he parties must supplement these disclosures when required under Rule 26(e)." Fed. R. Civ. Pro. 26(a)(2)(E). "A party who has made a disclosure under Rule 26(a) … must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is *incomplete* or incorrect." Fed. R. Civ. Pro. 26(e)(1)(A) (emphasis added). For expert witnesses reports that must be disclosed under Federal Rule of Procedure 26(a)(2), "[a]ny additions or changes to this information must be disclosed by the time the party's pre-trial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. Pro. 26(e)(2).

Federal Rule of Civil Procedure 26(a)(3)(b) stipulates that pre-trial disclosures "must be made at least 30 days before trial." Pursuant to this Rule, Plaintiff made her pre-trial disclosures on August 7, 2017, Ex. 1 – the current trial term is set for September 2017, which begins on September 5, 2017, ECF No. 17, at 2, but no trial date has been set by which to calculate an exact date for 26(a)(3) disclosures, so Plaintiff conservatively made the disclosures 30 days before the trial term. The disclosures included a disclosure of the existence of the then-forthcoming report as Ex. 19 on the exhibit list. Ex. 2, at 3. Plaintiff sent Defendant the completed supplemental report on August 10, 2017, Ex. 3, following Dr. Golden's completion of the report (the evaluation had occurred less than one month earlier, on July 18 & 19, 2017) and a day after Defendant's own 26(a)(3) disclosures.

As noted above, the deadline for supplementing 26(a)(2) expert disclosures is the same deadline as the 26(a)(3) pre-trial disclosures. Pursuant to this deadline, Plaintiff made Defendant

aware of a forthcoming supplemental report via its 26(a)(3) disclosures and its pre-trial exhibit list. That same week, Plaintiff provided the complete supplemental report to Defendant, only a day after its own 26(a)(3) disclosures. The existence of the supplemental report was disclosed timely *even assuming* the trial date to be September 5, 2017, the first day of the trial term. Considering that a definitive trial date has not been set in this, it cannot be said that Dr. Golden's supplemental report, disclosed under Federal Rules of Civil Procedure 26(a)(2) and 26(e), are untimely.

Defendant accuses Plaintiff of "playing fast-and-loose with the schedule in this case and with her disclosure obligations under the applicable Rules," ECF No. 47, at 15, but Plaintiff fully complied with her obligations and with the timelines imposed under Federal Rule of Civil Procedure 26(e), a Rule conspicuous by its absence in Defendant's Motion in Limine. In compiling the supplemental report, Plaintiff scheduled a date for evaluation that worked for both Plaintiff's and Dr. Golden's schedule – July 18 & 19, 2017 – and Dr. Golden diligently wrote his supplemental report to supplement his 26(a)(2) expert report. Plaintiff disclosed the existence of the supplemental report in her 26(a)(3) disclosures on August 7, 2017, and provided the full report the moment it was available and completed on August 10, 2017.

Even if this Court were to find the disclosing of the supplemental report untimely under Federal Rule of Civil Procedure 26(e) – having been provided a day after Defendant's 26(a)(3) disclosures, though disclosed three days prior – this Court should find that the failure to disclose was substantially justified. *See Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 825 (11th Cir. 2009) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party."). "Generally, when assessing whether there was substantial justification for the failure to disclosure or whether the failure to disclose was

11

harmless the courts consider four factors: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such a prejudice." *Warner v. Ventures Health Care of Gainesville, Inc.*, 2001 WL 36098008, at *1 (M.D. Fla. Aug 1, 2001) (citing *Sullivan v. Glock*, 175 F.R.D. 497, 506–7 (D.Md. 1997)). Each of these factors counsel in favor of allowing expert testimony related to the material in Dr. Golden's supplemental report, even if untimely – the potentially excluded testimony is invaluable to Plaintiff as it represents a reflection of how Plaintiff is *currently* disabled with a diagnosis of ADHD and *current* substantial limitations in major life activities, which no other evidence or testimony can provide, as Dr. Golden's July 18 & 19, 2017, evaluation of Plaintiff was the last time she was seen and evaluated by a qualified professional, *see* ECF No. 47-2; any failure to comply with supplemental disclosure deadlines (which, as explained below, Plaintiff does not concede) was only due to the time it takes to write the report following an evaluation that took place July 18 & 19, 2017, a date that had to be carefully considered in light of Plaintiff and Dr. Golden's schedules; there would be no prejudice to Defendant, as the report just provides more evidence to the opinions expressed by Dr. Golden in his original report, as will be explained *infra*; and to the extent Defendant needs a continuance of the expert deposition deadline to depose Dr. Golden on the new information contained in his supplemental report – though Defendant did not previously wish to depose Dr. Golden – Plaintiff would be amenable to an extension and to coordinating a deposition date.

Plaintiff supplemented her expert disclosures in a timely manner by notifying Defendant of Dr. Golden's supplemental report on August 7, 2017, and by providing the completed report on August 10, 2017. In the alternative, should this Court find that the supplemental disclosure –

despite Plaintiffs best efforts – was not timely, the failure to disclose in a timely manner was substantially justified. Accordingly, the Court should not exclude Dr. Golden's proposed expert testimony as reflected in his supplemental report on the basis of untimeliness.

### The Supplemental Report Did Not Express Opinions Beyond What Was Contained in the Original Report

Additionally, Defendant claims that testimony related to Dr. Golden's supplemental report should be excluded because "offer[s] any opinion at trial beyond the opinion that was set forth in the expert witness report that Ms. Black provided to NBME on June 1, 2017." ECF No. 47, at 13. Even assuming this is improper under the supplementation rules in the Federal Rules of Civil Procedure, *but see* Fed. R. Civ. Pro. 26(e) (may supplement disclosures "if the party learns that in some material respect the disclosure or response is incomplete"), it cannot be said that material contained in Dr. Golden's supplemental report, and any proposed testimony stemming therefrom, is beyond his initial opinion that it was inappropriate to deny Plaintiff her request for accommodations. ECF No. 47-1, at 37.

Dr. Golden essentially reaches two conclusions that are elaborated upon in his report: 1) that Plaintiff has ADHD and 2) that it has substantially limited her major life activities such that she has underachieved on high stakes, timed tests. *See* ECF No. 47-2, at 9 ("Elizabeth Black clearly has ADHD and has shown a lifelong pattern of underachievement consistent with this diagnoses, which is clear in her performance on high stakes, timed tests."). Additionally, Dr. Golden states that, because of these limitations, she should receive "accommodations including both 50% extra time and double breaks." *Id.* These opinions are clearly in line with his "original" opinions as expressed in his original report disclosed to Defendant on June 1, 2017 – in that report, he also expresses the opinion Plaintiff should receive accommodations due to her ADHD diagnosis, which causes her to "perform below expectations based on her cognitive and

13

intellectual abilities." ECF No. 47-1, at 37. Simply because the supplemental report is based on an in-person evaluation of Plaintiff, or because the supplemental report is more detailed, does not mean that the supplemental report expresses a new or different opinion.

Defendant offers nothing more than conclusory statements in its argument that Dr. Golden proposes to express a "new" opinion in his supplemental report. *See* ECF No. 47, at 13 ("[I]t would be procedurally improper to allow Professor Golden to offer opinions beyond the single opinion that Professor Golden identified in his [original] expert witness report."). Rather, the only new information that Prof. Golden proposes to offer in the supplemental report is a more current, personal evaluation of Plaintiff, which is allowable as timely, as explained *supra*. Accordingly, proposed testimony based on Dr. Golden's supplemental report should not be excluded for providing a new opinion.

Plaintiff Does Not Seek to Present Testimony Based on Any Diagnosis Other Than ADHD

Finally, Defendant seeks to exclude Prof. Golden's supplemental report due to Prof. Golden mentioning two other impairments – anxiety and specific learning disability. *See* ECF No. 47, at 15. However, even as Defendant itself points out (in regards to anxiety), *see id.* at 14, Dr. Golden stated that neither of these diagnoses should be applied to Plaintiff – as for anxiety, he states in his supplemental report that "such a diagnosis is *not consistent* … with the test results now or in the past," ECF No. 47-2, at 7 (emphasis added); and as for specific learning disability, Dr. Golden notes that "[t]his diagnosis was *not* made because it was decided that her problems were better explained by ADHD." *Id.* at 9 (emphasis added). While Defendant is right to point out that the parties stipulated that the only impairment Plaintiff will rely on in this case is ADHD, *see* ECF No. 31-2, ¶ 6, they are incorrect to assume a mere *mention and subsequent*

*rejection* of possible alternative diagnosis by Dr. Golden in his supplemental report represents Plaintiff's attempt to rely on other diagnoses.

The conclusions reached in Dr. Golden's supplemental report and proposed testimony based on the report is clearly based on a diagnosis of ADHD. *See* ECF No. 47-2, at 9 ("Elizabeth Black clearly has ADHD and has shown a lifelong pattern of underachievement consistent with this diagnoses, which is clear in her performance on high stakes, timed tests."). Defendant states that the mere mention of two other impairments is a "direct contravention of [the ADHD] stipulation," ECF No. 47, at 14, but the stipulation clearly states that "ADHD is the only impairment that Ms. Black is relying on or intends to rely upon in this lawsuit in support of her claim that NBME violated that ADA," not that other impairment will never even be mentioned. ECF No. 31-2, ¶ 6. Not only does Defendant stretch the terms of the stipulation too far, it seeks to exclude Dr. Golden's *entire* supplemental report based on the mere mention, and subsequent rejection, of a possible diagnosis of anxiety and specific learning disability. The Court should reject Defendant's attempts on these grounds to exclude proposed testimony based on Dr. Golden's supplemental report.

## CONCLUSION

For these reasons, this Court should reject portions of Defendant's Motion *in Limine* seeking to exclude proposed expert testimony from Prof. Ruth Colker and Dr. Charles Golden.

Respectfully submitted: August 24, 2017

Curtis Filaroski
FL Bar No. 111972
curtisf@disabilityrightsflorida.org
**Megan Collins**
FL Bar No. 119112

15

meganc@disabilityrightsflorida.org
**Ann Marie Cintron-Siegel**
FL Bar No. 166431
anns@disabilityrightsflorida.org
**Attorneys for Plaintiff Elizabeth Black**
Disability Rights Florida
2473 Care Drive, Suite 200
Tallahassee, FL 32308
Phone: 850-488-9071
Fax: 850-488-8640

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of August, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

GREGORY A. HEARING
ghearing@tsghlaw.com
Thompson, Sizemore, Gonzalez & Hearing, P.A.
201 N. Franklin Street, Suite 1600
Post Office Box 639 (33601)
Tampa, Florida 33602

ROBERT A. BURGOYNE
robert.burgoyne@nortonrosefulbright.com
Norton Rose Fulbright US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501

Attorneys for National Board of Medical Examiners

    Plaintiff's counsel has also emailed copies of the foregoing to the Defendant's attorneys.

Curtis Filaroski
Attorney for Plaintiff